# __Exhibit A__

Motion to Transfer Venue

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:    jeffrey.m.sponder@usdoj.gov
           lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | Chapter 11 |
| In re: | : |  |
|  | : | Case No. 23-12825 (MBK) |
| LTL Management LLC, | : |  |
|  | : | Honorable Michael B. Kaplan, Chief Judge |
| Debtor. | : |  |
|  | : |  |
| _____ | : |  |

**NOTICE OF MOTION BY THE UNITED STATES TRUSTEE FOR AN ORDER
PURSUANT TO FED. R. BANKR. P. 1014(B) TRANSFERING VENUE OF
SUBSEQUENTLY FILED CASE TO THE DISTRICT OF NEW JERSEY**

**TO:  ALL PERSONS ON ATTACHED CERTIFICATE OF SERVICE**

**PLEASE TAKE NOTICE** that the United States Trustee, by and through his counsel, shall move before the Honorable Michael B. Kaplan, Chief, U.S.B.J., as set forth by the Court in the Order Shortening Time, at the United States Bankruptcy Court, District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey, under 11 U.S.C. § 1112(b), for an Order Pursuant to Fed. R. Bankr. P. 1014(b) Transferring Venue of Subsequently Filed Case to the District of New Jersey, and for such other and further relief as this Court deems just and appropriate.

**PLEASE TAKE FURTHER NOTICE** that the United States Trustee shall rely upon the

Memorandum of Law and Certification submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that any papers in opposition to the Motion must

be filed with the Court and served upon the United States Trustee as set forth by the Court in the

Order Shortening Time.

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9


*/s/ Jeffrey M. Sponder*
Jeffrey M. Sponder
Trial Attorney

DATED: September 20, 2024

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:      jeffrey.m.sponder@usdoj.gov
             lauren.bielskie@usdoj.gov

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ : | Chapter 11 | |
| In re:                        : | | |
|                               : | Case No. 23-12825 (MBK) | |
| LTL Management LLC,           : | | |
|                               : | Honorable Michael B. Kaplan, Chief Judge | |
| Debtor.                       : | | |
|                               : | | |
| _____ : | | |

**CERTIFICATION OF LAUREN BIELSKIE, ESQ., IN SUPPORT OF THE
MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER PURSUANT
TO FED. R. BANKR. P. 1014(b) TRANSFERING VENUE OF SUBSEQUENTLY
FILED CASE TO THE DISTRICT OF NEW JERSEY**

I, Lauren Bielskie, of full age, hereby certify under penalty of perjury, pursuant to 28

U.S.C. § 1746, as follows:

1.      I am employed as a trial attorney by the Office of the United States Trustee in

Newark, New Jersey.

2.      I submit this Certification to place in the record certain documents submitted in

connection with the *Motion of the United States Trustee for an Order Pursuant to Fed. R. Bankr.

P. 1014(b) Transferring Venue of Subsequently Filed Case to the District of New Jersey* ("Venue

Motion").

1

3.      Attached hereto as **Exhibit A** is a true and accurate copy of the Voluntary Chapter 11 Petition of Red River Talc, LLC, filed in the Southern District of Texas, identified as Case No. 24-90505 ("Red River").

4.      Attached hereto as **Exhibit B** is a true and accurate copy of the *Debtor's Statement Regarding Filing of Chapter 11 Case* ("Debtor's Statement"), filed in Red River.

I certify under penalty of perjury that the forgoing is true and correct.

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: ___*/s/ Lauren Bielskie*___
    Lauren Bielskie
Dated: September 20, 2024          Trial Attorney

2

# EXHIBIT A

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern     District of   Texas
                               (State)

Case number *(if known)*: _____ Chapter __11__

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | | |
|---|---|---|---|
| 1. | **Debtor's name** | Red River Talc LLC | |

| | |
|---|---|
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 9 9 – 4 5 2 8 5 0 8 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 501     George Street <br> Number    Street | Number    Street |
| | P.O. Box |
| New Brunswick    NJ    08933 <br> City        State    ZIP Code | City        State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Middlesex <br> County | Number    Street |
| |                  Texas <br> City        State    ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website (URL)** | https://dm.epiq11.com/redrivertalc |

| Debtor | Red River Talc LLC | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

<u>6</u>  <u>7</u>  <u>1</u>  <u>9</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply*:

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ A plan is being filed with this petition.

☑ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| Debtor | Red River Talc LLC | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
MM / DD / YYYY

District _____ When _____ Case number _____
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes. Debtor _____ Relationship _____

District _____ When _____
MM / DD / YYYY

Case number, if known _____

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number        Street

_____

_____
City                                          State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

**Statistical and administrative information**

| Debtor | Red River Talc LLC | | Case number *(if known)*_____ |
|---|---|---|---|
| | Name | | |

---

**13. Debtor's estimation of available funds**

*Check one:*

- ☑ Funds will be available for distribution to unsecured creditors.
- ☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☑ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☑ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☑ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

| | **Request for Relief, Declaration, and Signatures** |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  09/20/2024
            MM / DD / YYYY

**x** _[signature]_                              John K. Kim
Signature of authorized representative of debtor    Printed name

Title  Chief Legal Officer

---

| Debtor | Red River Talc LLC | Case number *(if known)* | |
|--------|-------------------|--------------------------|---|
| | Name | | |

**18. Signature of attorney**

✖ ___/s/John F. Higgins_____    Date ___09/20/2024_____

Signature of attorney for debtor    MM / DD / YYYY

John F. Higgins_____
Printed name

Porter Hedges LLP_____
Firm name

1000        Main Street, 36th Floor_____
Number        Street

Houston_____    TX      77002_____
City    State    ZIP Code

(713) 226-6648_____    jhiggins@porterhedges.com_____
Contact phone    Email address

09597500_____    TX_____
Bar number    State

## SECRETARY'S CERTIFICATE

September 19, 2024

John K. Kim, in his capacity as Secretary of Red River Talc LLC, a Texas limited liability company (the "Company"), hereby certifies that (1) the resolutions attached hereto as Exhibit A (the "Resolutions") are a complete and accurate copy of the resolutions adopted on September 19, 2024 by the board of managers of the Company related to the authorization of the Company to file a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "Chapter 11 Case") and (2) all the Resolutions are in full force and effect and are all the resolutions adopted in connection with the filing of the Chapter 11 Case as of the date hereof.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has executed and delivered this certificate as of the date first written above.

RED RIVER TALC LLC,
a  Texas limited liability company

By: _John K. Kim_____
      Name: John K. Kim
      Title:   Secretary

# EXHIBIT A

## Resolutions

# RED RIVER TALC LLC

## Resolutions

### September 19, 2024

**WHEREAS**, Red River Talc LLC, a Texas limited liability company (the "Company"), the Company's predecessor LLT Management LLC, a Texas limited liability company that was formerly a North Carolina limited liability company named LTL Management LLC ("LLT"), the Company's predecessor Johnson & Johnson Holdco (NA) Inc., a New Jersey corporation that was formerly the direct owner of 100% of the membership interest of LLT ("Old Holdco"), and Johnson & Johnson, a New Jersey corporation and the indirect owner of 100% of the outstanding membership interests of the Company ("J&J"), have, since the dismissal of the prior chapter 11 bankruptcy cases of LLT, engaged in extensive negotiations with counsel representing the vast majority of claimants asserting ovarian and gynecological cancer-related talc claims and a representative for future talc claimants regarding the terms of a prepackaged plan of reorganization that would be implemented under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to finally and comprehensively resolve all current and future ovarian cancer and other gynecological cancer claims relating to JOHNSON'S® Baby Powder and Shower to Shower by establishing a talc personal injury trust to process and pay such claims;

**WHEREAS**, these negotiations culminated in the development of the Prepackaged Chapter 11 Plan of Reorganization of the Company (the "Original Plan") and LLT commenced solicitation of votes on the Original Plan for and on behalf of the Company on or about June 3, 2024, with the voting period for claimants to accept or reject the Plan ending on July 26, 2024 at 4:00 p.m. (central time) (the "Voting Deadline");

**WHEREAS**, with the requisite acceptance of the Original Plan having been obtained, on August 19, 2024, LLT and Holdco effected a corporate restructuring (the "Pre-Petition Corporate Restructuring") in which, among other things: (1) Old Holdco converted into a Texas limited liability company named J&J Holdco (NA) LLC ("Old Holdco (Texas)"); (2) LLT merged with and into Old Holdco (Texas), with Old Holdco (Texas) as the surviving entity and LLT ceasing to exist; (3) Old Holdco (Texas) effected a divisional merger under Texas law pursuant to which, among other things, (a) Old Holdco (Texas) ceased to exist, (b) three new Texas limited liability companies – the Company, Pecos River Talc LLC ("Pecos") and J&J Holdco (NA) LLC ("New Holdco (Texas)") – were created, and (c) the talc-related liabilities of Old Holdco (Texas) to be resolved pursuant to the Original Plan, as well as other specified liabilities and assets, were allocated to the Company, the other talc-related liabilities of Old Holdco (Texas), as well as other specified liabilities and assets, were allocated to Pecos, and all other liabilities and assets of Old Holdco (Texas) were allocated to New Holdco (Texas); (4) New Holdco (Texas) merged with and into J&J Intermediate Holding Corp, with J&J Intermediate Holding Corp. as the surviving entity and New Holdco (Texas) ceasing to exist and, in connection therewith, J&J Intermediate Holding Corp. changed its name to Johnson & Johnson Holdco (NA) Inc. ("New Holdco"); and (5) New Holdco became the direct owner of 100% of the outstanding membership interests of each of the Company and Pecos;

