IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC, LLC,[1] | Case No. 24-90505 (CML) |
| Debtor. | |

**AMENDED MOTION OF THE COALITION OF COUNSEL
FOR JUSTICE FOR TALC CLAIMANTS TO ESTABLISH A PROTOCOL FOR THE
APPOINTMENT OF A FUTURE CLAIMS REPRESENTATIVE**

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The Coalition of Counsel for Justice for Talc Claimants (the "**Coalition**"),[2] by and through its undersigned counsel, respectfully submits this Motion (the "**Motion**") for entry of an Order Establishing a Protocol for the Appointment of a Future Claims Representative. In support of this Motion, the Coalition respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Integral to the Debtor's effort to force a settlement on ovarian talc claimants and release its parent company ("**J&J**") from all current and future liability relating to talc claims, is

---

[1] The last four digits of the debtor's federal tax identification number are 8508. The Debtor's mailing address is 501 George Street, New Brunswick, NJ 08933.

[2] The Coalition includes Ashcraft & Gerel, LLP; Beasley Allen Crow Methvin Portis & Miles, PC; Golomb Legal, PC; Levin Sedran & Berman, LLP; Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, Mougey, PA; and Robinson Calcagnie, Inc.

the Debtor's hand selected choice of a future claims representative ("**FCR**").  The Debtor has stated that it intends to seek the Court's approval of Ms. Randi Ellis to serve as FCR in this case.[3] The Coalition believes this bankruptcy case, like its two predecessors, was filed in bad faith, and, thus, should be dismissed.[4]  But if the case is not dismissed and the appointment of an FCR becomes appropriate, there must be a fair and transparent selection process.   More than one candidate, especially one J&J has promoted in its subsidiary's prior bad faith bankruptcies, must be vetted and recommended to the Court.  Ultimately, it is the Court, and not the Debtor or any other party in interest, that has the authority to appoint an FCR under section 524(g) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. Although Ms. Ellis was previously appointed as the FCR in the prior iterations of J&J's endeavor to resolve its talc liability in bankruptcy (LTL 1.0 and LTL 2.0 (defined below)), it should not follow that the preferred choice of a newly created Debtor and the law firms J&J has negotiated settlements with should be appointed FCR here.[5]  This third bankruptcy filing is not like the first two.

3. This bankruptcy is presented as a pre-packaged plan that, taking the Debtor at its word, only minimally surpassed the minimum 75% threshold required to channel claims to a trust under  section 524(g).  The Coalition  has reason to believe, and expects to demonstrate, that the vote on the Debtor's pre-packaged plan is illusory, and that, in fact, J&J (the Debtor was not yet formed at the time of solicitation) did not garner the requisite percentage of votes to satisfy the requirements of § 524(g).

---

[3]  See *Declaration of John K. Kim in Support of Chapter 11 Case and Certain First Day Pleadings*, filed on September 20, 2024 [Dkt. No. 17] (the "Kim Dec.") at ¶ 117, n. 31.

[4]  Contemporaneously herewith, the Coalition filed a *Motion to Dismiss the Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)*.

[5]  The Coalition does have concerns over Ms. Ellis's appointment in this case and is prepared to raise them as a separate objection to the Debtor's FCR Motion if this Motion is denied.

4.  But even beyond that, and for ample other reasons, this plan (unlike a typical "pre-pack") is sure to be highly contested by the tens of thousands of current creditors who voted against it. As such, the selection of an FCR is particularly important, where the rights of tens of thousands of current and future claimants to a jury trial are at stake. If the Plan were confirmed, future creditors not only would be deprived of their right to a trial, but their right to recovery through a section 524(g) trust would be capped. Accordingly, the role of the FCR is critical and should be occupied by somebody that creditors can feel assured has been vetted for any perceived or actual bias.

5.  Ms. Ellis was selected by the Debtor before this case was even filed or creditors (other than the creditors that support the Debtor's plan) were afforded the opportunity to weigh in and propose alternative candidates. At the very least, the Court should order that a process be undertaken, similar to the process employed during the first LTL bankruptcy case and described further below, for the selection of an FCR.

