UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>RED RIVER TALC LLC,[1]<br><br>      Debtor. | Chapter 11<br><br>Case No. 24-90505 (CML) |

**DEBTOR'S EMERGENCY MOTION TO COMPEL BEASLEY ALLEN AND THE COALITION OF COUNSEL FOR JUSTICE FOR TALC CLAIMANTS TO RESPOND TO DEBTOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on November 12, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, virtually or in person as permitted by the Court, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Red River Talc LLC, the above-captioned debtor ("Red River" or the "Debtor"), files this *Emergency Motion to Compel Beasley Allen and The Coalition of Counsel for Justice for Talc Claimants to Respond to Debtor's First Set of Requests for Production of Documents* (the "Motion"). In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is authorized to continue

---

[1] The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## Relief Requested

Pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, made applicable by Rule 7037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor requests that this Court compel Beasley Allen to produce all documents responsive to Request Nos. 18, 22, 23, 27, 28, 32, 35, 40 in the Debtor's First Set of Requests for Production of Documents to Beasley Allen. Pursuant to the same Rules, the Debtor further requests that this Court compel the Coalition to produce all documents responsive to Request Nos. 13, 15, and 26 in the Debtor's First Set of Requests for Production of Documents to the Coalition. Each request is squarely relevant to the affirmative contentions that Beasley Allen has advanced as the primary objector of the Debtor's prepackaged bankruptcy plan. Accordingly, should Beasley Allen and the Coalition continue to refuse to produce responsive documents, they should be precluded from offering any evidence concerning such contentions, as outlined herein.

## ARGUMENT

I.  **LEGAL STANDARD**

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. Considerations for whether information requested is

2

relevant and proportional include "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

"A party seeking discovery may move for an order compelling an answer or production when a party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents as requested"; "[a]n evasive or incomplete response must be treated as a failure to disclose, answer, or respond." Kuter v. Pediatricians of Dallas PA, 2021 WL 4027733, at *1 (N.D. Tex. Mar. 23, 2021).

## II. THE COURT SHOULD COMPEL THE PRODUCTION OF DOCUMENTS FROM BEASLEY ALLEN.

### A. Documents Relating to Claimants' Diagnoses (No. 18)

The Debtor is responsible only for ovarian-cancer claims and claims relating to other gynecological cancers. Beasley Allen and the Coalition have contended that the Debtor is "stuffing the ballot box" with "meritless," "non-compensable" gynecological claims. Beasley Allen therefore has affirmatively put the claim "type" squarely at issue—as the claimants themselves did by asserting a claim against the Debtor. The Debtor therefore is entitled to test whether the claims are what they are represented to be. Moreover, the Debtor has a good faith basis to believe that Beasley Allen may have mischaracterized some of its claims, perhaps to skew the vote or attempt to protect itself from certain voting irregularities raised by Debtor. Accordingly, the Debtor requested that Beasley Allen provide it with medical records sufficient to show that its clients were, in fact, diagnosed with ovarian cancer. Beasley Allen R&Os at 1 (attached hereto as Exhibit 1). Records that demonstrate each claimant was diagnosed with ovarian cancer are clearly relevant to and proportional to the needs of this matter. Beasley Allen does not, and cannot, dispute this.

3

Beasley Allen's only stated basis for objecting to the Debtor's request is that such documents are allegedly privileged. It provides a laundry list of privileges, without specifying which applies. Id. None do. The attorney-client privilege protects only confidential communications, not underlying facts such as a medical record proving diagnosis. See, e.g., League of United Latin Am. Citizens v. Abbott, 342 F.R.D. 227, 233 (W.D. Tex. 2022) ("[U]nderlying facts are not privileged merely because they are communicated to an attorney."). Likewise, the common-interest privilege does not apply because it is merely an extension of the attorney-client privilege. See, e.g., In re Santa Fe Intern. Corp., 272 F.3d 705, 710 (5th Cir. 2001). Medical records are obviously not work product because they are not "prepared in anticipation of litigation." Fed. R. Civ. P. 23(b)(3)(A). And the physician-patient privilege does not apply both because it does not exist under federal law and because these claimants have placed their health information at issue in litigation. See, e.g., Gilbreath v. Guadalupe Hosp. Foundation, Inc., 5 F.3d 785, 791 (5th Cir. 1993) ("[T]here is no doctor-patient privilege under federal law."); Martin v. Crestline Hotels & Resorts, LLC, 2020 WL 3145694, at *3 (W.D. Tex. June 12, 2020) (physician-patient privilege does not apply where party places medical condition at issue in litigation).

