**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RED RIVER TALC LLC**[1] | § | **CASE NO. 24-90505 (CML)** |
| | § | **(Chapter 11)** |
| Debtor. | § | |

**LIMITED OBJECTION OF TRUCK INSURANCE EXCHANGE**
**TO CONFIRMATION OF THE AMENDED PREPACKAGED CHAPTER 11 PLAN**
**OF REORGANIZATION OF THE DEBTOR**

Truck Insurance Exchange ("**Truck**"), by and through its undersigned counsel, submits this limited objection ("**Objection**") to the *Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Docket No. 24] (the "**Plan**").[2] In support of its Objection, Truck respectfully submits as follows:

**INTRODUCTION**

Truck is the holder of an Unsecured Claim against Red River Talc LLC (the "**Debtor**").[3] The Plan purports to "Reinstate" Unsecured Claims such that Truck's claim against the Debtor should be "unimpaired" pursuant to section 1124(1) of the Bankruptcy Code. And yet, as detailed below, various provisions of the Plan – including but not limited to Sections 4.9.3 (Imerys/Cyprus Related Rights), 5.9.1 (Imerys/Cyprus Agreements), 5.9.2 (Imerys/Cyprus Settlement

---

[1] The last four digits of the Debtor's taxpayer identification number is 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Plan.

[3] Nothing herein is intended to waive any rights or claims of Truck against any affiliates of the Debtor, including Johnson & Johnson ("**J&J**"), all such rights and claims being expressly preserved. In the event the Chapter 11 Case is dismissed or the Plan is not otherwise confirmed pursuant to a Final Order, Truck reserves any and all rights to pursue its claims against any other parties who may be liable on such claims, including but not limited to J&J.

1

Agreement), 10.2.1 (Imerys/Cyprus Related Rights), and 10.2.2 (Imerys/Cyprus Settlement) – alter Truck's legal, equitable, and/or contractual rights such that section 1124(1) is not satisfied.

Truck does not oppose the intent of the Debtor to leave Unsecured Claims unimpaired. Truck would also not oppose the Plan if it left Truck's claim unimpaired. But given the current state of the Plan, Truck objects unless and until the order confirming the Plan incorporates certain modifications preserving Truck's "legal, equitable, and contractual rights" as required by section 1124(1).

## BACKGROUND

### I.    Truck's Subrogation Claim Against the Debtor

1.      Prior to the Petition Date, Imerys Talc America, Inc. ("**Imerys**") and Cyprus Mines Corporation ("**Cyprus**") were suppliers of talc to J&J and/or certain affiliates thereof ("**J&J Parties**"). Truck was an insurer to one or more of the "Imerys/Cyprus Parties"[4] (the "**Insureds**") under a comprehensive liability policy (the "**Policy**").

2.      As set forth in the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Docket No. 25-2, Ex. B] (the "**Disclosure Statement**"), certain of the Insureds and certain of the J&J Parties were parties to the Imerys/Cyprus Agreements[5], pursuant to which the Insureds possess, among other things, indemnification rights[6] against J&J Parties related to liability incurred by the Insureds from the supply of talc to J&J Parties (the "**Indemnification Rights**"). *See Disclosure Statement*, Section 2.1 (Corporate History).

---

[4] *See* Plan, Section 1.1.77 ("'Imerys/Cyprus Parties' means all Persons listed on Schedule 2.").

[5] The Imerys/Cyprus Agreements include: (i) a stock purchase agreement dated January 6, 1989; (ii) a talc supply agreement dated January 6, 1989; (iii) a talc supply agreement dated April 15, 2001; (iv) a material purchase agreement effective in 2010; and (v) a talc supply agreement effective in 2011.

[6] Those indemnification rights fall within the definition of "Imerys/Cyprus Defenses" under the Plan. *See* Plan, Section 1.1.76.

3.      In accordance with the Policy, Truck reimbursed the Insureds for the costs of defending talc litigation in which the Insureds were defendants, resulting in exhaustion of the Policy on October 10, 2018.

4.      In accordance with the Policy and applicable law, Truck equitably subrogated to the rights of the Insureds under the applicable Imerys/Cyprus Agreements, including the Indemnification Rights. As such, Truck has a subrogation claim against certain J&J Parties (the "**Subrogation Claim**") which, pursuant to the "Prepetition Corporate Restructuring,"[7] now resides against the Debtor.[8] Truck estimates the Subrogation Claim at $18,168,420.69 as of September 12, 2019, plus accruing interest.

