UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> RED RIVER TALC LLC,[1] <br><br>   Debtor. | Chapter 11 <br><br> Case No. 24-90505 (CML) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PERMITTING
CLIENTS OF SUMMERS & JOHNSON, P.C. TO CHANGE THEIR VOTES**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtor (the "Debtor") moves the Court for the entry of an order permitting clients of Summers & Johnson, P.C. ("Summers & Johnson") to change their votes. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent

---

[1]  The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The basis for the relief requested herein is Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

4. Pursuant to Bankruptcy Rule 3018(a), the Debtor requests certain clients of Summers & Johnson be permitted to change their votes consistent with an amended master ballot submitted by Summers & Johnson.

## BACKGROUND

5. On September 20, 2024 (the "Petition Date"), the Debtor commenced this reorganization case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is a Texas limited liability company and is the direct parent of non-debtor Royalty A&M LLC, a Texas limited liability company, which manages a portfolio of royalty revenue streams, including some based on third party sales of certain products, and seeks opportunities to acquire or finance additional royalty revenue streams.

6. The Debtor's objective in this Chapter 11 Case is to obtain confirmation of the *Second Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 722] (the "Second Amended Plan"),[2] which is a prepackaged plan of reorganization containing terms supported by the vast majority of holders of Channeled Talc Personal Injury Claims—the only claims affected by the Second Amended Plan's terms. Comprehensive descriptions of the

---

[2] The Second Amended Plan amended the *Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 25-1] (the "Initial Plan") and the *Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 24] (the "Amended Plan"). Capitalized terms not otherwise defined herein have the meanings given to them in the Initial Plan, the Amended Plan and the Second Amended Plan.

Debtor, its history, its assets and liabilities and the events leading to the commencement of this Chapter 11 Case can be found in the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 25-2], which was filed on the Petition Date, and in the *Declaration of John K. Kim in Support of Chapter 11 Case and Certain First Day Pleadings* [Dkt. 17] (the "First Day Declaration"), which is incorporated herein.

7. On October 22, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of talc claimants [Dkt. 313] (the "TCC") pursuant to section 1102 of the Bankruptcy Code. On November 13, 2024, the Court entered an order [Dkt. 529] appointing Randi S. Ellis as the legal representative for future talc claimants.[3]

8. Prior to the Petition Date, LLT Management LLC ("LLT"), on behalf of the Debtor, solicited votes on the Initial Plan. In connection with that solicitation, the Solicitation Agent distributed solicitation packages to, among other entities, every law firm that, according to LLT's books and records, represents holders of Channeled Talc Personal Injury Claims. The solicitation packages provided recipients with notice of the general voting deadline of July 26, 2024 at 4:00 p.m. (prevailing Central Time).

9. On July 25, 2024, Summers & Johnson submitted a master ballot, a copy of which is attached hereto as Exhibit A (the "Original Ballot").[4] The Original Ballot, which was executed by David Summers, identified and cast the votes of 36 Summers & Johnson clients. See Ex. A, 4. Of that number, 32 voted to reject the Initial Plan, and four voted to accept the Initial Plan. See id.

---

[3] On November 25 and 26, 2024, notices of appeals of this order were filed [Dkts. 666, 673].

[4] For confidentiality reasons, the copy of the Original Ballot does not include its accompanying spreadsheet of claimants.

10. At the end of the solicitation period for the Initial Plan and at the request of certain objecting firms, the Debtor agreed to delay its bankruptcy filing and pause the voting certification to provide the parties time to negotiate a resolution of their objections to the Initial Plan. First Day Decl. ¶ 127. Following these negotiations, an agreement was reached with The Smith Law Firm PLLC, which included, among other things, the Debtor's contribution of an additional $1.1 billion to the Talc Personal Injury Trust to fund talc claims subject to Individual Claim Review under the Trust Distribution Procedures. Id. at ¶ 131. The agreement was memorialized in a memorandum of understanding among the parties, and its terms were incorporated into the Amended Plan to the extent applicable. Id. at ¶ 130.

11. On November 15, 2024, the Debtor, Johnson & Johnson and the TCC entered into a *Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support* [Dkt. 560] (the "TCC MOU"). The TCC subsequently filed the *Statement of the Committee of Talc Claimants in Support of the Debtor's Chapter 11 Case, Forthcoming Amended Plan and Plan Process* [Dkt. 613], which reiterated the TCC's support for the Amended Plan, as further amended by the TCC MOU. On December 9, 2024, the Debtor filed the Second Amended Plan, which incorporated the terms of the TCC MOU to the extent applicable.

