IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC, LLC, | Case No. 24-90505 (CML) |
| Debtor.[1] | |

**TRAVELERS' REPLY TO EMERGENCY MOTION TO COMPEL**

Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company) and The Travelers Indemnity Company (together, "Travelers") hereby files this Reply to its *Emergency Motion to Compel* [Docket No. 682] (the "Motion"). In support hereof, Travelers respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Travelers seeks to compel Debtor Red River Talc LLC (the "Debtor") to produce communications with underlying claimants' counsel responsive to Requests 11-13, 20-21, 23 of J&J Insurers' First Set of Requests for Production of Documents to Debtor and moves to compel the Debtor and Johnson & Johnson ("J&J") to produce communications with underlying claimants' counsel responsive to Requests 12-14 and 21-22, 24 of J&J Insurers' First Set of Requests for Production of Documents to J&J (collectively, the "Requests").

2. For weeks, the Debtor (and later J&J) refused to tell Travelers and its other insurers whether a claim of privilege was being asserted over all documents responsive to the Requests beyond documents filed on the docket in this bankruptcy and the transactional documents creating the Debtor. To get an answer to this basic question, Travelers was forced to file the Motion.

---

[1] The last four digits of the Debtor's taxpayer identification number is 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

4921-2962-8677

3.      The Debtor and J&J have now finally confirmed that indeed, they are asserting a claim of privilege over all documents responsive to the Requests other than the publicly filed documents and transaction documents, and are seeking to block access to such documents either in the form of a pre-settlement mediation privilege or a post-settlement common interest privilege. *See Debtor and Johnson & Johnson's Objection to Travelers' Emergency Motion to Compel the Debtor and J&J to Produce Non-Privileged Documents Responsive to Certain Requests of Insurers* [Docket No. 692] (the "<u>Objection</u>").

4.      This sweeping assertion of privilege is unsupported by the facts or law. The Debtor has put the "extensive, arms-lengths" negotiations it had with claimants regarding the Plan at issue, and Travelers is entitled to discovery to test whether, in fact, the Plan was negotiated in good faith—a fact that the Debtor necessarily will have to prove for the Plan to be confirmed. Indeed, the Plan itself is replete with assertions such as that "[t]he Plan, the other Plan Documents, and the Confirmation Order constitute a good faith compromise and settlement of claims and controversies based on the unique circumstances of this Chapter 11 Case . . . ." *Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Docket No. 24] § 9.8.

5.      That said, even if the Court should find that the Debtor and J&J have not waived the applicable privileges by putting the good faith nature of their negotiations at issue, there is nonetheless no blanket mediation privilege for all settlement communications with claimants and no blanket common interest privilege for all post-settlement communications.

6.      Not long ago, when J&J was in the Insurers' shoes, it agreed that there are no blanket privileges for mediation discussions and purported common interest communications. In the *Imerys* bankruptcy, J&J, an alleged indemnitor of the debtor, argued strenuously against the broad application of the mediation privilege and common interest privilege to prevent discovery

4921-2962-8677

into plan negotiations. J&J and the Debtor's predecessor argued that the very documents Travelers seeks here—those related to the negotiation of the Plan—are "***critical evidentiary matters that go to the heart of the confirmation requirements under the Bankruptcy Code (including the requirement under section 1129(a)(3) that a Plan be proposed in good faith)*** . . . ." *In re Imerys Talc Am., Inc.*, No.19-10289 (LSS), ECF No. 4331, at 5 (Bankr. D. Del. Nov. 8, 2021) (emphasis added) (attached as **Exhibit 1**). J&J and the Debtor's predecessor similarly argued that "the promotion of frank discussions is not a legitimate basis for denying discovery regarding issues addressed during the mediation that directly impact non-mediating parties, nor is it a basis to abuse the mediation privilege." *Id.* at 4. J&J further noted that "[a] shared desire to have a settlement and plan approved cannot shield *every single* communication between the Plan Proponents." *In re Imerys Talc Am., Inc.*, No.19-10289 (LSS), ECF No. 2845, at 3 (Bankr. D. Del. Jan. 25, 2021) (attached as **Exhibit 2**). J&J was correct when it argued for disclosure of the Plan negotiations. J&J's 180-degree turn-about on the proper disclosure of Plan negotiations—which it argued in *Imerys* were not only discoverable but "critical" to objections to the Plan for lack of good faith—demonstrates the hollowness of its current position.

