IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| RED RIVER TALC, LLC,[1] | ) Case No. 24-90505 (CML) |
| Debtor. | ) |

**EMERGENCY MOTION OF THE COALITION OF COUNSEL FOR JUSTICE TO COMPEL AD HOC COMMITTEE OF SUPORTING COUNSEL MEMBERS TO PRODUCE DOCUMENTS (1) SUBJECT TO NOVEMBER 26, 2024 COURT RULING AND (2) REQUESTED ON THE RECORD OF CERTAIN OF THEIR DEPOSITIONS**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 3:00 P.M. (PREVAILING CENTRAL TIME) ON DECEMBER 17, 2024**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, VIRTUALLY OR IN PERSON AS PERMITTED BY THE COURT, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUSTED IN THE PRECEDING PARAGRAPH, OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The Coalition of Counsel for Justice for Talc Claimants (the "Coalition") moves to compel the member law firms of the Ad Hoc Committee of Supporting Counsel ("AHC") to produce documents subject to the Court's November 26, 2024 discovery rulings on the record and those requested on the record during certain of their depositions.

---

[1] The last four digits of the debtor's federal tax identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, NJ 08933.

1

**INTRODUCTION**

1. The Court made a number of discovery rulings on the record on November 26, 2024.[2] Although the rulings were in the context of an emergency motion to compel the Beasley Allen firm to produce documents concerning *its* authorization and certification of *its* Master Ballot,[3] the Court made clear that its ruling applied more broadly to *all* law firms that cast their clients' votes by Master Ballot. The Court stated: "The guidance that I gave, with respect to Beasley Allen . . . applies equally to the Smith Law Firm or any law firm that – that's out there, who obtained votes" by Master Ballot.[4] Emphasizing the point, the Court reiterated: "the guidance I gave for Beasley Allen applies all across the board . . . it's not to single out Beasley Allen"; although "there's a motion here [directed at Beasley Allen] . . ., it applies to everyone else."[5]

2. The AHC consists of 18 law firms that have signed Plan Support Agreements ("PSAs") or otherwise support J&J's proposed bankruptcy plan.[6] According to records produced in this bankruptcy case, the AHC members cast a total of ▮▮▮▮ of their clients' votes by Master Ballot, substantially all in favor of the Initial Plan.[7] Three AHC firms' Master Ballots accounted for more than 60% of the total AHC vote; six AHC firms accounted for more than 85% of the AHC votes. Collectively, AHC law firm "yes" votes represent approximately 84% of all of the "overwhelming support" (77,998 votes) touted by the Debtor for the Initial Plan.

---

[2] The Coalition incorporates the transcript of proceedings before the Court on November 26, 20024 [Dkt. No. 691] ("11-26-24 Tr.") by reference.

[3] To date, Beasley Allen has produced over 700 documents in this case, with hundreds more anticipated in the coming days.

[4] 11-26-24 Tr. at p. 25, ll. 6- 11.

[5] *Id.* at p. 34, l. 8, p. 36, ll. 3-9.

[6] *Verified Statement of Paul Hastings LLP and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* [Dkt. No. 212, at Ex. A].

[7] *Supplemental Declaration of Stephenie Kjonvedt of Epiq Corporate Restructuring* [Dkt. No. 307] ("Kjonvedt Decl."), at ¶ 6.

3. But more than half of the AHC member votes (a total of 35,044 votes) were cast pursuant to an "Option B" certification – meaning that the votes did not reflect the voices of the women impaired under the plan, but rather of the law firms whose support J&J had locked up with PSAs. The Master Ballot described an "Option B" certification as a certification by the signatory that "such Client is represented by me, and I have the authority under a power of attorney to vote to accept or reject the Plan on behalf of such Client[]."[8] Yet discovery produced even before the Court's November 26 ruling indicates that the AHC member votes were *not* actually cast pursuant to a valid power of attorney. Hence, while one member of the AHC, ▇▇▇▇▇▇▇▇ cast ▇▇▇ votes alone pursuant to an "Option B" certification, the supposed "power of attorney" he relied on is nothing of the sort. It appears merely to be a general clause in his firm's standard "Contract of Employment" stating that: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"[9] Yet that same "Contract of Employment" assured clients in bold: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"[10]

