UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC,[1] | Case No. 24-90505 (CML) |
| Debtors. | |

**JOINT OBJECTION OF THE AD HOC COMMITTEE OF
SUPPORTING COUNSEL TO COALITION'S EMERGENCY
MOTIONS TO COMPEL**
[Related To Dkt. Nos. 757 and 760]

The Ad Hoc Committee of Supporting Counsel (the "AHC"), by and through its counsel, Parkins & Rubio LLP, hereby submits this joint objection to the *Coalition's Emergency Motion To Compel Ad Hoc Committee of Supporting Counsel Members To Produce Documents* [Related To Dkt. No. 757] (the "First Emergency Motion to Compel") the *Coalition's Motion to Compel Testimony and Documents Withheld on Common Interest and Mediation Privilege Grounds* [Dkt. No. 760] (the "Second Emergency Motion to Compel" and together with the First Motion to Compel, the "Emergency Motions") filed by the Coalition of Counsel for Justice for Talc Claimants (the "Coalition") and respectfully states as follows:

**INTRODUCTION**

1. The tides are shifting decisively against the Coalition. More law firms are now supporting the Plan – former members of the Coalition are now members of the Talc Claimants Committee which supports the Plan and firms that initially opposed the Plan are seeking to change

---

[1] The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

their votes to "yes."[2] While the Coalition seeks to create controversy over voting matters because the validity of the votes of the Coalition's principal law firm, Beasley Allen, is subject to challenge as a result of the master ballot cast by the Smith Law Firm, and raises the question of which firm had the authority to act on behalf of their joint clients, there is no genuine dispute regarding the authority of the AHC member law firms to act on behalf of their clients.[3] These attorneys take their fiduciary duties seriously and have acted in good faith throughout this process.

2. The Coalition, in a desperate attempt to derail the Plan, is unfairly targeting AHC members by challenging the legitimacy of votes cast by certain AHC member firms. These challenges represent confirmation hearing issues, not discovery deficiencies. The Coalition already possesses the necessary facts, including the terms of the engagement letters and the basis for the authority of AHC firms to vote on behalf of their clients. Meanwhile, the AHC continues to collect and produce documents on a rolling basis to comply fully with the Court's November 26 rulings.

3. The Emergency Motions also seek to circumvent established legal protections under the common interest and mediation privileges, the Coalition contravenes Fifth Circuit precedent and this Court's explicit directives safeguarding privileged communications. The Emergency Motions should be denied.

---

[2] *See Debtor's Motion for Entry of an Order Permitting Clients of Morelli Law firm, PLLC to Change Their Votes* [Docket No. 328] and *Debtor's Motion for Entry of an Order Permitting Clients of Summers & Johnson, P.C. to Change Their Votes* [Docket No. 731].

[3] There are a few clients that are considered "disputed clients" that are subject to joint representations with Beasley Allen. The AHC member firms have produced and are continuing to produce documents to demonstrate the AHC member firm's authority to act on behalf these clients and the actual vote documentation that shows how these clients voted on the Plan.

**ARGUMENTS**

**A. The AHC Is Complying With Its Discovery Obligations**

4. The AHC and its member firms have acted in good faith and diligently complied with their discovery obligations. The AHC has provided substantial documentation demonstrating the authority of its member firms to cast votes on behalf of their clients. These materials include, among other things: (i) engagement letters containing explicit power of attorney provisions where applicable, (ii) comprehensive client vote documentation, including master ballot spreadsheets tracking individual claimant votes, voting certifications, and corresponding details, (iii) representative communications with clients that outline the voting process, including disclosures, instructions, and evidence of the transmittal of the Disclosure Statement to clients.

5. Additionally, the AHC continues to collect, process, and produce documents on a rolling basis. These efforts include providing less-redacted materials to address concerns raised by the Coalition, further underscoring the AHC's commitment to transparency and compliance. The Coalition's First Emergency Motion to Compel mischaracterize the AHC's substantial production efforts an, as discussed in more detail below, conflates confirmation hearing arguments with purported discovery deficiencies.

