**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC,[1] | Case No. 24-90505 (CML) |
| Debtor. | |

**DEBTOR AND JOHNSON & JOHNSON'S**
**SURREPLY IN SUPPORT OF THEIR OBJECTION TO**
**TRAVELERS' EMERGENCY MOTION TO COMPEL**

(Related to Docket No. 733)

Red River Talc LLC (the "Debtor") and Johnson & Johnson ("J&J") respectfully submit this surreply in support of their objection [Dkt. 692] ("Objection") to Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company) and The Travelers Indemnity Company's (together, "Travelers") *Emergency Motion to Compel the Debtor and J&J to Produce Non-Privileged Documents Responsive to Certain Requests of Insurers*[2] [Dkt. 682] (the "Motion") and *Travelers' Reply to Emergency Motion to Compel* [Dkt. 733] (the "Reply").  In further support of the Objection, the Debtor and J&J respectfully state as follows:

---

[1]     The last four digits of the Debtor's taxpayer identification number are 8508.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]     The insurers that joined the Requests are: ACE Property & Casualty Insurance Company (as successor in interest to Central National Insurance Company of Omaha, now known as Oakwood Insurance Company, for policies issued through Cravens, Dargan & Company, Pacific Coast, its managing General Agent), Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company, Century Indemnity Company (as successor in interest to Insurance Company of North America), Employers Insurance Company of Wausau, Everest Reinsurance Company f/k/a Prudential Reinsurance Company, First State Insurance Company, Great Northern Insurance Company, Hartford Accident and Indemnity Company, National Casualty Company, Pacific Employers Insurance Company, Republic Indemnity Company of America, Sentry Insurance Company as assumptive reinsurer of Great Southwest Fire Insurance Company, Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company), The Travelers Indemnity Company, TIG Insurance Company, The North River Insurance Company, and Westchester Fire Insurance Company (as successor by novation to Industrial Indemnity Company).

1

## **ARGUMENT**

1.       Travelers' Motion requested straightforward relief: that the Debtor and J&J confirm they have no other responsive non-privileged communications for certain of the Requests.[3]  Mot. at 3.  As requested, the Debtor and J&J confirmed to Travelers that, based on a reasonable search, there are no additional responsive non-privileged documents that had not already been produced or identified to Travelers.  *See* Decl. of G. Starner [Dkt. 692-3] at ¶ 2.  These confirmations by the Debtor and J&J rendered the Motion moot.  Unsatisfied despite obtaining the confirmations sought in the Motion, Travelers now improperly seeks additional relief in its Reply and raises entirely new arguments asking the Court to ignore and eviscerate applicable privileges.

2.       Travelers seeks to use this proceeding as a flanking attack to further its collateral coverage litigation with the Debtor and J&J, where Travelers contests its obligation to provide any coverage at all.  Travelers and the other insurers have breached their obligations to the Debtor and J&J and acted in bad faith by failing to cooperate in the defense of the talc litigation, raising meritless objections to coverage and asserting baseless challenges to the Plan.[4]  The Motion is a continuation of this campaign of obstruction, through which Travelers attempts to delay these proceedings and increase costs by seeking to pierce the mediation privilege and disregard the common interest doctrine.  Travelers also ignores that the applicable insurance coverage has been nearly exhausted already by prepetition defense and indemnity costs, and the Debtor and J&J will bear the overwhelming share of the funding for the Plan in any case.  The Court should see

---

[3]       Capitalized terms used but not defined herein have the meaning ascribed to them in the Debtor and J&J's Objection.

[4]       *Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 24], as subsequently amended at Dkt. 722.

AMERICAS 128588603

Traveler's Motion for the stunt it is and deny Travelers' newly raised demand as unwarranted and without merit.

