UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>RED RIVER TALC LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-90505 (CML) |

**DEBTOR'S OBJECTION TO COALITION'S <u>EMERGENCY</u> MOTION
TO COMPEL TESTIMONY AND DOCUMENTS WITHHELD ON
COMMON INTEREST AND MEDIATION PRIVILEGE GROUNDS**

(Related to Docket Nos. 760, 761)

The Coalition of Counsel for Justice for Talc Claimants ("<u>Coalition</u>") has filed a scattershot motion to compel[2], attacking the invocation of various privileges, largely aimed at re-opening the depositions of Mr. Smith and certain members of the Ad Hoc Committee of Supporting Counsel (the "<u>AHC</u>"). But the motion also requests in opaque terms that the Debtor be forced to produce unspecified categories of documents or a privilege log as a consequence for asserting various privileges—an undertaking that *all* parties, including the Coalition, agreed would not be required and one which the Coalition itself has fought in the context of other discovery motions.

The Coalition's Motion is baseless, contrary to law and entirely inconsistent with the clear guidance that this Court already has provided in several hearings. It should be rejected as yet another distract-and-delay tactic by the same dwindling group of lawyers who are presently seeking relief from the case management schedule in hopes that the Debtor's prepackaged plan will never reach confirmation. Their efforts have gone on long enough.

---

[1] The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] *Emergency Motion of the Coalition of Counsel for Justice for Talc Claimants to Compel Testimony and Documents Withheld on Common Interest and Mediation Privilege Grounds* [Dkts. 760, 761] (the "<u>Motion</u>").

**OBJECTION**

I. **Common Interest Privilege Protects the Testimony and Documents the Coalition Seeks.**

The Coalition assumes, with no support, that Texas law governs the scope of privilege in this dispute. That is incorrect. This is a core proceeding, as the Coalition admits. See Mot. ¶ 3 ("This is a core proceeding under 28 U.S.C. § 157(b)"); see also 28 U.S.C. § 157(b)(2)(L) (listing "confirmations of plans" as a core proceeding). A core proceeding is one that "arise[s] under the Bankruptcy Code." WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp., 75 F. Supp. 2d 596, 607 (S.D. Tex. 1999). The Bankruptcy Code—federal law, not state—supplies the rule of decision in a core proceeding like this one. Id. ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding."). Thus, under a straightforward application of Federal Rule of Evidence 501, federal common law, not Texas state law, governs privilege here.[3]

Applying the federal common law is fatal to the Coalition's position. The Coalition's argument relies entirely on an overly restrictive reading of Texas Rule of Evidence 503(b)(1)(C), which protects confidential communications made by a client or client's lawyer to a representative of another other party "if the communications concern a matter of common interest in the pending action." See Mot. ¶¶ 13-14. But the "pending action" requirement does not exist in federal law analyzing "common legal interest." See In re Santa Fe Intern. Corp., 272 F.3d 705, 712 (5th Cir. 2001). Instead, a common legal interest

> encompasses shared communications between various co-defendants, actual or potential, and their attorneys, ***prompted by threatened or actual, civil or criminal proceedings***, to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings, or whenever the

---

[3] The Coalition's own cited case, In re Nw. Senior Hous. Corp., No. 22-30659, 2023 WL 1804625, at *9 (Bankr. N.D. Tex. Feb. 6, 2023), applies the federal common law of privilege—not Texas law.

communication was made in order to facilitate the rendition of legal services to each of the clients involved in the conference.

Id. (emphasis added) (quoting Aiken v. Texas Farm Bureau Mutual Insurance Co., 151 F.R.D. 621, 624 (E.D. Tex. 1993). "Thus, a cognizable common legal interest does not exist if a group of individuals seeks legal counsel to avoid conduct that might lead to litigation, but rather ***only if they request advice to 'prepar[e] for future litigation***.'" United States v. Newell, 315 F.3d 510, 525 (5th Cir. 2002) (emphasis added). And this rule applies in bankruptcy: "For the purposes of the common interest privilege, a possible restructuring is "litigation[.]" Nw. Senior Hous. Corp., 2023 WL 1804625 at *9.

