UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>RED RIVER TALC LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-90505 (CML) |

**DEBTOR'S OBJECTION TO APPLICATION FOR AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE OFFICIAL
COMMITTEE OF TALC CLAIMANTS, EFFECTIVE AS OF DECEMBER 5, 2024**

(Related to Docket No. 809)

Red River Talc LLC, the debtor in the above-captioned case (the "Debtor"), files this objection (the "Objection") to the *Application for an Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor to the Official Committee of Talc Claimants*, *Effective as of December 5, 2024* [Dkt. 809] (the "Application") filed by the Official Committee of Talc Claimants (the "Committee"). In support of this Objection, the Debtor respectfully represents as follows:

**Preliminary Statement**

1. The Debtor objects to the Committee's proposed retention of FTI Consulting, Inc. ("FTI") because the Coalition of Counsel for Justice for Talc Claimants (the "Coalition")[2] has engaged FTI's wholly owned subsidiary, Compass Lexecon, Inc. ("Compass Lexecon"), in this case as the Coalition's economic consultant. Given the Coalition's unwavering determination to

---

[1] The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] Currently, the Debtor understands that the so-called "Coalition" consists of at most three law firms, including the firm of Beasley Allen. While the Debtor will refer to the opposition in this case as the Coalition for ease of reference, in fact the opposition really consists only of Beasley Allen.

defeat the Debtor's plan and obtain an order dismissing the case, FTI cannot demonstrate that it is disinterested, that it does not have an interest adverse to the estate, or that its retention is in the best interest of the estate. The Committee's proposed retention of FTI is problematic in numerous respects, but FTI's disabling conflict of interest is most obvious in the context of the expert testimony that the Committee and Coalition will respectively proffer at plan confirmation. The Coalition intends to proffer the opinion of Yvette Austin, a Senior Managing Director and Chair of Compass Lexecon's Global Finance Practice, in support of its wide-ranging efforts to defeat the plan.[3] See 11/22/2024 Email from Elizabeth L. Stryker to Debtor's Counsel (attached hereto as Exhibit A); 12/2/2024 Email from Elizabeth L. Stryker to Debtor's Counsel (attached hereto as Exhibit B). Ms. Austin's testimony will address "[e]stimation of current and future Channeled Talc Personal Injury Claims" for all purposes, including "estimation, disclosure, solicitation, voting and confirmation." Id.

2. The Debtor understands that the Committee intends to proffer the opinion of Matt Diaz, a Senior Managing Director at FTI, on precisely the same subject area as Ms. Austin.[4] Given that the Coalition's positions in this case—which the Coalition will advance with Compass Lexecon's assistance—are diametrically opposed to the Committee's support for the plan, the relief sought in the Application would put FTI in the untenable position of rebutting the opinion rendered by its own subsidiary. As addressed in further detail below, this dynamic is not merely

---

[3] The *Second Amended Prepacked Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 722] amended the *Amended Prepacked Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 24] and the *Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Dkt. 25-1].

[4] Because it is not a party to the *Agreed Case Management Order* [Dkt. 352] (the "Case Management Order"), the Committee has yet to disclose affirmative or rebuttal expert witnesses or the subject matter of their testimony. The Debtor's understanding of the Committee's contemplated expert testimony is based on Debtor's counsel's discussions with proposed counsel to the Committee.

2

undesirable for the Committee—it is impermissible under the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and applicable law.

3.      The Debtor formulated the plan with the assistance of its advisors, including its economic consultant, Bates White, LLC ("Bates White"). At confirmation, the Debtor will proffer the expert testimony of Dr. Charles Mullin, Chair and Partner of Bates White, in support of the plan. It is unclear why the Committee believes it needs its own claims-valuation expert when the Committee already supports the plan and its $10 billion settlement of current and future talc claims. The Debtor will pursue confirmation of the plan based in pertinent part on Dr. Mullins' expert testimony. But if the Committee wishes to retain its own claims-valuation expert, it must select a disinterested professional that does not "in the slightest degree have some interest or relationship that would color the independent and impartial attitude required by the Code," including "associations or affiliations" that "may engender conflicting loyalties." In re Consolidated Bancshares, Inc., 785 F.2d 1249, 1256 (5th Cir. 1986) (citing COLLIER ON BANKRUPTCY). It is impossible for FTI to fulfill this role due to its ownership of Compass Lexecon, which will inhibit FTI's ability to vigorously represent the Committee, including effectively rebutting the Coalition's claims-valuation opinion on behalf of the Committee.

