**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC LLC,[1] | Case No. 24-90505 (CML) |
| Debtor. | |

**DEBTOR'S OMNIBUS OBJECTION TO THE OFFICIAL COMMITTEE OF**
**TALC CLAIMANTS' APPLICATIONS TO RETAIN CERTAIN LAW FIRMS**

(Related to Docket No. 805, 806, 808)

Red River Talc LLC, the debtor in the above-captioned case (the "Debtor"), files

this omnibus objection (the "Objection") to the:  (i) *Application for Order Authorizing the*

*Employment and Retention of Brown Rudnick LLP as Co-Counsel for the Official Committee of*

*Talc Claimants Nunc Pro Tunc to November 18, 2024* [Dkt. 805] (the "Brown Rudnick

Application"); (ii) *Application for an Order Authorizing the Official Committee of Talc*

*Claimants to Retain and Employ McKool Smith as Special Litigation Counsel Nunc Pro Tunc to*

*November 18, 2024* [Dkt. 806] (the "McKool Smith Application"); and (iii) *Application for*

*Entry of an Order Authorizing and Approving the Retention and Employment of Susman Godfrey*

*L.L.P. as Special Litigation Counsel to the Official Committee of Talc Claimants Effective as of*

*November 18, 2024* [Dkt. 808] (the "Susman Godfrey Application" and collectively with the

Brown Rudnick Application and the McKool Smith Application, the "Applications") filed by the

Official Committee of Talc Claimants (the "Committee").  In support of this Objection,

the Debtor respectfully represents as follows:

---

[1]    The last four digits of the Debtor's taxpayer identification number are 8508.  The Debtor's address is
501 George Street, New Brunswick, New Jersey 08933.

## PRELIMINARY STATEMENT

1.      As previewed in the *Debtor's Notice of Opposition to Prospective Retention of Counsel by the Official Committee of Talc Claimants* [Dkt. 677], the Debtor objects to the retention of Brown Rudnick LLP ("Brown Rudnick"), which until very recently acted as lead counsel for the so-called Coalition of Counsel for Justice for Talc Claimants (the "Coalition"),[2] including spearheading its wide-ranging efforts to defeat the plan.[3]  The Debtor also objects to the Applications for the additional reason that the Committee's proposed retention of *five* separate law firms[4], including two primary bankruptcy counsel and two separate litigation counsel, is patently excessive given the circumstances of this case.

2.      First, the Court should not approve the retention of Brown Rudnick, which, in its recent role as lead counsel to the Coalition, has taken multiple extreme positions in this case—and in other cases, including the LTL Management LLC ("LTL Management") cases—that are diametrically opposed to the Committee's support for the plan:

> "Judge, J&J's bankruptcy scheme buys delay but not peace.  Like the two prior bankruptcy cases, we submit . . . *this case also is doomed to failure*.  The legal strategy here *is a disservice to cancer victims*, as well as the J&J shareholders . . . Simply put, Judge, this *plan is not confirmable and won't be confirmed*, we submit, once Your Honor has an opportunity to view all the facts, all the circumstances, and assess the law."  Hr'g Tr. of Sept. 23, 2024 at 33:19-34:5 (Mr. Molton of Brown Rudnick speaking) (emphasis added).

> "This is an unprecedented bankruptcy case that *defies the fundamental goals of the Bankruptcy Code in nearly every respect*."  Initial Statement of Coalition of Counsel for Justice for

---

[2]      Currently, the Debtor understands that the so-called "Coalition" consists of at most three law firms, including the Beasley Allen Law Firm ("Beasley Allen").  While the Debtor will refer to the opposition in this case as the Coalition for ease of reference, in fact the opposition really consists only of Beasley Allen.

[3]      The *Second Amended Prepacked Plan of Reorganization of the Debtor* [Dkt. 722] amended the *Amended Prepacked Plan of Reorganization of the Debtor* [Dkt. 24] and the *Prepackaged Plan of Reorganization of the Debtor* [Dkt. 25-1].

[4]      See Brown Rudnick App. ¶ 5.

NAI-1542402352

Talc Claimants Regarding Chapter 11 Case [Dkt. 41] ¶ 1 (the "<u>Initial Coalition Statement</u>") (emphasis added).

"The bankruptcy system is intended to give relief to honest but unfortunate debtors. Red River is neither, nor is J&J. ***They are attempting to hijack the bankruptcy system to escape the civil justice system and force a lowball settlement on tort victims*** through delay. Permitting such an abuse would ***undermine the basic integrity of the bankruptcy system.*** The only way to avoid that is to ***immediately dismiss this case and sanction the Debtor and J&J*** for their serial bad faith filing." *Motion of the Coalition of Counsel for Talc Claimants to Dismiss the Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)* [Dkt. 44] (the "<u>Motion to Dismiss</u>") ¶ 11 (emphasis added).

"The Debtor is a ***made-for-bankruptcy shell entity designed*** by one of the wealthiest companies in the world ***to leverage bankruptcy as a litigation tactic to extinguish fundamental legal rights*** that the Bankruptcy Code was never intended to take away." *Objection of the Coalition of Counsel for Justice for Talc Claimants to the Debtor's Motion for Entry of an Order Approving (I) Adequacy of Disclosure Statement, (II) Solicitation Packages and Procedures Employed for the Solicitation and Tabulation of Votes on the Debtor's Prepackaged Plan of Reorganization and (III) Notice of Non-Voting Status* [Dkt. 268] (the "<u>Solicitation Objection</u>") ¶ 31 (emphasis added).

"Ultimately, ***J&J now seeks, for the third time, to (mis)use the bankruptcy process to isolate and force an inequitable settlement*** on women suffering (or who have died) from ovarian cancer. J&J seeks both this Court's approval of its machinations to rid itself and its affiliates of their talc liability, and this Court's accelerated consideration and approval of an obfuscated prepetition solicitation process as the cornerstone of a 'prepackaged' bankruptcy case." Initial Coalition Statement ¶ 49 (emphasis added).

"Through the divisional merger, J&J stripped JJCI, which by then had been named as a defendant (along with J&J) in thousands of talc lawsuits, of assets worth at least $61 billion, making the first step of the bankruptcy strategy ***arguably the largest fraudulent transfer in United States history***. In contrast, the Sackler family and Bernie Madoff were accused of taking $11 billion and $20 billion, respectively." Mot. to Dismiss ¶ 33 (emphasis added).

