IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>RED RIVER TALC LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-90505 (CML)<br><br>Re Dkt. No. 908 |

**OBJECTION OF THE COALITION OF COUNSEL FOR JUSTICE
FOR TALC CLAIMANTS TO DEBTOR'S EMERGENCY MOTION
FOR ENTRY OF AMENDED CASE MANAGEMENT ORDER**

The Coalition of Counsel for Justice for Talc Claimants (the "Coalition," and each a "Coalition Member"), hereby submits this objection (the "Objection") to the *Debtor's Emergency Motion for Entry of Amended Case Management Order* [Dkt. 908] (the "Motion") in the above-captioned chapter 11 case (the "Chapter 11 Case") filed by Red River Talc LLC (the "Debtor"). In support of its Objection, the Coalition respectfully states as follows.

**OBJECTION**

1. Four weeks ago, the Court conducted a scheduling conference specifically to resolve differences amongst the parties as to any adjustments to the schedule set forth in the Agreed Case Management Order ("CMO") [Dkt. No. 352] following the Court's abatement of all CMO deadlines [Dkt. No. 705] as a result of the Debtor's announced intention to file, and weeks later filing of, a Second Amended Plan of Reorganization [Dkt No. 722]. During that scheduling conference, after receiving an exchange of correspondence [Dkt Nos. 776 & 792] and extensive oral argument, the Court did resolve the parties' differences. It announced a new set of deadlines

---

[1] The last four digits of the Debtor's federal tax identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

8286432.1

(with clear, specific dates) that thereafter would control pre-trial procedures up to the commencement of the omnibus hearing, which the Court adjourned to February 18.

2. Now, with no change in circumstances and with the parties in the midst of operating under the existing deadlines announced on December 17, the Debtor inexplicably asks the Court to impose *new* deadlines. By its Motion, it asks the Court to enter an "Amended Agreed Case Management Order" [Dkt. No. 90-8-1] ("Proposed Amended CMO") that contains *different* deadlines from those ordered by the Court four weeks ago and *new* provisions that the Court never has even considered, let alone imposed. Moreover, the Debtor does so without the stipulation from any other party and over the express objection of the Coalition, which would be prejudiced by the Debtor's unilaterally-proposed changes.

3. During the December 17 hearing, the Court ruled:

> So I suspect the 18th I could probably carve out those last two weeks of February. . . . We're going to go on to February 18th start. Thursday the 13th could be when these pretrial briefs would be due. Just give me an opportunity to take the weekend to prepare. February 10th is a Monday. That could be when the Debtor's confirmation brief was due. . . .
>
> So I did February 10th confirmation brief, February 13th as pretrial briefs, which would give folks the 14th and the rest of the weekend off to prepare. 18th, confirmation hearing. I don't need a pretrial conference unless somebody needs it. But I don't want to schedule one.
>
> February 3rd through the 7th to take depositions. I'm just going backwards here. Rebuttal reports – rebuttal expert reports January 28th. Plan objections January 24th. Fact discovery deadline December 30. Initial expert reports January 7th. But run it forward, discovery ends on December 30th, a week later. You've got initial expert reports a few weeks after that. You've got plan objections a few days after that. You've got rebuttal reports somewhere between the 3rd and the 7th. So rebuttal reports are due on the 28th. You then take expert depositions the week of the 3rd through the 7th. The week after that, confirmation -- well, a few days after that, confirmation brief would be due. If anybody wants to submit a pretrial brief, they can do it on the 13th. But I suspect that really probably goes to responding to motions to dismiss and all that other stuff in connection with it. Just in case if somebody wanted to use it for that purpose in terms of the pretrial stuff. . . .

Transcript of Proceedings, December 17, 2024 ("12/17 Tr."), at p. 44, l. 12 – p. 45, l. 20.

4. Notably, the Court did not pull these new deadlines from thin air. Rather, the Court agreed with the Coalition that, in light of delays precipitated by the filing of the Second Amended Plan, "I do think the time [for the commencement of the omnibus hearing] needs to be extended." *Id.* p. 43, ll. 13-20. But the Court also indicated it that would be unable to accommodate the Coalition's suggestion of a March 3, 2025 start date for the omnibus hearing. Instead, as the Court explained, "I think March 3rd -- I've got Tehum plan confirmation, and that's a whole other - - that's going to take another set of -- that's already set in stone and that's got milestones. And to push that out would just be inconceivable for that group." *Id.* "[W]orking backwards and then looking at my schedule," the Court then read into the record a new CMO schedule. *Id.* at p. 43, l. 23 – p. 45, l. 20. In so doing, the Court adopted the Coalition's suggested deadlines for the front end of the revised schedule, including a December 30 fact discovery cut-off, a January 7 opening expert report deadline, and a January 28 rebuttal expert report deadline. (*Compare* Dkt. No. 792 *with* 12/17 Tr. at p. 44, l. 12 – p. 45, l. 20). But the Court adjusted the back end of the schedule to fit within a February 18 (as opposed to March 3) hearing start date. (*Id.*)

5. The "Amended Case Management Order" that the Debtor now unilaterally proposes has two significant adverse changes. *First*, the Debtor requests to *truncate* the amount of time for the preparation and submission of rebuttal expert reports by nearly a week – from January 28 (as ordered by the Court) to January 23. And the Debtor proposes to change the rebuttal expert deadline mid-stream, while the rebuttal experts already are working under the *existing* deadline to prepare their analyses and submit their reports. In a case of this complexity, involving thousands of pages of expert reports and reliance materials, the three weeks that the Court provided for the preparation of rebuttal expert analyses and reports (in response to the Coalition's request)

3

is the bare minimum of time that rebuttal experts require. Such time should not be abbreviated further under any circumstance. Here, the Debtor provides no reason why *less* time than the Court ordered should now be prescribed for the preparation of rebuttal expert reports.