**WHEREAS**, before and after the Voting Deadline, LLT (until the Pre-Petition Corporate Restructuring was effected), the Company (after the Pre-Petition Corporate Restructuring was effected) and J&J continued to engage in extensive negotiations with certain plaintiff law firms, including The Smith Law Firm, PLLC, to resolve their objections to the Original Plan, as a result of which negotiations an agreement was ultimately reached with The Smith Law Firm, PLLC and memorialized in a Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support, effective August 30, 2024 (the "Smith Agreement");

**WHEREAS**, the Original Plan has been amended to incorporate the terms of the Smith Agreement (the Original Plan as so amended, the "Amended Plan");

**WHEREAS**, the Company and New Holdco have entered into: (1) a Second Amended and Restated Indemnity Cost Funding Agreement dated September 19, 2024, pursuant to which, following the Company's commencement of a chapter 11 bankruptcy case, New Holdco is obligated to provide the Company with funding for, among other things, (a) amounts to satisfy the Company's talc-related liabilities in connection with funding of the talc personal injury trust to be created pursuant to the Amended Plan, (b) if the Amended Plan does not become effective and the Company's chapter 11 case is dismissed, amounts to satisfy the Company's talc-related liabilities established by judgment of a court of competent jurisdiction or final settlement, and (c) amounts to satisfy the Company's talc-related liabilities under certain master settlement agreements entered into prior to the Company's commencement of the Company's chapter 11 bankruptcy case, all on the terms and subject to the conditions set forth therein (the "Indemnity Cost Funding Agreement"); and (2) a Second Amended and Restated Expense Funding Agreement dated September 19, 2024, pursuant to which, following the Company's commencement of a chapter 11 bankruptcy case, New Holdco is obligated to provide the Company with funding for, among other things, (a) costs and expenses of the Company incurred during the pendency of the Company's chapter 11 bankruptcy case, (b) costs and expenses of the Company incurred in the ordinary course of business at any time after the Company's chapter 11 bankruptcy case has been closed or, if applicable, dismissed, (c) distributions or other cash payments (excluding trust funding) to be made by the Company pursuant to the Amended Plan, and (d) maintaining a specified minimum amount of cash on hand, all on the terms and subject to the conditions set forth therein (the "Expense Funding Agreement");

**WHEREAS**, in order to effectuate the terms of the Amended Plan, the board of managers (the "Board") of the Company has: (1) carefully reviewed the materials and other information presented by the Company's management and advisors regarding the Company's talc-related liabilities, the Original Plan, the process for, and results of, the solicitation of votes on the Original Plan, the Smith Agreement, the Amended Plan, the Indemnity Cost Funding Agreement, the Expense Funding Agreement and other relevant information; (2) thoroughly evaluated the commencement of a chapter 11 bankruptcy case by the Company; (3) conferred with the Company's management and advisors regarding these matters; and (4) determined that the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code is in the best interests of the Company and its stakeholders;

NAI-1540519191

Case 23-90342 Document 1056-1 Filed in TXSB on 09/29/25 Page 12 of 21
Case 23-90342 Document 1065-35 Filed in TXSB on 10/24/25 Page 21 of 58   Desc
Exhibit A to Certification    Page 12 of 21

**Chapter 11 Filing**

    **Filing**

    **NOW, THEREFORE, BE IT RESOLVED**, that, in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors and other interested parties that the Company seek relief under the Bankruptcy Code;

    **FURTHER RESOLVED**, that the Company be, and it hereby is, authorized and directed to file a voluntary petition (the "Petition") for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") on such day and at such time as the officers of the Company (collectively, the "Authorized Persons"), or any of them, including the Chief Restructuring Officer of the Company (the "CRO"), may determine and to perform any and all such other acts as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate to effect any of the foregoing, with the filing of such Petition or performance of such other acts to be conclusive evidence of such determination; and

    **FURTHER RESOLVED**, that the Authorized Persons be, and each of them, including the CRO, hereby is, authorized, directed and empowered, in the name and on behalf of the Company, to:  (1) execute, acknowledge, deliver and verify, and cause to be filed with the Bankruptcy Court, the Petition and all other ancillary documents, with each in such form, as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate to carry out the intent and accomplish the purposes of these resolutions; (2) execute, acknowledge, deliver, verify and file, or cause to be filed, all petitions, schedules, statements, lists, motions, complaints, declarations, applications, notices and other papers or documents, with each in such form, as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate in connection with the foregoing; and (3) execute, acknowledge, deliver and verify any and all other documents, with each in such form, as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate in connection therewith and to administer the Chapter 11 Case, including by executing, acknowledging, delivering, verifying and filing, or causing to be filed, such petitions, schedules, statements, lists, motions, complaints, declarations, applications, notices and other papers or documents as may be determined to be necessary, desirable or appropriate in connection with the Chapter 11 Case; all with the taking of any such action, including any such execution, acknowledgment, delivery, verification or filing, to be conclusive evidence of such determination;

    **FURTHER RESOLVED**, that, in addition to advising the Board and other officers of the Company on matters contemplated by that certain agreement with Accordion Partners, LLC dated July 19, 2024 and exercising the powers and duties normally given to a chief restructuring officer and such other powers and duties consistent with the role of chief restructuring officer as from time to time may be assigned to the CRO by the Board, the CRO shall generally assist in the administration of the Chapter 11 Case by executing, acknowledging, delivering, verifying and filing, or causing to be filed, such petitions, schedules, statements, lists, motions, complaints, declarations, applications, notices and other papers or documents as the CRO may determine to be necessary, desirable or appropriate in connection with the Chapter 11 Case (with the taking of

3

any such action, including any such execution, acknowledgement, delivery, verification or filing, by the CRO to be conclusive evidence of such determination), except in cases where such action shall be expressly and exclusively delegated by the Board or the Company's limited liability company agreement (the "LLC Agreement") to some other officer or agent of the Company or shall be required by law to be otherwise effected;

### Retention of Professionals

**RESOLVED**, that the Authorized Persons be, and each of them, including the CRO, hereby is, authorized, directed and empowered, in the name and on behalf of the Company, to retain (1) Jones Day, (2) Porter Hedges LLP, (3) King & Spalding LLP, (4) Shook, Hardy & Bacon L.L.P., (5) McCarter & English, LLP, (6) Weil, Gotshal & Manges LLP, (7) Skadden, Arps, Slate, Meagher & Flom LLP, (8) Bates White, LLC, (9) Accordion Partners, LLC, and (10) such additional professionals, including attorneys, accountants, financial advisors, actuaries, consultants or agents (together with the foregoing identified firms, the "Professionals"), as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate in connection with the Chapter 11 Case and other related matters, and to execute, deliver and perform retention agreements with the Professionals in such form and reflecting such terms as the Authorized Persons, or any of them, including the CRO, may approve, all with the retention of any Professional to be conclusive evidence of such determination and approval; and

**FURTHER RESOLVED**, that the law firms of Jones Day and Porter Hedges LLP and any additional special or local counsel selected by the Authorized Persons, or any of them, including the CRO, be, and each of them hereby is, authorized, directed and empowered to represent the Company, as debtor and debtor in possession, in connection with any chapter 11 bankruptcy case commenced by or against the Company under the Bankruptcy Code, including the Chapter 11 Case.

### General Authority

**RESOLVED**, that the Authorized Persons be, and each of them, including the CRO, hereby is, authorized and empowered to execute and deliver such additional agreements, instruments and documents, and to take such other actions (including the payment of costs and expenses), in the name and on behalf of the Company, in each case, as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate to implement the purposes and intent of the foregoing resolutions, with the execution and delivery of any such agreement, instrument or document or taking of any such action by the Authorized Persons, or any of them, including the CRO, to be conclusive evidence of such determination;

**FURTHER RESOLVED**, that the Authorized Persons be, and each of them, including the CRO, hereby is, authorized and empowered to certify and furnish to any person or entity such copies of the resolutions set forth herein, and to certify to any person or entity that the resolutions set forth herein have been duly adopted by the Board, are in full force and effect and are in conformity with the Certificate of Formation of the Company and the LLC Agreement, as the Authorized Persons, or any of them, including the CRO, may determine to be necessary, desirable or appropriate to implement the purposes and intent of the foregoing resolutions, with

4

the certification and furnishing of such copies or the certification of such matters to be conclusive evidence of such determination; and

**FURTHER RESOLVED**, that, in the event that the Authorized Persons, or any of them, including the CRO, determines a specific form of resolutions is necessary, advisable or appropriate in connection with the implementation of the purposes and intent of the foregoing resolutions, resolutions in such form be, and each of them hereby is, adopted by the Board as if such resolutions were expressly set forth herein and that the Authorized Persons be, and each of them, including the CRO, hereby is, authorized and empowered to certify and furnish to any person or entity copies of such resolutions, and to certify to any person or entity that such resolutions have been duly adopted by the Board, are in full force and effect and are in conformity with the Certificate of Formation of the Company and the LLC Agreement, with the certification and furnishing of such copies or the certification of such matters to be conclusive evidence of such determination.