## BACKGROUND[6]

**A.     The Bankruptcy Court in LTL 1.0 Orders a Process for the Appointment of the FCR**

6.  On January 13, 2022—two months into LTL 1.0—the United States Bankruptcy Court for the District of New Jersey (the "**NJ Bankruptcy Court**") entered an order establishing a selection protocol for the appointment of the FCR, *i.e.*, the individual who would represent and

---

[6] The Coalition refers the Court to the *Initial Statement of Coalition Counsel for Justice for Talc Claimants Regarding Chapter 11 Case* filed contemporaneously herewith for a thorough recitation of the facts and the prior bankruptcies of the Debtor's predecessor, LTL Management LLC ("**LTL**"). The Coalition will not repeat those extensive facts here, but will highlight facts specific to the appointment of the FCR in LTL's first bankruptcy case, *In re LTL Mgmt. LLC*, No. 21-30589 (MBK) (Bankr. D.N.J.) ("**LTL 1.0**") and second bankruptcy case, *In re LTL Mgmt. LLC*, No. 23-12825 (MBK) (Bankr. D.N.J.) ("**LTL 2.0**").

advocate on behalf of future claimants, whose latent injuries had not yet manifested. *See In re LTL Mgmt. LLC*, No. 21-30589 (MBK) (Bankr. D.N.J. Jan. 13, 2022), Dkt. No. 1135.[7]

7. Pursuant to the protocol, the then-extant Official Talc Claimants' Committees (individually and collectively, the "**LTL 1.0 TCC**"), the Debtor, and the Office of the United States Trustee (the "**U.S. Trustee**") each submitted, *ex parte*, the names and resumes of nominees for the NJ Bankruptcy Court's consideration. *Id.* at 2. The NJ Bankruptcy Court permitted discovery concerning each nominee's qualifications, including "whether the nominee is a 'disinterested person' as the term is defined under 11 U.S.C. § 101(14)." *Id.* at 2–3. This discovery period was to last for 14 days after the hearing on the then-pending motions to dismiss. *Id.* The NJ Bankruptcy Court granted the parties two peremptory strikes of the other parties' nominees. *Id.* at 2.

8. On March 18, 2022—two weeks after it resolved the motions to dismiss—the NJ Bankruptcy Court entered an order appointing Ms. Ellis as the FCR in LTL 1.0, pursuant to a joint recommendation by the Debtor and the LTL 1.0 TCC. *See* LTL 1.0, Dkt. 1786.

**B.   The Debtor Files LTL 2.0 And Immediately Seeks To Appoint Ms. Ellis As The Future Claims Representative**

9. On April 4, 2023, within hours of the bankruptcy court's dismissal of LTL 1.0, LTL filed another bankruptcy petition. *See In re LTL Mgmt. LLC*, No. 23-12825 (MBK) (Bankr. D.N.J.).

10. Less than a week later, on April 10, 2023, LTL filed a motion to appoint Ms. Ellis as the FCR in LTL 2.0. *See* LTL 2.0, Dkt. No. 87. On April 26, 2023 the Official Committee of Talc Claimants in LTL 2.0 (the "**LTL 2.0 TCC**") objected to Ms. Ellis's appointment, arguing

---

[7] *See* Declaration of Sunni P. Beville in Support of the Coalition Statement, filed contemporaneously herewith, Ex. 44.

that she could not meet the standard for an FCR under Third Circuit precedent. LTL 2.0, Dkt. No. 311. The U.S. Trustee and other claimants similarly objected to the proposed appointment. LTL 2.0, Dkt. Nos. 318, 320, 321. The LTL 2.0 TCC objected to Ms. Ellis's appointment on the grounds that she lacked the requisite disinterestedness. The primary concern of the LTL 2.0 TCC was that, while LTL 1.0 was still pending, Ms. Ellis appeared to have been in discussions with LTL to support the terms of a proposed plan term sheet that LTL intended to use as the basis for a plan in LTL 2.0 (which unbeknownst to the LTL 2.0 TCC, LTL intended to immediately file after the NJ Bankruptcy Court entered the order dismissing LTL 1.0). The proposed term sheet included a provision whereby the FCR would agree to cap the future claimants' recovery to one-third of the total bankruptcy trust. Ms. Ellis was the proposed FCR, as well as the proposed claims administrator for LTL's proposed plan, a lucrative engagement.