But even if a privilege somehow applied, Beasley Allen waived any privilege that may have attached to these documents when it filled out the Master Ballot, where it had to specify each claimant's diagnosis. Beasley Allen Master Ballot at 2 (attached hereto as Exhibit 2). Because Beasley Allen already disclosed the information sought, the documents that validate this information—which the Debtor needs for verification purposes—are no longer protected by privilege. Indeed, an attorney with "physical possession of [medical] records" can be compelled to "disclose them to." Hernandez v. Results Staffing, Inc., 907 F.3d 354, 362 (5th Cir. 2018).

4

The Court should order Beasley Allen to produce all documents responsive to RFP No. 18 over its baseless objections or, if there are no such documents, amend its response to so state. If Beasley Allen will not produce the documents, it should be precluded from offering any evidence that purports to substantiate its allegation that it speaks for approximately 6,000 women who allegedly oppose the plan and allegedly have ovarian cancer.

B.   **Documents Relating to Statute of Limitations Issues (Nos. 22, 23 & 32)**

Just as the Debtor has a right to know what type of claims Beasley Allen has voted, it also has a right to understand whether those claims would be time barred under applicable statute of limitations. Beasley Allen partner Andy Birchfield has previously testified under oath that most of their claims obtained in or around 2018. April 17, 2023 Birchfield Depo. at 16:24-17:21 (attached hereto as Exhibit 3). And, based on the publicly available documents, Beasley Allen voted a substantially similar number of claimants in the context of the Imerys bankruptcy, a vote that was cast roughly 3 years ago. Yet of the nearly 12,000 votes against the Plan for claimants Beasley Allen purports to represent, approximately 5,000 have ***never filed*** a case in the tort system. In other words, it appears that thousands of Beasley Allen's votes are unfiled claims that are at least 4 years old, if not older. Such claims would be time barred in nearly every state and thus valueless in the tort system, a fact the Debtor is entitled to know. What's more, this juxtaposition defied credulity: Claims which Beasley Allen apparently stockpiled for years, never filed, and were left with no recourse or hope of collection are now – allegedly – rejecting six figure compensation through the Plan? The Debtor is entitled to discovery concerning whether Beasley Allen knowingly submitted votes on behalf of time-barred claims in an attempt to thwart the vote, to mislead the public, and deceive this Court. To that end, the Debtor requested documentation concerning when the various claims accrued, such as when the claimant was

diagnosed with ovarian cancer or otherwise acquired notice that they may have cancer.  Ex. 1, Beasley Allen R&Os at 15.  Beasley Allen generally objected to this request by saying the information was privileged, again declining to specify which privilege applied.  Id.  When the Debtor met and conferred with Beasley Allen about these requests, it still refused to turn over the requested documents.

Again, Beasley Allen does not dispute that this discovery request is relevant and proportional to the Debtor's needs in this case.  Whether all the claimants have enforceable claims naturally impacts this Court's assessment of the Beasley Allen master ballot and the voting issues pending in several motions.

As for its claims of privilege, attorney-client privilege and the work-product doctrine do not apply.  Information on when a claim accrues is indisputably discoverable for the purpose of determining whether it is time-barred.  See Condon v. Petaque, 90 F.R.D. 53, 54 (N.D. Ill. 1981) (holding that attorney-client privilege did not prevent discovery of "the dates of [] events contained in billing records," etc. for the purpose of the defendant establishing the statute of limitations as an affirmative defense).  And, as stated above, no medical privilege applies.  See Gilbreath, 5 F.3d at 791.

The Court should order Beasley Allen to produce all documents responsive to RFP Nos. 22, 23, and 32 over its baseless objections or, if there are no such documents, amend its response to so state.  In the alternative, Beasley Allen should be precluded from offering any evidence to dispute that the unfiled claims included in its master ballot are time-barred.

### C. Documents Relating to Votes of Deceased Claimants (Nos. 27 & 28)

The Debtor requested that Beasley Allen provide documentation on each talc claimant that is deceased, including documentation proving the date on which each deceased claimant

died and documenting who, if anyone, took over as each claimant's successor in interest. Ex. 1, Beasley Allen R&Os at 17-18. Beasley Allen did not offer any specific objection to these requests. Id. The Debtor met and conferred with Beasley Allen about these requests, to no avail.