## II.    **The Imerys/Cyprus Settlement**

5.      As set forth in the Plan[9] and addressed by the Debtor in other filings in the Chapter 11 Case, the J&J Parties (including the Debtor), on the one hand, and the Insureds, on the other hand, entered into the "Imerys/Cyprus Settlement Agreement,"[10] pursuant to which, among other things, the J&J Parties purchased the Imerys/Cyprus Parties' (including the Insureds') rights in the Imerys/Cyprus Agreements, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(b) and (f) of the Bankruptcy Code (the "**J&J Buyback**"). An order approving the Imerys/Cyprus Settlement Agreement was entered in the respective chapter 11 cases

---

[7] Plan, Section 1.1.113.

[8] *See* Disclosure Statement, Section 4.2(f)(1)(i) (describing the allocation of the Imerys/Cyprus Agreements, including all liabilities arising thereunder, to the Debtor as part of the "Divisional Merger" (as defined in the Disclosure Statement)).

[9] *See* Plan, Sections 1.1.79 (Imery/Cyprus Settlement) & 1.1.90 (Imerys/Cyprus Settlement Agreement); *see also* Disclosure Statement Section 1.1(e) (Settlement in Principle with Imerys and Cyprus).

[10] *See* Plan, Section 1.1.80 ("'Imerys/Cyprus Settlement Agreement' means the Settlement Agreement and Release, dated as of July 13, 2024, by and among the Debtor (as successor to LLT and Holdco), J&J, and Imerys, Cyprus, and their respective Affiliates that are parties thereto, as the same may be amended or amended and restated from time to time.").

of Imerys and Cyprus (collectively, the "**Imerys/Cyprus Chapter 11 Cases**") on October 31, 2024.[11] *See Order (I) Approving the Amended and Restated Settlement Agreement Between the Imerys Debtors, The Cyprus Debtor, Johnson & Johnson, and the Other Parties Thereto, and (II) Approving the Sale of Certain Rights* [Imerys Docket No. 6715] [Cyprus Docket No. 2634] (the "**Imerys/Cyprus Settlement Approval Order**").

6.      However, the Imerys/Cyprus Settlement Agreement and the Imerys/Cyprus Settlement Approval Order expressly <u>excludes</u> from the J&J Buyback and related releases

> any rights or interests in Claims against the J&J Corporate Parties arising out of or in connection with pre-petition payments to any of the Imerys Parties or Cyprus Parties, by way of subrogation or otherwise, asserted by Truck Insurance Exchange ("Truck") or any insurer currently or previously managed by Resolute Management, Inc. ("RMI Managed Insurers"), including National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

Imerys/Cyprus Settlement Agreement, Section 3.1 [Imerys Docket No. 6573] [Cyprus Docket No. 2537]; *see also* Imerys/Cyprus Settlement Approval Order, Section 10 [Imerys Docket No. 6715] [Cyprus Docket No. 2634] ("The J&J Buyback does not include, and J&J is not purchasing, any rights or interests in claims against the J&J Corporate Parties arising out of or in connection with prepetition payments to any of the Imerys Parties or Cyprus Parties, by way of subrogation or otherwise, asserted by Truck or the RMI Managed Insurers, including National Union. As a result, the J&J Buyback does not prejudice the rights of these insurers.").

7.      In other words, the Imerys/Cyprus Settlement expressly carved out, among other things, Truck's Subrogation Claim, including any and all rights of Truck as subrogee of the Insureds under the Imerys/Cyprus Agreements.

---

[11] References herein to the dockets in *In re Imerys Talc America, Inc., et al.*, Case No. 19-10289-LSS (Bankr. D. Del.), and *In re Cyprus Mines Corporation*, Case 21-10398-LSS (Bankr. D. Del.), are designated as "[Imerys Docket No. ___]" and "[Cyprus Docket No. ___]," respectively.

8.      That carveout was intentional, as Imerys and Cyprus had negotiated with the J&J Parties to ensure Truck would retain all of its rights and claims under the Imerys/Cyprus Agreements.[12] In turn, Truck did not object to the Imerys/Cyprus Settlement; instead, Truck negotiated with Imerys, Cyprus and J&J to secure the inclusion of additional clarifying carveout language in the Imerys/Cyprus Settlement Agreement and the Imerys/Cyprus Settlement Approval Order.

9.      Having ensured the preservation of its Subrogation Claim in the Imerys/Cyprus Chapter 11 Cases, including all attendant rights under the Imerys/Cyprus Agreements, Truck turned its attention to preservation of its Subrogation Claim in the Debtor's Chapter 11 Case.