12. On December 6, 2024, Summers & Johnson submitted an amended master ballot, a copy of which is attached hereto as Exhibit B (the "Amended Ballot").[5] The Amended Ballot, which, like the Original Ballot, is executed by David Summers, identifies and seeks to cast the votes of the same 36 Summers & Johnson clients who voted by the Original Ballot. See

---

[5] For the same confidentiality reasons applicable to the Original Ballot, the copy of the Amended Ballot likewise does not include its accompanying spreadsheet of claimants.

Ex. B, 4. Pursuant to the Amended Ballot, however, 33 such clients have now voted to accept the Second Amended Plan. See id.

13. David Summers, on behalf of the clients of Summers & Johnson, has indicated to the Debtor that he has considered the position of his clients with respect to the Second Amended Plan and believes the TCC MOU, as incorporated in the Second Amended Plan, is in the best interests of his clients. The Debtor understands that Mr. Summers communicated directly with his clients, and following these conversations, 29 of Summers & Johnson's clients determined to change their vote with respect to the Second Amended Plan. Mr. Summers has confirmed to the Debtor that the Amended Ballot reflects his clients' votes with respect to the Second Amended Plan. The Debtor, therefore, requests that the Court permit the 29 Summers & Johnson clients who previously voted to reject the Initial Plan to change their votes consistent with the Amended Ballot.

## BASIS FOR RELIEF REQUESTED

14. Bankruptcy Rule 3018(a) provides in relevant part that "[f]or cause shown, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection." Fed. R. Bankr. P. 3018(a). Neither the Bankruptcy Code nor the Bankruptcy Rules define "cause," and it is "up to judges to determine cause' based on the context and to grant or deny a motion in their discretion." In re Imerys Talc Am., Inc. No. 19-10289 (LSS), 2021 WL 4786093, at *7 (Bankr. D. Del. Oct. 13, 2021) (citing In re MPM Silicones, LLC, No. 14-22503, 2014 WL 4637175, at *2 (Bankr. S.D.N.Y. Sept. 17, 2014) and In re J.C. Householder Land Tr. # 1, 502 B.R. 602, 605-606 (Bankr. M.D. Fla. 2013)).

15. Cause to change a vote on a chapter 11 plan must involve "more than a mere change of heart." MPM Silicones, 2014 WL 4637175, at *3 (quoting In re Windmill Durango Office, LLC, 481 B.R. 51 (B.A.P. 9th Cir. 2012)). Nevertheless, "[t]he test for

-5-

determining whether cause has been shown should not be a difficult one to meet. As long as the reason for the vote change is not tainted, the change of vote should usually be permitted. The court must only ensure that the change is not improperly motivated." In re MCorp Fin., Inc., 137 B.R. 237, 238 (Bankr. S.D. Tex. 1992) (quoting 8 Collier on Bankruptcy, ¶ 3018.03[4] (15th ed. 1991)); see also Imerys Talc, 2021 WL 4786093, at *6 ("The overarching concern underlying Rule 3018 is that any vote change not be "improperly motivated . . . .").

16. Common examples of improper motivations to change votes include attempts by claim purchasers to block confirmation, e.g., Windmill Durango, 481 B.R. at 65 (citing In re Kellogg Square P'ship, 160 B.R. 332 (Bankr. D. Minn. 1993)), and promises of outside consideration unavailable to other creditors in exchange for settlement. See In re Jartran, Inc., 44 B.R. 331, 363 (Bankr. N.D. Ill. 1984) ("Where leave to amend a ballot is sought pursuant to a contract with fewer than all members of a class and constitutes partial consideration thereunder, the proposed amendment is inappropriate as against public policy . . . ."); see also MCorp, 137 B.R. at 239 (evidence did not overcome possibility of improper motivation where circumstances surrounding creditor's settlement with debtor were "highly suspect").