7.  As the Motion seeks documents that both Travelers and J&J agree "should be fair game for. . . discovery in connection with Plan confirmation," Travelers requests that this Court order the Debtor and J&J to produce all communications with the underlying claimants' counsel that are responsive to the Requests, including all documents related to the Plan and Plan Documents, including the proposed Trust Distribution Procedures and provisions affecting the Insurers' policies. Ex. 1 at 7.

**BACKGROUND**

8. On October 31, the Insurers served requests for production on the Debtor. On November 12, the Insurers served requests for production on J&J. Neither the Debtor nor J&J produced or agreed to produce *any* documents responsive to the Insurers' requests beyond documents that were purportedly produced in the prior LTL bankruptcies or that were to be produced in this bankruptcy in response to requests from other parties. Despite the fact that the Debtor and J&J essentially ignored the Insurers' requests for production by refusing to produce any documents responsive to the Insurers' requests beyond what had already been produced or would be produced, the Insurers agreed not to press for additional production on the vast majority of their Requests. However, the Insurers sought clarity regarding whether the Debtor and J&J had additional responsive documents they were withholding or were asserting a claim of privilege over all documents responsive to certain insurance and Plan-related requests. The Debtor and J&J refused to provide this clarity, forcing Travelers to file the Motion.

9. On November 30, Travelers met and conferred with the Debtor and J&J. For the first time, the Debtor and J&J told Travelers that they were asserting a claim of privilege over all documents responsive to the Requests, including all communications with underlying claimants' counsel concerning the Plan. Travelers asked that the Debtor and J&J provide a statement in writing that it was asserting a claim of privilege over all such documents and suggested that it could do so by providing Travelers with a categorical privilege log so that the scope of such an expansive privilege claim could be tested before this Court.

10. On December 3, the Debtor and J&J filed their Objection, stating for the first time in writing that "they did not identify any additional non-privileged documents responsive to the Requests." Objection at ¶ 14. The Debtor and J&J have not produced any privilege log, categorical

4921-2962-8677

or otherwise, to identify the scope of the withheld documents, the senders or receivers, or the timing of when the claimed privilege allegedly morphed from "mediation" to "common interest" and for which claimants. This information is important to a fair contest on the issues. By way of example, the first mediation session revealed by deposition testimony in this case occurred on June 1, 2024, but it is unknown whether the Debtor and J&J are asserting a mediation privilege over communications that far pre-date this session (or the date of the first session if there were previous sessions) or even when the Debtor and J&J assert that the mediation privilege first began. The Debtor and J&J should not be allowed to shroud all their Plan negotiations under broad-based assertions of blanket privilege and then refuse to provide information to test their privilege assertions.

## ARGUMENT

11. The Debtor and J&J cannot use their Plan negotiations with the underlying claimants' counsel as both a sword and shield. To confirm its Plan, the Debtor must prove it was proposed in good faith under section 1129(a)(3) of the Bankruptcy Code. *See Financial Security Assurance v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997). The Debtor and J&J have indicated that they will rely on the "extensive, arms-length" negotiations with claimants to show good faith. *See Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Docket No. 25 Ex. B] (asserting the Debtor formulated the Plan "[a]fter extensive negotiations with representatives of the overwhelming majority of claimants asserting ovarian cancer-related talc claims . . ."); *Declaration of John K. Kim in Support of Chapter 11 Case and Certain First Day Pleadings* [Docket No. 17] (asserting that the TDPs "were the product of extensive, arms-length negotiations with claimant representatives."). The Plan itself asserts that "[t]he Plan, the other Plan Documents, and the

5

Confirmation Order constitute a good faith compromise and settlement of claims and controversies based on the unique circumstances of this Chapter 11 Case," Plan § 9.8, and the Debtor will presumably be asking this Court to make express findings to that effect.

12.     Having put the Plan negotiations squarely at issue, the Debtor and J&J cannot simply assert that the Plan was the result of good-faith negotiations and then refuse to provide Travelers and other parties in interest with the discovery necessary to test those assertions.  *See Conkling v. Turner,* 888 F.2d 431, 434 (5th Cir. 1989) ("The great weight of authority holds that . . . privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."); *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1426 n.13 (3d. Cir. 1991) ("If partial waiver does disadvantage the disclosing party's adversary by, for example, allowing the disclosing party to present a one-sided story to the court, the privilege will be waived as to all communications on the same subject.").