4. Rather than casting their clients' votes by duly authorized "power of attorney," AHC members' testimony to date indicates that such law firms (per their obligations under their PSAs) cast thousands of votes for their clients in favor of the Initial Plan pursuant to an "Option B" certification when they had received no response to the solicitation from their clients. They used "Option B" simply to vote the lawyer's preference, not necessarily their clients' preferences. One AHC member understood an "Option B" certification as the authority do "▇▇▇▇▇▇▇▇

---

[8] *Id.*, Ex. A at M35-41553096
[9] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
[10] *Id.*

3

███████████████████████████████████████████████████

. . . ."[11]  Another AHC member, whose firm also cast thousands of supporting votes, put it:

> ████████████████████████████████████████████
> ███████████████████████
>
> █████████████
>
> █████████████████████
>
> █████[12]

5.     The other ████ or so votes cast by AHC member firms were cast pursuant to an "Option A" certification, which, according to the Master Ballot, was a certification by the law firm that "such Client is represented by me, and I have collected and recorded the vote of such Client through customary and accepted practices, or have obtained authority to procedurally cast such Client's vote."[13]  Yet, with the exception of [one] law firm, whether and how AHC members collected and recorded the informed consent of their clients is entirely unknown.

6.     The Debtor – which is supposed to be a fiduciary for creditors, not an agent of its equity owner – should be concerned with (at least, it should be interested in) whether the tens of thousands of votes supporting its Initial Plan were properly cast.  It is not. Far from it, its sole demonstrated interest is trying to crush any perceived opposition to its parents' bankruptcy strategy, primarily the Beasley Allen firm.  Yet when the 18 AHC firms are required to produce the same documents that Beasley Allen has been directed to produce (and they have not), the record will demonstrate that the Debtors' "overwhelming support" of claimants reduces to little more than the support of law firms whose support J&J locked up PSAs, not the actual voices of claimants

---

[11]  ████████████████████████████████████████████

[12]  ████████████████████████████████████████████

[13]  Kjonvedt Decl., Ex. A at M35-41553096.

whose support J&J has been crowing. These documents, and several other categories requested on the record of depositions, should be ordered to be produced, so that, come the omnibus hearing, a full record of the real "support" (or lack thereof) for any plan the Debtor seeks to confirm can be established.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's Chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8. The Coalition confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. The statutory predicates for the relief sought herein are Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 7026, 7034, and 7037, Federal Rules of Civil Procedure ("Federal Rules") 26, 34, and 37, and Section 105(a) of the Bankruptcy Code.

## RELIEF REQUESTED AND BASIS FOR EMERGENCY RELIEF

10. For all of the reasons set forth below, the Coalition respectfully requests entry of an order compelling the production of documents (i) directed to be produced on the record and (ii) requested on the record of certain depositions, by each of the Members of the AHC, and granting such other and further relief as the Court may deem just and proper.

11. An emergency exists here because the relief sought needs to be accomplished long before the typical notice period for motions expires. This Court has directed the parties to appear at a scheduling conference on December 17, 2024, when, it has indicated, it will take up all

outstanding fact discovery disputes.  An emergency therefore exists to grant the relief here on short notice.