6. The AHC's comprehensive compliance with the Court's directives has been documented in its Status Report [Dkt. No. 770], which confirms the scope of its production and the good faith efforts undertaken to meet its discovery obligations.

**B. The Coalition's Motion Conflates Discovery with Substantive Confirmation Issues**

7. The Coalition's Emergency Motions improperly conflate discovery disputes with substantive confirmation issues, seeking to litigate the validity of votes cast by members of the AHC under the guise of discovery deficiencies. This approach misconstrues the purpose of

discovery and inappropriately shifts the focus from procedural compliance to substantive legal challenges better suited for confirmation hearings.

8. The Coalition argues that deposition testimony of Mikal Watts and other evidence necessitate additional document production from AHC members. Specifically, the Coalition challenges Mr. Watts' submission of a Master Ballot with 17,599 votes in favor of the Plan, asserting that it relies on a general provision in his engagement agreement rather than a specific power of attorney. The Coalition contends that this general provision, which authorizes the firm to act if clients cannot be contacted, falls short of the legal standard for a valid power of attorney in bankruptcy cases.

9. These allegations fail to account for the robust processes employed by AHC members to ensure the integrity and validity of the votes cast on behalf of their clients. For example, Mr. Watts' deposition testimony[4] highlights the diligence and transparency with which his firm operates. He explained that his authority to vote stems from multiple sources, including explicit provisions in his engagement agreement, thorough and consistent communication with

---

[4] Watts Depo. Trans. Nov. 12, 2024, 208:10-23; 211:12-213:15 (attached as Exhibit A) [redacted]

clients, and compliance with judicially mandated certification requirements. His firm conducted nearly daily client interactions, issued multiple disclosures, and provided opportunities for clients to object or give alternative instructions. This rigorous process reflects not only compliance with procedural requirements but also the seriousness with which AHC members fulfil their fiduciary duties to their clients.

10. The AHC member firms want to avoid disenfranchising clients and, where necessary, have acted on behalf of those clients to protect their interests under the Plan. These actions demonstrate a steadfast commitment to the fiduciary obligations owed to their clients and the integrity of the process.

11. The Coalition's arguments are not grounded in a failure to produce documents but rather in a substantive challenge to the validity of votes submitted by Watts Guerra and other AHC member firms. Whether votes cast under general authority provisions or client consent are valid is a legal issue to be addressed in the confirmation hearing, not a procedural matter requiring further discovery. The AHC has already produced the relevant documents demonstrating the basis for its members' authority, including master ballot spreadsheets, engagement agreements with explicit power of attorney provisions, and records tracking e-ballot and physical ballot submissions, as well as communications with claimants. These productions provide the necessary transparency for all parties to evaluate the voting process, which has put the Coalition in a position to begin making substantive confirmation objections.

12. The AHC has acted diligently and transparently to comply with its discovery obligations, and any further demands in this context are misplaced. The AHC is committed to continuing to collect, process and produce documents on a rolling basis. Accordingly, this Court should reject the Coalition's First Emergency Motion to Compel.

**C. The Coalition's Requests Improperly Invade Privilege Protections.**

    a. *Common Interest Privilege*.

13.    The documents sought by the Coalition are protected under the common interest privilege. In this case, a common legal interest has existed between the Debtor and members of the AHC at least since the beginning of the second LTL Management LLC chapter 11 case (In re LTL Mgmt. LLC, No. 23-12825 (MBJ) (Bankr. D.N.J.)) and continues to apply in this case by virtue of, among other things, the Plan Support Agreement ("PSA"). The PSA established a shared legal interest among the AHC, the Debtors, and other stakeholders to advance the confirmation of the Plan. The Fifth Circuit has long recognized that the common interest privilege applies when litigation is reasonably anticipated, even before formal litigation begins. In *In re Santa Fe Intern. Corp.*, the Fifth Circuit held that the privilege applies where parties share a common legal interest in avoiding or addressing anticipated litigation and exchange privileged communications in furtherance of that interest (272 F.3d 705, 711 (5th Cir. 2001)).