## I.    Travelers' Request For New Relief Raised For The First Time In Its Reply Is Procedurally Improper

3.    Travelers' newly raised request that the Court totally disregard the mediation privilege and the common interest doctrine to permit Travelers broad access to protected communications between the Debtor and J&J, on the one hand, and talc claimants' counsel, on the other hand, is procedurally improper.  As discussed in the Objection, the Debtor and J&J have fully complied with their discovery obligations and rendered the Motion moot by confirming that no additional responsive non-privileged communications exist.  Mot. at ¶¶ 3-4; Obj. at ¶¶ 15-16. Now, Travelers contends for the first time in its Reply that the Court should disregard widely recognized privileges and protections to compel the Debtor and J&J to produce broad categories of Plan documents and communications prepared and made in connection with mediation or in coordination with supporting claimants' counsel in furtherance of confirming the Plan.  As a threshold issue, by failing to request this relief in the Motion, Travelers forfeited any right to raise this new demand in its Reply.  *See, e.g.*, *Asante-Chioke v. Dowdle*, 2023 WL 8257971, at *2 n.1 (E.D. La. Nov. 29, 2023) ("[T]he Court may not consider wholly new issues raised for the first time in a reply memorandum."); *In re CM Resort, LLC*, 2021 WL 3889790, at *9 (Bankr. N.D. Tex. Aug. 31, 2021) (disregarding claims first raised in reply as procedurally improper).  Courts do not permit parties to seek new or different relief or add new arguments through a reply.  *See, e.g.*, *Quality Leasing Co., Inc. v. Int'l Metals LLC*, 2022 WL 18540481, at *1 (S.D. Ind. Nov. 21, 2022) ("Raising new relief for the first time in [the] reply brief, rather than by motion […] is not allowed."); *Celeritech Int'l Corp. v. Superstar Holdings Inc.*, 2024 WL 4865103, at *6 (S.D. Fl. Nov. 19, 2024) (refusing to consider arguments raised for the first time in a reply because raising

AMERICAS 128588603

new arguments in a reply is "categorically improper") (citing *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.")). Travelers' newly requested relief should be denied on that basis alone.

## II.     The Mediation Privilege And Common Interest Doctrine Are Widely Recognized And Apply Here

4.     Travelers' contentions that the mediation privilege and common interest doctrine do not exist or do not apply here are without merit.  This Court has already stated that it will not permit parties to invade the mediation privilege.  *See, e.g.*, Nov. 12, 2024 Hr'g Tr. at 112:19-21 ("[I]f the answer is no, non-mediation related [documents], then just say no."); *id.* at 87:13-20 ("If something was conducted in mediation, . . . – I'm not opening that door. I'm not interested in that. . . . I'm not opening up mediation doors . . ."); Dec. 10, 2024 Hr'g Tr. at 35:1-2 ("[I]t looks like they're asking for stuff from mediation and you're not going to get that either.").  This Court has similarly recognized the protections of the common interest doctrine apply where parties share common legal interests with respect to formulating and confirming the Plan.  *See, e.g.*, Nov. 12, 2024 Hr'g Tr. at 112:7-17 ("I got it if there's kind of a common interest privilege.").

5.     Furthermore, contrary to Travelers' bald assertions, the mediation privilege and the common interest doctrine are widely recognized and routinely applied to protect disclosure of documents and communications in these circumstances.  Indeed, other bankruptcy courts in this district have recognized a mediation privilege shields plan negotiations from disclosures.  In *In re Exco*, for example, Judge Isgur recognized that mediation communications are "totally privileged." Transcript of Motion Hearing at 42:7-12, *In re Exco Resources Inc.*, No. 18-30155 (ECF No. 1413) (attached hereto as Exhibit 1).  He further acknowledged that the mediation privilege is not limited to "the four corners of the mediation room" and applies to "all the communications in furtherance