In this case, a common legal interest has existed between the Debtor and members of the AHC at least since the beginning of the second LTL Management LLC chapter 11 case (In re LTL Mgmt. LLC, No. 23-12825 (MBJ) (Bankr. D.N.J.) ("LTL 2")). See Dep. of Erik Haas at 180:16-181:13 (attached hereto as Exhibit A) (█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████); id. at 184:6-14. ███████████████████████████████████████████████████████ Id. at 185:3-18. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Id.

In addition, between LTL 2 and this bankruptcy, the Debtor and the AHC continued working on an acceptable resolution to these talcum powder claims with the understanding that these same issues would be litigated in the future (i.e., another bankruptcy—this one). See Dep. of Mikal Watts at 18:19-21:10 (attached hereto as Exhibit B) (████████████████████

███████████████████████████████████████████

██████); see also Dep. of Jim Onder at 26:11-25 (attached hereto as Exhibit C) (████

███████████████████████████████████████████

██████████████). Considering (a) the extensive history of litigation attempting to resolve the talcum powder litigation (the initial LTL Management LLC chapter 11 case and LTL 2) and (b) the undisputed fact that a bankruptcy proceeding is "litigation," Nw. Senior Hous. Corp., 2023 WL 1804625, at *9, the negotiations that led to the prepackaged plan at issue here as well as the communications between the Debtor and the AHC (and in time, Mr. Smith) in furtherance of the plan were clearly made to "prepare for future litigation.'" Newell, 315 F.3d at 525.[4]

Finally, even if Texas law were to apply to privilege issues in this core proceeding (it does not), the Coalition's argument still fails.  The Coalition has not cited a single case showing how Texas Rule of Evidence 503(b)(1)(C) applies to the unique facts here, where the AHC has had a common interest with the Debtor in supporting the resolution of these claims since before the filing of LTL 2, which included certain of the same liabilities at issue here (in addition to liabilities related to mesothelioma and state AG claims, which are not at issue here).  See Ex. A, Dep. of Erik Haas at 185:3-18.  The Coalition has not explained why the "pending action" requirement would not be satisfied where there was ongoing litigation (LTL 2), it briefly paused, the relevant parties continued to work to enhance and solidify a mutually acceptable and desired

---

[4] Courts in other section 524(g) cases considering similar arguments have reached the same conclusion. See, e.g., In re Leslie Controls, Inc., 437 B.R. 493, 502 (Bankr. D. Del. 2010) (pre-filing negotiations and communications between a debtor and claimants regarding a pre-petition plan were shielded by the common interest privilege as "the parties shared a common interest in maximizing the asset pool" as well as a "common enemy").

resolution, and litigation (this proceeding) then resumed thereafter. There is no reason why privilege should not still apply in those circumstances.

In any event, the deposition quotes that the Coalition cites as the alleged "proof" that privilege is being asserted too liberally under its version of Texas law do not even establish as a matter of fact that the communications at issue occurred at a time when there was no "pending action." Thus, the Coalition has offered this Court no basis for which the privilege claims could be overruled, and responses compelled, even under its own overly restrictive reading of Texas Rule 503(b)(1)(C). By way of example, the following question, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, see Mot. ¶ 16, is indefinite as to time. And each of the Coalition's additional examples suffers for similar reasons.

## II. Mediation Privilege Also Protects the Testimony and Documents the Coalition Seeks.

Courts in this Circuit typically recognize that "[c]ommunications and statements made to a mediator, by a mediator, or between parties as part of a mediation session are privileged and are therefore not discoverable." DataTreasury Corp. v. Wells Fargo & Co., No. 2:06-CV-72, 2010 WL 11468809, at *6 (E.D. Tex. March 9, 2010) (citing that court's local rules); see also Folb v. Mot. Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164, 1178-80 (C.D. Cal. 1998) (recognizing "a federal mediation privilege applicable to all communications made in conjunction with a formal mediation"). This Court's local rules specify that "[a]ll communications made during [Alternative Dispute Resolution] proceedings . . . are confidential, are protected from disclosure, and may not be disclosed to anyone[.]" LR 16.4H; cf. Fed. R. Evid. 408 (excluding evidence of what was said during settlement negotiations).