4.      Because it owns Compass Lexecon, FTI holds an interest adverse to the Debtor's estate and is not disinterested within the meaning of sections 101(14), 328(c) and 1103(b) of the Bankruptcy Code. The relationship between FTI and Compass Lexecon is far more material and direct than the "slightest . . . interest" or "remote association[] or affiliation[]" that the Fifth Circuit has suggested could preclude a determination of disinterestedness. See I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co., Inc.), 432 F.3d 347, 355 (5th Cir. 2005); Consolidated Bancshares, 785 F.2d at 1256. Indeed, FTI's Economic Consulting segment, including Compass Lexcon,

comprises 22% of FTI's consolidated annual revenues. FTI Consulting, Inc., Annual Report (Form 10-K) (Feb. 22, 2024) at 2 (attached hereto as Exhibit C). FTI cannot effectively assist the Committee in implementing its decision to support the plan in light of this conflict of interest. In addition, because it is not disinterested, FTI would not be entitled to payment of its fees and expenses from the Debtor's estate under section 328(c) of the Bankruptcy Code. Retention of a financial advisor that could not be compensated would also not be in the estate's best interest. For these reasons and those set forth below, the Application should be denied.

## Background

*The Committee*

5.     On October 22, 2024, the United States Trustee appointed the Committee [Dkt. 313] pursuant to section 1102 of the Bankruptcy Code.

6.     On November 15, 2024, the Debtor filed the *Notice of Official Committee of Talc Claimants' Support for Amended Plan* [Dkt. 560], which provided that the Debtor, Johnson & Johnson and the Committee entered into a *Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support* (the "Committee MOU") pursuant to which the Committee agreed to support the plan. The Committee MOU is "a full and fair compromise of each Party's respective positions," which "document[s] all terms and conditions of [the parties'] agreement" and "further facilitates the resolution of all remaining and future Talc Claims through the Plan." Id., Recital H. On November 21, 2024, the Committee filed the *Statement of the Official Committee of Talc Claimants in Support of the Debtor's Chapter 11 Cases, Forthcoming Amended Plan and Plan Process* [Dkt. 613] (the "Committee Statement"), in which the Committee expressed its strong support for the Debtor's plan.

7.     According to the Committee, the "agreement in principle between the TCC, the Debtor and Johnson & Johnson represents a watershed moment in this Case and is further evidence

4

of why the historic $10 billion settlement of talc liability for ovarian and other gynecological cancer claimants that is at the core of the plan should be approved." Id. ¶ 9. In other words, the Committee endorses the consideration proposed to be paid under the plan to resolve the Channeled Talc Claims.

***The Coalition's Expert Witnesses***

8. On November 22, 2024, the Coalition disclosed seven purported expert witnesses (three more than any other party).[5] See Ex. A. As noted above, these witnesses include Yvette Austin, a Senior Managing Director and Chair of Compass Lexecon's Global Finance Practice, who also serves as a member of FTI's Fairness and Solvency Committee.[6] The Coalition expects that Ms. Austin will render an opinion on the "[e]stimation of current and future Channeled Talc Personal Injury Claims and/or subsets thereof for purposes of any and all contested matters, including, but not limited to, estimation, disclosure, solicitation, voting and confirmation." Id. The Coalition disclosed on December 2, 2024 that it also expects Ms. Austin to provide rebuttal expert testimony regarding

> ovarian and non-ovarian gynecologic personal injury claims data evaluation and analysis, estimation and valuation of current and future personal injury claims, whether the Plan and the trust distribution procedures set forth in the plan provide reasonable assurance that the trust will trust will value, and be in a position to pay, future demands on a similar basis, and in substantially the same manner as present claims, and the efficiency and equity of evaluating and resolving mass tort claims through a bankruptcy process compared to evaluating and resolving claims in the tort system, for purposes of any and all contested matters, including, but

---

[5] On December 13, 2024, the Debtor filed a motion to strike the Coalition's designation of five medical, science and regulatory experts, none of whom would provide testimony that is relevant or helpful to the Court in resolving any of the issues currently before the Court, including issued presented by confirmation of the Plan [Dkt. 769].