"Debtor, J&J and their officers, directors and counsel effectuated ***the largest fraudulent conveyance in the history of the United States*** (which they had collusively planned and prepackaged during

the waning days of the LTL 1.0 case)".  *Informational Brief of the Ad Hoc Committee of Certain Talc Claimants Regarding Second Bankruptcy Filing by LTL Management, LLC*, In re LTL Mgmt. LLC, Case No. 23-12825-MBK ("LTL II") [Dkt. 79] 2 (emphasis added).

"***This bankruptcy case was not filed in good faith. . . . It seeks to manipulate Texas law and the Bankruptcy Code for the sole purpose of discharging the Debtor's large and healthy non-debtor affiliates*** of direct and indirect tort liability, liability that J&J has admitted it was financially capable of paying.  And, worse still, it makes dying cancer victims, even those with a judgment, scratch, claw, and fight, potentially for years, to be compensated from funds that would have been available to those creditors just two days before the filing."  *Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case*, In re LTL Mgmt. LLC, Case No. 21-30589-MBK ("LTL I") [Dkt. 632] ¶ 7 (emphasis added).

On behalf of the Coalition, Brown Rudnick authored, signed and extensively argued in support of all the motions the Committee has now vowed to oppose.  As a result, Brown Rudnick would literally be advocating for the Committee against motions Brown Rudnick itself drafted, filed and prosecuted.  This both renders Brown Rudnick not disinterested and makes its engagement by the Committee a potential violation of Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct (the "Texas Professional Rules").

        3.      Retention of Brown Rudnick as Committee counsel is also not in the best interest of the Debtor's estate.  Given Brown Rudnick's strident advocacy against the plan, Brown Rudnick will be unable to effectively assist the Committee in implementing its decision to support the plan and, in fact, its involvement could undermine the Committee's efforts to achieve plan confirmation and consummation.  In addition, because Brown Rudnick is not disinterested, it would not be entitled to payment of its fees and expenses from the Debtor's estate under section 328(c) of title 11 of the United States Code (the "Bankruptcy Code").

NAI-1542402352

Retention of counsel that could not be compensated would also not be in the estate's best interest.

4.      The Debtor also objects to the Applications for the additional reason that the Committee's proposed retention of Brown Rudnick, McKool Smith, a Professionals Corporation ("<u>McKool Smith</u>") and Susman Godfrey L.L.P. ("<u>Susman Godfrey</u>") will inevitably result in unnecessary costs and duplication of services because the firms will be serving in the same or overlapping roles.  The Committee has not established the requisite good cause to retain two lead bankruptcy law firms and two special litigation counsel firms.  This is a prepackaged case, and the Committee already has determined to support the Debtor's amended plan.  Under those circumstances, the Committee would be well represented by its local Texas counsel, Stutzman, Bromberg, Esserman & Plifka, PC ("<u>SBEP</u>"), and Paul Hastings LLP ("<u>Paul Hastings</u>")—a large sophisticated law firm that (a) is familiar with the key constituencies in this case and the proposed amended plan of reorganization (having participated in its negotiation and formulation),[5] (b) has actively participated in this case from its inception (and in connection with the prepetition solicitation of the plan) and (c) has a robust bankruptcy litigation practice.

5.      For these reasons and those set forth below, the Applications should be denied.

---

[5]      As noted below and disclosed in its retention application, Paul Hastings previously represented the Ad Hoc Committee of Supporting Counsel.  <u>See</u> *Application for Entry of an Order Authorizing and Approving the Retention and Employment of Paul Hastings LLP as Co-Counsel to the Official Committee of Talc Claimants, Effective as of November 18, 2024* (the "<u>Paul Hastings Application</u>") [Dkt. 807] ¶ 11.  Upon its selection to represent the Committee, Paul Hastings ceased representing the Ad Hoc Committee of Supporting Counsel.  <u>Id.</u>

NAI-1542402352

## Background

### *The Committee*

6.      On October 22, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee [Dkt. 313] pursuant to section 1102 of the Bankruptcy Code.  At a meeting on October 28, 2024, the Committee selected SBEP to serve as interim counsel.[6]

7.      On November 15, 2024, the Debtor, Johnson & Johnson and the Committee entered into a *Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support* [Dkt. 560-1] (the "Committee MOU").  The Committee subsequently filed the *Statement of the Official Committee of Talc Claimants in Support of the Debtor's Chapter 11 Cases, Forthcoming Amended Plan and Plan Process* [Dkt. 613] (the "Committee Statement"), in which the Committee expressed its strong support for the Debtor's plan.  On December 9, 2024, the Debtor filed an amended plan, which incorporates the terms of the Committee MOU to the extent applicable [Dkt. 722].

8.      On November 18, 2024, the Committee selected Paul Hastings and Brown Rudnick as its proposed bankruptcy co-counsel, and Susman Godfrey and McKool Smith as its proposed special litigation co-counsel.  Paul Hastings App. ¶ 10.  On November 27, 2024, the Committee submitted an application to retain SBEP as Texas local counsel,[7] which was approved by the Court on December 27, 2024 [Dkt. 861].  On December 18, 2024, the Committee filed the Applications.

---

[6]     See *Application for Order Authorizing the Employment and Retention of Stutzman, Bromberg, Esserman & Plifka, a Professional Corporation, as Texas Counsel to the Official Committee of Talc Claimants Nunc Pro Tunc to October 28, 2024* [Dkt. 683] (the "SBEP Application") ¶ 5.

[7]     SBEP App. ¶ 5.

*Paul Hastings*

9.       Paul Hastings represented the Ad Hoc Committee of Supporting Counsel for months prior to the filing of this chapter 11 case (and represented the ad hoc committee of supporting counsel in LTL Management's second bankruptcy case).  The Ad Hoc Committee of Supporting Counsel is a committee of eighteen law firms[8] that formed to advance the common interests of law firms who supported the initial plan, and now, the amended plan.  The Ad Hoc Committee of Supporting Counsel, over the course of several months prior to the filing of this case, engaged in negotiations with various parties culminating in the formulation of the plan. Paul Hastings represented the Ad Hoc Committee of Supporting Counsel throughout that period of negotiation, during the solicitation of the plan and after the filing of this chapter 11 case.  Paul Hastings, with co-counsel, actively participated in and supported this chapter 11 case, including by attending the hearings in this chapter 11 case and filing objections to the motions to transfer [Dkt. 182] and dismiss [Dkt. 426] this chapter 11 case and a joinder in support of the appointment of Ms. Ellis as the future claimants' representative ("FCR") [Dkt. 455].  Paul Hastings ceased representing the Ad Hoc Committee of Supporting Counsel when Paul Hastings was selected to represent the Committee.  Five members of the Ad Hoc Committee of Supporting Counsel represent claimants appointed to the Committee.[9]  See Dkt. 313; see also AHC 2019 Statement.