6. *Second,* the Debtor unilaterally seeks to add a provision seemingly attempting to limit which parties can see expert reports. (*Compare* CMO ¶¶ 6, 11-13 *with* Proposed Amended CMO ¶¶ 4-7). Amended CMO ¶ 7 provides that "expert reports shall be served on all Discovery Parties, by and through the Discovery Parties' recipients identified in APPENDIX." Those Discovery Parties do *not* include – according to the Debtor -- plaintiffs' firms, like Beasley Allen and Golomb Law, which have appeared for their individual clients, and have actively litigated, in the pending contested matters in which the expert reports have been exchanged. Indeed, in seeming furtherance of shrouding litigation, rather than litigating in sunlight as bankruptcy demands, the Debtor has designated as "Professional Eyes Only" the entirety of expert reports it has submitted. The Court should not sanction the abridgement of fundamental due process rights. Coalition member firms have appeared on behalf of their individual clients and appropriately have conducted themselves as "professionals" in all aspects of this case. They are entitled to see any and all expert materials and "Professional Eyes Only"-designated materials.

7. The Debtor's purported rationale for the schedule changes it now proposes is "because 14 experts already have submitted expert reports, and multiple additional rebuttal expert reports are anticipated, including from potentially four additional experts"; thus, "[t]he Debtor proposes to shorten the period between the submission of initial expert reports and rebuttal reports by five days in order to accommodate a longer time period for expert depositions." (Motion, at ¶ 9). But the 21 total experts on which the Debtor now relies to propose a new schedule already had been known and, in fact, were disclosed to the Court during the December 17 hearing (*see,*

*e.g.,* 12/17 Tr. at p. 32, ll. 4-18). The number of experts that the parties have designated, therefore, presents no reason *now* for truncating the amount of time that the Court afforded rebuttal experts to prepare their reports (which time parameters the experts currently are working under).

8. Moreover, the Coalition repeatedly has indicated its willingness to schedule expert depositions both before and after the February 3 – 7 timeframe that the Court prescribed in order to accommodate counsel and witness schedules in light of the large number of designated experts. Scheduling depositions outside the constraints of interim CMO deadlines is exactly how the parties engaged with one another during fact discovery under the prior CMO. Instead of engaging the Coalition in a reasonable discussion to address scheduling issues, the Debtor – consistent with its litigation by brute-force tactics -- simply filed the Motion. Nonetheless, the Coalition stands ready, willing and able to work with the Debtor and other parties to start scheduling, and to discuss reasonable time limits (which the Coalition previously had proposed) with regard to, expert depositions so as to alleviate the time pressures precipitated by the sheer number of experts that the parties have designated.

WHEREFORE, the Coalition requests that the Court enter an order denying the Motion and granting the Coalition such other and further relief as the Court deems just and proper.

Dated: January 13, 2025                                    **OTTERBOURG P.C.**

                                                 */s/ Adam C. Silverstein*
                                                 Melanie L. Cyganowski (*pro hac vice*)
                                                 Adam C. Silverstein (*pro hac vice*)
                                                 Sunni P. Beville (*pro hac vice*)
                                                 David A. Castleman (*pro hac vice*)
                                                 Jennifer S. Feeney (*pro hac vice*)
                                                 230 Park Avenue
                                                 New York, New York 10169-0075
                                                 (212) 661-9100
                                                 mycganowski@otterbourg.com
                                                 asilverstein@otterbourg.com

8286432.1

sbeville@otterbourg.com
dcastleman@otterbourg.com
jfeeney@otterbourg.com

-AND-

 /s/ Nicholas R. Lawson
**LAWSON & MOSHENBERG PLLC**
Nicholas R. Lawson
Texas Bar No. 24083367
Avi Moshenberg
Texas Bar No. 24083532
801 Travis Street
Suite 2101 #838
Houston, TX 77002
Telephone: 832-280-5670
Email: Nick.Lawson@lmbusinesslaw.com
           Avi.Moshenberg@lmbusinesslaw.com


AND


**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
Thomas B. Bennett (*pro hac vice*)
David L. Selby II (*pro hac vice*)
Jonathan Gold (*pro hac vice*)
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
bglasser@baileyglasser.com
tbennett@baileyglasser.com
dselby@baileyglasser.com
jgold@baileyglasser.com
cjoshi@baileyglasser.com

*Co-Counsel for Coalition of Counsel for Justice for Talc Claimants*

## CERTIFICATE OF SERVICE

I certify that on January 13, 2025, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Nicholas R Lawson*
Nicholas R. Lawson

8286432.1