<u>**Ratification**</u>

**RESOLVED**, that all actions taken in the name and on behalf of the Company prior to the adoption of these resolutions that would have been authorized by the foregoing resolutions had they been taken after the adoption of these resolutions be, and each of them hereby is, approved, adopted, ratified and confirmed in all respects.

NAI-1540519191

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC,[1] | Case No. 24-_____  (CML) |
| Debtor. |  |

**CORPORATE OWNERSHIP STATEMENT**

**RED RIVER TALC LLC**

Check one:  __X__ DEBTOR  ____ PLAINTIFF  ____ DEFENDANT  ____ OTHER (specify):

*Instructions: Federal Rule of Bankruptcy Procedure 7007.1 requires corporate parties to an adversary proceeding, other than the debtor or a governmental unit, to file a statement of corporate ownership with the first pleading filed. Similarly, Federal Rule of Bankruptcy Procedure 1007(a)(1) requires corporate debtors to file a corporate ownership statement with their petitions containing the information described in Rule 7007.1. Check one of the statements set forth below and provide any information as directed.*

☒ **1.  The following corporations directly or indirectly own 10% or more of any class of the above named corporate debtor's/party's equity interests:[2]**

DePuy Synthes, Inc.
700 Orthopaedic Drive
Warsaw, IN 46582

Janssen Pharmaceuticals, Inc.
1125 Trenton-Harbourton Rd.
Titusville, NJ 08560

Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

---

[1]    The last four digits of the Debtor's taxpayer identification number are 8508.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]    The corporations are listed in alphabetical order.

Johnson & Johnson Holdco (NA) Inc.
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Johnson & Johnson International
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

☐ 2.  There are no entities that directly or indirectly own 10% or more of any class of the above
named corporate debtor's/party's equity interests.

Date:  September 20, 2024

/s/ John K. Kim
Signature of Authorized Individual for Corporate
Debtor/Party

John K. Kim
Printed Name of Authorized Individual for Corporate
Debtor/Party

Chief Legal Officer
Title of Authorized Individual for Corporate Debtor/Party

- 2 -

---

**Fill in this information to identify the case:**

Debtor name: <u>Red River Talc LLC</u>

United States Bankruptcy Court for the Southern District of Texas

Case Number (if known): _____

☐ Check if this is an amended filing

---

## Chapter 11 Case:  The List of the Top Law Firms With the Most Significant Representations of Parties With Ovarian and Gynecological-Cancer Talc Claims Against the Debtor

The following is an alphabetical list of the top law firms with the most significant representations of parties with ovarian and gynecological-cancer talc claims (the "Top Talc Counsel List") against Red River Talc LLC, as debtor (the "Debtor") based on volume of claims.  Concurrently with this petition, the Debtor has filed a motion seeking authority to file this Top Talc Counsel List in lieu of a list of the 20 largest unsecured creditors.[1]  This list does not include any person or entity who is an "insider" under section 101(31) of title 11 of the United States Code.  The Top Talc Counsel List was prepared with information available to the Debtor.  The Debtor reserves the right to amend the Top Talc Counsel List based on additional information it may identify.  The information contained in the Top Talc Counsel List shall not constitute an admission by, nor shall it be binding on, the Debtor.

| Name of law firm and complete mailing address, including zip code | Name, telephone number, and email address of law firm contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1  Andrew Thornton Higgins Razmara LLP 4701 Von Karman Avenue Ste. 300 Newport Beach, CA 92660 | Robert Siko (949) 748-1000 rsiko@andrewsthornton.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 2  Ashcraft & Gerel 1825 K Street NW, Ste. 700 Washington, DC 20006 | Michelle A. Parfitt (703) 824-4762 mparfitt@ashcraftlaw.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 3  Aylstock, Witkin, Kreis & Overholtz PLLC 17 E. Main Street, Ste. 200 Pensacola, FL 32502 | Daniel Thornburgh (850) 202-1010 dthornburgh@awkolaw.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 4  Beasley, Allen, Crow, Methvin, Portis & Miles, P.C 218 Commerce Street Montgomery, AL 36104 | Andy D. Birchfield, Jr. (800) 898-2034 andy.birchfield@beasleyallen.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 5  Duncan Stubbs 825 Watters Creek Blvd., #360 Allen, TX 75013 | Matthew R. Stubbs (877) 971-0830 matthew@duncanstubbs.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 6  Johnson Law Group 2925 Richmond, Ste. 1700 Houston, TX 77098 | Basil Adham (713) 626-9336 talc@johnsonlawgroup.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |

---

[1]  This list is in substantially the same form as Official Bankruptcy Form 204 for chapter 11 cases setting forth the list of creditors, other than insiders, who have the 20 largest unsecured claims against a debtor.

Debtor Name:  Red River Talc LLC

Case Number (if known): _____

| | Name of law firm and complete mailing address, including zip code | Name, telephone number, and email address of law firm contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7 | The Miller Firm, LLC 108 Railroad Avenue Orange, VA 22960 | Nancy Miller (866) 529-3323 nmiller@millerfirmllc.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 8 | Morelli Law Firm, PLLC 777 Third Avenue, 31st FL New York, NY 10017 | Bennedict Morelli (212) 751-9800 dlamberg@morellilaw.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 9 | Nachawati Law Group 5489 Blair Road Dallas, TX 75231 | Majed Nachawati (214) 890-0711 mn@ntrial.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 10 | Napoli Shkolnik, PLLC 360 Lexington Avenue, 11th FL New York, NY 10017 | Shayna E. Sacks (844) 860-0949 ssacks@napolilaw.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 11 | Onderlaw, LLC 110 E. Lockwood, 2nd FL ST. Louis, MO 63119 | James G. Onder (314) 963-9000 onder@onderlaw.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 12 | Pulaski Kherkher PLLC 2925 Richmond Avenue Ste. 1725 Houston, TX 77098 | Adam Pulaski (713) 664-4555 adam@pulaskilawfirm.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 13 | Schneider Wallace Cottrell Konecky 2000 Powell Street, Ste. 1400 Emeryville, CA 94608 | Amy Eskin (415) 421-7100 aeskin@schneiderwallace.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 14 | The Smith Law Firm PLLC 300 Concourse Blvd., Ste. 104 Ridgeland, MS 39157 | Allen Smith (601) 952-1422 asmith@smith-law.org | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |
| 15 | Watts Guerra LLP 811 Barton Springs Rd. #725 Austin, TX 78704 | Mikal Watts (210) 315-4477 mikal@wattsllp.com | Ovarian and Gynecological-Cancer Personal Injury Talc Claims | Disputed/ Contingent/ Unliquidated | N/A | N/A | Unliquidated |

Debtor Name  Red River Talc LLC

United States Bankruptcy Court for the:  Southern          District of  Texas
                                                              (State)

Case number (*If known*):  _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

- ☐ *Schedule H: Codebtors* (Official Form 206H)

- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

- ☐ Amended *Schedule* _____

- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

- ■ Other document that requires a declaration_List of the Top Law Firms With the Most Significant Representations of Parties With Ovarian and Gynecological-Cancer Talc Claims Against the Debtor

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  09/20/2024          ✖ /s/ John K. Kim _____
             MM / DD / YYYY            Signature of individual signing on behalf of debtor

                                       John K. Kim _____
                                       Printed name

                                       Chief Legal Officer _____
                                       Position or relationship to debtor

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC,[1] | Case No. 24-_____ (CML) |
| Debtor. | |

## <u>MASTER CREDITORS LIST</u>

　　　　　Red River Talc LLC, as debtor in the above-captioned chapter 11 case (the "<u>Debtor</u>"), filed a petition in this Court on the date hereof for relief under chapter 11 of title 11 of the United States Code (the "<u>Voluntary Petition</u>"). In accordance with Rule 1007(a) of the Federal Rules of Bankruptcy Procedure, the Debtor filed concurrently herewith a matrix of the names and addresses of creditors, potential creditors and other parties in interest (the "<u>Master Creditors List</u>"). The Master Creditors List has been prepared from the books and records of the Debtor or its predecessor, and contains only those parties whose names and addresses were maintained in the databases of the Debtor or its predecessor or were otherwise readily ascertainable by the Debtor prior to the commencement of this chapter 11 case. The Debtor will update the Master Creditors List as more information becomes available.

　　　　　Contemporaneously with the filing of the Voluntary Petition, the Debtor filed a motion (the "<u>Motion</u>") requesting, among other things, authority to serve all notices, mailings or other documents required to be provided to creditors who are claimants asserting ovarian and gynecological cancer-related talc personal injury claims against the Debtor, through filed lawsuits or otherwise, through counsel (collectively, the "<u>Talc Claimants</u>"), on the Talc Claimants in care of their counsel at such counsel's address in lieu of service on the individual Talc Claimants at their personal addresses. Accordingly, the Master Creditors List includes the addresses of counsel for each of the Talc Claimants rather than the addresses of each individual Talc Claimant. In addition, the Motion requests that, to the extent a <u>pro se</u> Talc Claimant has been identified, the Debtor be authorized to redact such <u>pro se</u> Talc Claimant's contact information and address in documents filed with the Court, including the Master Creditors List. Accordingly, the Master Creditors List does not include such information for the <u>pro se</u> Talc Claimants.