11. The NJ Bankruptcy Court appointed Ms. Ellis as the FCR in LTL 2.0 over the U.S. Trustee's and the claimants' objections. LTL 2.0, Dkt. No. 551. The LTL 2.0 TCC subsequently appealed that order to the United States District Court for the District of New Jersey (the "**Appeal**"). *The Official Committee of Talc Claimants et al. v. LTL Mgmt. LLC*, 23-cv-02567-MAS (D.N.J.). The Appeal was administratively stayed. *Id*. Dkt. Nos. 25-26.

C. **Red River Proposed Bankruptcy Plan and Selection of an FCR**

12. The Debtor's proposed plan of reorganization includes the creation of a trust for the payment of talc related liabilities, and the imposition of a channeling injunction under section 524(g) of the Bankruptcy Code.

13. Ms. Ellis has served as the pre-petition FCR and the Debtor has stated that it intends to seek an order of the Court approving the appointment of Ms. Ellis as FCR in this Chapter 11 case. *See* Kim Dec. at ¶ 117, n. 31. In her capacity as the pre-petition FCR, Ms. Ellis and her

professionals "engaged in discussions with LLT, J&J, the Ad Hoc Committee of Supporting Counsel and their respective counsel regarding issues related to the Initial Plan, the Amended Plan and the talc litigation." Kim Dec. at ¶ 119. According to the Debtor, Ms. Ellis "continues to support the Amended Plan, with the understanding that the FCR has not approved the Memorandum of Understanding." *Id.* at ¶ 120.

## JURISDICTION

14. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief requested herein is section 11 U.S.C. §§ 105 and 524(g)(4)(B)(i) , and Rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## RELIEF REQUESTED

15. By this Motion, the Coalition seeks an order establishing a protocol substantially similar to that utilized for the selection of an FCR in LTL 1.0 (the "**Proposed Protocol**"), which was as follows:

   a. The Debtor and any Official Committee of Talc Claimants to be appointed (the "**Committee**") shall each submit *ex parte* to the Court up to three (3) names [for a total of six names] of nominees for appointment as the FCR. Along with each nominee's name, the parties must provide the Court with a curriculum vitae and a verified statement consistent with the requirements of Fed. R. Bankr. P. 2014.

   b. The U.S. Trustee may submit *ex parte* to the Court its own single nominee in the same time period and in the same format. Likewise, the Court may also add a nominee for consideration.

   c. Upon the submission of nominees, the Court will assemble and docket the list of names and supporting documentation. All parties will have an opportunity for limited discovery, directed at the nominees, for a time period determined by the Court.

   d. After the discovery period, the Debtor and Committee may each strike the names of up to two nominees [for a total of four stricken nominees] without further

discussion or explanation. The Court will then schedule a final hearing at which all parties in interest may argue in favor and/or against any of the remaining nominees. In advance of the hearing, the parties will file statements indicating their preferences and/or objections. The Court will thereafter select and appoint the FCR after consideration of oral argument and submissions. There will be no testimony at the final hearing absent approval in advance by the Court.

e. Discovery may be sought only as to the identified nominees and inquiry is limited to (1) information relative to a nominee's experience, qualifications, competence and prior engagements as a future claims representative, and (2) information having a direct bearing upon whether the nominee is a "disinterested person" as the term is defined under 11 U.S.C §101(14).

## **ARGUMENT**

16. An injunction under section 524(g) of the Bankruptcy Code, as sought by the Debtor, requires that the "court appoint[] a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands" against the trust. 11 U.S.C. § 524(g)(4)(B)(i). Any party in interest may propose a candidate for FCR, but ultimately it is the court's responsibility to appoint the FCR. *See In re Fairbanks Co.*, 601 B.R. 831, 837-38 (Bankr. N.D. Ga. 2019); *Vara v. Duro Dyne Nat'l Corp. (In re Duro Dyne Nat'l Corp.)*, No. BR 18-27963 (MBK), 2019 WL 4745879, at *6 (D.N.J. Sept. 30, 2019). The court has the authority to implement any process that the court believes will assist it in carrying out the provisions of the Bankruptcy Code. *See generally* 11 U.S.C. § 105; *see In re LTL Mgmt. LLC*, No. 21-30589 (MBK) (Bankr. D.N.J. Jan. 13, 2022), Dkt. No. 1135.