The requested information is relevant to this case and proportional to the Debtor's needs. Beasley Allen certified under oath that it had obtained the "informed consent" from over 11 thousand claimants to reject the Plan. Ex. 2, Beasley Allen Master Ballot. Based on its review of the votes to date, the Debtor has a good-faith basis to believe that Beasley Allen voted some number of deceased claimants as opposing the Plan, despite them dying before the Plan was solicited and despite no successor in interest being appointed.[2] The Debtor therefore is entitled to discovery to affirm the number of deceased claimants from whom Beasley Allen purported to obtain informed consent. Those disclosures go squarely to the validity of Beasley Allen's master ballot submitted in connection with the vote solicitation, the affirmative contentions it has made regarding the integrity of the vote, and ultimately, the percentage of claimants supporting the Plan.

And to be clear, the record already demonstrates that Beasley Allen has misrepresented that it secured informed consent from claimants that never provided that consent. That record already shows that Beasley Allen cast votes on behalf of dozens of women who swore under oath that Beasley Allen never asked them whether they approved of the Plan, but they were represented as opposing it anyway. See illustrative declaration examples attached hereto as Exhibits 7-9. The fact that Beasley Allen falsely misrepresented these claimants as voting against the Plan when in fact Beasley Allen never sought their views corroborates the Debtor's

---

[2] The Debtor's review of the voting materials has revealed that Beasley Allen voted some number of dead claimants in their own names, rather than legally authorized representatives who could provide informed consent. E.g., first three Beasley Allen claimants, alphabetically, who appear to be dead (attached hereto as Exhibits 4-6).

7

entitlement to discovery regarding Beasley Allen's representations relating to deceased claimants.

The Court should order Beasley Allen to produce all documents responsive to RFP Nos. 27 and 28 over its baseless objections or, if there are no such documents, amend its response to so state. In the alternative, Beasley Allen should be precluded from offering evidence to support the proposition that it obtained informed consent from the deceased claimants included in its master ballot.

### D. Documents Relating to the Real Parties in Interest (No. 35)

The Debtor is committed to resolving these mass tort claims through this bankruptcy case. Yet, as negotiations have unfolded, it appears that Beasley Allen (and other Coalition firms) are actively opposed to settling claims at terms that are favorable to its own clients. Through motion practice in the federal MDL and through ongoing discussions with other plaintiffs' firms, the Debtor has come to learn that litigation funding has permeated the talc litigation—far more than has been disclosed in the MDL as is required under the District of New Jersey local rules.

The Debtor suspects that Beasley Allen has obtained litigation funding ***specifically for this bankruptcy proceeding*** and limited its document requests to just that funding: "All documents and communications relating to or reflecting receipt of or efforts to obtain third-party funding in anticipation of or in connection ***with the above-captioned action***." Ex. 1, Beasley Allen R&Os at 21(emphasis added). Beasley Allen objected on relevance and work-product grounds, and it also stated that "it has no documents in its possession, custody or control responsive to this Request." Id.

8

This information is not just relevant, but necessary so that the Debtor can understand who the true party in interest is and who is truly driving Beasley Allen's adamant refusal to resolve these claims despite widespread support for the Plan.  See, e.g., Nimitz Techs. LLC v. CNET Media, Inc., 2022 WL 17338396, at *20–22, *25 (D. Del. Nov. 30, 2022) (concluding that litigation funding discovery showed that financers were in charge of settlement decisions); Hobbs. v. Am. Commercial Barge Line LLC, No. 4:22-cv-00063, 2023 WL 6276068, at *4 (S.D. Ind. Sept. 26, 2023) (finding litigation-related medical funding relevant to settlement evaluation); see also In re Pork Antitrust Litig., 2024 WL 511890, at *7 (D. Minn. Feb. 9, 2024) ("The largest harm that condoning Burford's efforts to maximize its return on investment would cause is the harm of forcing litigation to continue that should have settled.").

As for its claims of privilege, courts routinely hold litigation funding documents are not protected by privilege because the attorneys, as Beasley Allen here, would not be offering legal advice to a client, but rather receiving financial assistance.  See In re Dealer Mgmt. Sys. Antitrust Litig., 335 F.R.D 510, 519 (N.D. Ill 2020) (holding litigation funding materials not privileged); Cobra International, 2013 WL 11311345, at *3 (holding litigation funding agreement not privileged); Cohen v. Cohen, No. 09 Civ. 10230, 2015 WL 745712, at *4 (S.D.N.Y. Jan. 30, 2015) (finding privilege waived in communications with third-party litigation funder and refusing to apply common interest exception); Leader Techs., Inc. v. Facebook, Inc., 719 F. Supp. 2d 373, 377 (D. Del. 2010) (finding litigation funding documents not privileged due to waiver and refusing to apply the "common interest" exception).