## III.   The Debtor's Failure to Account for the Subrogation Claim

10.      Prior to the filing of the Chapter 11 Case, Truck had put the J&J Parties on notice of its Subrogation Claim. For instance, Truck made several demands for payment of its Subrogation Claim against certain of the J&J Parties via their counsel, including demand letters dated September 13, 2018, September 12, 2019, February 25, 2020, and August 28, 2023.[13] In fact, Truck's communications with respect to its Subrogation Claim occurred with what is now

---

[12] *See, e.g., Joint Omnibus Reply of the Imerys Debtors, Cyprus Debtor, Imerys TCC, Cyprus TCC, Imerys FCR, and Cyprus FCR in Further Support of Joint Motion of the Imerys Debtors and the Cyprus Debtor for an Order (I) Approving the Settlement Agreement Between the Imerys Debtors, the Cyprus Debtor, Johnson & Johnson, and The Other Parties Thereto, and (II) Approving the Sale of Certain Rights*, ¶¶ 10-11 [Imerys Docket No. 65580] [Cyprus Docket No. 2520] ("Many hotly contested issues arose during negotiations of the Settlement, including issues relating to preserving insurers' subrogation rights. J&J desired a settlement that resulted in complete peace from all claims relating to indemnification obligations under its various agreements with the Debtors, and, initially, that included insurers' subrogation rights. The Debtors, however, understood that they could not bargain away insurers' existing subrogation rights and, instead, negotiated to preserve them. . . To that end, the Settling Parties agreed to carve-out from the J&J Buyback and from the Debtor J&J Released Claims any claims against the J&J Corporate Parties arising out of or in connection with prepetition payments made by insurers to or on behalf of any of the Imerys Parties or Cyprus Parties (the 'Subrogated Claims').").

[13] Truck received responses from counsel to certain of the demand letters, if only to decline Truck's demand for payment of the Subrogation Claim or to engage in any settlement discussions with respect thereto.

special insurance counsel to the Debtor. *See* Docket No. 534 (order authorizing retention of McCarter & English LLP).

11.    The J&J Parties also knew of Truck because Truck appeared in the 2021 Chapter 11 Case. *See In re LTL Management LLC*, Case No. 21-30589 (Bankr. D.N.J.), Docket Nos. 3236 (Notice of Appearance and Request for Service), 3240 (Application for an Order for Admission *Pro Hac Vice*), and 3304 (Order for Admission).

12.    Finally, as noted above, Truck appeared and participated in the Imerys/Cyprus Chapter 11 Cases, having negotiated for the inclusion of language in the Imerys/Cyprus Settlement Agreement and Imerys/Cyprus Settlement Approval Order further clarifying the exclusion of Truck's Subrogation Claim from the J&J Buyback. Indeed, direct negotiations over such language occurred between respective counsel for Truck and J&J.

13.    Given the foregoing notices to and communications with the J&J Parties, Truck was therefore surprised to discover that neither Truck nor the Subrogation Claim was listed in the Debtor's Schedules filed on October 25, 2024 [Docket No. 331], even as disputed.[14]

## IV.    Classification of Truck's Subrogation Claim under the Plan

14.    At no time has Truck received a ballot, let alone any other Plan solicitation materials, from or on behalf of the Debtor, leading Truck to the conclusion that the Debtor intended to treat the Subrogation Claim as "Unimpaired" under the Plan.[15]

---

[14] In contrast, both Imerys and Cyprus are listed as disputed creditors on Schedule E/F *See* Schedule E/F, at 3.33, 3.73, 3.74; *see also Global Notes* to Schedules, at 13 ("In addition, the Debtor has listed the following parties on Schedule E/F: (a) other parties (excluding non-debtor affiliates) that may hold or assert indemnification claims against the Debtor . . . ."). As no bar date has been set in the Chapter 11 Case and the Subrogation Claim is intended to be treated as Unimpaired under the Plan, Truck has not filed a proof of claim. However, Truck reserves its right to do so if and as warranted.

[15] *See* Objection, *infra* ¶ 17 (setting forth Plan definition of "Unimpaired").

1363153v4

15.     Under the Plan, Truck has a "Defense Cost Claim" – *i.e.*, "any Indirect Talc Personal Injury Claim to the extent in respect of legal fees or other out-of-pocket costs incurred in connection with the defense of claims."  Plan, Section 1.1.46.