17. "Cause" is exemplified, on the other hand, by motivations that further the Bankruptcy Code's goal of a consensual process. Fifth Circuit courts have found that "subsequent negotiations between the plan proponent and the party seeking to change its ballot suffices as the required cause" under Bankruptcy Rule 3018(a). In re Cajun Elec. Power Co-op., Inc., 230 B.R. 715, 744 (Bankr. M.D. La. 1999) (citing In re Texas Extrusion Corp., 844 F.2d 1142 (5th Cir. 1988) and In re Am. Solar King, 90 B.R. 808 (Bankr. W.D. Tex. 1988)). "The goal after all is consensual plans." Cajun Elec. 230 B.R. at 744 (quoting Am. Solar King, 90 B.R. at 825).

18. "Such being the goal, what greater evidence of cause exists than where major parties in a chapter 11 proceeding negotiate a settlement of highly complex litigation, thus helping to pave the way to a consensual plan?" Cajun Elec., 230 B.R. at 744. "[W]here the plan proponent does not oppose the vote being changed, the courts generally support the change over the objection of a still-dissenting creditor, in furtherance of the courts' and the Code's policy in favor of consensual negotiation of Chapter 11 plans." MPM Silicones, 2014 WL 4637175, at *3 (citing In re Dow Corning Corp., 237 B.R. 374, 378-79 (Bankr. E.D. Mich. 1999)).

19. Because the modifications made to the Initial Plan only improved the treatment of Channeled Talc Personal Injury Claims, votes cast in respect of the Initial Plan apply to the Second Amended Plan unless those votes are changed. See 11 U.S.C. § 1127(a) ("The proponent of a plan may modify such plan at any time before confirmation . . . . After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan."); Bankruptcy Rule 3019 (if "the proposed modification does not adversely change the treatment of the claim of any creditor . . . , it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan."). "Based on the policy of encouraging consensual plans in Chapter 11 cases," therefore, beneficial plan modifications that lead a claimant to reconsider their original rejecting vote establish cause. In re CGE Shattuck, LLC., No. 99-12287-JMD, 2000 WL 33679416, at *3 (Bankr. D.N.H. Nov. 28, 2000) (authorizing creditor to reconsider his original vote based on plan modification made after the voting deadline that did not adversely affect any party).

20. According to Summers & Johnson, its clients who previously voted to reject the Initial Plan seek to change their votes following communications with their counsel, who believes the TCC MOU, as incorporated in the Second Amended Plan, is in the best

interests of his clients.  Because the TCC MOU and the Second Amended Plan materially benefits Summers & Johnson's clients, and those individuals wish to change their votes, cause exists to permit these changed votes, as reflected in Summers & Johnson's Amended Ballot.  The Debtor does not oppose these changes in votes and requests that these claimants be permitted to change their votes consistent with the Amended Ballot.

## **NOTICE**

21.     Notice of this Motion has been provided to:  (a) Summers & Johnson; (b) the U.S. Trustee; (c) proposed counsel to the TCC; (d) pro se claimants as identified in the Initial Plan solicitation process; (e) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; (f) the legal representative for future talc claimants and her proposed counsel; (g) counsel to the Ad Hoc Committee of Supporting Counsel; and (h) any party that has requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that the Court:  (i) enter an order substantially in the form submitted herewith granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated:  December 9, 2024<br>Houston, Texas | Respectfully submitted,<br><br>/s/ *John F. Higgins*<br>John F. Higgins (TX 09597500)<br>M. Shane Johnson (TX 24083263)<br>Megan Young-John (TX 24088700)<br>James A. Keefe (TX 24122842)<br>PORTER HEDGES LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 226-6000<br>Facsimile:  (713) 228-1331<br>jhiggins@porterhedges.com<br>sjohnson@porterhedges.com<br>myoung-john@porterhedges.com<br>jkeefe@porterhedges.com<br><br>Gregory M. Gordon (TX 08435300)<br>Dan B. Prieto (TX 24048744)<br>Brad B. Erens (IL 06206864)<br>Amanda Rush (TX 24079422)<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone:  (214) 220-3939<br>Facsimile:   (214) 969-5100<br>gmgordon@jonesday.com<br>dbprieto@jonesday.com<br>bberens@jonesday.com<br>asrush@jonesday.com<br><br>PROPOSED ATTORNEYS FOR DEBTOR |

**Certificate of Service**

I certify that on December 9, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtor's claims, noticing and solicitation agent.

/s/ *John F. Higgins*
John F. Higgins