13.     Judge Silverstein's decision in *Boy Scouts* is instructive.  *See In re Boy Scouts of Am.,* No. 20-10343 (LSS), ECF No. 6798 (Bankr. D. Del. Oct. 25, 2021) (attached as **Exhibit 3**). In *Boy Scouts*, Judge Silverstein reasoned that, when a debtor uses the fact of negotiations to meet the good-faith standard in the context of plan confirmation, discovery regarding the negotiations must be allowed.  *See id.* at 13:14–18 (by using the fact of mediation to meet the Bankruptcy Code's good faith standard, the debtor has "put the mediation, at least with respect to the good faith of the TDPs, at issue").  As Judge Silverstein recognized, "[i]t cannot be the case that if a party is relying on the very fact of mediation to meet its standard of proof, that discovery is prohibited regarding the *bona fides* of the mediation." *Id.* at 13:25-14:3.  So too here—the Debtor

6

cannot rely on the fact of negotiations to show good faith while refusing Travelers discovery into the *bona fides* of those negotiations.

14. The court in *Imerys* reached the same conclusion. In *Imerys*, J&J forcefully argued that because the debtor had asserted in bankruptcy filings the Plan was the product of good-faith negotiations, J&J was entitled to test that assertion. *See* Ex. 2 at 5 ("because the Debtors have injected the propriety of the negotiations as a core issue in this case, J&J and others are entitled to test that proposition"). Specifically, J&J argued:

> "The TCC and the FCR, along with the other Plan Proponents, **cannot have it both ways**: **They cannot assert that their Plan is the product of good-faith negotiations and then deprive parties in interest of the discovery necessary to challenge those *ipse dixit* assertions** . . . . [b]ut that is exactly what they seek to do here."

*In re Imerys Talc Am., Inc.*, No.19-10289 (LSS), ECF No. 2844, at 1 (Bankr. D. Del. Jan. 25, 2021) (emphasis added) (attached as **Exhibit 4**).

15. Judge Silverstein agreed, finding that, based in part on the "reliance by [plan proponents] in the instance on their negotiations to formulate the TDPs, discovery of the requested material terms of the TDPs is warranted." *In re Imerys Talc Am., Inc.*, No.19-10289 (LSS), ECF No. 3004, at 8 (Bankr. D. Del. Feb. 23, 2021) (attached as **Exhibit 5**).

16. Moreover, there is no blanket mediation privilege that protects all settlement communications between J&J and the Debtor, on the one hand, and counsel for claimants, on the other. The burden is on J&J and the Debtor, as the parties asserting the privilege, to prove that the privilege applies to the communication in question. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.").

7

17. The Federal Rules of Evidence do not recognize a mediation privilege. Rule 408 makes inadmissible settlement offers or "conduct or a statement made during compromise negotiations about the claim," but only when used "either to prove or disprove the validity or amount of a disputed claim" or for impeachment. FED. R. EVID. 408. Rule 408 does not protect such information from discovery. *See Hyde & Hyde, Inc. v. Mount Franklin Food*, LLC, EP-11-CA-08, 2021 WL 12862826, at *2 (W.D. Tex. Jan. 6, 2012) (Rule 408 does not create a settlement discussion privilege and merely serves to limit admissibility for certain purposes).

18. Importantly, Rule 408 expressly allows evidence from settlement discussions to be used "to prove bad faith negotiations, and to prove other wrongful activity that occurred during the settlement negotiations themselves." *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1256 (D. Or. 2009); *see also Hawk Tech. Sys., LLC v. Castle Retail, LLC,* No. 2:20-cv-2766, 2023 WL 5437454, at *1 (W.D. Tenn. Aug. 23, 2023) (citing *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000)) (holding compromise negotiation evidence admissible to prove bad faith). Where, as here, discussions and any documents exchanged are relevant to a later inquiry regarding the good-faith nature of the communications and negotiations, such evidence should not be shielded from discovery. *See Princeton Dig. Image Corp. v. Office Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3420947, at *2 (D. Del. Aug. 9, 2017) (admitting exhibits that relate to settlements under Rule 408 to establish that plaintiff breached an agreement in bad faith); *see also* Ex. 1 at 8-9 (collecting cases).