## BACKGROUND

12.   On November 26, 2024, the Court, after having reviewed thousands of documents in camera, ruled on a pending motion compel directed to the Beasley Allen firm by directing the firm to produce on a rolling basis:

> a. Representative engagement letters, unless "it's a dispute," in which case each disputed vote requires that the "engagement letter" and "particular communication" to the client be produced[14]; the engagement letters can be produced on an "attorneys' eyes only" basis[15];
>
> b. Redacted responses from clients "saying I votes yes, I vote no," in "different forms,"[16], and "documentary evidence" of "how" "folks" "responded,"[17] including "documentary evidence" of "who said yes or no" "on the phone"; [18]
>
> c. A "list of who voted yes and who voted no," "produced on a confidential basis";[19]
>
> d. "[I]nformation . . . identifying clients who are deceased" and "next of kin" who "retained" or "communicated with" the law firm, and any "engagement letter" "signed" by "next of kin"[20], "produced as attorneys' eyes only";[21]
>
> e. "[R]epresentative" communications with clients redacted except for the "paragraph" indicating "solicitation" materials are enclosed and asking clients to 'vote by this date," unless the communication is challenged, in

---

[14]   11-26-24 Tr. at p. 21, ll. 10-17, p. 24, ll. 1-4.

[15]   *Id.* at p. 32, ll. 22-25.

[16]   *Id.* at p. *21*, l. 23 – p. 22, l. 4 & p. 30, ll. 14-22.

[17]   *Id.* at p. 38, l. 20-38/24

[18]   *Id.* at p. 39, ll. 1-8.

[19]   *Id.* at p. 22, ll. 10-18.

[20]   *Id.* at p. 22, l. 21 – p. 23, l. 6.

[21]   *Id.* at p. 33, ll. 4-5.

6

which case "the email or text message or blast" "showing" it was "received" should be produced[22];

    f.    Documents identifying "individuals who voted on Imerys and how they voted"[23]; and

    g.    For power of attorney certifications, "the authority to support how they certified the vote," including "representative samples" of "powers of attorneys."[24]

13.    The Court made clear that while its rulings were in the context of a motion to compel directed at the Beasley Allen firm, the rulings "appl[y] to everyone else."[25]

14.    On November 29, 2024, three days after the hearing, prior to the transcript being released, Coalition counsel e-mailed to counsel for all parties to the Case Management Order ("CMO") its understanding of the Court's rulings and the categories of documents that all law firms were required to produce.[26]

15.    On December 4, 2024, after the transcript of the November 26 hearing had become available, counsel to the Coalition wrote again, this time specifically to counsel respectively to the AHC and The Smith Law Firm ("Smith"), reiterating the categories of documents it understood the Court had ordered to be produced, indicating that Beasley Allen and other Coalition members were collecting documents for production on a rolling basis, and requesting confirmation that the AHC and Smith were doing the same.[27] AHC counsel responded by acknowledging that AHC

---

[22] *Id.* at p. 23, ll. 14-20, p. 28, l. 23 – p. 29, l. 3 & p. 29, ll. 9-19.

[23] *Id.* at p. 24, ll. 23-25.

[24] *Id.* at p. 43, l. 22 – p. 44, l. 7.

[25] *Id.* at p. 34, l. 8, p. 36, ll. 3-9.

[26] *See* email from Adam C. Silverstein to Charles Rubio, et al., dated November 29, 2024, attached as Exhibit D hereto.

[27] *See* email from Adam C. Silverstein to Charles Rubio, *et al.*, dated December 4, 2024, attached as Exhibit E hereto.

members "have commenced the collection of documents in accordance with the Courts' guidance . . . and [that] the documents will be produced on a rolling basis."[28] But none were produced.

16. On December 9, after Beasley Allen had begun its rolling productions, Coalition counsel inquired of counsel for the AHC as to when the AHC members' rolling productions would begin. The response was that the "AHC expects to start rolling productions tomorrow [December 10] or Wednesday [December 11]."[29]

17. In fact, the AHC did make a production of documents on December 11, but of documents from only *two* of the 18 AHC members. In total, including prior productions made by AHC members, only a small fraction of the documents that the Court ordered on November 26 to have been produced actually have been produced by AHC members. And those that have been produced, with the exception of one or two firms, have been cherrypicked[30] and/or substantially or almost entirely redacted.[31]

18. Among other things, AHC members have not produced: unredacted representative engagements and "powers of attorney" covering all of their voting clients (rather than one cherrypicked, heavily redacted version); with perhaps one or two AHC firm exceptions, their solicitation of their clients (including any indication of whether they actually provided the Initial Plan and Disclosure Statement to clients); again, with perhaps an exception or two, the responses, if any, of the women whose votes the 18 law firms purported to vote by the tens of thousands; and how those law firms voted their clients in the *Imerys* bankruptcy.