14.    In the present matter, the Coalition's Motion to Compel challenges the application of the common interest privilege to communications among the AHC and other parties supporting the Plan and the Coalition incorrectly argues that the common interest privilege can only arise after litigation has commenced. The Fifth Circuit in the *Santa Fe* case established that the privilege can apply to ***pre-litigation communications*** if the parties reasonably anticipate litigation. Here, the parties supporting the Plan, including the AHC, entered into the PSA to align their legal interests in confirming the Plan and defending against anticipated challenges.

15.    The PSA reflects the shared legal interest of its signatories in securing Plan confirmation, which necessarily involves addressing potential objections and litigation risks. The privilege protects communications among these parties, including strategic discussions related to Plan confirmation, from disclosure. Any disclosure of communications protected under the

6

common interest privilege would undermine the very purpose of the PSA and is not warranted under applicable law.

    **b.** *Mediation Privilege*.

16. The Coalition also seeks to pierce the mediation privilege by requesting communications related to mediation sessions. This effort is improper and directly contradicts this Court's explicit statements. *See* Nov. 12, 2024 Hr'g Tr. at 87:13-20 ("If something was conducted in mediation, . . . – I'm not opening that door. I'm not interested in that. . . . I'm not opening up mediation doors . . . ."); Dec. 10, 2024 Hr'g Tr. At 35:1-2 ("Some of it looks like they're asking for stuff from mediation and you're not going to get that either."). These unequivocal statements reflects the Court's recognition of the sanctity of mediation confidentiality.

17. Mediation privilege is broadly protected under applicable state and federal law. For example, Texas's Alternative Dispute Resolution Procedures Act provides robust protections for mediation communications, ensuring they remain confidential and inadmissible in subsequent proceedings. Tex. Civ. Prac. & Rem. Code § 154.073. Similarly, federal common law, as applied in the Fifth Circuit, underscores the critical role confidentiality plays in fostering candid and productive settlement discussions. Under the Fifth Circuit's own General Order on Mediation, all statements and documents made or prepared during mediation are privileged and shielded from discovery. General Order Governing the Circuit Mediation Program, U.S.Ct. of App. 5th Cir. Orders A. Mediation, 28 U.S.C.A., Effective: July 6, 2023.

18. These protections extend to the AHC's communications, which frequently involved discussions with stakeholders about mediation-related strategy and settlements. Disclosure of such communications would violate established privileges and undermine the integrity of the mediation process, which relies on the confidentiality essential to fostering meaningful resolutions.

**CONFERENCE AND EMERGENCY RELIEF**

19. The Coalition's description of the conferences between the parties is misleading. While several meet-and-confer meetings have occurred, there was no conference regarding the subject of the Emergency Motions. The communications described in the Coalition's First Emergency Motion to Compel reflects the current state of compliance of the AHC's ongoing efforts. In particular, in the email from Charles Rubio on December 9, 2024, the AHC began rolling productions as discussed. The AHC raised no objections to the timeline, and the Coalition did not voice any concerns nor provide additional input after that communication. The AHC continues to act in good faith, making rolling productions to comply with discovery obligations. The AHC contends because of its ongoing compliance, there is no need for the Court to consider the Emergency Motions on an emergency basis and the requested relief should be denied.

**CONCLUSION**

WHEREFORE, the ACH respectfully requests that this Court deny the Emergency Motions and grant such further relief that is just and proper.

Dated: December 16, 2024              Respectfully submitted

*/s/ Charles M. Rubio*
**PARKINS & RUBIO LLP**
Lenard M. Parkins (TX Bar No. 15518200)
Charles M. Rubio (TX Bar No. 24083768)
Great Jones Building
708 Main Street, 10th Floor
Houston, TX 77002
Telephone: (713) 715-1660
Email:  lparkins@parkinsrubio.com
         crubio@parkinsrubio.com

***Counsel to AHC of Supporting Counsel***

Certificate of Service

I hereby certify that on December 16, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and I caused the sealed version of this document to be provided to the Court and served on the CMO Parties listed in the Agreed Case Management Order [Dkt. No. 352].

    */s/ Charles M. Rubio*
    Charles M. Rubio