4

of the mediation proceedings" in connection with the bankruptcy whether the mediator personally is involved or not.  *Id*. at 39:24 – 40:8 ("First, does the mediation privilege apply outside of the four corners of the mediation rooms? My answer is it does. The mediation privilege applies to all the communications in furtherance of the mediation proceedings . . .  also the principle of it just makes no sense to limit it to the room.").  This Court's Procedures for Complex Cases, which allow mediation by agreement without Court approval (*see* ¶ 48), provide similarly robust protections.  For example, they expressly prohibit "the participants in mediation . . . from divulging, outside of the mediation, *any oral or written information disclosed by the parties in the course of the mediation*" (*see* ¶ 53) (emphasis added), among other protections (*see* ¶¶ 53 – 54, 56).  As noted in the Objection, there is also a strong public policy supporting the confidentiality of mediation, and respecting the confidentiality of mediation negotiations is essential to facilitate the consensual resolution of disputes through mediation.  Obj at ¶ 19.  Accordingly, this Court's recognition of the confidentiality of mediation negotiations is entirely appropriate and should be preserved.  *See, e.g.*, *DVL, Inc. v. Congoleum Corp.*, 2019 WL 13417209, at *3 (D.N.J. Dec. 2, 2019) (refusing disclosure of mediation communications protected by "specific confidentiality provision" in prior court's order without reaching the issue of federal mediation privilege).

6. Here, there has been extensive mediation by and among the Debtor, J&J, and claimants' counsel.  There have been ongoing mediation efforts with various claimants' counsel regarding a potential resolution of the talc litigation in bankruptcy since early 2022.  Decl. of J. Murdica (attached hereto as Exhibit 2) at ¶ 2.  Since at least March 2024, there has been one principal mediator working with the Debtor, J&J and claimants' counsel in connection with mediating negotiations of what ultimately became the Plan, and mediation relating to the Plan continued throughout the period leading up to the Debtor's bankruptcy filing and continued

AMERICAS 128588603

afterwards. *Id*. Nor has mediation concluded, as the Debtor and J&J continue to build further consensus around the Plan that is already supported by the overwhelming majority of claimants. *Id*. Indeed, continued mediation during the pendency of this case has helped to increase the number of claimants firms supporting the Plan and resolve opposition to the Plan on the part of certain claimants' counsel. The inviolability of mediation and the importance of protecting the confidentiality of mediation negotiations comports with the overarching goal of bankruptcy to provide a forum for the consensual resolution of disputes in furtherance of a reorganization plan that serves the best interests of all stakeholders. *See In re Patriot Place, Ltd.*, 486 B.R. 773, 825 (Bankr. W.D. Tex. 2013) ("Chapter 11 of the Bankruptcy Code was designed to promote and encourage consensual resolution of disputes whenever possible."). The Fifth Circuit's decision in *In re Grand Jury Subpoena Dated December 17, 1996*, 148 F.3d 487, 493 (5th Cir. 1998), is not to the contrary. That case, where the court declined to protect mediation sessions conducted under the Agricultural Credit Act from a criminal grand jury, presented an entirely different situation from mediations widely used to formulate and build consensus around a plan of reorganization in bankruptcy.

7. Travelers cites to various inapposite cases that discuss settlement privilege, not mediation privilege. *See* Reply at ¶ 19. Travelers also ignores that the mediation privilege is recognized under Texas law. *See, e.g., Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 796 (Tex. App. 2013) (recognizing the Texas ADR Act (CIV PRAC & REM § 154.073) prohibits disclosure of mediation communications). And even the cases cited by Travelers recognize the consensus across the country regarding the existence of a mediation privilege and understand invading the mediation privilege would frustrate the purposes of state legislation enacted to foster and protect such confidential communications. *See, e.g., In re MSTG,*

6

*Inc.*, 675 F.3d 1337, 1343 (Fed. Cir. 2012) (recognizing a broad consensus across the country regarding the existence of a mediation privilege); *see also Chester Cnty. Hosp. v. Indep. Blue Cross*, 2003 WL 25905471, at *5 (E.D. Pa. Nov. 10, 2003) ("As almost all fifty states have elected to protect confidential mediation proceedings to facilitate settlement of cases, our refusal to recognize a similar federal privilege would frustrate their efforts to establish an expectation of privacy.").