To that end, the Court has thus far made abundantly clear that discovery of mediation statements and materials is off the table.  See, e.g., Nov. 12, 2024 Hr'g Tr. at 87:13-20 (attached hereto as Exhibit D) ("If something was conducted in mediation, . . . – I'm not opening that door.  I'm not interested in that. . . . I'm not opening up mediation doors . . . ."); Dec. 10, 2024 Hr'g Tr. at 35:1-2 (attached hereto as Exhibit E) ("[I]t looks like they're asking for stuff from mediation and you're not going to get that either.").

The Coalition offers no compelling reason why the Court's previous decisions on such issues should not control.  Every party to this proceeding has relied on the mediation privilege's existence, and the Coalition and its members have no issue respecting it when that is to their benefit.  See, e.g., Coalition R&Os to Debtor RFPs at 2 (attached hereto as Exhibit F) ("The Coalition objects to the Requests to the extent that they seek documents protected by the … mediation privilege."); id. at 13 (specifically objecting to request for "documents and communications regarding Your contention at the October 21, 2024 Court hearing that hundreds of firms representing women with Ovarian Claims oppose the Plan" on the ground of "mediation privilege"); see also Beasley Allen R&Os to Debtor RFPs at 2, 21, 22 (attached hereto as Exhibit G) (similarly invoking mediation privilege).[5]

Notably, the Debtor has not attempted to play fast and loose with privilege, such that some issue of parity should persuade the Court to reverse course on its prior guidance.  To the contrary, and as just one example, during Andy Birchfield's deposition ███████████████████████████████████████████████████████████████████

---

[5] The Coalition's position here is particularly ironic in light of the fact that the lead member firm, Beasley Allen, has previously cited some of the ***very same meetings*** and stood on mediation privilege to avoid certain disclosures in each of the federal MDL, New Jersey state MCL, and the LTL 2 proceedings and generally shield communications between the firm and one of J&J's former counsel that would prove certain egregious ethical lapses.  See, e.g., May 3, 2024 Transcript of Plenary Session in In re Talcum Powder Litigation MCL, 22:14- 25:9 (attached hereto as Exhibit H).

███████████████████████████████████████████████████

████████████████████████████████████████ See Nov. 21, 2024 Birchfield Dep. Tr. at 206:12-15 (attached hereto as Exhibit I).

The Coalition cites In re Grand Jury Subpoena Dated December 17, 1996 to argue that "the Fifth Circuit does not recognize a mediation privilege." Mot. ¶ 29 (citing 148 F.3d 487, 492 (5th Cir. 1998). But the Coalition overstates that case's holding. That case interpreted a provision of the Agricultural Credit Act that created an agricultural loan mediation program. See In re Grand Jury Subpoena, 148 F.3d at 490-92 (citing 7 U.S.C. § 5101(c)(3)(D)). The Fifth Circuit declined to interpret *that statute* to include an evidentiary privilege, finding that its mediation sessions were merely confidential, not necessarily privileged. Id. at 492. It did not make any blanket statements that no mediation privilege existed *ever*.[6]

## CONCLUSION

For the reasons stated herein, the Coalition's Motion should be denied.

[*Remainder of Page Intentionally Left Blank*]

---

[6] Further, as the court recognized in United States v. Edwards, 79 F. Supp. 2d 645, 652 (M.D. La. 1999), In re Grand Jury Subpoena came out the way it did in part because the "case involved the disclosure of sealed state agency documents to a federal grand jury," whose proceedings were itself nonpublic and confidential. Id. (emphasis added). It involved "the transfer from one 'protected' proceeding to another," ensuring the mediation information remained undisclosed. Id. By contrast, the Coalition here seeks that information from mediation sessions be fully disclosed so it can use it in litigation, a very different scenario than one where the government uses it in a criminal proceeding and protects it from public disclosure.

Dated:  December 16, 2024
Houston, Texas

Respectfully submitted,

*/s/ John F. Higgins*
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
James A. Keefe (TX 24122842)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 228-1331
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Brad B. Erens (IL 06206864)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100
gmgordon@jonesday.com
dbprieto@jonesday.com
bberens@jonesday.com
asrush@jonesday.com

PROPOSED ATTORNEYS FOR DEBTOR

**Certificate of Service**

I certify that on December 16, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtor's claims, noticing and solicitation agent.

*/s/ John F. Higgins*
John F. Higgins