[6] *Yvette Austin*, Compass Lexecon, https://www.compasslexecon.com/professionals/yvette-austin (last visited Jan. 8, 2025).

5

not limited to, estimation, disclosure, solicitation, voting and confirmation.

See Ex. B.

*The FTI Retention Application*

9. On December 5, 2024, the Committee selected FTI as its proposed financial advisor, and on December 18, 2024, the Committee filed the Application. The Committee is seeking to retain FTI to provide a host of typical financial advisory services, as well as

> [a]ssistance in the review and/or preparation of financial information in connection with developing estimates of the number and value of personal-injury claims and demands including testimony as necessary, as well as reviewing, developing, and assessing proposed claims procedures to be used in connection with any proposed Plan or claims resolution trust.

Application ¶ 6(k). As noted above, the Debtor understands that the Committee intends to proffer the opinion of Matt Diaz, a Senior Managing Director at FTI, on the estimation and valuation of personal injury claims and demands.[7] Accordingly, FTI's opinion would address precisely the same topic on which the Coalition intends to proffer the testimony of Ms. Austin—who is employed by FTI's wholly owned subsidiary and serves on a member of FTI's Fairness and Solvency Committee—in support of a position diametrically opposed to the Committee's interests.

10. The Application argues that FTI's services are "necessary to enable the Committee to assess and monitor the efforts of the Debtor and its professional advisors to maximize the value of its estate and to reorganize successfully." Application ¶ 18. The Committee further represents, based on the declaration of Conor P. Tully, a Senior Managing Director of FTI, filed in support of the Application [Dkt. 809-2] (the "Tully Declaration"), that FTI "does not hold or represent any

---

[7] As noted above, because it is not a party to the Case Management Order, the Committee has yet to disclose affirmative or rebuttal expert witnesses or the subject matter of their testimony.

interest adverse to the estate." Application ¶ 11; see also Tully Decl. ¶ 15 (concluding that FTI is eligible to represent the Committee because it is a "disinterested person" and "does not hold or represent any interest adverse to the Debtor's estate"). The Tully Declaration discloses a list of FTI's connections with the Debtor, creditors, and other parties in interest. With respect to Compass Lexecon, FTI discloses that it is "a wholly owned subsidiary of FTI" that is "currently engaged in the Case" by the Coalition. FTI asserts that Compass Lexecon "operates separately from FTI, with distinct management and employees and its own computer network and servers." Tully Decl. ¶ 9(c) & n.5. According to FTI, it "has implemented an ethical wall . . . and will not utilize the services of any Compass Lexecon employees in connection with its engagement by the Committee in this Case." Id.

11. The Application does not disclose any information about the Compass Lexecon's revenues in comparison to FTI's other reportable segments. The Application does not disclose, for example, that FTI's Economic Consulting segment, which includes Compass Lexecon, generates annual revenues of $770 million, comprising 22% of FTI's consolidated revenues for the fiscal year ended December 31, 2023. Ex. C at 2, 38, 84.

## Argument

12. The Application should be denied because FTI fails to meet the requisite disinterestedness, FTI holds an interest adverse to the interest of the estate, and FTI's retention is not in the best interest of the estate.

**I.  FTI Fails to Meet the Requisite Disinterestedness and Holds an Interest Adverse to the Interest of the Estate.**

13. Section 328(a) of the Bankruptcy Code provides that a committee, "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a).

7

Section 1103 authorizes a committee "with the court's approval" to retain advisors. 11 U.S.C. § 1103(a). Such advisors "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." 11. U.S.C. § 1103(b). Once the terms of a professional's retention are approved under section 328(a), they may not be altered unless proven to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). Given the difficulty in revisiting the terms of engagement of a professional retained by an official committee, courts require "a sufficiently strong record when deciding whether to approve a professional under § 328(a)." In re Energy Partners., Ltd., 409 B.R. 211, 225 (Bankr. S.D. Tex. 2009). This record must demonstrate that employment of counsel by a committee is in "the best interests of the estate." Id. at 226 (internal quotation omitted).