---

[8]     The members of the Ad Hoc Committee of Supporting Counsel are:  Andres Pereira Law Firm; Andrews & Thornton; Aylstock, Witkin, Kreis & Overholtz, PLLC; De la Rosa Law Firm; Duncan Stubbs; Johnson Law Group; Linville Law Group; McDonald Worley PC; Nachawati Law Firm; Napoli Shkolnik; OnderLaw, LLC; Paul LLP; Pulaski Kherkher, PLLC; Rueb Stoller Daniel (f/k/a Dalimonte Rueb, LLP); Slater Slater Schulman LLP; The Miller Law Firm, LLC; Trammell PC; and Watts Guerra LLP. *See Verified Statement of Paul Hastings LLP and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* [Dkt. 212] ("AHC 2019 Statement").

[9]     Those law firms are:  OnderLaw, LLC, Andrews & Thornton, Nachawati Law Firm, Napoli Shkolnik and The Miller Law Firm, LLC.

-7-

***Brown Rudnick***

10.    Brown Rudnick represented the Coalition for over four months, both before and after the commencement of this case.  Brown Rudnick App. ¶¶ 19-20.  During that time, the Coalition strenuously opposed any bankruptcy resolution of talc claims, including the plan that, as amended, the Committee now supports.  These efforts involved the filing of numerous pleadings that Brown Rudnick drafted, including:

- The Motion to Dismiss;

- The Solicitation Objection;

- A motion to designate votes on the plan [Dkt. 265];

- A motion to reinstate the votes alleged to be improperly modified by the Smith Law Firm PLLC [Dkt. 266];

- A motion establishing a bar date for talc personal injury claims [Dkt. 264];

- A motion authorizing estimation of current talc claims for voting purposes [Dkt. 267]; and

- An objection to the Debtor's motion confirming the voting results [Dkt. 421].[10]

11.    As described above, Brown Rudnick has also taken unwavering positions against the bankruptcy and the plan, including arguing that the plan is "not confirmable and won't be confirmed" and the case (a) is "doomed to failure," "a disservice to cancer victims," an attempt "to hijack the bankruptcy system" and "force a lowball settlement on tort victims," and "a litigation tactic to extinguish fundamental legal rights," (b) "defies the fundamental goals of the Bankruptcy Code in nearly every respect," seeks to "mis(use) the bankruptcy process" and,

---

[10]    Brown Rudnick also drafted and argued in support of the Coalition's (a) motion to establish a protocol for appointment of an FCR [Dkt. 51] and (b) objection to the appointment of Randi S. Ellis as FCR [Dkt. 483].  That relief, if granted, would have resulted in a substantial delay in the resolution of this case.  After a hearing, the Court denied the motion and Randi S. Ellis was appointed as FCR [Dkt. 529].

as "the largest fraudulent transfer in United States history," compares to the frauds perpetrated by Bernard Madoff and the Sackler family.  See supra ¶ 2; see also Hr'g Tr. of Oct. 21, 2024 at 26:13-14 (Mr. Goodman of Brown Rudnick:  "I think something really bad happened in this case, right.").

12.     Brown Rudnick was retained by the Committee after "the Coalition's acceptance of Brown Rudnick's withdrawal as counsel."  Brown Rudnick App. ¶ 19.  According to the Application, "Brown Rudnick's representation of the Coalition terminated as of 12:00 a.m. on November 18, 2024" and Brown Rudnick's retention of the Committee commenced thereafter.  Id.

## ARGUMENT

### I.     The Brown Rudnick Application Should be Denied.

13.     The Brown Rudnick Application should be denied because:  (a) Brown Rudnick fails to meet the requisite disinterestedness; (b) Brown Rudnick's representation of the Committee may not comply with state ethical rules; and (c) retention of Brown Rudnick is not in the best interest of the estate.  Additionally, the retention of Brown Rudnick is redundant of the Committee's retention of Paul Hastings, and would result in unnecessary duplication.

#### A.     Brown Rudnick Fails to Meet the Requisite Disinterestedness.

14.     Section 328(a) of the Bankruptcy Code provides that a committee, "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment."  11 U.S.C. § 328(a).  Section 1103 authorizes an official committee "with the court's approval" to retain counsel.  11 U.S.C. § 1103(a).  Counsel "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case."  11. U.S.C. § 1103(b).

-9-

15.     Once the terms of a professional's retention are approved under section 328(a), they may not be altered unless proven to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).  Given the difficulty in revisiting the terms of engagement of a professional retained by an official committee, courts require "a sufficiently strong record when deciding whether to employ a professional under § 328(a)."  In re Energy Partners., Ltd., 409 B.R. 211, 225 (Bankr. S.D. Tex. 2009).  This record must demonstrate that employment of counsel by a committee is in "the best interests of the estate."  Id. at 226 (internal quotation omitted).

16.     Section 328(c) of the Bankruptcy Code authorizes a court to deny compensation to a professional retained under section 1103 "if, at any time during such professional person's employment under section [] 1103 . . ., such professional person is not a disinterested person . . . or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."  11 U.S.C. § 328(c).  A "disinterested person" is defined in Section 101(14) of the Bankruptcy Code as one who, among other things, "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14).

17.     Although section 328(c) concerns compensation and not retention, it has been considered by courts in assessing creditors' committees' applications to retain professionals.  See In re Enron Corp., 2002 WL 32034346, at *7 (Bankr. S.D.N.Y. 2002) ("[a]lthough § 328(c) concerns compensation and not retention, when read in conjunction with § 1103(b), § 328(c) has been interpreted to impose additional considerations in analyzing the

-10-

retention of committee professionals under § 1103(b) by incorporating standards and authority

native to retaining professionals under § 327(a)"); see also In re Caldor, Inc., 193 B.R. 165, 170-

171 (Bankr. S.D.N.Y. 1996) (concluding that the standards enunciated under § 327(a) were

"relevant . . . and appropriate . . . to consider whether [proposed counsel and financial advisers to

the committee] meet the standards enunciated" under § 1103(b)).