　　　　　Certain of the creditors listed on the Master Creditors List may not hold outstanding claims against the Debtor and therefore may not be creditors in the Debtor's bankruptcy case. By filing the Master Creditors List, the Debtor is not acknowledging that any listed party is a creditor, nor is it waiving or otherwise affecting its right to object to the extent, validity or enforceability of the claims, if any, held or asserted by the parties listed on the Master Creditors List.

---

[1]　　　The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**Fill in this information to identify the case and this filing:**

Debtor Name __Red River Talc LLC__

United States Bankruptcy Court for the: __Southern__     District of __Texas__
                                                                              (State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* ____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☑ Other document that requires a declaration __Master Creditors List_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __09/20/2024__          ✖ __/s/ John K. Kim_____
                    MM / DD / YYYY                    Signature of individual signing on behalf of debtor

                                                      __John K. Kim_____
                                                      Printed name

                                                      __Chief Legal Officer_____
                                                      Position or relationship to debtor

Official Form 202          Declaration Under Penalty of Perjury for Non-Individual Debtors

EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC,[1] | Case No. 24-90505 (CML) |
| Debtor. | |

### DEBTOR'S STATEMENT REGARDING FILING OF CHAPTER 11 CASE

In this chapter 11 case, Red River Talc LLC (the "Debtor")[2] seeks confirmation of a consensual prepackaged plan of reorganization, as recently amended (the "Amended Plan"), that is supported by over **83%** of the claimants.[3]  The solicitation establishes that the Amended Plan has the requisite statutory support of the current claimants (over 75%); the Amended Plan also has the support of the plaintiff firms that represent the accepting current claimants as well as the support of the representative proposed to serve as the Court-appointed fiduciary for future

---

[1]     The last four digits of the Debtor's taxpayer identification number are 8508.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]     The Debtor is an indirect subsidiary of Johnson & Johnson ("J&J").  Its immediate predecessors are LLT Management LLC ("LLT"), f/k/a LTL Management LLC, and Johnson & Johnson Holdco (NA) Inc. ("Holdco").  References to the Debtor herein include, as applicable, the Debtor and these immediate predecessors.  LLT filed two previous bankruptcy cases that were dismissed by the United States Bankruptcy Court for the District of New Jersey.

[3]     The Debtor has filed the Amended Plan, titled the *Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor,* and the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* (the "Disclosure Statement") contemporaneously herewith.  Capitalized terms used but not defined herein have the meanings given to them in the Amended Plan.  A comprehensive description of the Debtor, its history, its assets and liabilities and the events leading to the commencement of the chapter 11 case can be found in the Disclosure Statement and in the declaration of John K. Kim (the "Kim First Day Declaration").

claimants (the "FCR").[4]  The Debtor respectfully submits that the Amended Plan should be confirmed.

The overwhelming support for the Amended Plan affirms the representations of counsel for the substantial majority of claimants, who have consistently voiced their and their clients' support for a consensual bankruptcy resolution first proposed by LLT in its second bankruptcy filing in April 2023.  Although that case was dismissed, the then-presiding bankruptcy judge lauded the "remarkable progress" the parties had made toward a "viable global settlement" that is "fair, efficient and expeditious," and "strongly encouraged" the parties to continue to "pursue a global resolution" through a chapter 11 plan "in a context other than this current bankruptcy case."  That is exactly what the parties did.  The terms of the Amended Plan are the result of extensive negotiations among those counsel; counsel that previously opposed the initial proposed plan of reorganization (the "Initial Plan"); the FCR; and representatives of the Debtor and J&J. Together, these parties have reached agreement on a plan of reorganization that will fairly, equitably and promptly satisfy talc claims in full.

The substantial support for the Amended Plan has been achieved notwithstanding the all-out, multi-front attack launched by a limited number of economically-conflicted plaintiff firms, led by Beasley Allen Law Firm ("Beasley Allen"); an attack designed to subvert the vote and thwart any consensual bankruptcy resolution.  These firms maintain leadership positions in the pending talc multi-district litigation (the "MDL") and, in those roles, stand to recover for themselves (but not their clients) up to 12% of the aggregate amount of any resolution in the MDL.  While benefitting the firms, that levy on any resolution through the MDL would reduce

---

[4]     The FCR continues to support the Amended Plan, with the understanding that the FCR has not approved the Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support between J&J, the Debtor, and The Smith Law Firm PLLC.

the recovery for the claimants; hence the conflict.  Beasley Allen—and in particular its partner

Andy Birchfield—has been the most vocal opponent of any resolution in bankruptcy, steadfastly

maintaining that Beasley Allen would not support any bankruptcy resolution regardless of its

terms, the level of support received from the claimants and their law firms, or the strong

encouragement to reach a chapter 11 resolution expressed by the bankruptcy judge who oversaw

LLT's prior chapter 11 cases.

At the end of the solicitation period for the Initial Plan, these objecting firms asked the

Debtor to delay its bankruptcy filing to afford the parties additional time to negotiate a resolution

of the firms' ongoing objections.  The Debtor agreed, and over the course of the succeeding

weeks, the Debtor and J&J made a series of offers proposing to contribute significant

incremental consideration to reach an accord.  Every offer was rejected, however, and the

impasse between the parties continued.

The Smith Law Firm (the "Smith Firm") then approached the Debtor and J&J.  The

Smith Firm had brought the first talc trial against the Company in 2013 and had, as part of the

opposition group led by Beasley Allen, actively opposed LLT's prior bankruptcy proposals.  The

Smith Firm advised that it represented, through a joint venture agreement with Beasley Allen,

approximately 11,000 claimants, almost all of whose claims had been listed as "no" votes in a

master ballot submitted by Beasley Allen.  Although Birchfield certified in that master ballot that

he was submitting the claimants' votes based on their "informed consent," the Smith Firm

disclosed to the Debtor and J&J that Birchfield had not obtained such consent, a fact Birchfield

had conceded to Allen Smith of the Smith Firm.  Moreover, the list of claimants for whom

Birchfield submitted "no" votes based on a certification of alleged "informed consent" included

claimants who were represented by another law firm.  These claimants have since signed

declarations attesting that they had no recollection of ever having been contacted by Beasley Allen, that they had no recollection of ever having been asked by Beasley Allen how they wanted to vote and that they had, in fact, voted to accept the Initial Plan.  Beasley Allen's master ballot was invalid.

The Debtor and J&J thereafter engaged in extensive negotiations with the Smith Firm to resolve the firm's objections to the Initial Plan.  Following these negotiations, an agreement was reached with the Smith Firm that afforded substantial incremental consideration for the claimants.  This agreement was then memorialized in a *Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support*.  Among other things, the agreement provides, subject to specified terms and conditions, that:

- The Debtor will pay an additional **$1.1 billion** under the Amended Plan to a trust (the "Talc Personal Injury Trust") to fund talc claims subject to the individual review process described in the Trust Distribution Procedures;

- J&J will contribute **$650 million** outside the Amended Plan into a qualified settlement fund (the "QSF") for use in resolving any common benefit fund claims arising from the MDL, which, if determined to apply to a bankruptcy resolution, would have been charged against claimant recoveries; and

- To expedite payments to claimants, the Amended Plan will become effective, and the funding of and payments by the Talc Personal Injury Trust will begin, even if an appeal to the United States Supreme Court has been sought and remains pending.

As a result of this agreement, the substantial majority of the clients jointly represented by the Smith Firm and Beasley Allen have now voted to accept the Amended Plan.[5]  Although Beasley Allen and other MDL leadership firms participated in these negotiations as well, they declined to accept the resolution to which the Smith Firm agreed and continue to oppose the

---

[5]     It is important to note that the prior purported "no" votes of these claimants (included in the Beasley Allen master ballot), unlike the votes submitted by the Smith Firm, were submitted before agreement was reached on the terms of the Amended Plan.

-4-

Amended Plan even as amended by this resolution with the Smith Firm.[6] At this point, it is not clear who, if anyone, Beasley Allen represents given that virtually all its clients have now voted to accept the Amended Plan.

The extensive support for the Amended Plan extends beyond the terms of the plan itself. It also includes support for the prepetition restructuring of LLT, implemented through a Texas divisional merger, which resulted in the formation of the Debtor. And it includes support for filing this case in Texas. Both the details of the restructuring and the Debtor's intention to file this chapter 11 case in Texas were described in the Disclosure Statement the Debtor sent to claimants as part of the solicitation process.

During the prior bankruptcies of LLT, it became clear that ovarian and gynecological cancer claimants desired a resolution of their claims in bankruptcy that would result in the establishment of a trust to promptly and cost-effectively pay their claims, while other claimants, including mesothelioma claimants and governmental entities, preferred to litigate or otherwise resolve their claims in other forums. To address these differing points of view and alleviate the ovarian and gynecological cancer claimants' concern that the Amended Plan could be jeopardized or delayed by opposition from claimants who opposed a bankruptcy resolution, LLT engaged in a divisional merger, the primary purpose of which was to separate the liability for ovarian and gynecological cancer claims from other talc-related claims. This was accomplished by allocating all ovarian and gynecological cancer claims to the Debtor, and allocating mesothelioma, governmental unit and certain other claims to another newly created entity. As a result of this restructuring, claimant groups that wished to pursue their claims outside of

---

[6]     Because the agreement on the Amended Plan was reached relatively recently, it is possible that other plaintiff firms, including MDL leadership firms, and their clients will now support the Amended Plan.

bankruptcy could continue to do so, while ovarian and gynecological cancer claimants, who overwhelmingly support the Amended Plan, could pursue a resolution of their claims through this chapter 11 case.