17. The role of an FCR in any case is an important and sensitive one, as future claimants have no voice in the terms of the plan, but will nonetheless be bound to it. The role is a particularly important one here, where there could be thousands, if not tens of thousands, of claimants who, if the Debtor's plan is approved, will be limited or barred altogether in their ability to seek redress. If the Debtor is successful, the claims of future claimants will be channeled into a section 524(g) trust, which has a capped amount of funding, and claimants will be enjoined from asserting claims

against the Debtor, J&J, and others that have culpability for their injuries. The consequences for all claimants in this case are substantial, but no more so than for future claimants if there are insufficient funds to pay those creditors in the future.

18. Given the gravity of the FCR's role, it is of utmost importance that the FCR not only satisfy the disinterestedness requirements, but be fully vetted to give the Court assurances that the FCR is the right candidate to take on this vital role. In LTL 1.0, the Debtor and the LTL 1.0 TCC agreed to a protocol, which ultimately led to a consensual selection.

19. There are certainly many qualified candidates who have served in similar roles in other cases, and the parties in interest in this case should be allowed the opportunity to propose candidates from among the qualified field for the Court's consideration of their credentials and disinterestedness. Simply approving the candidate that has been appointed in the prior two bankruptcy cases, is the hand selected pick of the Debtor, and, according to the Debtor, supports the Debtor's proposed plan of reorganization, is not in the best interest of creditors. Kim Dec. at ¶ 119. If nothing else, the optics merit a legitimate process.

20. The Coalition respectfully requests implementation of the previously agreed upon process to select an appropriate FCR for this case. Implementing the Proposed Protocols will engage all parties in interest and open the review to a wider field of candidates, which will allow the Court to appoint the most appropriate candidate for the role of FCR.

## CONCLUSION

WHEREFORE, the Coalition requests that the Court enter an order, substantially in the form attached hereto, approving the Motion and granting the Coalition such other and further relief as the Court deems just and proper.

Dated:  Dallas, Texas
September 22, 2024

**Stutzman, Bromberg, Esserman & Plifka, P.C.**

 /s/  *Sander L. Esserman*
Sander L. Esserman
State Bar No. 06671500
Peter C. D'Apice
State Bar No. 05377783
2323 Bryan Street, Ste. 2200
Dallas, TX 75201-2689
Telephone: (214) 969-4900
Facsimile:  (214) 969-4999
Email:  esserman@sbep-law.com
           dapice@sbep-law.com

**BROWN RUDNICK LLP**
David J. Molton (*pro hac vice* pending)
Jeffrey L. Jonas (*pro hac vice* pending)
Eric R. Goodman (*pro hac vice* pending)
Gerard T. Cicero (*pro hac vice* pending)
Susan Sieger-Grimm (*pro hac vice* pending)
Seven Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Email: dmolton@brownrudnick.com
          jjonas@brownrudnick.com
          egoodman@brownrudnick.com
          gcicero@brownrudnick.com
          ssieger-grimm@brownrudnick.com

-AND-

**OTTERBOURG P.C.**
Melanie L. Cyganowski (*pro hac vice* pending)
Adam C. Silverstein (*pro hac vice* pending)
Sunni P. Beville (*pro hac vice* pending)

8124419.3

Jennifer S. Feeney (*pro hac vice* pending)
230 Park Avenue
New York, New York 10169-0075
(212) 661-9100
mycganowski@otterbourg.com
asilverstein@otterbourg.com
sbeville@otterbourg.com
jfeeney@otterbourg.com

*Co-Counsel for Coalition of Counsel for Justice for Talc Claimants*

## **CERTIFICATE OF SERVICE**

I certify that on September 22, 2024, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                              */s/ Peter C. D'Apice*
                                              Peter C. D'Apice