Finally, Beasley Allen's ultimate statement that no such documents regarding litigation funding are in its possession, custody, and control is purposefully opaque.  If no documents exist, Beasley Allen should withdraw its various unfounded objections and state so plainly.  Until then,

the Court should order Beasley Allen to produce documents responsive to RFP No. 35 notwithstanding its baseless objections.

E. **Documents Relating to Communications with the Trustee (No. 40)**

The Medicare program has certain rights under federal law to claim reimbursement from personal injury settlements that include compensation for bills paid by Medicare. As such, lien treatment is an inevitable component of any trust intended to compensate tort claims such as the talc claims at issue here.

The Debtor served an RFP on Beasley Allen requesting production of "All documents and communications between Beasley Allen and any employee of the Department of Justice, including but not limited to the Office of the United States Attorneys, regarding the treatment of any liens in connection with the resolution of Talc Claims through the Red River Solicitation." Ex. 1, Beasley Allen R&Os at 23-24. Beasley Allen objected on the basis of relevance, proportionality, and "mediation-related privilege." Id. None of these is a remotely valid objection:

*Relevance.* The scope of discovery is broad. A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 820 (5th Cir. 2004) (citation and internal marks omitted). Here, there are outstanding issues relating to Medicare liens that have not been resolved in connection with the Debtor's bankruptcy Plan. So, the Debtor requested discovery seeks to learn what, if any, information has been exchanged between the Beasley Allen and the Department of Justice related to this issue. At a minimum, such a request is reasonably calculated to lead to the discovery of admissible evidence.

***Proportionality.*** "A district court assesses six factors when determining proportionality: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." Edwards v. McDermott Int'l, Inc., 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022). The Debtor's requested discovery is important to resolving an outstanding issue (factors 1 and 5); propounded in a very large bankruptcy (factor 2); Beasley Allen, not the Debtor, has access to this information (factor 3); Beasley Allen is amply resourced, as demonstrated by its continued retention of Brown Rudnick to assert such objections (factor 4); and, most crucially, producing communications with the Department of Justice would be a trivial burden and expense (factor 6). It is Beasley Allen's burden to make "a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation." Id. For the reasons explained, it cannot.

***Mediation privilege.*** Any such privilege is not implicated here. It is difficult to fathom what Beasley Allen could possibly have mediated with the Department of Justice, let alone why discussions about Medicare liens would have come up in any such mediation that did occur. As the proponent of the privilege, Beasley Allen must establish its applicability. See EEOC v. BDO USA, LLP, 876 F.3d 690, 696 (5th Cir. 2017). It cannot.[3]

---

[3] This is not the first time that Beasley Allen and the firms that make up the Coalition have bizarrely claimed a privilege with the United States government. In the previous bankruptcy case, Mr. Winograd of Brown Rudnick, who at the time represented the Talc Claimants Committee (the "TCC") of which Beasley Allen was a member, repeatedly directed his partner not to answer questions about conversations with the Trustee due to a purported common-interest privilege. See April 17, 2023 Dep. of D. Molton at 47:25-54:22 (a few examples) (attached hereto as Exhibit 10). Now, the same firm represents that Beasley Allen and/or the Coalition (of which Beasley Allen is a member) have a "mediation privilege" with the U.S. Government. Red River is entitled to explore the basis for this specious privilege assertion through discovery.

11

The Court should order Beasley Allen to produce all documents responsive to RFP No. 40 over its baseless objections or, if there are no such documents, amend its response to so state.

**III.    THE COURT SHOULD COMPEL THE PRODUCTION OF DOCUMENTS FROM THE COALITION SUPPORTING THE FACTUAL BASIS FOR ITS CONTENTIONS (NOS. 13, 15 & 26).**

During the course of these bankruptcy proceedings, clearly aware of the numerous media outlets who attend each and every hearing in this matter, the Coalition has lobbed a series of incendiary allegations to this Court against the Debtor, clearly for the purpose of generating salacious headlines.  A few examples:

- At the October 21, 2024 hearing, counsel for the Coalition stated that one claimant, Carolyn Colquitt had "voted to reject this Plan," and "they took reject and they erased and they wrote accept," that her declaration is "just the beginning of a flood that's going to come to this court."  Oct. 21, 2024 H'rg Trans. at 17:24-18:8 (attached hereto as Exhibit 11).

- At the same hearing, counsel for the Coalition stated that "based on information that we just got within the last 36 hours, we can now see that there are probably over 10, probably 20 to 30,000 votes in this case that we think we need to be challenged, just straight up, Your Honor."  Id. at 19:8-12.

- The Coalition's motion to designate votes stated that "[u]pon information and belief, more than half of the claimants who voted on J&J's Plan hold non-compensable claims, and more than half of the alleged claimants who voted to accept J&J's Plan do not hold compensable claims."  Dkt. 265 ¶ 9.