16.     Under the Plan, Defense Cost Claims are categorized as "Unsecured Claims."  *See* Plan, Section 1.1.168 ("For the avoidance of doubt, Unsecured Claims include Defense Cost Claims."); *see also id.*, Section 3.23(a) ("Class 3 consists of all Unsecured Claims, including Defense Cost Claims, against the Debtor.").[16]

17.     In turn, Unsecured Claims are treated as "Unimpaired" and "Reinstated" in accordance with section 1124 of the Bankruptcy Code. *See* Plan, Section 3.2 (Treatment and Classification of Claims and Interests); *id.*, Section 3.2.3(b) ("On the Effective Date, each Claim in Class 3 shall be Reinstated"); *see also id.*, Section 1.1.120 ("'Reinstated' or 'Reinstatement' means, with respect to Claims and Interests, the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code."); *id.*, Section 1.1.166 ("'Unimpaired' means, as to any Claim or Class of Claims, that such Claim or Class of Claims is not Impaired under the Plan.").

18.     The Plan appears to provide for payment in full of all Unsecured Claims, including Defense Cost Claims, by the Debtor or the Reorganized Debtor, as the case may be.[17]

---

[16] Somewhat confusingly, if not contradictorily, Defense Cost Claims appear to be both a subcategory of "Indirect Talc Personal Injury Claims," on the one hand, and "Reinstated Non-Talc Claims," on the other hand. *Compare* Plan Section 1.1.46 ("'Defense Cost Claim' means any Indirect Personal Injury Claim to the extent . . . .), and Section 1.1.168 ("For the avoidance of doubt, Unsecured Claims include Defense Cost Claims."), *with* Plan Section 1.1.121 ("'Reinstated Non-Talc Claims' means, collectively, <u>all</u> Secured Claims, Unsecured Claims, and Intercompany Claims." (emphasis added)).

[17] While the Plan does not appear to state explicitly that the Debtor or the Reorganized Debtor is responsible for satisfying all Unsecured Claims, neither does the Plan purport to assign responsibility to another entity or the Talc Personal Injury Trust.

**LIMITED OBJECTION**

## I.      Legal Standard

19.      In order to confirm a chapter 11 plan, each class of claims or interests under the plan must either have accepted the plan or be left unimpaired. 11 U.S.C. § 1129(a)(8). In turn, creditors must be given the opportunity to vote on a plan unless their claims are unimpaired, in which case they are deemed to have accepted the plan. *Id.* § 1126(f).

20.      Whether a claim or interest is unimpaired depends in relevant part on whether the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." *Id.* § 1124(1).

21.      "[Section] 1124 provides that any alteration of a creditor's rights, no matter how minor, constitutes impairment." *Western Real Est. Equities, L.L.C. v. Vill. at Camp Bowie I, L.P.* (*In re Vill. at Camp Bowie I, L.P.*), 710 F.3d 239, 245 (5th Cir. 2013) (quotations and citations omitted).

## II.      The Plan Impairs Truck's Subrogation Claim

22.      As noted above, despite Truck's past communications with various J&J Parties and participation in the 2021 Chapter 11 Case, Truck was not afforded an opportunity to vote on the Plan, suggesting that to the extent the Debtor contemplated the Subrogation Claim, the claim was to be treated as Unimpaired. And yet, there are numerous provisions of the Plan which could or would adversely affect Truck's legal, equitable or contractual rights – most notably Truck's Indemnification Rights under the Imerys/Cyprus Agreements – rendering the Subrogation Claim impaired.

**A.    Problems with the Plan Given Uncertainty Surrounding the Fate of the Imerys/Cyprus Settlement**

23.    The Plan currently contemplates one of two scenarios with respect to treatment of the Imerys/Cyprus Agreements, depending on whether the "Imerys/Cyprus Settlement"[18] ultimately takes effect. Those two scenarios can be summarized as follows:

- Scenario #1: "Imerys/Cyprus Settlement Termination Date"[19] Occurs: Sections 4.9.3 (Imerys/Cyprus Related Rights), 5.9.1 (Imerys/Cyprus Agreements), and 10.2.1 (Imerys/Cyprus Related Rights) of the Plan apply.

  It appears that in this scenario, the Debtor's indemnification rights under the Imerys/Cyprus Agreements (the "Imerys/Cyprus Related Rights") are transferred to the Talc Personal Injury Trust to be pursued exclusively by the Trust against the Imerys/Cyprus Parties. Further, the Imerys/Cyprus Agreements are assumed by the Debtor and assigned to the Talc Personal Injury Trust, with "the entry of the Confirmation Order [] constitut[ing] approval of such assumption and assignment pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption and assignment is in the best interest of the Debtor, the Debtor's Estate, and all parties in interest in the Chapter 11 Case." Plan, Section 5.9.1(a). Additionally, no cure payments would be required in connection with such assumption and assignment. *Id.*, Section 5.9.1(b).

- Scenario #2: "Imerys/Cyprus Settlement Closing Date"[20] Occurs: Sections 5.1–5.8 (governing treatment of Executory Contracts and Unexpired Leases generally)[21], 5.9.2 (Imerys/Cyprus Settlement Agreement), and 10.2.2 (Imerys/Cyprus Settlement) of the Plan apply.