19. While the Debtor and J&J refer to a federal mediation privilege in their Objection, the Fifth Circuit has not recognized a federal mediation privilege, and the Southern District of Texas has sided with the majority of federal courts that have declined to recognize a "settlement negotiation" privilege. *Performance Aftermarket Parts Group, Ltd., v. TI Gr'p Auto. Sys, Inc.*,

8

2007 WL 1428628, at *3 (S.D. Tex. May 11, 2007) (finding "well-reasoned and persuasive" the opinion in *In re Subpoena Issued to Commodity Futures Trading Comm.*, 370 F. Supp. 2d 201, 208–212 (D.D.C. 2005), *aff'd on other grounds*, 439 F.3d 740 (D.C. Cir. 2006)).  Other circuits are in accord.  *E.g., In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979); *but see Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979-83 (6th Cir. 2003) (recognizing federal mediation privilege).

20. Moreover, any "mediation privilege" established by the Procedures for Complex Cases in the Southern District of Texas (¶ 53) is inapplicable with respect to pre-filing Plan negotiations, when there was no case then-pending in the Southern District of Texas.

21. With respect to post-filing Plan negotiations, Judge Silverstein in *Boy Scouts* overrode a similar provision in the then-existing Local Rules in Delaware in light of the collective nature of the bankruptcy proceeding and the good-faith findings the court was asked to make.  *See generally* Ex. 3 at 10–15.  As Judge Silverstein reasoned, these default rules work well in a traditional, two-party dispute in which parties resolve issues bearing only upon those two parties. But application to a comprehensive mediation in a multi-party bankruptcy proceeding presents a "square peg, round hole" issue, even more so when the key affected parties are not parties to the mediation.  *Id*. at 11:24.  Where the Debtor invokes the mediation itself as primary evidence to meet the good faith standard in the context of confirmation, discovery must be allowed of that mediation.  *See id.* at 13:14–18 (by using the fact of mediation to meet the Bankruptcy Code's good faith standard, the debtor has "put the mediation, at least with respect to the good faith of the TDPs, at issue").

9

4921-2962-8677

22. As J&J and the Debtor's predecessor correctly argued in *Imerys*, "the promotion of frank discussions is not a legitimate basis for denying discovery regarding issues addressed during the mediation that directly impact non-mediating parties, nor is it a basis to abuse the mediation privilege." Ex. 1 at 4. It is not "permissible for the Plan Proponents to hatch a back-room deal, block anyone from examining the circumstances that led to that deal, and then ask this Court to rubber stamp it with no questions asked." Ex. 4 at 1-2. J&J's current flip-flop on this exact issue is not right.

23. Finally, no blanket common interest privilege protects all communications between J&J and the Debtor, on the one hand, and counsel for claimants, on the other, with respect to communications that occurred after J&J and the Debtor "settled" with any subset of claimants. The Fifth Circuit has instructed lower courts to "narrowly construe the common interest privilege in order to strike the proper balance between an 'obstacle to truth-seeking' and 'effectuat[ing] necessary consultation between legal advisers and clients.'" *In re Tinsel Group*, No. H-13-2836, 2014 WL 243410, at *3 (S.D. Tex. Jan. 22, 2014) (quoting *Santa Fe*, 272 F.3d at 711).

24. While courts have recognized that some post-settlement communications between a debtor and claimants may be protected by the common interest privilege, no court has found that all such communications are privileged. *See In re Tribune Co.*, 2011 WL 386827, at *9 (finding that the common interest privilege applied but stating that its ruling was "not to say that parties who are co-proponents of a plan . . . are always entitled to assert this privilege"); Ex. 5 at 4 ("the common interest doctrine can be, but is not necessarily, applicable in the plan context"); *see also* Ex. 2 at 3-4 (J&J noting that "[a] shared desire to have a settlement and plan approved cannot shield ***every single*** communication between the Plan Proponents").

10

25. In determining which post-settlement communications are protected by the common interest privilege, plan proponents may share a common legal interest with respect to maximizing total recoveries from third parties available under a plan and confirming the proposed plan itself, but do not share a common interest in the apportionment of recoveries under the plan. *See* Ex. 5 at 7. In colloquial terms, courts have drawn a distinction between the "size of the pie" (in which there is a common interest between debtors and claimants) and the "pieces of the pie" (in which there is not). *See* Ex. 5 at 7; *see also In re Leslie Controls, Inc.*, 437 B.R. 493, 500 (Bankr. D. Del. 2010).

26. J&J and the Debtor's negotiations with the claimants related to the TDPs should be produced. As the court found in *Imerys*, a debtor and claimants' interests with respect to how a trust's assets will be distributed are adverse, as a debtor, in general, would seek to keep claim amounts and payouts low, while claimants would seek higher values. Ex. 5 at 8. As TDP negotiations go to the "pieces of the pie" rather than the "size of the pie" they are not protected by the common interest privilege and are discoverable.