---

[28] *See id.* at email from Charles M. Rubio to Adam Silverstein, *et al.*, dated December 4, 2024.

[29] Email from Charles M. Rubio to Adam Silverstein, *et al.*, dated December 9, 2024, attached as Exhibit F hereto.

[30] ███████████████████████████████

[31] ██████████████████████████████████████

8

19. Until all of these materials are produced, there cannot be a full and fair hearing to confirm the Amended Plan.

20. In addition, AHC members should be required to produce documents requested on the records of their depositions. Many overlap with the categories the Court ordered to be produced. Such documents include: their signed certified Master Ballots; their *Imerys* master ballot(s), any straw ballots AHC members used to solicit their clients' votes and the clients' responses; their recording of their voting clients' injury types (*e.g.*, ovarian versus gynecologic); any list that J&J, its affiliates or its solicitation agent, Epiq, provided to an AHC member of dual representation clients; and communications to and from J&J or its affiliates concerning declarations of dual representation clients.[32] These documents, too, must be produced.

## **ARGUMENTS**

21. A discovering party is entitled to compel discovery of documents, answers, and testimony which "fall[] within the scope of discovery as provided by Rule 26," namely anything that is "relevant to any party's claim or defense and is proportional to the needs of the case."[33] A party may move to compel the production of documents, to compel a response to requests for admission or interrogatories, or to compel disclosure at a deposition.[34]

22. Here, given that more than 80% of the Debtors' claimed "overwhelming support" rests on the votes cast in Master Ballots by AHC Members, the bases for the authorizations and certifications for those votes is critical to discover. Indeed, even the fractional discovery to date that they have provided undermines the Debtor's claim that the "overwhelming support" it has

---

[32] [redacted]

[33] *In re Trevino*, 564 B.R. 890, 904-906 (Bankr. S.D. Tex. 2017) (quoting Fed. R. Civ. P. 26(b)(1)).

[34] *Id.*

been touting reflects the will of their clients, rather than the wills of the law firms with which they reached agreements. The Court has ordered the documents requested herein to be produced. And, indeed, one of the bases for ordering that such documents be produced from Beasley Allen was that Beasley Allen requested the same documents from the AHC Members. The time has come for them to be compelled to produce the same documents, at the same pace, as the Beasley Allen firm.[35]

## MEET AND CONFER/RESERVATION OF RIGHTS

23. Counsel to the Coalition, the AHC Members, and other parties have met and conferred several times in an effort to resolve ongoing discovery disputes but have been unable to reach a resolution at this point.

24. The parties continue to meet and confer on discovery issues, and the Coalition reserves its right to file other motions to address, and otherwise to raise, discovery disputes that cannot be resolved with the AHC Members, and/or other parties.

---

[35] Transcript of proceedings on November 12, 2024, at p. 35 , ll. 7-15, p. 59, ll. 16-25. The Coalition incorporates by references the discovery requests attached to its prior emergency motion to compel AHC Members to produce documents filed on the docket as Dkt. No. 568-2, 568-3, 568-4, 568-5, 568-6.

## **NOTICE**

25.     Notice of this Motion has been provided to: (a) counsel to the Debtor; (b) counsel to the TCC; (c) pro se claimants as identified in the Plan solicitation process; (d) the United States Trustee for the Southern District of Texas; (e) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; (f) proposed counsel to Randi Ellis, the legal representative for future talc claimants; counsel to the Ad Hoc Committee of Supporting Counsel; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Coalition respectfully submits that no other or further notice need be provided.

WHEREFORE, the Coalition respectfully requests that this Court enter an order, substantially in the form attached hereto, (i) compelling the production of the foregoing documents from AHC Members; and (iii) granting such other and further relief as the Court may deem just and proper.