8.      Travelers' attack on the application of the common interest doctrine also misses the mark.[5]  Courts routinely recognize a common interest between debtors and plan supporters.  *See, e.g.*, *In re Maxus Energy Corp.*, 617 B.R. 806, 824 (Bankr. D. Del. 2020) (recognizing that the debtors and the Official Committee of Unsecured Creditors shared a common interest in, inter alia, "reaching a settlement . . . which included . . . a consensual plan of reorganization"); *In re Leslie Controls, Inc.*, 437 B.R. 493, 502 (Bankr. D. Del. 2010) (recognizing that communications and documents shared between the debtor, an ad hoc creditors committee, and the prepetition FCR in hopes of developing a consensual plan of reorganization were protected because the entities shared a common legal interest); *Osherow v. Vann (In re Hardwood P-G, Inc.)*, 403 B.R. 445, 460 (Bankr. W.D. Tex. 2009) (upholding common interest protection as between the debtors, lenders, and the

---

[5]      While not directly at issue in Travelers' Motion, the Coalition of Counsel for Justice for Talc Claimants' contention in their Emergency Motion [Dkt. 761] that common interest requires a pending action is wholly without merit.  Any suggestion that a common interest cannot arise until the filing of a bankruptcy is nonsense.  Courts regularly recognize a common interest that pre-dates the filing of bankruptcy among parties that have formed a common legal interest with respect to formulating and confirming a plan of reorganization.  *See, e.g.*, *In re Duro Cyne Nat'l Corp.*, 2019 WL 4745879, at *12 (D.N.J. Sept. 30, 2019) (upholding prepetition common interest); *In re Tribune Co.*, 2011 WL 386827, at 5 (Bankr. D. Del. Feb. 3, 2011) (finding common interest arose prior to filing of plan).  Indeed, courts routinely acknowledge a common interest can apply between a debtor and parties that have entered into prepetition plan support agreements as was the case here.  *See, e.g.*, *In re Imerys Talc Am., Inc.*, No. 19-10289, ECF No. 3004 at 8 (holding plan proponents shared a common legal interest upon reaching an agreement in principle on the material terms of Chapter 11 plan); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17-04780, ECF No. 1652, at 20-22 (D.P.R. Oct. 10, 2019) (holding settling parties maintained a common interest at the point of their written preliminary agreement, even though it was not binding and the parties had not yet agreed on "all" material terms) (attached hereto as Exhibit 3); *In re Almatis B.V.*, 2010 Bankr. LEXIS 6377 at *5 (Bankr. S.D.N.Y. June 21, 2010) (holding that common-interest privilege arose among debtors, lenders and committee upon execution of plan support agreement).

7

committee which shared common interest in confirming a plan). Indeed, even in *Imerys*, which Travelers inaccurately describes in the Reply, Judge Silverstein upheld the application of the common interest doctrine in shielding relevant communications from disclosure where, as is the case here, the parties have an agreement in principle on the material terms of the Plan. *In re Imerys Talc Am., Inc.*, No.19-10289 (LSS), ECF No. 3004, at 8 (Bankr. D. Del. Feb. 23, 2021) ("Neither [moving party] seriously contest this contest this contention" that a common interest arose once the debtor and plan proponents "reached an agreement in principle on the material terms of the Plan.").

9.      Here, the Debtor, J&J, and claimants' counsel supporting the Plan share a cognizable common interest. There is a clear common legal interest between the Debtor, J&J and claimants' counsel that support the confirmation of the Plan. This includes claimants counsel that are members of the Ad Hoc Committee of Supporting Counsel ("AHC"), which by its very name recognizes the group's shared common legal interest with the Debtor and J&J in the successful formulation and confirmation of the Plan.[6] The shared common legal interest between the Debtor, J&J and the members of the AHC is further reflected in the Plan Support Agreements executed by the members of that AHC. *See* Decl. of J. Murdica at ¶ 3.[7] The formation of AHC dates back to early 2023, when the group was formed to support LTL's second bankruptcy. *In re LTL Management, LLC*, 652 B.R. 433, 439 (Bankr. D.N.J. 2023). Although that case was dismissed, the then-presiding bankruptcy judge lauded the "remarkable progress" the parties had made toward a "viable global settlement" that is "fair, efficient and expeditious," and "strongly encouraged" the

---

[6]      The AHC was formed "to advance the common interests of the law firms who support" the Plan. *Verified Statement of Paul Hasting LLP and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* [Dkt. No. 212] at ¶ 1.

[7]      The PSAs were executed by the various members of the AHC at different points between January 2024 and July 2024.

AMERICAS 128588603

parties to continue to "pursue a global resolution" through a chapter 11 plan "in a context other than this current bankruptcy case." *Id.* at 455. That is exactly what the parties have done, culminating in the Plan the vast majority of claimants have cast ballots to accept.

10. Likewise, the Debtor and J&J have shared a common interest with The Smith Law Firm PLLC (the "Smith Firm") since reaching agreement on the material terms resulting in the *Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support*. Decl. of J. Murdica at ¶ 4; *see also* Dkt. 17-1. As such, a common interest has existed with the Smith Firm, the AHC, and others prior to the bankruptcy, and that common interest continues today. Courts regularly recognize common interest protections in similar circumstances, specifically for communications relating to the formation of the terms of a plan. *See In re Roman Catholic Diocese of Syracuse*, 2024 WL 5054809, at *15 (Bankr. N.D.N.Y. Dec. 9, 2024) (holding that documents and communications exchanged between parties prior to plan filing were nonetheless protected from disclosure where they were operating pursuant to a "joint effort and strategy" to formulate the plan and disclosure statement); *see also Longview Power LLC, et. al. v. First American Title Insurance Co.*, No. 14-50369, ECF No. 117, at *3 (Bankr. D. Del. Dec. 10, 2014) (preventing disclosure of documents and communications relating to the formation and contents of a plan of reorganization between the debtor and plan proponents) (attached hereto as Exhibit 4).

11. The common legal interest between the Debtor, J&J and the claimants' counsel support the Plan is particularly clear with respect to Travelers and the other insurers. Indeed, Travelers does not (and cannot) dispute that the Debtor, J&J and the claimants' counsel supporting the Plan all share a common legal interest adverse to Travelers and Debtor's and J&J's other applicable insurers. *See, e.g., In re Leslie Controls, Inc.*, 437 B.R. at 502 (recognizing a common

9

interest among the debtor, an ad hoc creditors committee, and the prepetition FCR in connection with preserving and maximizing the insurance available to claims).  Furthermore, as noted in the Objection, even if there are potentially some issues where parties are not entirely aligned, that does not negate the existence of a common interest among parties that otherwise share a common interest vis-à-vis the party (here, Travelers) seeking the protected communications.  Obj. at ¶ 20.

### III.    None Of The Privileges Or Protections Have Been Waived

12.    Neither the Debtor nor J&J has waived the applicable privileges or protections.  The Debtor and J&J have not "put at issue" their negotiations with claimants' counsel, nor has the Debtor sought to rely on the fact or contents of any mediation negotiations to demonstrate that the Plan was proposed in good faith (or for any other contested issue).  Nor does Travelers' mischaracterization of selected language in some of the Debtor's filings somehow put the mediation negotiations at issue.  Reply at ¶¶ 4, 11.  Travelers references statements in the Disclosure Statement and Declaration of John Kim that simply provide background regarding the parties' dispute and development of the Plan; they do not purport to rely on any mediation negotiations to establish the Plan was proposed in good faith.  *Compare* Reply ¶ 11, *with* full text at Dkt. 25-2 at ii (no reference to the good faith standard under section 1129) and Dkt. 17 at ¶ 12-13 (explaining TDPs and possible payments without referencing good faith).  Accordingly, the mediation privilege has not been waived.  *See In re Burlington Northern, Inc.*, 822 F.2d 518, 533 (5th Cir. 1987) (privilege was not waived where the defendant did not assert a claim or defense that explicitly relied on the existence of the communications protected by privilege).  In reality, it is the overwhelming support of the claimants for the Plan in this bankruptcy that most clearly demonstrates the Plan has been proposed in good faith.  *See, e.g.*, *In re Taco Bueno Rests., Inc.*, 2018 WL 6720774 at *15 (Bankr. N.D. Tex. Dec. 20, 2018) (concluding that the "overwhelming support from the voting class, the committee and other stakeholders" established good faith); *In re*

AMERICAS 128588603

*SMBC Healthcare, LLC*, 2013 WL 12579583, at *5 (Bankr. S.D. Tex. Mar. 5, 2013) (considering acceptance of creditors as evidence that the plan was proposed in good faith); *In re WR Grace & Co.*, 729 F.3d 332, 347 (3d Cir. 2013) ("[T]he overwhelming vote by creditors in favor of the plan bolster th[e] conclusion" that the plan was proposed in good faith).  And as the Court well knows, the evidence establishing claimants' broad-based support of the Plan has been the subject of extensive discovery in this case.

13.     The circumstances here are also vastly different from both *BSA* and *Imerys*, which Travelers seeks to rely on.  In each of those cases, the debtor sought to rely on mediation negotiations as evidence that the plan was proposed in good faith.  *In re Boy Scouts of Am.*, No. 20-10343 (LSS), ECF No. 6798, at *13 (Bankr. D. Del. Oct. 25, 2021) (ruling that the debtor, by using mediation to meet the Bankruptcy Code's good faith standard, had "put the mediation, at least with respect to the good faith of the TDPs, at issue"); *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS), ECF No. 3004, at *8 (Bankr. D. Del. Feb. 23, 2021) (permitting limited disclosure of TDP negotiations where the debtor had specifically relied on the mediation negotiations as evidence of good faith).  Thus, the limited discovery granted in those cases was permitted only because the *BSA* and *Imerys* debtors sought to rely on mediation negotiations as evidence to show good faith under 11 U.S.C. § 1129(a)(3), which the Debtor does not need to do here.  To the contrary, this is a prepackaged bankruptcy that has garnered overwhelming claimant support which is more than sufficient evidence the Plan was proposed in good faith.

## IV.     Travelers' Should Not Be Allowed To Use This Action To Further Their Position In A Separate Collateral Action

14.     The Court should see Travelers' shifting requests as what they are:  a tactic to obtain leverage in the ongoing collateral litigation in which Travelers continues to deny that it has any coverage obligations whatsoever.  Travelers has already requested that it be able to use discovery

11

obtained in the bankruptcy in the coverage action.  Obj. at ¶ 22.  Its assertion that the Debtor and J&J are putting their "hands into other people's pockets" is ironic given that Travelers and the other insurers are seeking to deny any coverage whatsoever.   Travelers also ignores that the applicable insurance coverage has already been nearly exhausted by prepetition defense and indemnity costs, and it cannot dispute that the Debtor and J&J will bear the overwhelming share of the funding for the Plan in any case.[8]  *See, e.g.*, Dkt. 722 at Section 4.9.1(a).  It is clear that Travelers and the other insurers have breached their obligations to the Debtor and J&J and engaged in bad faith by failing to cooperate in the defense of the talc litigation, raising meritless objections to coverage and asserting baseless challenges to the Plan.  The Motion is just further evidence of Traveler's bad faith and obstructionism.  The Debtor and J&J have recently moved to assert claims against Travelers and the other insurers in the coverage litigation to obtain appropriate relief for their bad faith conduct, and the Debtor and J&J fully expect Travelers conduct to be properly sanctioned in that action. In the meantime, this Court should deny Traveler's newly raised demands as unwarranted and without merit.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Debtor and J&J respectfully request the Court deny the Motion.

---

[8]    Indeed, the Plan contemplates a payout of an unprecedented $10 billion to pay claimants, whereas the total amount of insurance remaining under the policy limits is only approximately $1.25 billion, which as noted has already been almost exhausted by prepetition defense and indemnity costs.

AMERICAS 128588603

Dated: December 16, 2024
Houston, Texas

Respectfully submitted,

*/s/ John F. Higgins*
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
James A. Keefe (TX 24122842)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

Gregory M. Gordon (TX 08435300)
Brad B. Erens (IL 06206864)
Dan B. Prieto (TX 24048744)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com

*Proposed Attorneys for Debtor*

*/s/ Gregory M. Starner*
Gregory M. Starner (*pro hac vice*)
Jessica C. Lauria (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
gstarner@whitecase.com
jessica.lauria@whitecase.com

Matthew E. Linder (*pro hac vice*)
111 South Wacker Drive
Chicago, IL  60606-4302
Telephone: (312) 881-5400
mlinder@whitecase.com

*Attorneys for Johnson & Johnson*

13

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 16, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins

14