14. Section 328(c) of the Bankruptcy Code authorizes a court to deny compensation to a professional retained under section 1103 "if, at any time during such professional person's employment under section [] 1103 . . ., such professional person is not a disinterested person . . . or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). A "disinterested person" is defined in section 101(14) of the Bankruptcy Code to include a professional who, among other things, "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). "The latter portion of the definition, which is referred to as the 'catch-all clause,' is sufficiently broad to include any professional with an 'interest or relationship that would even faintly color the independence and

8

impartial attitude required by the Code.'" Kavit, Gass & Webster, S.C. V. Michel (In re Crivello), 134 F.3d 831, 835 (7th Cir. 1998) (quoting In re BH & P Inc., 949 F.2d 1300, 1308 (3d Cir. 1991)).

15. Although section 328(c) concerns compensation and not retention, it has been considered by courts in assessing creditors' committees' applications to retain professionals. See In re Enron Corp., No. 01-16034 (AJG), 2002 WL 32034346, at *7 (Bankr. S.D.N.Y. May 23, 2002) ("Although § 328(c) concerns compensation and not retention, when read in conjunction with § 1103(b), § 328(c) has been interpreted to impose additional considerations in analyzing the retention of committee professionals under § 1103(b) by incorporating standards and authority native to retaining professionals under § 327(a)."); see also In re Caldor, Inc., 193 B.R. 165, 170–71 (Bankr. S.D.N.Y. 1996) (concluding that the standards enunciated under § 327(a) were "relevant . . . and appropriate . . . to consider whether [proposed counsel and financial advisers to the committee] meet the standards enunciated" under § 1103(b)).

16. While the Bankruptcy Code does not define an "adverse interest," some courts suggest that "if it is plausible that the representation of another interest may cause [the professional] to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); In re Martin, 817 F.2d 175, 180 (1st Cir. 1987) (considering whether a professional has "either a meaningful incentive to act contrary to the best interest of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk— or the reasonable perception of one"). If a professional holds an adverse interest or is not a disinterested person, "it is incumbent upon the professional to demonstrate why retention nevertheless is appropriate." 7 COLLIER ON BANKRUPTCY ¶ 1103.04[1].

17. FTI's lack of disinterestedness and interest adverse to the Debtor's estate is most readily apparent when one considers how the Committee intends to use FTI's expert testimony. The Committee intends to rely on expert claims-estimation and valuation testimony from FTI (Compass Lexecon's parent) to rebut testimony provided by Compass Lexecon (FTI's wholly owned subsidiary). The purposes for which each entity's respective testimony will be offered could not be more diametrically opposed. The Coalition, on the one hand, is determined to defeat the plan and obtain dismissal of the Debtor's case and will proffer testimony in support of those objectives. The Committee, on the other hand, has endorsed the plan and will proffer expert testimony in support of plan confirmation. Compare Committee Statement ¶ 9 ("[T]he historic $10 billion settlement of talc liability for ovarian and other gynecological cancer claimants that is at the core of the Plan should be approved"), with *Motion of the Coalition of Counsel for Justice for Talc Claimants to Dismiss the Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)* [Dkt. 44] ¶ 11 (arguing that the Debtor and Johnson & Johnson "are attempting to hijack the bankruptcy system to escape the civil justice system and force a lowball settlement on tort victims through delay"). It is simply not credible for the Committee to suggest that FTI can vigorously promote the Committee's objectives by rendering impartial and independent expert testimony to rebut the opinions of FTI's own subsidiary.

18. Because FTI's relationship with Compass Lexecon is that of a parent and subsidiary, it is more than plausible that FTI's testimony rebutting Compass Lexecon in this case would be different than testimony rebutting the opinion of a third-party advisory firm. See Leslie Fay, 175 B.R at 533 ("[I]f it is plausible that the representation of another interest may cause [the professional] to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate."); In re HML Enters., LLC, No. 16-90030

(BP), 2016 Bankr. LEXIS 3693, at *17-18 (Bankr. E.D. Tex. Oct. 12, 2016) ("[T]he adverse interest test is objective and precludes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.") (quoting In re JMK Const. Grp., Ltd., 441 B.R. 222, 229 (Bankr. S.D.N.Y. 2010)). The Committee's proposed retention of FTI is therefore plainly inappropriate, FTI is not disinterested, FTI holds an interest adverse to the estate, and the relief requested in the Application is contrary to the best interest of the Debtor's estate.

19. It is also unclear why the Committee believes it needs to retain its own claims-valuation expert when it already supports the plan, including the terms of the plan's $10 billion settlement of talc claims. By determining to support the plan, the Committee has endorsed the claims-valuation analysis performed by Bates White on which the plan is predicated. But if the Committee wishes to retain its own claims-valuation expert notwithstanding the Debtor's retention of Bates White, it must select a disinterested professional that does not "in the slightest degree have some interest or relationship that would color the independent and impartial attitude required by the Code," including "associations or affiliations" that "may engender conflicting loyalties." In re Consolidated Bancshares, Inc., 785 F.2d at 1256 (citing COLLIER ON BANKRUPTCY). It is impossible for FTI to fulfill this role due to its ownership of Compass Lexecon, which will inhibit FTI's ability to vigorously rebut the Coalition's claims-valuation opinion on behalf of the Committee.

20. Any argument by the Committee that FTI's retention is necessary to maintain continuity from the LTL Management LLC ("LTL Management") chapter 11 cases is irrelevant.[8]

---

[8] If anything, FTI's prior engagement, in which "FTI utilized services from Ms. Austin and other Compass Lexecon employees in connection with its role in LTL II," Tully Decl. ¶ 9(c), risks tainting FTI's prospective claims-valuation testimony.

11

As this Court recognized in denying the motions to transfer venue, this case involves a "clearly different debtor[]," with "different parties involved," and a different "scope of the types of claims [] to be addressed." Hr'g Tr. 215:7-13, 216:6-8 (Oct. 10, 2024). Moreover, unlike the <u>LTL Management</u> cases, the Debtor's plan in this case will resolve talc claims held by individuals who have voted to accept or reject the plan. As a result, any claims-valuation analysis that FTI may have conducted in the <u>LTL Management</u> cases has been rendered obsolete, and an alternative advisory firm whose independence is not impaired by a conflict of interest can provide probative and credible expert testimony at confirmation without unduly prejudicing the Committee.

## II. The Parent-Subsidiary Relationship Between FTI and Compass Lexecon Is an Actual Conflict of Interest That Warrants Denial of the Application.

21. The Tully Declaration's assurances regarding the separation between FTI and Compass Lexecon are insufficient to render FTI disinterested or to dispel the specter of conflicting loyalties that would undermine FTI's prospective testimony. Neither FTI's and Compass Lexecon's purportedly distinct management and separate networks and servers, nor the ethical wall described in the Application, could ever alter FTI's economic interest in Compass Lexecon. And because Compass Lexecon will be supporting the Coalition's ongoing efforts to defeat the plan, FTI's economic interest in Compass Lexecon serves only to lessen the value of the Debtor's estate. See <u>In re Jackson</u>, 484 B.R. 141, 154 (Bankr. S.D. Tex. 2012) ("An adverse interest includes possession or assertion of any economic interest that tends to lessen the value of the debtor's estate, or creates an actual or potential dispute in which the estate is a rival claimant."). The Debtor also questions the alleged separateness of FTI and Compass Lexecon, as described in the Tully Declaration. The publicly available biography of the Coalition's designated claims-valuation expert, Ms. Austin of Compass Lexecon, states that she "is currently a member, by

appointment, of FTI Consulting's Fairness and Solvency Committee."[9]  FTI's proposed retention should be denied on account of FTI's adverse interest to the interest of the estate.

22. Given the parent-subsidiary relationship between FTI and Compass Lexecon, FTI may be less incentivized to vigorously represent the Committee's interest, contrary to the "independent and impartial" disinterestedness required by the Bankruptcy Code.  See In re Caldor, Inc., 193 B.R. at 170 (professionals retained by a committee owe a fiduciary duty to the committee that retains them).  FTI's Economic Consulting segment, which includes Compass Lexecon, has annual revenues of more than $770 million, comprising 22% of FTI's consolidated annual revenues.  Ex. C at 2, 38, 84.  Any revenues generated from the Coalition's engagement of Compass Lexecon inure directly to FTI's benefit, which may hinder FTI's ability to objectively represent the Committee's interests in a fiduciary capacity, to the detriment of the Debtor's estate.

23. In re Greystone Holdings, L.L.C. is instructive.  In that decision, the bankruptcy court found that committee counsel's ownership of the committee's proposed financial advisor, "create[d] a disqualifying conflict . . . [b]y virtue of their financial arrangement and shared financial goals." 305 B.R. 456, 462 (Bankr. N.D. Ohio 2003).  The court reasoned that although no actual conflict had arisen, "the overlap, connection, and control" between the two professionals sought to be employed by the same committee meant that "the potential for conflict is there and it is great." Id. at 462.  Notwithstanding counsel's assurances that it would "zealously represent the [c]ommittee's interest or withdraw from representation" should an irreconcilable difference arise, id. at 459, the court held that "where inappropriate safeguards exist to alleviate the conflict, or if there is any material concern, the retention will not be allowed." Id. at 462.

---

[9] *Yvette Austin*, COMPASS Lexecon, https://www.compasslexecon.com/professionals/yvette-austin (last visited Jan. 8, 2025).

24.     FTI's proposed retention is plainly more problematic than the retention proposed in Greystone Holdings.  Here, the Committee is seeking to retain a corporate parent, FTI, while the parent's subsidiary, Compass Lexecon, is actively working to defeat the plan that the Committee supports on behalf of a separate group of dissident creditors.  No amount of ethical screening, assurances of zealous representation, or promises that FTI will "operate[] separately" from Compass Lexecon can overcome FTI's material economic interest in Compass Lexecon.  This direct corporate affiliation inherently creates a "material concern" that FTI's ability to provide impartial, disinterested advice to the Committee may be impaired.  Id. at 462; In re W. Delta Oil Co., 432 F.3d at 356.

### III.     Retaining FTI Is Not In the Best Interest of the Estate.

25.     Separate from the statutory requirements for retention, which should be sufficient to deny the Application, retention of a professional must be in the best interest of the debtor's estate.  See Energy Partners, 409 B.R. at 226 (listing non-exclusive factors for approving retention under section 328(a), including that it be in the best interest of the estate); In re Frontier Commc'ns. Corp., 623 B.R. 358, 363 (Bankr. S.D.N.Y. 2020) (same); In re Insilco Techs., Inc., 291 B.R. 628, 633 (Bankr. D. Del. 2003) (same).  Here, the Committee's retention of FTI is clearly not in the estate's best interest.

26.     Because FTI is not disinterested under section 328(c), FTI would not be entitled to reimbursement of its fees and expenses for work performed on behalf of the Committee.  To be disinterested, FTI must "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, ***or for any other reason***."  11 U.S.C. § 101(14) (emphasis added).  As detailed herein, FTI is the corporate parent of Compass Lexecon and

therefore holds an interest materially adverse to the estate and creditors. Due to FTI's adverse interest, the Debtor submits that FTI would not be entitled to compensation from the estate at any point.

27. Retention of a financial advisor that from the outset would not be entitled to payment of its fees and expenses by the Debtor's estate is not in the best interest of the estate. See, e.g., Gray v. English, 30 F.3d 1319, 1324 (10th Cir. 1994) ("In exercising the discretion granted by [section 328(c)] we think the court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose."). As described above, an alternative advisory firm whose independence is not impaired by a conflict of interest can provide probative and credible expert testimony at confirmation without unduly prejudicing the Committee.

## Conclusion

For all the reasons set forth above, the Debtor respectfully requests that the Court deny the Application.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: January 8, 2025<br>Houston, Texas | Respectfully submitted,<br><br>*/s/ Kristen R. Fournier*<br>Kristen R. Fournier (admitted *pro hac vice*)<br>KING & SPALDING LLP<br>1185 Avenue of the Americas, 34th Floor<br>New York, New York 10036<br>Tel: (212) 790-5342<br>Email: kfournier@kslaw.com |

## **CERTIFICATE OF SERVICE**

      I certify that, on January 8, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                 */s/ Kristen R. Fournier*
                                                 Kristen R. Fournier