18.     On behalf of the Coalition, Brown Rudnick authored, signed and

extensively argued in support of all the motions the Committee has now vowed to oppose.  See

Committee Statement ¶ 10.  As a result, Brown Rudnick would literally be advocating for the

Committee against Brown Rudnick's own motions.  In addition, Brown Rudnick, through its

motions, other pleadings and statements in this Court, has taken extreme positions against the

plan and the validity of this chapter 11 case.[11]  Its prior positions stand in stark contrast with that

of the Committee, which has expressed support for the plan and resolution through this

bankruptcy.[12]

19.     Among other statements, Brown Rudnick has asserted for the Coalition

that the plan is "patently unconfirmable," and an "impossibility," and the vote in support of the

plan was "a sham."[13]  It has further asserted for the Coalition that this chapter 11 case is "a

fraudulent bankruptcy" with the sole goal of "evad[ing] liability" and the "epitome of corporate

---

[11]     Hr'g Tr. of Sept. 23, 2024 at 33:2-6 (Mr. Molton:  "I'm going to talk a little bit about . . . why it is that the Coalition law firms and their clients objected to this process, object to this third bankruptcy and object to this plan.").

[12]     See Committee Statement ¶ 10 ("[T]he TCC expects to . . . support confirmation of the forthcoming amended Plan."); compare with Mot. to Dismiss ¶¶ 140-141 ("The only way that the Debtor can counter the obvious fact that its bankruptcy is designed to create lethal delay is for the Debtor to contend that it can somehow confirm a plan of reorganization within a reasonable period of time. . . . But the Debtor cannot make this showing.").

[13]     See, e.g., Solicitation Obj. ¶¶ 23-24, 524.

abuse of chapter 11 bankruptcy".[14]  A Brown Rudnick attorney stated before this Court that

*"[he] think[s]* something really bad happened in this case" and "***personally do[es]n't think*** that

[resolution of talc claims] is the subject of an appropriate bankruptcy proceeding."  Oct. 21, 2024

Hr'g Tr. at 26:13-14 & 33:4-6 (emphasis added).[15]  Brown Rudnick cannot now plausibly walk

back these unequivocal statements, especially since it has taken, and is currently taking, similar

positions for claimant committees in opposition to other mass tort bankruptcy cases.  See, e.g.,

*Motion of the Official Committee of Unsecured Creditors to Dismiss the Chapter 11 Cases*

*Pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, to Terminate the Debtors' Exclusive*

*Period Pursuant to 11 U.S.C. § 1121(d)(1)*, In re BMI Oldco Inc., No. 23-90794 (MI) (Bankr.

S.D. Tex. June 25, 2024) [Dkt. 994] ¶¶ 8-9 (Brown Rudnick as committee counsel argues that

debtors should not be able to "use bankruptcy to create undue delay and deprive victims and their

---

[14]     See, e.g., Mot. to Dismiss ¶¶ 1, 6.

[15]     Brown Rudnick's own website includes the following quotes—made by the same attorney that previously
led the Coalition in this chapter 11 case and now seeks to represent the Committee—in connection with the
dismissal of LTL Management LLC's 2023 chapter 11 case:

> "This ruling sends a clear message:  multibillion-dollar, wholly solvent companies
> like J&J should not be allowed to use and in fact abuse bankruptcy laws to avoid
> accountability," said partner David Molton, who leads the Brown Rudnick team.
> "We are reassured by the Bankruptcy Court's reaffirmation that it will not allow
> solvent corporations to abuse the system and impose coercive, low-value and cram-
> down solutions on nonconsenting claimants. Justice should and now will triumph
> over corporate greed and legal chicanery."

Brown Rudnick Firm News, *Brown Rudnick Helps Talc Claimants Committee Win Dismissal of J&J's
Second Bankruptcy Case* (Aug. 1, 2023), available at https://brownrudnick.com/news_post/brown-rudnick-
helps-talc-claimants-committee-win-dismissal-of-jjs-second-bankruptcy-case/.

Mr. Molton also stated the following in connection with another mass tort bankruptcy case:

> "The bankruptcy court's decision in Aearo/3M dismissing that bankruptcy case,
> together with the Third Circuit's LTL/J&J dismissal opinion, applies the brakes to
> the misuse of the bankruptcy system by solvent companies who want to use the
> bankruptcy courts as a litigation management tactic for their present and legacy tort
> liabilities," he said in a statement. "As both courts made clear, employment of the
> bankruptcy courts for this purpose without the debtor having imminent financial
> distress is not a valid bankruptcy purpose."

Brown Rudnick Press Release, *Firm Helps Win Dismissal of 3M Unit's Bankruptcy Case* (June 14, 2023),
available at https://brownrudnick.com/news_post/firm-helps-win-dismissal-of-3m-units-bankruptcy-case/.

NAI-1542402352

families of their rights through strategic delay and weaponization of the bankruptcy process.");

see also *Joint Motion to Dismiss the Debtors' Bankruptcy Cases Pursuant to Bankruptcy Code Section 1112(b)*, In re Aearo Techs., No. 22-02890 (JJG) (Bankr. S.D. Ind. Feb. 2, 2023) [Dkt. 1066] ¶ 7 (Brown Rudnick joins in motion as special counsel for the Official Committee of Unsecured Creditors for Tort Claimants – Related to Use of Combat Arms Version 2 Earplugs, arguing that "[t]he record leaves no room for doubt that the Debtors, who seemingly answer only to 3M, filed a petition for relief to use 'the tools of bankruptcy' to try to force an unfavorable outcome on CAEv2 claimants to the benefit of 3M, under the guise of 'efficiency' and purported equitable treatment."); *Motion of the Official Committee of Tort Claimants and Certain Tort Claimants for Structured Dismissal of Chapter 11 Case*, In re Tehum Care Services, No. 23-90086 (CML) (Bankr. S.D. Tex. Jan. 16, 2024) [Dkt. 1260] ¶ 1, 8 (Brown Rudnick as co-lead counsel to the Official Committee of Tort Claimants arguing for dismissal as "[t]he Debtor'[s] bankruptcy was borne from a fraudulent transaction—a divisive merger that was intended to impair tort victims' ability to recover from a profitable tortfeasor" and claiming that "[t]o understand why—and what this case is truly about—it is helpful to begin with various failed attempts undertaken by wealthy companies to use the bankruptcy system to obtain a discharge of their tort liability to the detriment of victims harmed by their conduct.").

      20.    Even in Brown Rudnick's public announcement of their proposed Committee representation in this case, they make no mention of the Committee's support for the plan—instead they highlight the dismissal of the LTL Management cases and characterize the Debtor as "rel[ying] on a legal maneuver . . . to create a subsidiary to take and assume its talc claims."  Brown Rudnick Firm News, *Brown Rudnick Reps Talc Claimants Committee in J&J's Third 'Texas Two-Step' Bankruptcy Case* (Dec. 30, 2024), available at

https://brownrudnick.com/news_post/brown-rudnick-reps-talc-claimants-committee-in-jjs-third-texas-two-step-bankruptcy-case/.

21.     "A creditors' committee stands as a fiduciary to the class of creditors it represents."  Caldor, 193 B.R. at 169; see also In re Greystone Holdings, L.L.C., 305 B.R. 456, 460 (Bankr. N.D. Ohio, 2003).  "[T]he statutory requirements of disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."  Kavit, Gass & Weber, S.C. v. Michel (In re Crivello), 134 F.3d 831, 836 (7th Cir. 1998) (internal citation omitted).  A professional holds an adverse interest such that it is not disinterested under 11 U.S.C. 101(14) if, among other things, the professional "possess[es] a predisposition under circumstances that render such a bias against the estate."  In re West Delta Oil Co., Inc., 432 F.3d 347, 356 (5th Cir. 2005) (internal quotation omitted).  The crucial factor that is the focus of this analysis is whether the circumstances of the case present a situation "which may impair a professional's ability to offer impartial, disinterested advice to his or her client."  Id.  Disinterestedness pursuant to the Bankruptcy Code is "sufficiently broad to include any professional with an interest or relationship that would even faintly color the independence and impartial attitude required by the Code."  Crivello, 134 F.3d at 835 (internal citation omitted).

22.     Given the positions Brown Rudnick has taken in this chapter 11 case and other cases, Brown Rudnick simply cannot provide "untainted", "impartial" or unbiased advice to the Committee.  As a fiduciary to *all creditors*, including the vast majority who support the plan, counsel to the Committee must be able to act in furtherance of their interests.  Yet, Brown Rudnick has consistently worked to undermine any progress towards successful consummation

-14-

of a plan.  Further, Brown Rudnick's lack of disinterestedness cannot be cured by a waiver.

<u>In re Quality Beverage Co., Inc.</u>, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995) ("The 'adverse

interest' and 'disinterested person' limitations set forth in the statute governing the employment

of professionals cannot be excused by waiver.").

      23.     Although Brown Rudnick purports to have terminated its representation of

the Coalition, a professional's prior representation of parties in a bankruptcy case can

nonetheless render that professional not disinterested.  <u>Id.</u> at 595–96 (finding that a professional

is not disinterested, and could not be retained by chapter 7 trustee, where an accounting firm had

previously provided services to the unsecured creditors' committee prior to the conversion of the

case from a chapter 11 to a chapter 7).  While section 1103(b) does not *per se* bar counsel to be

retained by a committee based on a prior representation, the extraordinary facts relative to Brown

Rudnick's representation of the Coalition make it clear that it is not disinterested and cannot be

retained by the Committee.

      24.     It also should be noted that Brown Rudnick has incurred significant fees

and expenses in connection with its representation of the Coalition, some of which Brown

Rudnick admits remain outstanding.  Brown Rudnick App. ¶ 20 ("Certain members of the

Coalition have outstanding balances owed to Brown Rudnick for fees and expenses incurred

prior to November 18, 2024.").  That Brown Rudnick will still be seeking payment from

Coalition members for its prior services to the Coalition while it purports to represent the

Committee in opposition to the positions of the Coalition makes the facts here even more

egregious.

    **B.**    **Brown Rudnick's Potential Non-Compliance with State Ethical Rules.**

      25.     Brown Rudnick also cannot be retained to the extent its proposed retention

does not comply with applicable ethical rules.  Retained professionals must meet standards

-15-

established by professional ethics in addition to the requirements of the Bankruptcy Code.  See

In re Congoleum Corp., 426 F.3d 675, 688 (3d Cir. 2005).  The Texas Professional Rules reflect

the minimum standard of conduct accepted in federal courts in Texas.  See Local Rules of the

United States District Court for the Southern District of Texas, Rule 1; Bankruptcy Local Rules

for the Southern District of Texas (adopting the rules of the United States District Court for the

Southern District of Texas).  Rule 1.09 of the Texas Rules of Professional Conduct ("Rule 1.09")

provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person **in the same or a substantially related matter** in which that person's interests are materially adverse to the interests of the former client **unless the former client gives informed consent, confirmed in writing**.

TEX. R. PROF CONDUCT § 1.09 (emphasis added); 10 ABA MODEL RULES OF PROFESSIONAL

CONDUCT AND CODE OF JUDICIAL CONDUCT § 1.9 (same).  Assuming the Coalition is now a

former client of Brown Rudnick, it would be an ethical violation for Brown Rudnick to represent

the Committee in this chapter 11 case regarding the same matter—confirmation of the plan and

related matters, including objecting to the multiple motions the Coalition has filed to derail the

Debtor's plan—unless Brown Rudnick establishes that the Coalition and each of its members

gave its informed consent, in writing, for Brown Rudnick to represent the Committee in the same

or related matters.  The Application asserts that Brown Rudnick has obtained written agreements

that waive any potential conflicts.  See Brown Rudnick App. ¶ 20.  At a minimum, Brown

Rudnick should submit evidence to the Debtor, the U.S. Trustee and the Court showing that such

waivers not only exist but also comply with applicable ethical rules.

### C.  Retaining Brown Rudnick Is Not In The Best Interest Of The Estate.

26.  Separate from the statutory requirements for retention and compensation,

which should be sufficient to deny the Brown Rudnick Application, retention of a professional

must be in the best interest of the debtor's estate.  See Energy Partners., 409 B.R. at 226 (listing

non-exclusive factors for approving retention under section 328(a), including that it be in the best

interests of the estate); In re Frontier Communs. Corp., 623 B.R. 358, 363 (Bankr. S.D.N.Y.

2020) (same); In re Insilco Techs., Inc., 291 B.R. 628, 633 (Bankr. D. Del. 2003) (same).  Here,

the Committee's employment of Brown Rudnick is clearly not in the estate's best interest.

      27.     First, Brown Rudnick on behalf of the Coalition has taken a number of

strident positions against the Debtor's plan and this case.  Brown Rudnick's objections were not

limited to specific terms of the plan it sought to change.  Rather, Brown Rudnick for the

Coalition inflexibly opposed all aspects of the plan and this case; indeed, it opposed any

bankruptcy resolution of talc claims.  Given its unstinting attacks on the plan and this case,

Brown Rudnick cannot effectively represent the interests of a Committee that wants the plan and

this case to succeed.  To the contrary, Brown Rudnick could use its position as Committee

counsel to undermine the Committee MOU and the plan despite the Committee's position.

      28.     Second, because Brown Rudnick is not disinterested under section 328(c),

Brown Rudnick would not be entitled to reimbursement of its fees and expenses for work

performed on behalf of the Committee.  To be disinterested, Brown Rudnick must "not have an

interest materially adverse to the interest of the estate or of any class of creditors or equity

security holders, by reason of any direct or indirect relationship to, connection with, or interest

in, the debtor, *or for any other reason*."  11 U.S.C. § 101(14) (emphasis added).  As detailed

throughout this Objection, Brown Rudnick, having taken and litigated numerous positions

contrary to the Committee's objective, has an interest materially adverse to the estate and

creditors *now*.  Due to this adverse interest, the Debtor submits that Brown Rudnick would not

be entitled to compensation from the estate at any point.

NAI-1542402352

29.     Retention of counsel that from the outset would not be entitled to payment of its fees and expenses by the Debtor's estate is not in the best interest of the estate.  If there were a lack of available options for counsel, retention of a firm that is not disinterested might be appropriate.  But that is plainly not the case here.  The Committee has proposed to retain four other firms, and Paul Hastings, in particular, having represented the Ad Hoc Committee of Supporting Counsel since long before the filing of this case, is well-qualified to adequately represent the interests of the Committee while also being eligible for payment under section 328(c).  The Committee's proposed retention of Brown Rudnick is not in the best interest of the Debtor's estate or the claimants.

## II.     The Retention of Five Firms by the Committee is Duplicative and Excessive.

30.     The retention of five separate law firms to represent the Committee is excessive and will result in unnecessary duplication.  The retention of multiple law firms by the Committee should not be approved because the Committee has failed to make a showing of good cause.  See In re Bible Speaks, 67 B.R. 426, 427 (Bankr. D. Mass. 1986) ("Undoubtedly because of the rather clear legislative history on the question, it was not disputed at the hearing that it is incumbent upon the Committee to establish cause for the employment of two attorneys.").  The legislative history of section 1103(a) instructs that while "[t]he subsection provides for the employment of more than one attorney . . . this will be the exception and not the rule; cause must be shown to depart from the normal standard."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 402 (1977).  Concurring, the Senate noted: "Normally one attorney should suffice; more than one may be authorized for good cause."  S. Rep. No. 989, 95th Cong. 1st Sess. 114 (1977).

31.     Courts deny applications by unsecured creditors' committees to retain co-counsel where counsel would provide duplicative or unnecessary services.  See, e.g., Official Comm. of Unsecured Creditors v. Harris (In re Southwest Food Distribs., LLC), 561 F.3d 1106,

NAI-1542402352

1113 (10th Cir. 2009) (upholding the bankruptcy court's denial of an unsecured creditors'
committee's application to retain co-counsel when services of both firms were not necessary and
noting that "[w]hile the right to select counsel of one's own choice is an undeniable right
afforded to participants in bankruptcy, that right is not without boundaries[.]"); <u>Bible Speaks</u>, 67
B.R. at 427 (unsecured creditors' committee had failed to demonstrate cause to retain two firms
as its counsel because, among other things, both counsel were "highly competent and
experienced," had the same areas of expertise and duplication would be inevitable—"[t]he
inability to agree upon one of two counsel [did] not constitute cause for the selection of both"
nor did "the maxim that 'two heads are better than one[]'").

       32.     Courts recognize that retained counsel should not be compensated for
duplicative services.  <u>See</u> <u>In re Busy Beaver Building Centers, Inc.</u>, 19 F.3d 833, 856 (3d Cir.
1994) (attorneys are obligated to exercise the same billing judgment as nonbankruptcy attorneys
and to write off unproductive or duplicative services); <u>In re DeMarco</u>, 2016 WL 899915, at *2
(Bankr. D.N.J. Feb. 9, 2016) ("The [Bankruptcy] Code expressly forbids compensation of
unnecessarily duplicative services" and finding sufficient evidence to show that unnecessary
duplicative services were performed by attorneys); <u>see also</u> <u>Bible Speaks</u>, 67 B.R. at 427 ("We
are fortified in [our] conclusion [denying the co-counsel retention] by the experience of courts in
reviewing fee applications of co-counsel to creditors' committees.  Such a review usually
discloses a duplication of effort that brings no added benefit to the estate.  This duplication
requires a corresponding reduction by the Court in the requested compensation."); <u>In re Sapolin
Paints, Inc.</u>, 38 B.R. 807, 814-15 (Bankr. E.D.N.Y. 1984) (finding that "joint representation by []
two firms of the same Creditors' Committee increased the number of hours for which

NAI-1542402352

compensation is now being sought. . . .  [I]t is clear that there was substantial duplication" and reducing counsel's requested fees).

33.     A debtor should not be forced, however, to use the fee application process to police duplication because that would be time consuming, inefficient, costly, and potentially unfair, both for the parties and for this Court.  See Bible Speaks, 67 B.R. at 428 (in the context of an unsecured creditors' committee's application to retain similarly qualified co-counsel, "[b]ecause some duplication is virtually unavoidable, the inevitable reduction in requested compensation has [an] aspect of unfairness to counsel whose joint employment has been previously authorized.  Denial of the joint employment in the first instance avoids the entire problem.").

34.     The Committee indicates that "[i]n light of the size and complexity of this Case, and consistent with the retention of counsel by the talc claimants' committees in the bankruptcy cases of the Debtor's predecessor" the Committee determined to retain multiple law firms.  Brown Rudnick App. ¶ 8; McKool Smith App. ¶ 14; Susman Godfrey App. ¶ 16.  But unlike the Debtor's predecessor's cases, this case is a prepackaged chapter 11 case where the Committee already has determined to support the Debtor's plan.

35.     Moreover, the LTL Management chapter 11 cases demonstrate the very risks the Debtor seeks to avoid in this chapter 11 case.  In both of those cases, the Debtor's predecessor opposed the retention of multiple counsel and advisors.  See, e.g., LTL I [Dkts. 1087, 1162, 1999, 2313]; LTL II [Dkts. 495, 603].  Although the New Jersey bankruptcy court ultimately approved the retentions under the facts and circumstances of those cases,[16] it

---

[16]     The multitude of counsel retained in the LTL Management cases was impacted by the United States Trustee's purported formation of two talc committees, each of which retained separate counsel.  The New Jersey bankruptcy court subsequently struck the amended notice of formation, and a single talc committee

expressed concern "as to duplication and excessive costs or unwarranted costs."  LTL I, Hr'g Tr. of Jan. 11, 2022 at 103:13 104:5.  That concern came to fruition, and the Debtor's predecessor had to object to requests for compensation based on, among other things, duplication of services. LTL I [Dkt. 2952];[17] LTL II [Dkt. 1496].[18]

36.     The Committee indicates that the respective professionals will work to avoid duplication of services and proposes a protocol that purportedly will "avoid unnecessary duplication of services."  Brown Rudnick App. ¶ 9; McKool Smith App. ¶ 15; Susman Godfrey, App. ¶ 17.  However, as the experience in this case,[19] as well as in LTL II, shows, the protocol will not be sufficient to avoid duplication among the multitude of firms the Committee seeks to retain.  See Bible Speaks, 67 B.R. at 427-28 (the retention of co-counsel by creditors' committees "usually" results in "duplication of effort that brings no added benefit to the estate. . . . [and that] requires a corresponding reduction by the Court in the requested compensation.").

37.     As described further below, the Committee has not established good cause to retain two lead bankruptcy firms, or one, much less two, special litigation counsel.  Paul Hastings, unlike Brown Rudnick, and SBEP can adequately and efficiently represent the Committee's interests in this case.[20]

---

was reinstated.  See LTL I [Dkt. 1273].  Certain counsel that represented the separate committees ultimately continued to represent the reinstated committee.

[17]     This objection resulted in an agreed substantial reduction in the requested amount of compensation.  See LTL I [Dkt. 2998].

[18]     These objections resulted in agreed reductions of the requested compensation.

[19]     For example, for each of the following depositions—James Murdica, Jim Onder, Adam Pulaski, and Majed Nachawati—the Committee had three of the law firms in attendance (1) Paul Hastings, (2) Brown Rudnick LLP, and (3) SBEP.  At some of the depositions, there were five attorneys (i.e., Nachawati and Pulaski).  In one recent deposition, nine lawyers appeared on behalf of the Committee.  See, Ex. A, Appearance Sheet at Jim Onder's Nov. 26, 2024, Deposition.  The Court recently expressed awareness of the "burn rate" in this chapter 11 case.  See Hr'g Tr. of Dec. 27, 2024 at 19:5-7 ("I'm really – I'm conscious about the burn rate in these cases, and doesn't mean we need to rush anything, but I am conscious of it").

[20]     With respect to professionals retained by the future claimants' representative, the Court made clear that it expected "[o]ne law firm, one expert."  Hr'g Tr. of Nov. 12, 2024 at 272:1-4 ("[A]nd I only want one law

NAI-1542402352

### A.      The Committee Does Not Require Two Primary Bankruptcy Counsel.

38.      The Committee has not demonstrated good cause to retain both Brown Rudnick and Paul Hastings as bankruptcy counsel.  The Committee states that it has "tasked Brown Rudnick and Paul Hastings with cooperatively providing lead legal services with respect to all bankruptcy matters including negotiation, plan, and exit strategy."  Brown Rudnick App. ¶ 8.  The services to be provided by Brown Rudnick, however, are substantially the same as those to be provided by Paul Hastings.  For example:

| Paul Hastings<br>[Dkt. 807 ¶ 16] | Brown Rudnick<br>[Dkt. 805 ¶ 6] |
|---|---|
| "advise the Committee with respect to the Committee's powers and duties under section 1103 of the Bankruptcy Code" | "assisting, advising, and representing the TCC in understanding its powers and its duties under the Bankruptcy Code and the Bankruptcy Rules and in performing other services as are in the interests of those represented by the TCC" |
| "assist the Committee in connection with the continued negotiation of the pending chapter 11 plan, including all related plan documents" | "assisting and advising the Committee in its review and analysis of, and negotiations with the Debtor and any counterparties related to, any potential changes or additions to the proposed plan" |
| "review, analyze, and/or prepare, on behalf of the Committee, any pleadings, including without limitation, motions, applications, orders, memoranda, complaints, answers, objections, replies, responses, and papers with respect to any of the foregoing" | "preparing necessary applications, motions, answers, orders, reports and other legal papers on behalf of the Committee, and pursuing or participating in contested matters and adversary proceedings as may be necessary or appropriate in furtherance of the Committee's duties, interest, and objectives" |

---

firm.  I'm just telling you, I'm not saying that in the order, but I'm striking the 1103 stuff.  One law firm, one expert.  I view this as a very kind of limited engagement.").

NAI-1542402352

| Paul Hastings [Dkt. 807 ¶ 16] | Brown Rudnick [Dkt. 805 ¶ 6] |
|---|---|
| "assist and advise the Committee in its consultations, meetings, and negotiations with the Debtor, Coalition of Counsel for Justice for Talc Claimants, AHC of Supporting Counsel, future claims representative, U.S. Trustee, co-counsel and professionals of the Committee, and other parties-in-interest" | "assisting, advising, and representing the TCC in its meetings, consultations and negotiations with the Debtor and other parties in interest regarding the administration of this Case" |
| "represent the Committee in connection with matters generally arising in this Chapter 11 Case, including in connection with any hearings, conferences, mediations, or other proceedings pending before the Court . . . ." | "representing the TCC at hearings to be held before this Court and communicating with the TCC regarding the matters heard and the issues raised as well as the decisions and considerations of this Court" |
| "respond to inquiries, as appropriate, from individual claimants as to the status of, and developments in, this Chapter 11 Case" | "responding to inquiries from individual creditors as to the status of, and developments in, this Case" |
| "perform all other legal services as may be required or otherwise requested by the Committee in connection with the Chapter 11 Case" | "assisting the TCC generally in performing such other services as may be desirable or required for the discharge of the TCC's duties pursuant to Bankruptcy Code Section 1103" |

39.     The Committee has not demonstrated good cause to retain two large law firms to provide essentially identical services.  The fact that multiple counsel ultimately were retained in the LTL Management chapter 11 cases—which were different cases, filed by a different debtor, with different assets and liabilities—is no basis to do so in this prepackaged chapter 11 case.  To the contrary, the LTL Management cases present a cautionary tale showing that excessive costs likely would be incurred if multiple firms are retained to perform the same services for the Committee.  Indeed, a substantially similar protocol to that proposed by the Committee here to avoid unnecessary duplication was purportedly in place in LTL II.  Compare Brown Rudnick App. ¶ 9 with LTL II [Dkt. 400] ¶ 9.  Duplication and excessive compensation requests resulted nevertheless.  See LTL II [Dkt. 1496] (objecting to final compensation requests

NAI-1542402352

of talc committee professionals totaling nearly $28 million for less than six months of services by eleven retained professionals).[21]

40.     The Committee does not require the services of two large law firms to serve as bankruptcy counsel in this prepackaged chapter 11 case.  As set forth herein, Brown Rudnick cannot do so.  In contrast, Paul Hastings—whose retention does not raise the same concerns —can efficiently and effectively serve as the Committee's sole primary bankruptcy counsel.

**B.     The Committee Has Not Demonstrated a Need for Special Litigation Counsel.**

41.     The Committee has not demonstrated good cause to retain one, much less two, special litigation counsel either.  Paul Hastings and SBEP can adequately and efficiently represent the Committee's interests in this case, including in respect of any litigation matters. The services of McKool Smith and Susman Godfrey are not necessary.

*i.     The Committee Does Not Need to Retain McKool Smith to Advise on Issues Related to the Memoranda of Understanding or Texas Law.*

42.     The Committee seeks to retain McKool Smith to "advis[e] the Committee on the issues concerning the Memorandum of Understanding [] negotiated by the Ad Hoc Committee of Supporting Counsel, and later supported by the Committee."  McKool Smith App. ¶ 13(j).  As an initial matter, it is unclear to which memorandum of understanding the Committee is referring.  The Smith Law Firm PLLC, not the Ad Hoc Committee of Supporting Counsel, entered into a memorandum of understanding with the Debtor prior to the filing of this chapter 11 case.  The Committee also has entered into a memorandum of understanding with the Debtor

---

[21]     This objection resulted in agreed reductions of the requested compensation.

expressing its support for the Debtor's proposed amended plan of reorganization.[22]  It is unclear what matters in respect of either memorandum of understanding would require the services of special litigation counsel—particularly given the Committee's support for the plan.[23]  Regardless, Paul Hastings and SBEP are well suited to assess any matters in connection with the memoranda the Committee may seek to assess.  The retention of McKool Smith is not necessary for this purpose.

43.     The McKool Smith Application also provides that McKool Smith will assist, advise and represent the Committee "with respect to matters of Texas law, including contract law and ethical considerations impacting Committee Agreements or actions of individual Committee Member counsel."  McKool Smith App. ¶ 13(k).  But SBEP and Paul Hastings, both of which have Texas lawyers, are more than capable of advising the Committee on any Texas law issues.  The McKool Smith Application does not demonstrate, nor could it, that separate special litigation counsel is required to address Texas contract law or ethics matters.

44.     In any event, McKool Smith's proposed services overlap with the services Paul Hastings proposes to provide:

| Paul Hastings [Dkt. 807, ¶ 16] | McKool Smith [Dkt. 806, ¶ 15] |
| --- | --- |
| "advise the Committee with respect to the Committee's powers and duties under section 1103 of the Bankruptcy Code" | "assisting, advising, and representing the Committee in understanding its rights and obligations, and its duties to its constituents under the Bankruptcy Code and the Bankruptcy Rules" |

---

[22]     See Committee MOU.

[23]     See Committee MOU; Committee Statement.

NAI-1542402352

| Paul Hastings<br>[Dkt. 807, ¶ 16] | McKool Smith<br>[Dkt. 806, ¶ 15] |
|---|---|
| "assist the Committee in connection with the continued negotiation of the pending chapter 11 plan, including all related plan documents" | "assisting, advising, and representing the Committee in and/or issues concerning the Second Amended Plan of Reorganization filed by the Debtor" |
| "assist the Committee with respect to its analysis of current and future claims against the Debtor, including negotiations with the future claims representative" | "assisting and advising the Committee in its review and analysis of, and negotiations with the Debtor and non-Debtor affiliates related to current and future talc claims" |
| "review, analyze, and/or prepare, on behalf of the Committee, any pleadings, including without limitation, motions, applications, orders, memoranda, complaints, answers, objections, replies, responses, and papers with respect to any of the foregoing" | "preparing necessary applications, motions, answers, orders, reports and other legal papers on behalf of the Committee, and pursuing or participating in contested matters and adversary proceedings as may be necessary or appropriate in furtherance of the Committee's duties, interest, and objectives" |

The retention of McKool Smith is not necessary and likely would result in unnecessary duplication.

> ### ii.     The Committee Has Not Demonstrated A Need To Retain Susman Godfrey to Advise on Mass Tort Litigation Issues.

45.     The Committee additionally seeks to retain Susman Godfrey as special litigation counsel to "provid[e] tailored mass tort litigation and other complex case experience before trial and appellate courts[]."  Susman Godfrey ¶ 14(a).  But, as noted above, the Committee supports the Debtor's proposed plan of reorganization, and a hearing to consider confirmation of the plan is currently set to commence on February 18, 2025.  The Committee does not explain why Susman Godfrey's mass tort experience is needed under the circumstances, or why Paul Hastings and SBEP cannot adequately and efficiently represent the Committee in connection with any mass tort or other litigation matters should they arise.  The Susman Godfrey Application provides no other description of services and no justification for why its retention as

-26-

special litigation counsel is necessary.  The retention of Susman Godfrey is not necessary and likely also would result in unnecessary duplication.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Debtor respectfully requests that the Court deny the Applications and grant such other and further relief to the Debtor as the Court may deem proper.

*[Remainder of Page Intentionally Left Blank]*

NAI-1542402352

Dated:  January 8, 2025
Houston, Texas

Respectfully submitted,

*/s/ John F. Higgins*
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
James A. Keefe (TX 24122842)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile:  (713) 228-1331
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Brad B. Erens (IL 06206864)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100
gmgordon@jonesday.com
dbprieto@jonesday.com
bberens@jonesday.com
asrush@jonesday.com

PROPOSED ATTORNEYS FOR DEBTOR

## Certificate of Service

I certify that on January 8, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtor's claims, noticing, and solicitation agent.

*/s/ John F. Higgins*
John F. Higgins

NAI-1542402352