      With respect to the filing of this case in this Court, LLT was heavily criticized for changing its domicile from Texas to a different state after having been formed as a Texas entity pursuant to a Texas divisional merger.  Here, the Debtor, which was likewise created by a Texas divisional merger, has made no changes in its domicile; it started as, and has always been, a Texas entity.  Second, the Third Circuit and the bankruptcy judge who presided over the prior bankruptcy cases both recognized, in their opinions dismissing the prior bankruptcy cases, that a bankruptcy resolution of claims could still be achieved in a different setting.  In the view of the Debtor, which is supported by the acceptances of the Amended Plan by the substantial majority of claimants and the FCR's approval of the Amended Plan, this Court represents that appropriate, different setting.

      The Amended Plan proposes to establish the Talc Personal Injury Trust to process and pay "Channeled Talc Personal Injury Claims," which generally include all claims and demands asserted against the Debtor, J&J or any other Protected Party alleging injury from ovarian cancer and other gynecological cancers.[7]  The Talc Personal Injury Trust will be funded by a stream of payments in the aggregate amount of approximately $9 billion payable over 25 years.

      This proposed level of funding for the Amended Plan constitutes one of the largest settlements ever reached in a mass tort bankruptcy case, including cases where, unlike here, the

---

[7]    The Amended Plan does not resolve and will not affect:  (i) claims and demands alleging injury from mesothelioma or lung cancer; (ii) claims and demands of governmental entities; and (iii) Canadian claims and demands. All holders of claims against the Debtor other than Channeled Talc Personal Injury Claims will be unimpaired by the Amended Plan because the Amended Plan does not modify their legal, equitable, or contractual rights, other than by curing defaults and reinstating maturities.

alleged liability was not disputed by the debtor.  Although the Debtor and J&J are committed to

the Amended Plan and to funding the Talc Personal Injury Trust, they continue to believe that

talc claims against them have no valid scientific basis.  Among other things, JOHNSON'S®

Baby Powder and Shower to Shower never contained asbestos, and the safety of cosmetic-grade

talc has been confirmed by dozens of peer-reviewed studies and multiple regulatory and

scientific bodies for decades.  Nevertheless, the Debtor and J&J have been inundated with tens of

thousands of talc claims, subject to unpredictable and wildly divergent compensatory and

punitive damage awards, and burdened by substantial and increasing defense costs.

Indeed, the cost of defending and paying talc claims, by itself, caused the income of the

former Johnson & Johnson Consumer, Inc. ("JJCI"), the Debtor's predecessor that at the time

had responsibility for all talc claims, to swing from a $2.1 billion profit in 2019 to a $1.1 billion

loss in 2020.  The adverse financial impact of the talc litigation would have established the good

faith basis of a JJCI bankruptcy filing, under any applicable dismissal standard, as early as 2021.

Despite this financial impact, to prepare for a consensual bankruptcy resolution, JJCI first

implemented a divisional merger that resulted in the talc claimants having access to more assets

than would have been available if JJCI had filed for bankruptcy.

Absent a chapter 11 resolution, the talc litigation would continue for decades, at great

expense to the Debtor but with no benefit to claimants.  In that regard, in the decades that the

ovarian cancer talc claims have been pending, the Debtor, its predecessors, and J&J have

suffered only one adverse ovarian cancer verdict that was not overturned on appeal; in every

other case that proceeded to trial, the plaintiff received **nothing**.  In contrast, the Amended Plan

assures claimants an efficient, equitable and certain pathway to promptly resolve their claims and

receive a recovery.  At the same time, consummation of the Amended Plan would permit the

Debtor and J&J to focus their attention on their businesses, enabling them to continue

developing, manufacturing and distributing lifesaving therapies and devices.  As further

described in the Kim First Day Declaration, J&J is a global innovator and leader in public health

and has been at the forefront of healthcare innovation for over 130 years.  Only through

bankruptcy can the claimants and the Debtor achieve a permanent resolution of both the massive

number of current ovarian and gynecological cancer claims as well as all projected future claims

in a manner that not only is fair and equitable to all parties but, importantly, involved extensive

negotiations with, and review and approval by, representatives of the claimants.

　　　　To ensure the fair and equitable resolution of claims, the Amended Plan includes the

Trust Distribution Procedures that set forth in detail the methodology for processing and

evaluating claims.  These procedures use characteristics relevant to the valuation of similar talc

claims in the tort system and were the product of extensive, arm's-length negotiations with

claimant representatives.  Unlike the results claimants have experienced in the tort system,

holders of the Channeled Talc Personal Injury Claims that meet the requisite criteria under the

Trust Distribution Procedures would receive substantial recoveries from the Talc Personal Injury

Trust.  Based on available data as well as information provided by plaintiffs' counsel, the Debtor

anticipates that holders of pending ovarian cancer claims that qualify for payment under the Trust

Distribution Procedures would receive an average recovery of between $50,000 and $250,000,

with the more likely average value being between $75,000 and $175,000.  In stark contrast, in

the 17 ovarian cancer trials that proceeded to verdict against the Debtor and J&J in the tort

system, plaintiffs prevailed in only one; all the other claimants received nothing.  And, at the rate

at which the cases have been tried to date, it would take decades to try just the pending ovarian

cases, depriving most claimants of even the opportunity to obtain a recovery.

Claimant recoveries under the Trust Distribution Procedures are likewise projected to exceed settlements the Debtor and J&J paid to claimants prepetition.  The historical per claimant recovery net of administrative costs for ovarian cancer under prepetition settlements with the Debtor and J&J was $50,000 to $80,000.  In sum, the Amended Plan's proposed treatment of the Channeled Talc Personal Injury Claims would satisfy such claims in full and provide prompt, certain and more substantial recoveries than claimants could achieve through continued litigation in the tort system.  As evidenced by the vote, the vast majority of claimants agree.

At the same time the Debtor and J&J were negotiating the terms of the Amended Plan with plaintiffs' counsel and the FCR, the Debtor and J&J engaged in negotiations with their former talc suppliers, Imerys and Cyprus, both of which are debtors in pending chapter 11 proceedings in the District of Delaware (Judge Silverstein), and the Court-appointed claimant representatives in those cases.  These negotiations sought to resolve, among other things, talc-related claims Imerys and Cyprus were asserting against the Debtor and J&J, including indemnity claims as well as extra contractual claims for breach of those purported indemnities, and indemnity claims the Debtor and J&J were asserting against Imerys and Cyprus.  All these claims were the subject of adversary proceedings commenced in the Imerys/Cyprus bankruptcy cases.  After months of hard-fought negotiations, a settlement was reached with the debtors and the claimant representatives, subject to bankruptcy court approval.  A motion has been filed with the Delaware bankruptcy court, and a hearing on the motion is scheduled for September 25, 2024.  If approved and consummated, the settlement is expected to increase recoveries to holders of the Channeled Talc Personal Injury Claims.  Moreover, the settlement has cleared a path for Imerys and Cyprus to confirm a plan and emerge from bankruptcy after more than five years.  In

that regard, a hearing on the disclosure statement is now set for October 28, 2024 and the confirmation hearing is set for March 17-19, 2025.

Despite the Amended Plan's myriad benefits for all claimants, the small consortium of ovarian cancer claimant counsel, led by Beasley Allen, continues to oppose any bankruptcy resolution of the talc claims.  These firms and, in particular, Beasley Allen have employed a variety of "scorched earth" tactics to derail a consensual bankruptcy resolution since the first bankruptcy filing, including misleading media blitzes, frivolous lawsuits, and repeated mischaracterizations of the terms of the Initial Plan.  They have done so notwithstanding that none of these firms has ever secured any recovery for their clients outside of bankruptcy, either through a successful verdict or by settlement.  Although the rationale for these actions is unclear, these firms have their own financial interests, which are potentially substantial.

Birchfield testified in a deposition taken in LLT's chapter 11 case filed in 2023 that, if the LLT bankruptcy resolution went forward, the MDL steering committee, of which Beasley Allen is a member, stood to lose the ability to control a share of the trust funding through the MDL common benefit fund.[8]  Pursuant to the MDL's case management order, 8% to 12% of gross talc settlement amounts for clients of participating counsel must be deposited into the common benefit fund, and that money is then to be allocated to the firms that performed common benefit work.  See Case Management Order No. 7(A), MDL No. 16-02738 [Dkt 14741].  As a result, with respect to the approximately $9 billion proposed trust funding in the Amended Plan, Beasley Allen could lose its share of hundreds of millions of dollars that would go into the common benefit fund if the money were part of a settlement in the MDL.[9]  And these common

---

[8]    See Birchfield Dep. at 18:8-25, 2023 Chapter 11 Case.

[9]    Birchfield Dep. at 21:7-13.

benefit fund payments would be on top of the 40% contingency fee the firm charges to its clients directly.[10]

As described above, J&J has agreed, under certain circumstances, to fund $650 million into a QSF for use in paying common benefit fund amounts that, if determined to apply to the settlement memorialized in the Amended Plan, would be charged against claimant recoveries. Although this commitment by J&J eliminates the risk that these firms will not receive any common benefit fees as a result of the claimants' desire to resolve their claims through this bankruptcy case, the firms still have the potential of earning even larger common benefit fees (up to 12% of approximately $9 billion) if a settlement of the magnitude reflected in the Amended Plan were achieved in the MDL.[11]

As part of their efforts to derail the Initial Plan, this group of firms filed a frivolous fraudulent conveyance class action in the United States District Court for the District of New Jersey seeking to avoid two transactions that occurred years earlier in connection with LLT's earlier bankruptcy filings plus an unrelated corporate transaction.  Weeks later, they filed an emergency motion for a preliminary injunction seeking, among other things, to prevent the Debtor from filing for bankruptcy outside of New Jersey, relief that was completely untethered to the causes of action and prayers for relief in the complaint.  The District Court denied the motion, and the Third Circuit denied a motion for stay pending appeal, which sought the exact same injunctive relief.

---

[10]    Birchfield Dep. at 28:9-11.

[11]    A settlement resolving all current and future claims cannot be achieved in the MDL, where common benefit fees would ordinarily be payable, or otherwise outside of bankruptcy due to, among other things, the alleged long latency period of ovarian cancer and the unknown—and unascertainable—identities of future claimants.

These same counsel also spearheaded a public smear campaign designed to deprive the talc claimants of the opportunity to determine for themselves whether to accept the prepackaged plan. This campaign has relied on both direct media blitzes in opposition to the plan, as well as negative "headlines" manufactured by these firms based on their own aggressive litigation tactics. This two-pronged approach has allowed Beasley Allen and others to continuously push an anti-plan narrative throughout the solicitation process.

When these firms filed the fraudulent transfer class action complaint, they immediately broadcast the complaint to the public through their press releases.[12] When, three weeks after that, the firms sought the preliminary injunction that would enjoin LLT or the Debtor from filing for bankruptcy in any district other than New Jersey, the firms once again immediately broadcast these efforts, all of which occurred during the solicitation period.[13]

On July 22, 2024, just four days before the voting deadline, these opposing firms issued a press release urging claimants to vote "no" on the plan.[14] The press release featured a variety of inaccurate or unsubstantiated assertions, including that certain opposing law firms believed "there is an ongoing effort to attract approvals for J&J's third attempt at bankruptcy from those without a documented and diagnosed claim of ovarian cancer."[15] The press release further insinuated that J&J was submitting the allegedly false claims. *Id*. ("J&J is aware that the

---

[12]    See, e.g., Press Release, *Plaintiffs in J&J Talc Cancer Litigation File Class Action Complaint for Fraudulent Conveyance* (May 22, 2024), available at https://levinlaw.com/newsroom/talc-cancer-plaintiffs-file-class-action-complaintagainst-johnson-and-johnson-for-fraudulent-conveyance.

[13]    See, e.g., Bailey Glasser Press Release, *Motion for Temporary Restraining Order Filed in Lawsuit Against Johnson & Johnson* (June 12, 2024), available at https://www.baileyglasser.com/news-motion-for-temporary-restraining-order-filedin-suit-against-johnson-and-johnson.

[14]    See, e.g., Press Release, *Lawyers for Ovarian Cancer Victims Urge NO Vote on J&J's Latest Bankruptcy Plan* (July 22, 2024), available at https://app.reorg.com/print/wires-multi/669e81c6cccc41ff2e8b4dbb/DESC.

[15]    Ironically, Beasley Allen submitted "no" votes on behalf of about 5,000 individuals who do not claim to have ovarian cancer, the largest voting block of non-ovarian cancer claimants submitted by any firm.

thousands of fantasy cases they are submitting to bankruptcy make it almost impossible for actual injured clients to recover."). The press release cited no evidence to support this bold assertion. This release also blatantly, and incorrectly, claimed that the plan "take[s] away all rights to a jury trial," which is belied by the fact that the Trust Distribution Procedures expressly provide for jury trial opt-out rights. *See* Trust Distribution Procedures § 6.1.3. Finally, the press release asserted that this chapter 11 case was a "scheme with direct parallels" to *Purdue*, completely ignoring the asbestos and section 524(g) overlay that distinguishes this case and the Amended Plan from *Purdue* as well as the fact that the Amended Plan satisfies Channeled Talc Personal Injury Claims in full. All these statements are clearly debunked by even a cursory review of the plan and solicitation materials but were nevertheless pushed out to the public by Beasley Allen and other members of its opposition group to needlessly stoke suspicion and confusion among claimants as the voting deadline approached.

And this self-interested, unjustified opposition continued through and was manifested in the submission of false voting certifications. Firms in this group, including Beasley Allen, misrepresented that they received informed consent from their clients to vote "no" when in fact they had received no such consent. In addition to Birchfield's apparent admission that he did not obtain "informed consent" from his clients for their purported "no" votes, there are hundreds of instances where these firms submitted "no" votes on behalf of individuals who are deceased and have no appointed estate representative, and also submitted "no" votes that are irreconcilable with master ballots submitted by other firms and, in some instances, ballots submitted by the claimants themselves.

But despite this opposition group's strident efforts to prevent a consensual bankruptcy resolution, the Debtor, through extensive, months-long negotiations, including multiple phases of

mediation, has been able to negotiate and formulate a plan that addresses claimants' concerns and

demands and provides fair and equitable treatment to all current and future claimants. The

Debtor respectfully submits that the Amended Plan, which is the culmination of months of effort

by the Debtor, J&J and representatives of the claimants, should be confirmed by this Court.

 The Debtor intends to proceed expeditiously in this case so that the Talc Personal Injury

Trust contemplated by the Amended Plan can begin processing and paying claims as soon as

possible.  Although the Debtor and J&J fully expect that this small opposing counsel group will

continue its efforts to prevent any bankruptcy resolution, including potentially by moving to

transfer venue and filing a motion to dismiss this case, it is important to note that all aspects of

the process leading up to this filing have been disclosed in the Disclosure Statement, in

negotiations with plaintiffs' counsel, through public pronouncements, and now in first day filings

with this Court.  This information included details on the corporate restructuring that preceded

this filing, the funding arrangements for the Debtor that went into effect upon the filing, and the

Debtor's intention to commence this case in bankruptcy court in Texas.  Plaintiffs' counsel

representing the substantial majority of current claimants supported each of these steps and even

urged LLT and J&J to take them, and the voting results coupled with the support of the FCR

affirm the widespread claimant support for these and other aspects of the process.

 This bankruptcy case provides the only pathway through which the Debtor, J&J and the

claimants can effectuate the agreement they painstakingly negotiated and memorialized in the

Amended Plan.  The Debtor submits that the Amended Plan satisfies all applicable requirements

of the Bankruptcy Code, including section 524(g), and is in the best interests of all parties,

including the claimants alleged to be represented by the opposition group.  That the vast majority

of claimants agree is evidenced by the vote, the support of the plaintiff firms that represent the claimants who voted to accept the Amended Plan, and the approval of the FCR.

The Amended Plan should be confirmed.


[*Remainder of Page Intentionally Left Blank*]

Dated:  September 20, 2024
Houston, Texas

Respectfully submitted,

/s/ John F. Higgins
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
James A. Keefe (TX 24122842)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 228-1331
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100
gmgordon@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com

- and –

Brad B. Erens (IL 06206864)
Caitlin K. Cahow (IL 6317676)
(Admission *pro hac vice* pending)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, Illinois 60606
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585
bberens@jonesday.com
ccahow@jonesday.com

PROPOSED ATTORNEYS FOR DEBTOR

**Certificate of Service**

   I certify that on September 20, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtor's claims, noticing, and solicitation agent.

          */s/ John F. Higgins*
          John F. Higgins

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGION 3
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:       jeffrey.m.sponder@usdoj.gov
              lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | Case No. 23-12825 (MBK) |
| In re:                         : | |
|                                : | Chapter 11 |
| LTL Management LLC,[1]          : | |
|                                : | The Honorable Michael B. Kaplan, Chief Judge |
| Debtor.                        : | |
| _____ : | |

**MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER
PURSUANT TO FED. R. BANKR. P. 1014(b) TRANSFERRING VENUE
OF SUBSEQUENTLY FILED CASE TO THE DISTRICT OF
NEW JERSEY**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), by

his undersigned counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and

(5), respectfully moves (the "Motion") for an order, pursuant to Rule 1014(b) of the Federal Rules

of Bankruptcy Procedure, transferring venue to this Court of the chapter 11 case pending in the

Southern District of Texas as *In re Red River Talc, LLC*, No. 24-90505 (CML) (the "Subsequent

Case"), and respectfully represents as follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's
address is 501 George Street, New Brunswick, New Jersey 08933. Since the commencement of
this case, the Debtor has changed its name to LLT Management, LLC and later underwent a Texas
divisional merger in which Red River Talc, LLC was a surviving entity.

## PRELIMINARY STATEMENT

On September 20, 2024, the Debtor, under its newest name, Red River Talc, LLC ("Red River"), commenced the Subsequent Case in the United States Bankruptcy Court for the Southern District of Texas. Because the above-captioned case remains open, there are now two open chapter 11 cases in different districts involving the same debtor (or two affiliated debtors), in each case wrongfully pursuing the same purpose – relieving Johnson & Johnson of talc-related liability. In such a circumstance, Rule 1014(b) of the Federal Rules of Bankruptcy Procedure authorizes this Court, as the court in which the first-filed case is pending, to determine proper venue for the Subsequent Case based on the interest of justice and the convenience of the parties.

In a previous contested matter involving substantially the same parties and facts, United States Bankruptcy Judge J. Craig Whitley for the Western District of North Carolina determined that New Jersey is the most appropriate forum for the Debtor's chapter 11 case. Under the doctrine of issue preclusion, that determination of venue remains binding on the parties and may not be relitigated by the Debtor. But even if issue preclusion did not apply in this matter, both of the Rule 1014(b) factors overwhelmingly favor a transfer to the District of New Jersey due to, among other things, the Debtor's forum shopping and attempted evasion of this Court's prior rulings. This Court should therefore exercise its authority under Rule 1014(b) to order the Subsequent Case transferred to this Court.

Rule 1014(b) also authorizes the court in the first-filed case to issue a stay of all proceedings in the later-filed cases pending its determination of a motion to transfer venue. This relief is appropriate here due to the risk of inconsistent orders, duplication of effort, and confusion if the Subsequent Case is not stayed. The U.S. Trustee has requested such relief through a separate emergency motion filed contemporaneously herewith.

# BACKGROUND

## A.  The 2021 Case

1.      On October 20, 2021, the Debtor commenced the first of what would eventually become three successive attempts at obtaining chapter 11 relief by filing a voluntary petition in the United States Bankruptcy Court for the Western District of North Carolina, Case No. 21-30589 (the "2021 Case").   Following motions by numerous parties in interest and a show cause order by the court, and after conducting an evidentiary hearing, on November 16, 2021, the North Carolina bankruptcy court ordered venue of the Debtor's chapter 11 case transferred to this Court over the objections of the Debtor.   *See In re LTL Management, LLC*, Case No. 21-30589, 2021 WL 5343945, at *1 (Bankr. W.D.N.C. Nov. 16, 2021) ("*LTL I*").

2.      In a reasoned decision, the North Carolina bankruptcy court held that both the "interests of justice" and the "convenience of the parties" warranted transfer of the 2021 Case to New Jersey under 28 U.S.C. § 1412.  *Id.* at *2.  In particular, the court found that New Jersey was the most convenient forum for the Debtor's bankruptcy because, among other things: (i) the parties had devoted significant time and resources litigating the a multi-district litigation proceeding (the "MDL") in New Jersey federal court over a period of five years; (ii) the plaintiffs and their attorneys were accustomed to appearing in New Jersey; (iii) most key witnesses resided or worked in New Jersey, which was the location of the headquarters of both the Debtor and its ultimate parent, the Johnson & Johnson Company ("J&J"); and (iv) there was a potential for cooperation between the bankruptcy court and the MDL court that could best be realized by transferring the bankruptcy case.  *Id.* at 3-5.  Separately, the court found that the Debtor's decision to file in North Carolina was the result of forum shopping, which independently warranted transfer under the "interests of justice" test.  *Id.* at *5-6.

3.      Ultimately, after extensive proceedings before this Court, on January 30, 2023, the
Third Circuit ordered the 2021 Case dismissed on the grounds that the Debtor had not established
that it sought chapter 11 relief for a "valid bankruptcy purpose" and that its petition had therefore
not been filed in good faith.  *In re LTL Mgmt. LLC*, 64 F.4th 84, 97 (3d Cir. 2023) (amended
opinion) ("*LTL II*").  On April 4, 2023, pursuant to the Third Circuit's mandate, the 2021 Case
was dismissed by this Court.

**B.  The Present Case**

4.      Just hours after this Court dismissed the 2021 Case, the Debtor filed the above-
captioned chapter 11 case (the "Present Case").  After extensive motion practice and a week-long
trial on several motions to dismiss, this Court ordered the Present Case dismissed on July 28, 2023.
*See In re LTL Mgmt. LLC*, 652 B.R. 433 (Bankr. D.N.J. 2023) ("*LTL III*").  On July 25, 2024, the
Third Circuit affirmed the dismissal order entered in the Present Case.  *In re LTL Mgmt. LLC*, 2024
WL 3540467, Nos. 23-2971, 23-2972 (3d Cir. July 25, 2024) ("*LTL IV*").

5.      The Present Case remains open.  On August 13, 2024, the Talc Claimants
Committee requested that this Court defer closure of the Present Case to allow for the resolution
of certain pending professional fee matters, as well as due to the potential filing of a petition for
certiorari by the Debtor.  [ECF No. 1822].  On August 27, 2024, the Debtor requested an
adjournment of the scheduled hearing on case closing on the basis that "[e]fficiency would best be
served if the above referenced matter is adjourned until after the time to petition for a writ of
certiorari has passed."  [ECF No. 1833].  The request was granted and a hearing on the closure of
the Present Case is now scheduled for November 7, 2024.

### C. The Subsequent Case

6.       On September 20, 2024, the Subsequent Case was commenced in the Southern

District of Texas under the name of Red River.  *See* Voluntary Chapter 11 Petition, attached as

Exhibit A to the *Certification of Lauren Bielskie* ("Bielskie Cert."), filed in support of this Motion.

7.       In the months leading up to the filing of the Subsequent Case, there was a

"prepetition restructuring of LLT, implemented through a Texas divisional merger, which resulted

in the formation of [Red River]".  *See Debtor's Statement Regarding Filing of Chapter 11 Case*

("Chapter 11 Statement") at page 5, attached as Exhibit B to the Bielskie Cert.  Under this

transaction, Debtor's ovarian and gynecological cancer claims were allocated to Red River, while

mesothelioma, government unit and certain other claims were allocated to another newly created

entity.  *Id.*

### BASIS FOR RELIEF

8.       Subsection (b) of Rule 1014 of the Federal Rules of Bankruptcy Procedure provides

as follows:

> (b) <u>Procedure When Petitions Involving the Same Debtor or Related Debtors Are
> Filed in Different Courts</u>. If petitions commencing cases under the Code or seeking
> recognition under chapter 15 are filed in different districts by, regarding, or against
> (1) the same debtor . . . or (4) a debtor and an affiliate, the court in the district in
> which the first-filed petition is pending may determine, in the interest of justice or
> for the convenience of the parties, the district or districts in which any of the cases
> should proceed.

9.       As described by the Rules Advisory Committee, subsection (b) "provides a

practical solution for resolving venue issues when related cases are filed in different districts." *See*

Fed. R. Bankr. P. 1014, Committee Notes on Rules (2014 Amendments).  It does so by designating

the court in which the first-filed case is pending as the "decision maker" if transfer of venue is

sought.  *Id; see also In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,*

149 B.R. 365, 368 (Bankr. S.D.N.Y. 1993) (noting that "B.R. 1014(b) is unusual in that it creates a mechanism by which venue motions are determined by a court other than the court in which the case is pending").  A motion to transfer venue under Rule 1014(b) may be based on either the interest of justice or the convenience of the parties, a set of criteria which is identical to that for a motion to transfer venue under 28 U.S.C. § 1412.  *In re Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995).

## ARGUMENT

### A.  Standing and Interest of the U.S. Trustee

10.     The U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of the Bankruptcy Code.  28 U.S.C. § 586.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (stating the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding, including matters within this adversary proceeding.

### B.  This Court Has Authority to Transfer Venue Under Bankruptcy Rule 1014(b)

11.     The Court may exercise its authority under Rule 1014(b) if two conditions are met: there must be a subsequently filed case involving the same debtor or an affiliate of the debtor in the first-filed case, and the first-filed case must still be open.  *Emerson Radio*, 52 F.3d at 54.  Both requirements are met here.  As Red River set forth in the Chapter 11 Statement, "[Red River] is an indirect subsidiary of Johnson & Johnson ('J&J').  Its immediate predecessors are LLT

Management LLC ('LLT'), f/k/a LTL Management LLC, and Johnson & Johnson Holdco (NA)

Inc.('Holdco')."  *See* Exhibit B to the Bielskie Cert. at page 1, fn.2.

12.     The Present Case remains open, and it is irrelevant that it is nearing dismissal or

that only a limited number of matters remain.  In *Emerson Radio*, the Third Circuit considered the

question of whether Rule 1014(b) allowed for a transfer of venue where the plan in the first-filed

case had already been confirmed and substantially consummated.  Rejecting the argument that

Rule 1014(b) should be limited to debtors in pre-consummation cases, the Third Circuit concluded

that the plain language of the rule meant that it was applicable in any case that remained open.

*Emerson Radio*, 52 F.3d at 54-55 (holding Rule 1014(b) would apply even if case was open for

ministerial purposes only).  The same analysis applies here: so long as the Present Case remains

open, this Court has authority to decide venue in the Subsequent Case regardless of its current

status.  Accordingly, Rule 1014(b) applies.  *See* Fed. R. Bankr. P. 1014(b)(1), (4).

**C.  Venue of the Subsequent Case Should Be Transferred to This Court**

13.     On the merits, venue of the Subsequent Case should be transferred to this Court for

three reasons.  *First*, the question of venue was already litigated and decided in the 2021 Case, and

the parties are barred from relitigating that matter under the doctrine of issue preclusion.  *Second*,

venue should be transferred in the interests of justice to prevent the Debtor from forum shopping

and thereby evading this Court's prior rulings.  *Third*, venue should be transferred because this

Court is by far the most convenient forum for all parties, for the same reasons discussed in *LTL I*.

**i.     The doctrine of issue preclusion applies to *LTL I*'s venue determination.**

14.     The doctrine of issue preclusion, or *res judicata*, provides that "once a court has

decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation

of the issue in a suit on a different cause of action involving a party to the first case." *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980).  The Third Circuit has recognized that the doctrine of issue

preclusion will bar parties from relitigating an issue previously decided by another federal court

if: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that

issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the

determination was essential to the prior judgment." *Burlington N. R. Co. v. Hyundai Merch.*

*Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995) (internal citations omitted).

15.    All elements of issue preclusion are present here.  Both Rule 1014(b) and 28 U.S.C.

§ 1412 are based on the same two-factor test.  The *LTL I* decision, based on analysis of 28 U.S.C.

§ 1412, was the result of active litigation by all parties and resulted in a decision on the merits.

Although the order transferring venue itself may not initially have been a final judgment, *see*

*Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 228 (3d Cir. 1990) (noting that venue orders

are not normally immediately appealable), that order became a final judgment when it merged with

the order dismissing the underlying 2021 Case.  *See R & C Oilfield Servs. LLC v. Am. Wind Transp.*

*Grp. LLC,* 45 F.4th 655, 659 (3d Cir. 2022).  Moreover, neither LTL nor any other party sought to

challenge the North Carolina court's venue determination in connection with the dismissal of the

2021 Case.  Finally, because dismissal of the 2021 Case was based on Third Circuit law, the earlier

venue determination in *LTL I* was necessary to that outcome.

16.    The fact that the Debtor's preferred venue is now Texas rather than North Carolina

does not change this analysis.  The court's venue determination in *LTL I* was based on the parties'

extensive connections to New Jersey, which are unchanged in this case.  The Debtor's principal

connections with Texas appear to be limited to the fact that Red River is a Texas LLC, just as LTL

was a North Carolina LLC.  As such, the arguments for venue in Texas rather than New Jersey are

exactly identical to those previously raised for North Carolina.   Any factual variations between

these cases are therefore of "no legal significance whatever in resolving the issue presented in both cases." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984).

17.     Issue preclusion does not require a complete identity of parties, but may be satisfied whenever a party in the second litigation is in privity with a party in the first, or when the same party was in active control of both litigants. *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) (discussing New Jersey law). It is unquestionable that Red River is at the very least in privity with LTL as the successor to LTL's assets and liabilities. In addition, both entities have been and remain under the control of J&J. As a result, issue preclusion must be applied here.

### ii.     The Subsequent Case should be transferred in the "interest of justice."

18.     A transfer of venue in the "interest of justice" is appropriate if necessary to prevent forum shopping and to protect the integrity of the bankruptcy system. *See In re Barrington Spring House*, LLC, 509 B.R. 587, 606 (Bankr. S.D. Ohio 2014) (fairness and integrity of the bankruptcy system are relevant factors when considering a motion to transfer venue under 28 U.S.C. § 1412); *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012) (same).

19.     Courts have consistently recognized that a debtor's forum shopping is grounds for a transfer of venue under the "interest of justice" standard. *See In re Lazaro*, 128 B.R. 168, 174 (Bankr. W.D. Tex. 1991) (holding that "courts evaluating 'the interest of justice' are well-advised to consider whether the debtor has been engaging in forum-shopping, and to transfer the case if that is what they conclude is going on"); *In re Eclair Bakery Ltd.,* 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000) (holding that interests of justice require that court not reward forum shopping); *In re ERG Intermediate Holdings, LLC*, No. 15-31858-HDH11, 2015 WL 6521607, at *6 (Bankr. N.D. Tex. Oct. 27, 2015) (holding that the court should transfer a case if it finds abusive forum

shopping); *In re Certa Dose, Inc.*, No. 21-11045 (LGB), 2021 WL 5177376, at *12 (Bankr.

S.D.N.Y. Nov. 4, 2021) (same).

20.     As the North Carolina bankruptcy court observed during the Debtor's 2021 Case,

there can be little question that its choice of venue was motivated primarily by a desire to seek out

favorable circuit law regarding the dismissal of chapter 11 cases for bad faith. *See LTL I*, 2021

WL 5343945 at *6 (holding that "the Debtor's actions indicate a preference to file bankruptcy in

this district, likely due to the Fourth Circuit's two-prong dismissal standard"). Those concerns

presumably have only been heightened by the subsequent rulings of the Third Circuit on bad faith

in LTL's first two bankruptcy cases.

21.     The integrity of the bankruptcy system is also at issue here. Like a serial debtor,

LTL/Red River is effectively seeking to evade an unfavorable ruling by relitigating the same

dispute in a different court. Should the Texas court retain the Subsequent Case but dismiss it for

bad faith, a fourth bankruptcy case could simply be filed in another court. And if that case is

dismissed, the cycle can be repeated in the hopes of a favorable result. Such a strategy is not only

a waste of judicial resources, it creates an unfair delay for creditors and effectively undermines the

authority of this Court.

22.     For this reason, courts have held that a transfer of venue to the original court is an

appropriate remedy in other cases involving serial bankruptcy filings. For example, in *Eclair

Bakery*, the debtor's parent filed three successive chapter 11 cases in the Eastern District of New

York, the last of which also resulted in an injunction against further bankruptcy filings. *Eclair

Bakery*, 255 B.R. at 129. On the eve of eviction, the parent transferred its assets to the debtor and

caused it to file for bankruptcy in the Southern District of New York. Notwithstanding that the

cases nominally involved different entities, the Southern District court had little hesitation in

finding that the debtor was engaged in an effort to "sidestep" the Eastern District's rulings, *id.* at 138, and that the interests of justice required a transfer of venue to the Eastern District.    *Id.* at 142.

23.    The decision to file for bankruptcy in Texas reflects a strategy to sidestep the ruling of this Court and the Third Circuit in order to relitigate the same issues in a different jurisdiction. The interests of justice and the integrity of the bankruptcy system require that this Court transfer venue to New Jersey.

### iii.    New Jersey is the most convenient forum for the parties.

24.    In determining a motion to transfer venue under 28 U.S.C. § 1412 based on the convenience of the parties, courts have looked to factors including:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*In re Hechinger Inv. Co. of Delaware, Inc.*, 296 B.R. 323, 325 (Bankr. D. Del. 2003).

25.    Several of these factors were examined in detail by the court in *LTL I* and there is no indication that any of the facts discussed in that decision have changed since then.  In particular, New Jersey remains the venue for the MDL, is the headquarters of J&J, is the principal place of business of Red River, and is the location of most key witnesses.  Through the MDL, the 2021 Case, and the Present Case, the key parties and attorneys have developed a familiarity with litigating in New Jersey.  *See LTL I*, 2021 WL 5343945, at *4-5.  Indeed, the argument for New Jersey as the most convenient forum is now even stronger than it was in 2021, because this Court

has extensive familiarity with the parties and their underlying legal disputes.  For these reasons, the "convenience of the parties" prong of 28 U.S.C. § 1412 also warrants a transfer of venue to New Jersey.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that this Court enter an order transferring the Subsequent Case to this district and granting such further relief that is deemed just and equitable.

Dated:  September 20, 2024

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By:    /s/ Jeffrey M. Sponder
Jeffrey M. Sponder
Trial Attorney
Lauren Bielskie
Trial Attorney
United States Department of Justice
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, NJ 07102

-and-

Linda Richenderfer
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
linda.richenderfer@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email:  Jeffrey.M.Sponder@usdoj.gov
       Lauren.Bielskie@usdoj.gov

| | |
|---|---|
| In Re:<br><br>LTL Management LLC,<br><br>Debtor. | Case No.: 23-12825 (MBK)<br><br>Chapter 11<br><br>Judge: Michael B. Kaplan, Chief U.S.B.J.<br><br>Hearing Date: TBD |

**ORDER TRANSFERRING VENUE OF SUBSEQUENTLY FILED
CASE TO THE DISTRICT OF NEW JERSEY**

The relief set forth on the following page(s), numbered two (2) is hereby **ORDERED**.

(Page **2**)
Debtor: LTL Management LLC
Case No.  23-12825 (MBK)
**Order Transferring Venue of Subsequently Filed Case to the District of New Jersey**

Upon consideration of the Motion of the United States Trustee by and through counsel, for an Order pursuant to Rule 1014(b) Transferring Venue of the chapter 11 case pending in the Southern District of Texas as *In re Red River Talc, LLC* ("Subsequent Case") to the District of New Jersey and notice of the motion having been served on the Debtor, Debtor's counsel and parties identified in the Order Shortening Time, and the Court having found cause for the entry of the within Order, and the Court having further found that entry of the within Order is in the best interest of creditors and the bankruptcy estate, it is hereby:

**ORDERED** that venue of the Subsequent Case be transferred to the District of New Jersey.

Pursuant to Fed. R. Bankr. P. 2002(f), the Clerk shall notify all parties in interest of the entry of this Order.