While the Debtor maintains these allegations are wholly unfounded, without a doubt they are very serious.  So, the Debtor served an RFP simply asking the Coalition to produce all documents and communications supporting each of the contentions outlined above.  See Coalition R&Os at 10-12, 17 (attached hereto as Exhibit 12).  The Coalition has refused to produce the requested discovery, apparently standing on its objection that "[t]he Coalition does not have possession, custody or control of any documents maintained by any law firm that is a member of the Coalition."  Id.

12

That is not a serious objection to discovery. There are two possibilities: Either the Coalition has a factual basis supporting the two statements made (through counsel) at the October 21 hearing and the statement (also through counsel) in its motion to designate votes, in which case any documents and communications supporting those statements are discoverable because they are within the actual, physical possession of the Coalition's counsel. <u>See</u>, e.g., <u>Hernandez v. Results Staffing, Inc.</u>, 907 F.3d 354, 362 (5th Cir. 2018) (documents within counsel's "physical possession" required to be disclosed). Or, the Coalition has no factual basis for the statements, in which case the proper response to the Debtor's discovery would be "there are no such documents or communications." What cannot be the case is that (1) the Coalition's statements are supported by facts, yet (2) those facts appear in literally zero documents or communications within the Coalitions' possession, custody, or control.

The Court should order the Coalition to produce all documents responsive to RFP Nos. 13, 15 and 26 over its baseless objections or, if there are no such documents, amend its response to so state.

## **MEET AND CONFER\RESERVATION OF RIGHTS**

On November 4, 2024, the Debtor met and conferred with counsel for the Coalition in an effort to resolve this dispute. The parties were unable to reach a resolution. The Debtor followed up with the coalition by email on November 6, 2024, with no response.

Other of the Coalition members' responses to the Debtor's Requests are also deficient, but the parties continue to meet and confer on these additional issues in an effort to reach a consensual resolution. The Debtor reserves its right to file additional motions to compel to address discovery disputes that cannot be resolved with members of the Coalition and other parties.

**Emergency Consideration**

Pursuant to Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, the Debtor respectfully requests emergency consideration of this Motion. As set forth in this Motion, the relief requested herein is essential to keeping the parties on track to meeting the discovery, briefing, and confirmation schedule agreed to by the parties and set by the Court. Without a prompt resolution of this issue, many of the depositions that have been scheduled starting the week of November 11, 2024 would likely have to be postponed due to an absence of information critical to those depositions. The immediate entry of an order providing for the relief requested herein will compel the timely production of documents necessary to stay on schedule. Accordingly, the Debtor respectfully requests that the Court grant the relief requested in this Motion on an emergency basis.

**Notice**

Notice of this Motion has been provided to: (a) counsel to the Coalition; (b) Beasley Allen; (c) counsel to the members of the TCC; (d) pro se claimants as identified in the Plan solicitation process; (e) the United States Trustee for the Southern District of Texas; (f) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; (g) the proposed legal representative for future talc claimants and her counsel; (h) counsel to the Ad Hoc Committee of Supporting Counsel; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter an order substantially in the form submitted herewith compelling Beasley Allen and other Coalition

members to produce the requested information and documents within three business days; and

(ii) grant such other and further relief to the Debtor as the Court may deem just and proper.

| | |
|---|---|
| Dated: November 7, 2024<br>Houston, Texas | Respectfully submitted,<br><br>*/s/ John F. Higgins*<br>John F. Higgins (TX 09597500)<br>M. Shane Johnson (TX 24083263)<br>Megan Young-John (TX 24088700)<br>James A. Keefe (TX 24122842)<br>PORTER HEDGES LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 226-6000<br>Facsimile: (713) 228-1331<br>jhiggins@porterhedges.com<br>sjohnson@porterhedges.com<br>myoung-john@porterhedges.com<br>jkeefe@porterhedges.com<br><br>and<br><br>Gregory M. Gordon (TX 08435300)<br>Dan B. Prieto (TX 24048744)<br>Brad B. Erens (IL 06206864)<br>Amanda Rush (TX 24079422)<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100<br>gmgordon@jonesday.com<br>dbprieto@jonesday.com<br>bberens@jonesday.com<br>asrush@jonesday.com<br><br>PROPOSED ATTORNEYS FOR DEBTOR |

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Local Rule 9013-1(i).

*/s/ David S. Torborg*
David S. Torborg

**Certificate of Service**

I certify that on November 7, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtor's claims, noticing, and solicitation agent.

*/s/ John F. Higgins*
John F. Higgins