---

[18] *See* Plan, Section 1.1.79 ("'Imerys/Cyprus Settlement' means the settlement and release of disputes between LLT (or the Debtor as successor to LLT) and J&J, on the one hand, and Imerys, Cyprus, and their respective Affiliates, on the other hand, pursuant to the Imerys/Cyprus Settlement Agreement.").

[19] *See* Plan, Section 1.1.82 ("'Imerys/Cyprus Settlement Termination Date' means the date, if any, on which the Imerys/Cyprus Settlement Agreement is terminated in accordance with its terms.").

[20] *See* Plan, Section 1.1.81 ("'Imerys/Cyprus Settlement Closing Date' means the date, if any, on which the Imerys/Cyprus Settlement is consummated and becomes fully effective.").

[21] Somewhat confusingly, the Plan speaks to application of Sections 5.1–5.8 in the negative, with Section 5.9.1 providing that those sections "shall not apply to the Imerys/Cyprus Agreements" if the Imerys/Cyprus Settlement Termination Date occurs. *See* Plan, Section 5.9.1 ("If the Imerys/Cyprus Settlement Termination Date occurs, whether prior to, on, or following the Effective Date, the foregoing provisions of this Article V shall not apply . . . ."). In other words, the Plan appears to contemplate a "purgatory" of sorts for the Imerys/Cyprus Agreements if neither the Imerys/Cyprus Settlement Termination Date nor the Imerys/Cyprus Settlement Closing Date has occurred; but the exact treatment of the agreements during that purgatory is unclear to Truck.

It appears that in this scenario, the Imerys/Cyprus Settlement Agreement is assumed by the Debtor or the Reorganized Debtor, as the case may be. The Imerys/Cyprus Agreements are presumably subject to the same treatment as other Executory Contracts under the Plan, calling either for assumption or rejection by the Debtor or the Reorganized Debtor, as the case may be, in accordance with the protocols governing Executory Contracts and Unexpired Leases.

24.     The upshot of these Plan provisions, when taken together with the Imerys/Cyprus Settlement Agreement, is that Truck – which is not a party to the Imerys/Cyprus Settlement Agreement – ultimately has no control over whether the "Imerys/Cyprus Settlement Termination Date" or the "Imerys/Cyprus Settlement Closing Date" is triggered under the Plan. As such, Truck's Indemnification Rights vis-à-vis the Imerys/Cyprus Agreements can be materially and adversely affected under the Plan through no fault of or action by Truck.

25.     For instance, the "Imerys/Cyprus Settlement Termination Date" turns on whether, at any time, the Imerys/Cyprus Settlement Agreement terminates. *See, e.g.,* Plan, Section 4.9.3 ("The following provisions shall apply if the Imerys/Cyprus Settlement Termination Date occurs, whether prior to, on, or following the Effective Date . . . ." (emphasis added)). Termination is predicated on any number of potential events under the Imerys/Cyprus Settlement Agreement, including the failure to achieve the "Voting Affirmation Date" with respect to the pending chapter 11 plans filed by Imerys and Cyprus in the Imerys/Cyprus Chapter 11 Cases.[22] The "Voting Affirmation Date" is defined in the Imerys/Cyprus Settlement Agreement as follows:

[T]he date after the Voting Certification has been filed with the Bankruptcy Court in the Chapter 11 Cases evidencing requisite claimant approval of the Plans on which either (i) the Voting Objection Deadline has expired without (a) any Voting Objection being filed or (b) Voting Objection(s) being filed before expiration of the

---

[22] *See* Imerys/Cyprus Settlement Agreement, Section 8.1 ("This Agreement shall terminate upon any of the following events: . . . (ii) the Trigger Date does not occur on or prior to March 31, 2025 unless such deadline is extended in writing by each of the Parties"); *id.*, Section 2.2.3 ("The 'Trigger Date' shall be the earliest date on which all of the following conditions precedent have occurred: 2.2.1. The Imerys Debtors and the Cyprus Debtor each have filed the J&J Settlement Motion in their respective Chapter 11 Cases[;] 2.2.2. The Bankruptcy Court has entered the J&J Settlement Order[;] 2.2.3. The Voting Affirmation Date." (emphasis added)).

Voting Objection Deadline that, in the reasonable discretion of each of the Imerys Parties, Cyprus Parties and the Claimant Fiduciaries, if granted, individually or collectively could result in one or both of the Plans not having received requisite claimant approval or (ii) if one or more Voting Objection(s) are filed before expiration of the Voting Objection Deadline that, in the reasonable discretion of each of the Imerys Parties, Cyprus Parties and the Claimant Fiduciaries, if granted, individually or collectively could result in one or both of the Plans not having received requisite claimant approval, such Voting Objection(s) are resolved by the applicable parties or the Bankruptcy Court in a manner that confirms both of the Plans have received requisite claimant approval.

Imerys/Cyprus Settlement Agreement, Section 1.66.

26.     The "Voting Objection Deadline" in the Imerys/Cyprus Chapter 11 Cases is currently scheduled for February 3, 2025, with hearing on any Voting Objections scheduled for March 4, 2025. *See Notice of Hearing to Consider Confirmation of Second Joint Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Imerys Docket No. 6736]; *Notice of Hearing to Consider Confirmation of First Amended Plan of Reorganization of Cyprus Mines Corporation under Chapter 11 of the Bankruptcy Code* [Cyprus Docket No. 2655].[23] The hearing on Voting Objections would be <u>subsequent</u> to hearing on confirmation of the Debtor's Plan.

27.     Perhaps even more notable, the Imerys/Cyprus Settlement Termination Date occurs if any of the parties to the Imerys/Cyprus Settlement Agreement, including the Debtor, breaches the agreement and fails to timely cure such breach. *See* Imerys/Cyprus Settlement Agreement, Section 8.3.[24] As with the Voting Affirmation Date, a breach could very well occur subsequent to hearing on confirmation of the Debtor's Plan.

---

[23] It also bears noting that a prior iteration of Imerys' chapter 11 plan fell short due to alleged voting irregularities. *See Opinion* [Imerys Docket No. 4239].

[24] Adding to the uncertainty surrounding the Imerys/Cyprus Settlement is that it is currently the subject of an appeal. *See Notice of Appeal and Statement of Election* [Imerys Docket No. 6748] [Cyprus Docket No. 2658]; *The RMI Insurers' Motion to Stay Pending Appeal The Sale of Certain Indemnity Rights to Johnson & Johnson* [Imerys Docket No. 6750] [Cyprus Docket No. 2660].

28.     Finally, Truck is not one of the "Cyprus/Imerys Parties" under the Plan; nor could it be given the numerous provisions to which the definition applies, many of which are simply inapplicable to Truck as a subrogee. *See* Plan, Section 1.1.77 (providing that the "'Imerys/Cyprus Parties' means all Persons listed on <u>Schedule 2</u>" to the Plan, none of which is Truck); *see also, e.g.*, *id.*, Section 1.1.118(f) (defining "Protected Party" to include the Imerys/Cyprus Parties on a temporary basis under certain conditions). Therefore, impairment of Truck's Subrogation Claim could not be rectified simply by way of adding Truck as a Cyprus/Imerys Party under the Plan.

29.     That either of the foregoing two scenarios is possible, with the outcome prior to hearing on confirmation of the Plan unknown, means that the exact consequences of the Plan on the Subrogation Claim is presently unclear. What is clear, however, is that either scenario impairs Truck's claim.

**B.      Problems with the Plan if Imerys/Cyprus Settlement Termination Date Occurs**

30.     Putting aside the general uncertainty of outcome for Truck's Subrogation Claim, there are also specific issues with the Plan under Scenarios #1 and #2 identified above. If the Imerys/Cyprus Settlement Termination Date occurs – such that the Imerys/Cyprus Agreements are assumed and assigned <u>to the Talc Personal Injury Trust</u> under Section 5.9.1 of the Plan, along with assignment of the Imerys/Cyprus Related Rights under Section 4.9.3 of the Plan – it begs the question as to how Truck is expected to enforce its Subrogation Claim, which necessarily requires enforcement of the applicable Imerys/Cyprus Agreements <u>against the Debtor or the Reorganized Debtor</u>, as the case may be, against whom the claim is expected to remain under the Plan.

31.     Additionally, Section 5.9.1 of the Plan provides for automatic cure of the Imerys/Cyprus Agreements without any cure payment.[25] However, as noted above, the J&J Parties

---

[25] Presumably the Plan is intended to preserve the Indemnification Rights of the Cyprus/Imerys Parties in the event the Imerys/Cyprus Settlement Agreement Termination Date occurs. *See, e.g.,* Plan, Section

have refused Truck's prior payment demands, meaning that the Debtor is currently in default under the applicable Imerys/Cyprus Agreements. As such, the Plan impairs Truck's entitlement to cure – *i.e.*, satisfaction of its Subrogation Claim – as a necessary precondition to assumption or assumption/assignment. *See* 11 U.S.C. § 365(b)(1)(A) ("If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .").[26]

### C.    Problems with the Plan if Imerys/Cyprus Settlement Closing Date Occurs

32.    In the event the Imerys/Cyprus Settlement Closing Date occurs, however, Truck's Subrogation Claim is still impaired.

33.    For one thing, it is unclear whether, under the Plan, the Debtor intends to treat the Imerys/Cyprus Agreements as executory in the event the Imerys/Cyprus Settlement Closing Date occurs. The Plan seems to imply as much, referencing the applicability of Article V (Treatment of Executory Contracts and Unexpired Leases) in the event the Imerys/Cyprus Settlement Termination Date does not occur. *See* Plan, Section 5.9.1; *but see* Schedule G (not listing any of the Imerys/Cyprus Agreements as executory). Assuming the Debtor intends to treat the Imerys/Cyprus Agreements as executory, Truck would object to any such treatment without an opportunity litigate the merits of such determination.

---

10.2.1(c)(i) (No Impairment of Rights or Obligations of Imerys/Cyprus Parties); *see also id.*, Section 1.1.40 (providing that "Cure Amount Claim" generally applicable to Executory Contracts does not apply in the event the Imerys/Cyprus Settlement Termination Date occurs). But again, Truck is not a Cyprus/Imerys Party and therefore lacks the requisite protections regarding its rights under the Imerys/Cyprus Agreements.

[26] Truck objects to assumption or assumption/assignment of the Imerys/Cyprus Agreements to the extent the Plan treats the agreements as executory. Truck reserves the right to contest on the merits whether the agreements are, in fact, executory.

34.     In the event the Imerys/Cyprus Agreements are treated as executory, then Truck's rights under the Imerys/Cyprus Agreements may be prejudiced to the extent that Truck is not treated as a party to those agreements. *See, e.g.,* Plan, Section 5.3.2(a) ("After the entry of the Confirmation Order, the Debtor shall serve upon each party to an Executory Contract or Unexpired Lease being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed or assumed and assigned and, if applicable, any assignee; (ii) the Cure Amount Claim, if any, that the Debtor believes would be payable in connection with such assumption; and (iii) the procedures for such party to object to the assumption or assumption and assignment of the applicable contract or lease or the amount of the proposed Cure Amount Claim." (emphasis added)); *id.*, Section 5.5.2(a) ("After the entry of the Confirmation Order, the Debtor shall serve upon each party to an Executory Contract or Unexpired Lease being rejected pursuant to the Plan notice of such proposed rejection." (emphasis added)).[27]

35.     Whether intentional or merely an oversight, at its essence, the Plan does not appear to fully and accurately account for Truck's Subrogation Claim and/or Truck's rights under the Imerys/Cyprus Agreements. As a result, Truck's claim is impaired in any number of ways, as explained above.

### PROPOSED RESOLUTION OF TRUCK'S LIMITED OBJECTION

36.     The Debtor can readily resolve this Objection by way of incorporating "neutrality language" acceptable to Truck into the Confirmation Order. Such language would need to make clear that, notwithstanding any conflicting or inconsistent provisions in the Plan, Truck's Subrogation Claim is unimpaired and all of Truck's rights and claims under the Imerys/Cyprus

---

[27] While the Debtor has indicated that no Executory Contracts are anticipated to be rejected, *see* Exhibit L to the Plan, the Debtor also "reserves the right, at any time prior to the Effective Date, to amend Exhibit L . . . ."), Plan, Section 5.1.

Agreements are preserved. To that end, the following language (the "**Neutrality Provision**") is both necessary and appropriate:

> **Preservation of Rights and Claims of Truck Insurance Exchange ("Truck").** Notwithstanding any other provision of the Plan, the Plan Documents, or this Confirmation Order, nothing contained therein or herein, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying any rights or claims of Truck (by way of subrogation or otherwise) against the Debtor or the Reorganized Debtor (as applicable) arising out of, under, related to, or in connection with any Imerys/Cyprus Agreement, including Truck's Defense Cost Claim, all such rights and claims being expressly preserved. For any and all issues relating to any indemnification rights of Truck under any Imerys/Cyprus Agreement(s), including the venue and choice-of-law rules for resolving disputes relating thereto, the provisions, terms, conditions, and limitations of the applicable Imerys/Cyprus Agreement(s) shall control. The Plan, the Plan Documents, this Confirmation Order, and all proceedings, determinations, and findings in, of, or by the Bankruptcy Court are neutral with respect to, and have no effect on, the rights and claims of Truck against the Debtor or the Reorganized Debtor (as applicable) arising out of, under, related to, or in connection with the Imerys/Cyprus Agreements. Nothing in the Chapter 11 Case shall be construed otherwise or be used as evidence to support or suggest a construction to the contrary.

37.    Notably, the Neutrality Provision has been adapted in substantial part from the Plan itself. *See* Plan, Section 10.2.1(c) (No Impairment of Rights or Obligations of Imerys/Cyprus Parties). In other words, Truck is effectively seeking preservation of those rights that the Debtor already proposed with respect to the Cyprus/Imerys Parties (including the Insureds).

## CONCLUSION

Truck asserts this Objection solely to preserve its Subrogation Claim which, whether intentionally or not, is impaired under the Plan. Truck prefers that the Debtor resolve the Objection by way inserting the Neutrality Provision into any order confirming the Plan. If not, then Truck requests that the Court sustain the Objection and either require inclusion of the Neutrality Provision or deny confirmation of the Plan.

1363153v4

Dated:  December 6, 2024

Respectfully submitted,

By: */s/ Michael J. Durrschmidt*

Michael J. Durrschmidt
Kim E. Lewinski
HIRSCH & WESTHEIMER, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002
T. 713 220 9197
F. 713 223 9319
mdurrschmidt@hirschwest.com
klewinski@hirschwest.com

and

Erich S. Buck (admitted *pro hac vice*)
ADELMAN & GETTLEMAN, LTD.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604
Tel: (312) 435-1050
Fax: (312) 435-1059
ebuck@ag-ltd.com

*Counsel for Truck Insurance Exchange*

## <u>CERTIFICATE OF SERVICE</u>

I, Kim Lewinski, hereby certify that a true and correct copy of the Limited Objection by Truck Insurance Exchange to the Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor was served in accordance with Fed. R. Bankr. P. 4001(a)(1) and Local Rule 4001-1(a)(4) on December 6, 2024 via the Clerk of the Court through the CM/ECF system, to the following parties via email:

**PROPOSED COUNSEL TO THE DEBTOR:**
JONES DAY
c/o Gregory M. Gordon
c/o Brad B. Erens
c/o Dan B. Prieto
c/o Amanda Rush
2727 N. Harwood Street
Dallas, Texas 75201
Email: gmgordon@jonesday.com
Email: bberens@jonesday.com
Email: dbprieto@jonesday.com
Email: asrush@jonesday.com

PORTER HEDGES LLP
c/o John F. Higgins
c/o M. Shane Johnson
c/o Megan Young-John
c/o James A. Keefe
1000 Main Street, 36th Floor
Houston, Texas 77002
Email: jhiggins@porterhedges.com
Email: sjohnson@porterhedges.com
Email: myoung-john@porterhedges.com
Email: jkeefe@porterhedges.com

**PROPOSED INTERIM COUNSEL TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS:**
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
c/o Sander L. Esserman
c/o Peter C. D'Apice
2323 Bryan Street, Ste. 2200
Dallas, TX 75201
Email: esserman@sbep-law.com
Email: dapice@sbep-law.com

**FUTURE CLAIMS REPRESENTATIVE:**
RANDI S. ELLIS, LLC
c/o Randi S. Ellis
5757 Indian Circle

1363153v4

Houston, TX 77027

BRACEWELL LLP
c/o William A. (Trey) Wood III
c/o Jason G. Cohen
c/o Nancy McEvily Davis
Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002
Email: trey.wood@bracewell.com
Email: jason.cohen@bracewell.com
Email: nancy.davis@bracewell.com

**COUNSEL TO THE AHC OF SUPPORTING COUNSEL:**
PAUL HASTINGS LLP
c/o Kris Hansen
c/o Kenneth Pasquale
c/o Ryan Montefusco
200 Park Avenue
New York, NY 10166
Email: krishansen@paulhastings.com
Email: kenpasquale@paulhastings.com
Email: ryanmontefusco@paulhastings.com

c/o Matthew M. Murphy
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Email: mattmurphy@paulhastings.com

c/o Schlea M. Thomas
600 Travis Street, 58th Floor
Houston, Texas 77002
Email: schleathomas@paulhastings.com

PARKINS & RUBIO LLP
c/o Lenard M. Parkins
c/o Charles M. Rubio
700 Milam, Suite 1300
Houston, TX 77002
Email: lparkins@parkinsrubio.com
Email: crubio@parkinsrubio.com

**OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 7:**
c/o Jayson B. Ruff
c/o Ha Minh Nguyen
515 Rusk, Suite 3516

1363153v4

Houston, Texas 77002
Email: jayson.b.ruff@usdoj.gov
Email: ha.nguyen@usdoj.gov

By: */s/Kim Lewinski*
      Kim Lewinski