27. The Debtor and J&J's additional complaints about the specific discovery sought by Travelers are unconvincing. Contrary to the Debtor and J&J's assertions, Travelers—unlike J&J in *Imerys*—does not, and has never, "demand[ed] that the Debtor and J&J identify all of the privileged communications and documents" responsive to the Requests. Objection ¶ 2; *see In re Imerys Talc Am., Inc.*, No.19-10289 (LSS), ECF No. 5811 ¶ 9 (Bankr. D. Del. Sep. 26, 2023) (attached as **Exhibit 6**) ("[I]t is imperative the Court not permit the Imerys Debtors to assert the mediation privilege in broad strokes to bar discovery, but instead require them to provide document-by-document log so that non-mediating parties may test these assertions, including, if necessary, by requesting in camera submissions."). At a meet and confer, after hearing for the first

4921-2962-8677

time that the Debtor and J&J were contending that *all* documents responsive to the Requests were privileged, Travelers asked the Debtor and J&J for a *categorical* privilege log, which is relatively easy to produce, to allow the parties to tee up this dispute for the Court. The Debtor and J&J have refused to provide even this most basic information about the scope, timeframe, and involved parties to permit analysis regarding the extent of their privilege assertions. *See Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, 690 (5th Cir. 2023) ('[W]ithout a privilege log . . . the parties and the court lack information needed to determine whether the privilege applies to the withheld discovery.").

28. Finally, in seeking to avoid their discovery obligations, the Debtor and J&J cast aspersions regarding both Travelers' motives in seeking this targeted discovery—referring to Travelers' alleged motives as the "most significant[]" reason the Court should deny Travelers' Motion—and the amounts that Travelers may be required to pay to J&J or the Debtor for payments made to the Trust. But the Debtor and J&J seem to intentionally miss the point: since they are postulating that Travelers should pay for the results of their Plan negotiations, Travelers of course has an interest in exploring the *bona fides* of the same. And since the Debtor and J&J are advocating that the Plan is proposed in good faith, they should of course produce the responsive documents and communications to substantiate that "good faith" proposition. As long as J&J intends to seek insurance coverage for amounts paid to claimants under the Plan, Travelers has a significant interest in this bankruptcy case and the Plan. *See Truck Ins. Exch. v. Kaiser Gypsum Co.,* 144 S. Ct. 1414, 1427, 602 U.S. 268 (2024) ("Where a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and have their legitimate objections addressed.'") (citations omitted).

**MEET AND CONFER/NEED FOR EMERGENCY CONSIDERATION**

29. Counsel for Travelers has met and conferred with counsel for J&J and the Debtor in an effort to resolve this dispute but was unable to reach a resolution.

30. Additionally, emergency consideration is appropriate and necessary given the tight case deadlines in the CMO.

WHEREFORE, the Insurers respectfully request that this Court enter an order compelling the production of communications with claimants' counsel responsive to the Requests and grant such other and further relief as may be just and proper.

Respectfully submitted this 10th day of December, 2024.

        **GRAY REED**

        By: */s/ Jason S. Brookner*
            Jason S. Brookner
            Texas Bar No. 24033684
            Lydia R. Webb
            Texas Bar No. 24083758
        1300 Post Oak Blvd., Suite 2000
        Houston, Texas 77056
        Telephone:  (713) 986-7000
        Facsimile:  (713) 986-7100
        Email:  jbrookner@grayreed.com
            lwebb@grayreed.com

- and -

        **SIMPSON THACHER & BARTLETT LLP**
            Andrew T. Frankel (admitted *pro hac vice*)
            Lynn K. Neuner (admitted *pro hac vice*)
            Elisha D. Graff (admitted *pro hac vice*)
            Jonathan Mitnick (admitted *pro hac vice*)
        425 Lexington Avenue
        New York, New York 10016
        Telephone:  (212) 455-2000
        Facsimile:  (212) 455-2502
        Email:  afrankel@stblaw.com
            lneuner@stblaw.com
            egraff@stblaw.com
            jonathan.mitnick@stblaw.com

        **COUNSEL TO TRAVELERS CASUALTY AND SURETY COMPANY (F/K/A THE AETNA CASUALTY AND SURETY COMPANY) AND THE TRAVELERS INDEMNITY COMPANY**

**Certificate of Service**

      I certify that on December 10, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive electronic service in this chapter 11 case.

                                                  */s/ Jason S. Brookner*
                                                Jason S. Brookner

4921-2962-8677