[*Remainder of Page Intentionally Blank.*]

| | |
|---|---|
| Dated:  December 12, 2024 | **LAWSON & MOSHENBERG PLLC** |
| | |
| | */s/ Nicholas R. Lawson* |
| | Nicholas R. Lawson |
| | Texas Bar No. 24083367 |
| | Avi Moshenberg |
| | Texas Bar No. 24083532 |
| | 801 Travis Street |
| | Suite 2101 #838 |
| | Houston, TX 77002 |
| | Telephone: 832-280-5670 |
| | Nick.Lawson@lmbusinesslaw.com |
| | Avi.Moshenberg@lmbusinesslaw.com |

-AND-

**OTTERBOURG P.C.**
Melanie L. Cyganowski (*pro hac vice*)
Adam C. Silverstein (*pro hac vice*)
Sunni P. Beville (*pro hac vice*)
David A. Castleman (*pro hac vice*)
230 Park Avenue
New York, New York 10169-0075
(212) 661-9100
mycganowski@otterbourg.com
asilverstein@otterbourg.com
sbeville@otterbourg.com
dcastleman@otterbourg.com

-AND-

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice* pending)
Thomas B. Bennett (*pro hac vice* pending)
David L. Selby II (*pro hac vice* pending)
Jonathan Gold (*pro hac vice* pending)
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
bglasser@baileyglasser.com
tbennett@baileyglasser.com
dselby@baileyglasser.com
jgold@baileyglasser.com
cjoshi@baileyglasser.com

Katherine E Charonko
BAILEY & GLASSER LLP
209 Capitol Street
Charleston WV 25301
Tel: (304) 345-6555
Fax: (304) 342-1110
kcharonko@baileyglasser.com

Elizabeth L. Stryker
BAILEY & GLASSER LLP
94 Long Street
Suite 200
Westover WV 26501
Tel: (304) 594-0087
estryker@baileyglasser.com

*Co-Counsel for Coalition of Counsel for Justice for Talc Claimants*

## CERTIFICATE OF SERVICE

I certify that on December 12, 2024, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/Nicholas R. Lawson*
Nicholas R. Lawson

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RED RIVER TALC, LLC,[1] | ) Case No. 24-90505 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**[PROPOSED] ORDER GRANTING THE EMERGENCY MOTION OF THE COALITION OF COUNSEL FOR JUSTICE TO COMPEL AD HOC COMMITTEE OF SUPORTING COUNSEL MEMBERS TO PRODUCE DOCUMENTS (1) SUBJECT TO NOVEMBER 26, 2024 COURT RULING AND (2) REQUESTED ON THE RECORD OF CERTAIN OF THEIR DEPOSITIONS**

Upon consideration of the Coalition of Counsel for Justice for Talc Claimants (the "Coalition") Emergency Motion to Compel Ad Hoc Committee of Supporting Counsel Members to Produce Documents (1) Subject to November 26, 2024 Court Ruling and (2) Requested on the Record of Their Depositions (the "Motion");[2] and upon consideration of the proceedings before the Court related to the Motion; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the Motion is in full compliance with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules of the Southern District of Texas, and orders and procedures of this Court; (v) proper and adequate notice of the Motion, the deadline to file any objections to the Motion, and any hearing thereon was given, and no other or further notice is necessary; (vi) the

---

[1] The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's mailing address is 501 George Street, New Brunswick, New Jersey 08993.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and (vii) the relief sought in the Motion is in the best interests of the Debtor and its estate; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1. The Motion is granted in its entirety.

2. The member law firms of the AHC shall produce to the Coalition (a) all documents subject to the Court's November 26, 2024 discovery rulings on the record and (b) all documents requested on the record of certain depositions of the member law firms of the AHC.

3. If any of the AHC Members believe that the documents to be produced contain attorney-client communications, such documents may first be submitted to the Court for *in camera* review.

4. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5. This Court shall retain jurisdiction to resolve all matters arising out of or related to the Motion or this Order.

SIGNED this ___ day of _____, 2024.

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE