## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RED RIVER TALC LLC,[1] | ) Case No. 24-90505 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

## ASHCRAFT & GEREL, LLP'S MOTION FOR
## ENTRY OF AN ORDER PERMITTING ITS CLIENTS TO
## CHANGE THEIR VOTES WITH RESPECT TO THE DEBTOR'S CHAPTER 11 PLAN

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Ashcraft & Gerel, LLP ("Ashcraft & Gerel" or the "Firm"), moves the Court for the entry of an order permitting its clients to change their votes with respect to the chapter 11 plan filed by Red River Talc LLC (the "Debtor"). In support of this Motion, Ashcraft & Gerel respectfully states as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The basis for the relief requested herein is rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]     The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## RELIEF REQUESTED

4.     Pursuant to Bankruptcy Rule 3018(a), Ashcraft & Gerel requests that 1,480 of its clients be permitted to change their votes with respect to the Debtor's chapter 11 plan consistent with the amended master ballot submitted by Ashcraft & Gerel to the Debtor for tabulation by the Debtor's solicitation agent, Epiq Corporate Restructuring, LLC (the "Solicitation Agent")].

## BACKGROUND

5.     On September 20, 2024 (the "Petition Date"), the Debtor commenced this reorganization case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.     The Debtor's stated objective in this Chapter 11 Case is to obtain confirmation of the [*Third Amended Prepackaged Chapter 11 Plan of Reorganization of the Debtor*] [Docket No. 1171]  (the "Third Amended Plan").[2]  Comprehensive descriptions of the Debtor, its history, its assets and liabilities and the events leading to the commencement of this Chapter 11 Case can be found in the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* [Docket No. 25-2], which was filed on the Petition Date, and in the *Declaration of John K. Kim in Support of Chapter 11 Case and Certain First Day Pleadings* [Docket No. 17] (the "First Day Declaration").

7.     On October 22, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Official Committee of Talc Claimants [Docket No. 313] (the "TCC") pursuant to section 1102 of the Bankruptcy Code. Ashcraft & Gerel serves as the legal

---

[2]    The Third Amended Plan amended the Second Amended Plan [Docket No. 722].  The Second Amended Plan amended the Amended Plan [Docket No. 24].  The Amended Plan amended *the Prepackaged Plan of Reorganization of the Debtor* [Docket No. 25-1] (the "Initial Plan").  Capitalized terms not otherwise defined herein have the meanings given to them in the Initial Plan, the Amended Plan, the Second Amended Plan, or the Third Amended Plan, as applicable.

representative of an appointed member of the TCC, Rebecca Love, DDS, and also serves as Co-Chair of the TCC.

8.      Ashcraft & Gerel is uniquely situated in this matter.  The Firm is Co-Lead counsel with Beasley Allen in the federal multidistrict litigation (*In re: Johnson & Johnson Products Marketing, Sales Practices, and Products Liability Litigation* (MDL No. 2738).  As Co-Lead of the MDL, Ashcraft & Gerel has been responsible for overall strategy, discovery, expert development, motions practice (including *Daubert* briefing), bellwether process and negotiations. Ashcraft & Gerel has also tried talc cases in state courts with its co-counsel.

9.      Ashcraft & Gerel represented an appointed member of the TCC in LTL I and LTL II and was a member of the Coalition of Justice for Talc Claimants at the inception of this matter. Ashcraft & Gerel withdrew from the Coalition upon Dr. Love's appointment to the TCC.

10.     Simply put, Ashcraft & Gerel is one of the most knowledgeable and experienced talc litigation firms in the country.

11.     Prior to the Petition Date, LLT Management LLC ("LLT"), on behalf of the Debtor, solicited votes on the Initial Plan.  In connection with that solicitation, the Solicitation Agent distributed solicitation packages to, among other entities, every law firm that, according to LLT's books and records, represented holders of Channeled Talc Personal Injury Claims.  The solicitation packages provided recipients with notice of the general voting deadline of July 26, 2024, at 4:00 p.m. (prevailing Central Time) (the "General Voting Deadline").

12.     On July 26, 2024, prior to the voting deadline, Ashcraft & Gerel submitted a master ballot, a copy of which is attached hereto as **Exhibit A** (the "Original Ballot").[3]  The Original Ballot, which was executed by Ashcraft & Gerel attorney Michelle A. Parfitt, Esq., identified and

---

[3]    For confidentiality reasons, the copy of the Original Ballot attached hereto does not include the accompanying spreadsheet identifying individual claimants.

cast the votes of 1,507 Ashcraft & Gerel clients on the Initial Plan. *See* Ex. A.  Of that number, 1505 voted to reject the Initial Plan, and 2 voted to accept the Initial Plan.  *See id.*

13.     At the end of the solicitation period for the Initial Plan, the Debtor agreed to delay its bankruptcy filing and pause the voting certification to provide the parties time to negotiate a resolution of their objections to the Initial Plan.  First Day Decl. ¶ 127.  Following these negotiations, an agreement was reached with the Smith Law Firm, which included, among other things, an additional $1.1 billion to be contributed by the Debtor into the Talc Personal Injury Trust to fund payments to holders of Channeled Talc Personal Injury Claims in accordance with the terms of the memorandum of understanding memorializing the agreement between the Smith Law Firm, the Debtor, and the other parties thereto (the "Smith MOU").  *Id.* at ¶ 131.  Material terms of the Smith MOU were incorporated into the Amended Plan to the extent applicable.  *Id.* at ¶ 130.

14.     On November 15, 2024, the Debtor, Johnson & Johnson, and the TCC entered into a *Confidential Memorandum of Understanding & Agreement Regarding Talc Bankruptcy Plan Support* [Docket No. 560] (the "TCC MOU"), which provided, among other things, for an accelerated Effective Date for the Amended Plan, an acceleration of funding to the Talc Personal Injury Trust, and further limitations on the ability of the Debtor and Johnson& Johnson to withdraw the Amended Plan.

15.     On November 21, 2024, the TCC filed the S*tatement of the Committee of Talc Claimants in Support of the Debtor's Chapter 11 Case, Forthcoming Amended Plan and Plan Process* [Docket No. 613], which stated the TCC's support for the Amended Plan, subject to negotiation and approval of documentation to implement the TCC MOU.

16.     On December 9, 2024, the Debtor filed the Second Amended Plan, which incorporated certain but not all terms of the TCC MOU to the extent applicable.

17.     On February 17, 2025, after months of negotiations with the TCC and other parties in interest, the Debtor filed the Third Amended Plan, which further incorporated additional terms of the TCC MOU and provided other enhancements for holders of Channeled Talc Personal Injury Claims.

18.     As representative of a Co-Chair of the TCC, the Firm has continued to engage in negotiations with the Debtor and all parties in interest to further improve the Plan and ensure that the key terms and settlement documents referenced in the TCC MOU are finalized prior to confirmation.  Based upon these developments, the Debtor's agreement and advice of counsel that the operative Plan will contain these key terms and documents referenced in the TCC MOU and communicated with its clients, Ashcraft & Gerel now seeks the relief requested herein.

19.     On February 27, 2025, Ashcraft & Gerel submitted an amended master ballot, a copy of which is attached hereto as **Exhibit B** (the "Amended Ballot"),[4] to the Debtor.  The Amended Ballot, which, like the Original Ballot, is executed by Michelle A. Parfitt, Esq., identifies and seeks to cast the votes of 1,493 Ashcraft & Gerel clients who voted by the Original Ballot. *See id.*

20.     Prior to submission of the Amended Ballot, Ashcraft & Gerel communicated with its clients and advised them that it was in their best interest to change their votes to Accept the Plan assuming the terms of the TCC MOU were incorporated in an Amended Plan. Ashcraft & Gerel sent voting forms electronically to its clients, received affirmative responses from 839 of its

---

[4]     For the same confidentiality reasons applicable to the Original Ballot, the copy of the Amended Ballot attached hereto likewise does not include the accompanying spreadsheet identifying individual claimants.

clients, and Ashcraft & Gerel has certified their votes under the Option A Certification on the Amended Ballot. As an alternative, Ashcraft & Gerel provided negative notice to its clients indicating that if they did not provide an affirmative response, then Ashcraft & Gerel would exercise its power of attorney provided through its retention agreements with the clients to cast their votes. Ashcraft & Gerel has certified the votes for these 654 clients under the Option B Certification.

21.     Ashcraft & Gerel understands how important it is for claimants to be fairly, efficiently, and expeditiously compensated.  Many of the Firm's clients have passed during the pendency of this litigation.  As Co-lead Counsel in the MDL and one of the leading talc litigation firms, Ashcraft & Gerel was previously against Plan confirmation.  However, after thoroughly considering the improvements to the initial plan resulting from, among other developments, the incorporation of the TCC MOU and the related Master Settlement Agreement and Common Benefit Agreement into Plan confirmation, Ashcraft & Gerel now believes it is in the best interests of its clients that this Court confirm a Plan.  Ashcraft & Gerel has communicated directly with its clients, and following these communications, 1,480 of Ashcraft & Gerel's clients determined to change their vote with respect to confirmation.  Ashcraft & Gerel confirms that the Amended Ballot reflects its clients' votes with respect to the Plan.  Ashcraft & Gerel, therefore, requests that the Court permit the 1,480 Ashcraft & Gerel clients who previously voted to reject the Initial Plan to change their votes consistent with the Amended Ballot.[5]

---

[5]     In 1,479 cases, the votes should be changed from Reject to Accept. In 1 case, the claimant previously voted to Reject that Plan but wishes now to Abstain from voting.

## BASIS FOR RELIEF REQUESTED

22.     Bankruptcy Rule 3018(a) provides in relevant part that "[f]or cause shown, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection."  Fed. R. Bankr. P. 3018(a).  Neither the Bankruptcy Code nor the Bankruptcy Rules define "cause," and it is "up to judges to determine cause' based on the context and to grant or deny a motion in their discretion."  *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS), 2021 WL 4786093, at *7 (Bankr. D. Del. Oct. 13, 2021) (citing *In re MPM Silicones, LLC*, No. 14-22503, 2014 WL 4637175, at *2 (Bankr. S.D.N.Y. Sept. 17, 2014) and *In re J.C. Householder Land Tr. # 1*, 502 B.R. 602, 605-606 (Bankr. M.D. Fla. 2013)).

23.     Cause to change a vote on a chapter 11 plan must involve "more than a mere change of heart."  *MPM Silicones*, 2014 WL 4637175, at *3 (quoting *In re Windmill Durango Office, LLC*, 481 B.R. 51 (B.A.P. 9th Cir. 2012)).  Nevertheless, "[t]he test for determining whether cause has been shown should not be a difficult one to meet.  As long as the reason for the vote change is not tainted, the change of vote should usually be permitted.  The court must only ensure that the change is not improperly motivated."  *In re MCorp Fin., Inc.*, 137 B.R. 237, 238 (Bankr. S.D. Tex. 1992) (quoting 8 COLLIER ON BANKR., ¶ 3018.03[4] (15th ed. 1991)); *see also Imerys Talc*, 2021 WL 4786093, at *6 ("The overarching concern underlying Rule 3018 is that any vote change not be "improperly motivated . . . .").

24.     Common examples of improper motivations to change votes include attempts by claim purchasers to block confirmation, *e.g.*, *Windmill Durango*, 481 B.R. at 65 (citing *In re Kellogg Square P'ship*, 160 B.R. 332 (Bankr. D. Minn. 1993)), and promises of outside consideration unavailable to other creditors in exchange for settlement. *See In re Jartran, Inc.*, 44 B.R. 331, 363 (Bankr. N.D. Ill. 1984) ("Where leave to amend a ballot is sought pursuant to a

contract with fewer than all members of a class and constitutes partial consideration thereunder, the proposed amendment is inappropriate as against public policy . . . ."); *see also MCorp*, 137 B.R. at 239 (evidence did not overcome possibility of improper motivation where circumstances surrounding creditor's settlement with debtor were "highly suspect").

25.     "Cause" is exemplified, on the other hand, by motivations that further the Bankruptcy Code's goal of a consensual process.  Fifth Circuit courts have found that "subsequent negotiations between the plan proponent and the party seeking to change its ballot suffices as the required cause" under Bankruptcy Rule 3018(a).  *In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. 715, 744 (Bankr. M.D. La. 1999) (citing *In re Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988) and *In re Am. Solar King*, 90 B.R. 808 (Bankr. W.D. Tex. 1988)).  "The goal after all is consensual plans." *Cajun Elec*. 230 B.R. at 744 (quoting *Am. Solar King*, 90 B.R. at 825).

26.     "Such being the goal, what greater evidence of cause exists than where major parties in a chapter 11 proceeding negotiate a settlement of highly complex litigation, thus helping to pave the way to a consensual plan?" *Cajun Elec*., 230 B.R. at 744.  "[W]here the plan proponent does not oppose the vote being changed, the courts generally support the change over the objection of a still-dissenting creditor, in furtherance of the courts' and the Code's policy in favor of consensual negotiation of Chapter 11 plans." *MPM Silicones*, 2014 WL 4637175, at *3 (citing *In re Dow Corning Corp.*, 237 B.R. 374, 378–79 (Bankr. E.D. Mich. 1999)).

27.     Because the modifications made to the Initial Plan only improved the treatment of Channeled Talc Personal Injury Claims, votes cast in respect of the Initial Plan apply to the Third Amended Plan unless those votes are changed.  *See* 11 U.S.C. § 1127(a) ("The proponent of a plan may modify such plan at any time before confirmation . . . .  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan."); Bankruptcy

Rule 3019 (if "the proposed modification does not adversely change the treatment of the claim of any creditor . . . , it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan."). "Based on the policy of encouraging consensual plans in Chapter 11 cases," therefore, beneficial plan modifications that lead a claimant to reconsider their original rejecting vote establish cause. *In re CGE Shattuck, LLC.*, No. 99-12287-JMD, 2000 WL 33679416, at *3 (Bankr. D.N.H. Nov. 28, 2000) (authorizing creditor to reconsider his original vote based on plan modification made after the voting deadline that did not adversely affect any party).

28.     Ashcraft & Gerel believes the Third Amended Plan subject to the forthcoming necessary and agreed to changes by the Debtor reflecting the terms of the TCC MOU, it is in the best interests of its clients and has communicated the same to its clients who previously voted to reject the Initial Plan. Following such communications those clients now seek to change their votes. Because the TCC MOU and the Third Amended Plan materially benefit Ashcraft & Gerel's clients, and those individuals wish to change their votes, cause exists to permit these changed votes, as reflected in Ashcraft & Gerel's Amended Ballot. Ashcraft & Gerel understands that the Debtor does not oppose these changes in votes and requests that these claimants be permitted to change their votes consistent with the Amended Ballot.

## **NOTICE**

29.     Notice of this Motion has been provided to: (a) the Debtor; (b) the U.S. Trustee; (c) counsel to the TCC; (d) *pro se* claimants as identified in the Initial Plan solicitation process; (e) counsel to the Debtor's non-debtor affiliates, Johnson & Johnson Holdco (NA) Inc. and Johnson & Johnson; (f) the legal representative for future talc claimants and her counsel; (g) counsel to the Ad Hoc Committee of Supporting Counsel; and (h) any party that has requested

notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

WHEREFORE, Ashcraft & Gerel respectfully requests that the Court: (i) enter an order substantially in the form submitted attached hereto as **<u>Exhibit C</u>** (the "<u>Proposed Order</u>") granting the relief requested herein; and (ii) grant such other and further relief as the Court may deem just and proper.

Dated: February 28, 2025       Respectfully submitted,
      Washington, DC

                          */s/ Michelle A. Parfitt*
                          Michelle A. Parfitt
                          1825 K Street NW, Suite 700
                          Washington, DC 20006
                          Main: (202) 783-6400
                          Fax: (703) 933-2491
                          Email:  <u>mparfitt@ashcraftlaw.com</u>

                          *Counsel for Claimants*

### **Certificate of Service**

I certify that on February 28, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michelle. A Parfitt*
Michelle A. Parfitt

*Counsel for Claimants*

**Exhibit A**

**<u>Original Ballot</u>**

Red River Talc LLC
Class 4 – Master Ballot

> **IMPORTANT**: A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS MASTER BALLOT. THIS MASTER BALLOT IS A PREPETITION SOLICITATION OF THE VOTES OF HOLDERS OF CHANNELED TALC PERSONAL INJURY CLAIMS REPRESENTED BY YOU AS COUNSEL ON THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR. THE VOTING DEADLINE IS JULY 26, 2024 AT 4:00 P.M. (PREVAILING CENTRAL TIME).

In re:

Red River Talc LLC,

           Debtor.

For solicitation purposes only.
No chapter 11 case has yet been filed with respect to the Debtor.

## MASTER BALLOT FOR COUNSEL TO HOLDERS OF CHANNELED TALC PERSONAL INJURY CLAIMS VOTING ON PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR

LLT Management LLC ("LLT") is soliciting votes on the *Prepackaged Chapter 11 Plan of Reorganization of the Debtor* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan")[1] for and on behalf of Red River Talc LLC (the "Debtor") from holders of Channeled Talc Personal Injury Claims.[2] The Plan is described in greater detail in the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Plan and Disclosure Statement have been included in the package of materials containing this master ballot (this "Master Ballot") and can be accessed free-of-charge at https://dm.epiq11.com/redrivertalc.

The Debtor may commence a chapter 11 case in a bankruptcy court in Texas or in the bankruptcy court of another jurisdiction (any such court, the "Bankruptcy Court") but has not yet done so and may not do so. Accordingly, neither the Disclosure Statement nor the Plan has been approved by any court. LLT's records reflect that you represent certain clients (collectively, the "Clients") who are holders of Channeled Talc Personal Injury Claims as of June 3, 2024 (the "Voting Record Date"). You are receiving this Master Ballot to collect and record the votes of your Clients who hold Channeled Talc Personal Injury Claims to accept or reject the Plan. For the votes on this Master Ballot to be counted, you must carefully follow the instructions provided

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan. Any description of the terms of the Plan herein is provided solely for convenience, and the Plan shall govern in the event of any inconsistency.

[2] The Plan's definition of Channeled Talc Personal Injury Claims and certain related definitions are included as Annex A hereto.

Group ID: 96

1

M15-64161150

herein and make the required certifications.

If the Plan is confirmed by the Bankruptcy Court and becomes effective, it will be binding on your Clients who hold Channeled Talc Personal Injury Claims whether or not your Clients vote and, if they vote, whether they vote in support of or to reject the Plan. The Plan provides a mechanism, known as a "Channeling Injunction," by which Channeled Talc Personal Injury Claims in Class 4 against the Debtor will be channeled to a trust established pursuant to sections 524(g), 1123(b)(6), and/or 105(a) of the Bankruptcy Code. The Plan also proposes to release Claims held by Releasing Claim Holders against the Debtor and certain non-Debtor third parties. For a complete description of the causes of action to be enjoined and released and the identities of the entities that would be subject to these injunctions and releases, see Section 6.11 of the Disclosure Statement and Article XI of the Plan. Certain material release and injunction provisions of the Plan are included as Annex B hereto, but you are strongly encouraged to review the Disclosure Statement and the Plan to see how the Plan, if confirmed, may affect your Clients' rights.

If you are unable to use this Master Ballot on behalf of one or more Clients or you wish to have one or more Clients cast their own individual ballots (any such ballot, a "Direct Ballot"), you should follow the instructions provided in paragraph 4 of the accompanying *Instructions for Completing Your Master Ballot* for requesting that such Clients' votes be solicited using an alternative method. You may contact Epiq Corporate Restructuring, LLC (the "Solicitation Agent") via email at balloting@epiqglobal.com with a reference to "Red River" in the subject line with questions or to request a copy of the Plan, the Disclosure Statement, one or more Direct Ballots, or a Master Ballot.

**Unless such time is extended by LLT, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so as to be received no later than July 26, 2024 at 4:00 p.m. (prevailing Central Time) (the "Voting Deadline") for the votes on this Master Ballot to count. As set forth herein, you will need to submit a Master Ballot Spreadsheet (as defined below) along with this Master Ballot containing details of the Clients you represent and whose votes you are submitting pursuant to this Master Ballot. You must submit your Clients' votes through the electronic Master Ballot form and upload the Master Ballot Spreadsheet through the electronic balloting portal (the "E-Ballot Portal"), available at https://dm.epiq11.com/redrivertalc (the "Document Website"). The E-Ballot Portal is the sole manner in which Master Ballots and Master Ballot Spreadsheets will be accepted. Master Ballots submitted by any other means will NOT be counted. If you need assistance with the electronic balloting portal, please email balloting@epiqglobal.com with a reference to "Red River" in the subject line.**

## DOCUMENTS INCLUDED WITH THIS MASTER BALLOT

The following documents are included with this Master Ballot (collectively, the "Solicitation Package"). **Please note that some of these documents may be included on a USB flash drive included as part of your Solicitation Package.**

Group ID: 96

2

M15-64161150

- a cover letter describing the contents of the Solicitation Package and any enclosed USB flash drive, and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;
- the Disclosure Statement with all exhibits, including the Plan and its exhibits;
- letters from (a) LLT and (b) the Ad Hoc Committee of Supporting Counsel (the "<u>AHC of Supporting Counsel</u>") recommending acceptance of the Plan; and
- a template Master Ballot exhibit in Microsoft Excel format (the "<u>Master Ballot Spreadsheet</u>") for you to complete regarding your Clients.

To use this Master Ballot, you must either:  (a) provide the Solicitation Package, either in hard copy or electronic format, to your Clients; or (b) have requested that, for informational purposes, the Solicitation Agent serve Solicitation Packages (with or without a ballot) on your Clients pursuant to the instructions set forth herein.

If you elect for the Solicitation Agent to serve Solicitation Packages on your Clients, as set forth above, you must notify the Solicitation Agent of that choice by email to balloting@epiqglobal.com (with "Red River Client List for Master Ballot Solicitation" in the subject line) by June 20, 2024.  Your notification to the Solicitation Agent must attach a list setting forth each Client's (i) last name, (ii) first name, (iii) last four digits of Social Security Number (if a Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client), and (iv) mailing address.  In addition to the Solicitation Packages, you may request that the Solicitation Agent include a cover letter from your firm to your Clients.  If you wish to use different cover letters for different groups of Clients, or if you wish for fewer than all of your Clients to receive a cover letter, then the Client list described above must clearly specify which Clients should receive which cover letter.

The Client list must be provided to the Solicitation Agent with your notification by email at the above address in Microsoft Excel or comparable electronic format, and any accompanying cover letter(s) must be in portable document format (pdf).  The Solicitation Agent will use commercially reasonable efforts to provide Solicitation Packages (with or without a ballot) for the identified Clients within ten Business Days after receipt of such written request (or as soon as reasonably practicable thereafter).

If you have questions about this Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent, at balloting@epiqglobal.com (with a reference to "Red River" in the subject line) or at (888) 431-4056 (Toll-Free) or +1 (503) 822-6762 (International).  Information may also be obtained on the Document Website.

Any temporary allowance of claims for the limited purpose of voting on the Plan is <u>not</u> an admission of liability on the part of LLT, on behalf of the Debtor, or any other party for payment or for any other purpose.

Group ID: 96

M15-64161150

# MASTER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR

## CLASS 4:  CHANNELED TALC PERSONAL INJURY CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

**Section 1 – Tabulation**

> **Please note that you, on behalf of each Client, must vote the entire amount of the Client's Channeled Talc Personal Injury Claim either to accept or reject the Plan.**  The following votes will not be counted either as an acceptance or rejection of the Plan:  (a) any vote that purports partially to reject and partially to accept the Plan with respect to a single Channeled Talc Personal Injury Claim; or (b) any vote that does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for a single Channeled Talc Personal Injury Claim.  More detailed tabulation procedures are included as <u>Annex C</u> hereto (the "<u>Tabulation Procedures</u>").

**Please mark one of the boxes below and include the number of claimants voting to ACCEPT or to REJECT:**

☐    All _____(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot ACCEPT / vote in favor of the Plan.

   ***OR***

☐    All _____(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot REJECT / vote against the Plan.

   ***OR***

☑    Some Clients vote to ACCEPT and some Clients vote to REJECT

   _____2_____(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot ACCEPT / vote in favor of the Plan;

   ***and***

   _____1505_____(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot REJECT / vote against the Plan.

**Section 2 – List of Holders of Channeled Talc Personal Injury Claims Represented by Attorney**

Please prepare the Master Ballot Spreadsheet identifying each Client for whom you are voting under a power of attorney or whose vote you are recording and submitting based on such Client's informed consent, using the template Master Ballot Spreadsheet accompanying this Master Ballot and also available on the Document Website.

On the Master Ballot Spreadsheet, you must indicate for each Client:  (a) the internal identification number you use for the Client (the "Client ID"), if any; (b) the last name of the Client; (c) the first name of the Client; (d) the last four digits of the Social Security Number of the Client (or, if the Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client); (e) whether the Client's vote is submitted pursuant to the Option A Certification or the Option B Certification (as defined below); and (f) whether the Client votes to ACCEPT / in favor of or to REJECT / against the Plan.

In addition, the Master Ballot Spreadsheet includes questions (collectively, the "Disease/Use Questions") on the asserted disease type, diagnosis, and use of one or more products formulated, manufactured, distributed, and/or sold by the Debtor and/or any Debtor Corporate Party containing talcum powder (collectively "J&J Talc Products") of the individual upon whom the Channeled Talc Personal Injury Claim is based, whether that individual is the Client, or, if the Client is the estate, legal counsel, relative, assignee, or other representative of an injured or deceased individual, such individual.  In particular, select whether the Channeled Talc Personal Injury Claim is based upon:  (a) an asserted disease type of Ovarian Cancer, Gynecological Cancer, or another disease (other than Mesothelioma or Lung Cancer) and, if another disease, specify that disease (the "Disease Type Question"); (b) a diagnosis of the disease specified in response to the Disease Type Question (the "Diagnosis Question");[3] (c) such individual's consistent use of one or more J&J Talc Products on her own perineal area after puberty for a minimum of four consecutive years (the "Consistent Use Question"); and (d) such individual's first diagnosis of the asserted disease at least ten years following the first day of her use of J&J Talc Products on her own perineal area after puberty (the "First Use Question").

The purpose of the Disease/Use Questions is to identify Claims that LLT and the Debtor will treat as allowed for voting purposes only.  In that regard, if, with respect to a particular Client: (a) your response to the Disease Type Question is that the asserted disease type is Ovarian Cancer or Gynecological Cancer; (b) you respond affirmatively to the other Disease/Use Questions; and (c) you execute this Master Ballot providing all certifications below, including as to the accuracy of those responses, LLT and the Debtor will not object to the Client's Claim for voting purposes only.  If you do not comply with the previous sentence, LLT, on behalf of itself and the Debtor, reserves the right to request that the Bankruptcy Court disallow for voting purposes only any Claim for any reason, including, without limitation, if you are unable to or fail to provide the certified responses described in this paragraph to the Disease/Use Questions.

---

[3] You should **NOT** submit any supporting documentation—medical or otherwise—with this Master Ballot or the Master Ballot Spreadsheet.

Group ID: 96

5

M15-64161150

If you have any technical questions regarding the Master Ballot Spreadsheet, please contact the Solicitation Agent at balloting@epiqglobal.com and reference "Red River Master Ballot" in the subject line.

**Section 3 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

- I have been provided with a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits, and two letters—one from LLT and one from the AHC of Supporting Counsel—urging claimants to vote to ACCEPT / in favor of the Plan.

- I have either: (a) provided the Solicitation Package, either in hard copy or electronic format, to each of my Clients in a timely manner; or (b) requested that the Solicitation Agent serve Solicitation Packages (with or without a ballot) on my Clients in the form that my Clients have requested.

- With respect to each Client identified on the Master Ballot Spreadsheet for whom "Option A Certification" is selected, if any, such Client is represented by me, and I have collected and recorded the vote of such Client through customary and accepted practices, or have obtained authority to procedurally cast such Client's vote. I have complied with all terms, instructions, and conditions set forth in this Master Ballot and the Disclosure Statement. Each such Client has indicated his or her informed consent with respect to such vote under applicable law.

- With respect to each Client identified on the Master Ballot Spreadsheet for whom "Option B Certification" is selected, if any, such Client is represented by me, and I have the authority under a power of attorney to vote to accept or reject the Plan on behalf of such Client's Channeled Talc Personal Injury Claim for which a vote is cast on the Master Ballot Spreadsheet. I have completed this Master Ballot and the Master Ballot Spreadsheet in accordance with the power granted to me/my law firm, and I have complied with all terms, instructions and conditions set forth in this Master Ballot and the Disclosure Statement.

- I have a reasonable belief that each Client identified on the Master Ballot Spreadsheet accompanying this Master Ballot, as of the Voting Record Date, has a Channeled Talc Personal Injury Claim.

- I have a reasonable belief that the information provided on the Master Ballot Spreadsheet with respect to each Client identified thereon is accurate, including, without limitation, the responses set forth thereon to the Disease/Use Questions.

- I acknowledge that a vote to accept the Plan constitutes acceptance of the treatment of each Client as a holder of a Channeled Talc Personal Injury Claim.

Group ID: 96

M15-64161150

Red River Talc LLC
Class 4 – Master Ballot

| | |
|---|---|
| **Print or Type Name of Attorney:** | Michelle A. Parfitt |
| **Name of Law Firm:** | Ashcraft & Gerel |
| **Attorney Signature:** | *Michelle A. Parfitt* |
| **Street Address:** | 1825 K Street NW |
| | Suite 700 |
| **City, State, and ZIP Code:** | Washington, DC 20006 |
| **Telephone Number:** | 7038244762 |
| **Email Address of Attorney/Signatory:** | mparfitt@ashcraftlaw.com |
| **Date:** | |

<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS MASTER BALLOT.</u>
<u>MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>

**IF THIS MASTER BALLOT AND THE MASTER BALLOT SPREADSHEET
ARE NOT RECEIVED BY THE SOLICITATION AGENT BY
JULY 26, 2024 AT 4:00 P.M. (PREVAILING CENTRAL TIME),
YOUR CLIENTS' VOTES MAY NOT BE COUNTED.**

7

Group ID: 96

M15-64161150

## <u>INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT</u>

1.       The Master Ballot is submitted to you, as an attorney for holders of Channeled Talc Personal Injury Claims against LLT as of the Voting Record Date, to solicit, collect, and record the votes to accept or reject the Plan of, or to vote to accept or reject the Plan on behalf of, such Clients.  The Disclosure Statement and Plan are also being provided to you.  PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING AND SUBMITTING THE MASTER BALLOT, INCLUDING THESE INSTRUCTIONS AND THE TABULATION PROCEDURES THAT FOLLOW.

2.       The Master Ballot is to be used only by attorneys for submitting the votes of their Clients and for no other purpose.  You may be required to provide evidence that you have properly solicited votes to accept or reject the Plan from Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot and/or that you have the authority under a valid power of attorney to vote on the Plan on behalf of such Clients.  If it is your firm's customary and accepted practice to collect and record authorizations or instructions from its clients by mail, email, telephone, text, or other standard communication methods, including any digital communications, the firm shall be authorized to follow such customary practices to collect and record the votes of the Clients identified on the Master Ballot Spreadsheet.

3.       For the votes on the Master Ballot to be counted, you must make the required certifications in <u>Section 3</u> of the Master Ballot.

4.       If you (a) are unable to certify that you have the authority to vote on the Plan on behalf of any Client or (b) prefer for such Client to cast his or her own individual ballot (a "<u>Direct Ballot</u>"), you may request that the Solicitation Agent assist you in in providing such Clients with Solicitation Packages and Direct Ballots.

      (a)       If you choose for the Solicitation Agent to transmit Solicitation Packages and Direct Ballots to your Clients, by June 20, 2024 you must notify the Solicitation Agent of that choice and furnish the Solicitation Agent with a list setting forth each Client's (a) last name, (b) first name, (c) last four digits of Social Security Number (if a Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client), and (d) mailing address.

      (b)       If you choose to transmit Solicitation Packages and Direct Ballots to your Clients yourself, by June 20, 2024 you must notify the Solicitation Agent of that choice and request that the Solicitation Agent provide you with a specified number of Solicitation Packages and Direct Ballots.  You must also provide the Solicitation Agent with each Client's (a) last name, (b) first name, (c) last four digits of Social Security Number (if a Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client), and (d) mailing address.

-5-

Group ID: 96

M15-64161150

Any Client list described in the foregoing subparagraphs (a) and (b) must be provided to the Solicitation Agent in Microsoft Excel or comparable electronic format at balloting@epiqglobal.com (with "Red River Client List for Direct Solicitation" in the subject line). The Solicitation Agent will use commercially reasonable efforts to provide Solicitation Packages (including Direct Ballots) for the identified Clients to the Clients or to you, as applicable, within ten Business Days after receipt of such written request (or as soon as reasonably practicable thereafter).  LLT will reimburse you for any actual postage incurred by you in delivering Solicitation Packages to your Clients.  If you wish to seek reimbursement, you must submit reasonable evidence of postage expenses incurred to balloting@epiqglobal.com with a reference to "Red River" in the subject line.

     5.     **To complete the Master Ballot properly, you must follow the procedures described below:**

Section 1 of the Master Ballot asks you to indicate how many Clients identified on the Master Ballot Spreadsheet accept or reject the Plan.  If all of your Clients have indicated that they ACCEPT / vote in favor of the Plan (or you are exercising authority to vote in favor of the Plan on behalf of all of your Clients), please check the box indicating the same and the number of Clients. If all of your Clients have indicated that they REJECT / vote against the Plan (or you are exercising authority to vote against the Plan on behalf of all of your Clients), please check the box indicating the same and provide the number of Clients.  If some of your Clients have indicated that they ACCEPT / vote in favor of the Plan, and others have indicated that they REJECT / vote against the Plan (or you are exercising authority to vote in favor of the Plan on behalf of some of your Clients and against the Plan on behalf of other Clients), please check the box indicating the same, identify the number of Clients who REJECT / vote against the Plan and the number of claimants who ACCEPT / vote in favor of the Plan, and specify on the Master Ballot Spreadsheet which Clients have accepted the Plan and which Clients have rejected the Plan.

Section 2 of the Master Ballot requires that you (i) prepare the Master Ballot Spreadsheet provided in template form with this Master Ballot identifying each Client reflected in the totals provided in Section 1 and (ii) submit the Master Ballot Spreadsheet with the Master Ballot.  The Master Ballot Spreadsheet must be in Microsoft Excel format, completed in accordance with the instructions provided in Section 2 of the Master Ballot, and submitted through the E-Ballot Portal.

Section 3 of the Master Ballot contains certifications that you are required to make for the votes recorded on the Master Ballot and Master Ballot Spreadsheet to be counted.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  If you are unable to make the certifications contained in the Master Ballot, you must notify the Solicitation Agent consistent with Paragraph 4 of these *Instructions for Completing Your Master Ballot*.

Sign the Master Ballot and provide your name, mailing address, and email address where indicated.  Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package.  Follow the directions below to submit your Master Ballot and Master Ballot Spreadsheet so they are actually received by the Solicitation Agent before the Voting Deadline.

Group ID:  96

9

M15-64161150

6.      The Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of Claims or Interests.

7.      The Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If (i) LLT or the Debtor, as applicable, revokes or withdraws the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

9.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, LLT, on behalf of the Debtor, will not resolicit votes for acceptance or rejection of the Plan.

10.      If you use this Master Ballot, you must submit the Master Ballot and upload the Master Ballot Spreadsheet through the Solicitation Agent's E-Ballot Portal available at https://dm.epiq11.com/redrivertalc.  Click on the "E-Ballot" button and follow the instructions.

**IMPORTANT NOTE:**  You will need the following information to submit your Master Ballot:

**Unique E-Ballot ID#:**  M15-64161150

The E-Ballot Portal is the sole manner in which Master Ballots and Master Ballot Spreadsheets will be accepted.  Master Ballots submitted by any other means will **NOT** be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims identified on the accompanying Master Ballot Spreadsheet.  Master Ballots conforming to these instructions and properly submitted through the E-Ballot Portal shall be deemed to contain an original signature.

If your completed Master Ballot and Master Ballot Spreadsheet are not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by LLT or the Debtor, as applicable, as noted in the accompanying Tabulation Procedures, your vote will not be counted.

Group ID: 96

M15-64161150

**<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS MASTER BALLOT.</u>**
**<u>MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT,**
**(B) BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,**
**OR (C) DID NOT RECEIVE A COPY OF ANY OF**
**THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,**
**PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (888) 431-4056 (TOLL-FREE) OR +1 (503) 822-6762**
**(INTERNATIONAL)**
**EMAIL:  BALLOTING@EPIQGLOBAL.COM**
**WITH A REFERENCE TO "RED RIVER MASTER BALLOT" IN THE SUBJECT LINE**

**PLEASE NOTE:  THE SOLICITATION AGENT IS NOT AUTHORIZED TO,**
**AND WILL NOT, PROVIDE LEGAL ADVICE**

Group ID: 96

11

M15-64161150

<u>**ANNEX A**</u>

**THE FOLLOWING DEFINITIONS FROM THE PLAN ARE PROVIDED SOLELY FOR YOUR CONVENIENCE. REFERENCE IS MADE TO THE PLAN FOR ALL OTHER TERMS AND DEFINITIONS AND TO THE DISCLOSURE STATEMENT, BOTH OF WHICH YOU ARE STRONGLY ENCOURAGED TO REVIEW TO SEE HOW THE PLAN, IF CONFIRMED, MAY AFFECT YOUR RIGHTS.**

## CHANNELED TALC PERSONAL INJURY CLAIMS

<u>Section 1.1.23</u> of the Plan contains the following definition of "Channeled Talc Personal Injury Claims":

> "**Channeled Talc Personal Injury Claims**" means all Talc Personal Injury Claims that are not Defense Cost Claims, including (a) Ovarian/Gynecological Talc Personal Injury Claims and (b) Other Disease Talc Personal Injury Claims.

## TALC PERSONAL INJURY CLAIMS

<u>Section 1.1.141</u> of the Plan contains the following definition of "Talc Personal Injury Claim":

> "**Talc Personal Injury Claim**" means any claim or Talc Personal Injury Demand against the Debtor, LLT, Old JJCI, or any other Protected Party, whether known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries (whether physical, emotional, or otherwise), directly or indirectly arising out of or in any way relating to the presence of or exposure to talc or talc-containing products based on the alleged pre-Effective Date acts or omissions of the Debtor, LLT, Old JJCI, or any other Person, but, in the case of such acts or omissions of Old JJCI or any other Person (other than the Debtor) only to the extent the Debtor has, or is alleged to have, liability for LLT's, Old JJCI's, or such other Person's conduct, whether by operation of the law, by assumption of such liability from LLT, Old JJCI, or such other Person, by agreement to indemnify, defend, or hold harmless LLT, Old JJCI, or such other Person from and against such liability, or otherwise. For the avoidance of doubt, Talc Personal Injury Claims include: (a) all such claims and Talc Personal Injury Demands directly or indirectly arising out of or in any way relating to (i) any talc or talc-containing products previously mined, processed, manufactured, designed, marketed, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, and/or in any other way made available by the Debtor or any other Person, (ii) any talc or talc-containing materials present at any premises owned, leased, occupied, or operated by any Person, or (iii) any talc in any way connected to the Debtor alleged to contain asbestos or other contaminant; (b) all such claims and Talc Personal Injury

Demands, whether (i) in tort, contract, warranty, restitution, conspiracy, guarantee, or any other theory of law, equity, or admiralty, whether brought, threatened, or pursued in any United States court or other court anywhere in the world, (ii) liquidated or unliquidated, fixed or contingent, direct or indirect, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity, or otherwise (including under piercing the corporate veil, agency, alter ego, successor liability, fraudulent conveyance, conspiracy, enterprise liability, market share, joint venture, or any other legal or equitable theory), (iii) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs, fees, injunctive, or similar relief, or any other measure of damages, (iv) seeking any legal, equitable, or other relief of any kind whatsoever, or (v) held by Persons residing within the United States or in a foreign jurisdiction; (c) all such claims and Talc Personal Injury Demands that have been resolved or are subject to resolution pursuant to any agreement or that are based on a judgment or verdict; (d) all such claims and Talc Personal Injury Demands for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages; and (e) Indirect Talc Personal Injury Claims.  Notwithstanding the foregoing, Talc Personal Injury Claims do not include:  (A) any claim or demand by any present or former employee of a predecessor or Affiliate of the Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer; (B) any claim or demand that (I) alleges that the relevant injured or deceased individual was exposed to talc or the product or material containing talc, as applicable, in Canada or resided in Canada at the time such Direct Talc Personal Injury Claim is filed or (II) was brought, threatened, or pursued in any court in Canada; (C) any claim or demand asserted or assertable by or on behalf of any governmental unit under any federal, state, international, or foreign consumer or employee protection rule, statute, or regulation; or (D) any claim or demand that alleges that the relevant injured or deceased individual developed Mesothelioma or Lung Cancer (and not Ovarian Cancer, Gynecological Cancer, or any other disease) in connection with such individual's use of talc or a product or material containing talc; in each case, other than any such claim that is an Indirect Talc Personal Injury Claim of an Imerys/Cyprus Party.  In addition, notwithstanding the foregoing, Talc Personal Injury Claims do not include any claim or demand that a Settling Talc Insurance Company may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Talc Insurance Company to assert any such claim or demand against its reinsurers and/or retrocessionaires in their capacities as such.

Group ID: 96

13

M15-64161150

## DEFENSE COST CLAIMS

Section 1.1.42 of the Plan contains the following definition of "Defense Cost Claim":

> "**Defense Cost Claim**" means any Indirect Talc Personal Injury Claim to the extent in respect of legal fees or other out-of-pocket costs incurred in connection with the defense of claims.  For the avoidance of doubt, if the provisions of Section 4.9.3 and Section 5.9.1 are applicable, Defense Cost Claims include any such Indirect Talc Personal Injury Claims of the Imerys/Cyprus Parties under any Imerys/Cyprus Agreement or otherwise.

-3-

Group ID: 96

M15-64161150

<u>**ANNEX B**</u>

**IF THE PLAN IS CONFIRMED, THE CHANNELING INJUNCTION, THE RELEASES RELATED THERETO, AND THE RELEASES BY RELEASING CLAIM HOLDERS WILL APPLY TO EACH CHANNELED TALC PERSONAL INJURY CLAIM REGARDLESS OF WHETHER THE HOLDER OF SUCH CLAIM VOTES AND IF SUCH HOLDER DOES VOTE, REGARDLESS OF WHETHER SUCH HOLDER VOTES TO ACCEPT OR TO REJECT THE PLAN.**

**RELEASES BY HOLDERS OF CLAIMS**

<u>Section 11.2.2</u> of the Plan contains the following release provision:

**Releases by Holders of Claims.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties before and during the Chapter 11 Case to facilitate the implementation of the Talc Personal Injury Trust, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, by the Releasing Claim Holders from any and all claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, causes of action, liens, remedies, losses, contributions, indemnities, costs, liabilities, fees (including attorneys' fees), and expenses whatsoever, including any indirect claims asserted or assertable on behalf of the Debtor or the Estate (including any Recovery Actions), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons or parties claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim or Interest or other Person, based on, arising out of, or in any way relating to, in whole or in part, the Debtor (as it existed prior to or after the Petition Date), the 2021 Corporate Restructuring, the 2021 Chapter 11 Case, the 2023 Chapter 11 Case, the 2023 Conversion, the 2023 Funding Agreement Modifications, the Prepetition Corporate Restructuring, the Estate, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions (including the exercise of any common law or contractual rights of setoff or recoupment at any time on or prior to the Effective Date) between the Debtor, on the one hand, and any other Released Party, on the other hand, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the sale or distribution of assets by

Group ID: 96

M15-64161150

Holdco in connection with the separation of J&J's consumer health business into a new company named Kenvue, Inc., the Love Proceeding, the negotiation, formulation, preparation, or implementation of, or the solicitation of votes with respect to, the Plan, or any other act or omission related to the Disclosure Statement, the Plan, or any related agreement, instrument, or document or any of the foregoing. Notwithstanding the foregoing:  (a) claims or causes of action against a Released Party arising out of or relating to any act or omission of such Released Party prior to the Effective Date that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted a criminal act, actual fraud, gross negligence, or willful misconduct, including findings after the Effective Date, are not released pursuant to this Section 11.2.2; provided, however, that (i) no Person, without regard to whether such Person is a Releasing Claim Holder, may commence or pursue any such claim or cause of action without the Bankruptcy Court (A) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim and (B) specifically authorizing such Person to bring such claim or cause of action and (ii) to the fullest extent permitted by law, the Bankruptcy Court shall have sole and exclusive jurisdiction to adjudicate the underlying colorable claim or cause of action; (b) holders of Master Settlement Agreement Claims shall not release their rights to have such Master Settlement Agreement Claims considered for settlement and, if such Master Settlement Agreement Claims qualify for settlement, settled under the Master Settlement Agreements; and (c) holders of Judgment Claims shall not release their rights to seek to enforce and collect on the judgments on which such Judgment Claims are based, including through the defense or prosecution of appellate litigation related thereto.  For the avoidance of doubt, nothing contained in this Section 11.2.2 shall release or otherwise affect the obligations of any Person to be performed from and after the Effective Date under any Funding Agreement, the Cash Contributions Parent Guarantee, or any other Plan Document to which it is a party.

## CHANNELING INJUNCTION

Section 11.3.1 of the Plan contains the following Channeling Injunction:

### Channeling Injunction.

(a)    To preserve and promote the settlements contemplated by and provided for in the Plan and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 524(g), section 1123(b)(6), and/or section 105(a) of the Bankruptcy Code, notwithstanding anything to the contrary contained in the Plan, (i) the sole recourse of any holder of a Channeled Talc Personal Injury Claim against a Protected Party (on account of such Channeled Talc Personal Injury Claim) shall be to and against the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents and (ii) such holder shall have no right whatsoever at any time to assert its Channeled Talc

-2-

Personal Injury Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all holders of Channeled Talc Personal Injury Claims shall be permanently and forever stayed, restrained, barred, and enjoined from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment, satisfaction, or recovery of, on, or with respect to any Channeled Talc Personal Injury Claim against a Protected Party other than from the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents, including:

(i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or any property or interests in property of any Protected Party;

(ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property or interests in property of any Protected Party;

(iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against any Protected Party or any property or interests in property of any Protected Party;

(iv) asserting, implementing, or effectuating any setoff, recoupment, right of contribution, reimbursement, subrogation, or indemnification, or similar right of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or against any property or interests in property of any Protected Party; and

(v) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents, or the Talc Personal Injury Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Talc Personal Injury Trust, except in conformity and compliance with the Talc Personal Injury Trust Documents.

(b) Notwithstanding anything to the contrary in Section 11.3.1(a), this Channeling Injunction shall not impair:

(i) the rights of holders of Channeled Talc Personal Injury Claims to assert such Talc Personal Injury Claims solely against the Talc Personal Injury Trust in accordance with the Talc Personal Injury Trust Documents;

-3-

Group ID: 96

M15-64161150

(ii)    the rights of holders of Channeled Talc Personal Injury Claims to assert such claims against anyone other than a Protected Party;

(iii)    the rights of holders of Master Settlement Agreement Claims to have such Master Settlement Agreement Claims considered for settlement and, if such Master Settlement Agreement Claims qualify for settlement, settled under the Master Settlement Agreements, so long as such holder has not (A) previously received payment in respect of such Master Settlement Agreement Claim from the Talc Personal Injury Trust or (B) submitted such Master Settlement Agreement Claim to the Talc Personal Injury Trust under the Trust Distribution Procedures (unless such Master Settlement Agreement Claim has been properly withdrawn in accordance with the Trust Distribution Procedures and has not thereafter been resubmitted to the Talc Personal Injury Trust under the Trust Distribution Procedures);

(iv)    the rights of holders of Judgment Claims to seek to enforce and collect on the judgments on which such Judgment Claims are based, including through the defense or prosecution of appellate litigation related thereto;

(v)    the rights of all Persons to assert any claim, debt, obligation, cause of action, or liability for payment of Talc Personal Injury Trust Expenses solely against the Talc Personal Injury Trust; or

(vi)    the Talc Personal Injury Trust from enforcing its rights explicitly provided to it under the Plan and the Talc Personal Injury Trust Documents, including, if the provisions of Section 4.9.3 and Section 5.9.1 are applicable, the Imerys/Cyprus Related Rights.

(c)    There shall be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d)    Nothing in the Plan or the Talc Personal Injury Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction issued in connection with the Plan or the Talc Personal Injury Trust's assumption of all liability with respect to Talc Personal Injury Claims.

(e)    The Debtor's compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(f)    Any Protected Party may enforce the Channeling Injunction as a defense to any Claim brought against such Protected Party that is enjoined under

-4-

the Plan as to such Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

(g)     If a Talc Insurance Company that is not a Settling Talc Insurance Company asserts that it has Contribution Claims against a Settling Talc Insurance Company:  (i) such Contribution Claims may be asserted as a defense or counterclaim against the Talc Personal Injury Trust in any Talc Insurance Action involving such Talc Insurance Company, and the Talc Personal Injury Trust (acting through the Reorganized Debtor, as its subrogee having the exclusive right to pursue and resolve any Talc Insurance Action) may assert the legal or equitable rights (if any) of the Settling Talc Insurance Company; and (ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Talc Insurance Company to the Talc Personal Injury Trust shall be reduced by the amount of such Contribution Claims.

Group ID: 96

19

M15-64161150

## ANNEX C

## TABULATION PROCEDURES

THE FOLLOWING PROCEDURES GOVERN THE TABULATION OF BALLOTS CAST ON THE PLAN.  THESE TABULATION PROCEDURES HAVE NOT YET BEEN APPROVED BY ANY COURT, AND NO CHAPTER 11 CASE HAS YET COMMENCED WITH RESPECT TO THE DEBTOR.  APPROVAL OF THESE TABULATION PROCEDURES WILL BE SOUGHT FOLLOWING COMMENCEMENT OF ANY CHAPTER 11 CASE.  CAPITALIZED TERMS NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE ACCOMPANYING BALLOT.

1.     **Types of Ballot**

LLT, on behalf of the Debtor, is soliciting the votes on the Plan from holders of Channeled Talc Personal Injury Claims using ballots identified as Master Ballots, Direct Ballots, and Indirect Ballots.  Certain of the following procedures apply solely to Master Ballots, which are ballots that may be submitted only by law firms on behalf of multiple clients and must be accompanied by an exhibit in Microsoft Excel format providing information regarding such clients and their Channeled Talc Personal Injury Claims (the "Master Ballot Spreadsheet").

2.     **Voting Amounts**

The Debtor will request that the Bankruptcy Court temporarily allow Channeled Talc Personal Injury Claims for the limited purpose of voting on the Plan in the amount of $1.00 in the aggregate per claimant.  That value will not be binding on the Debtor, the Talc Personal Injury Trust, the holder of any Channeled Talc Personal Injury Claim, or any other party for any purpose other than voting to accept or reject the Plan.

3.     **Ballots Excluded**

A vote cast on a ballot will **not** be counted if any of the following applies to such ballot.  For the avoidance of doubt, where a Master Ballot reflects multiple votes, only those votes to which any of the following applies will be excluded, and properly submitted votes reflected on the Master Ballot, if any, will be counted.

a.     The ballot is submitted by or on behalf of a Person that is not entitled to vote.

b.     The ballot is not completed and submitted to the Solicitation Agent consistent with the instructions included with the ballot.

c.     With respect to Master Ballots, the Master Ballot Spreadsheet does not conform to the template provided with the Master Ballot, including the formatting of each field included in the Master Ballot Spreadsheet template.

d.     The ballot is not duly and timely submitted by the E-Ballot Portal on the Solicitation Agent's website or, with respect to ballots other than Master Ballots, (i) first class

Group ID: 96

M15-64161150

mail, (ii) overnight courier, or (iii) hand delivery so that it is **actually received** by the Solicitation Agent by the Voting Deadline, unless LLT has granted an extension of the Voting Deadline with respect to such ballot. The holder of a Channeled Talc Personal Injury Claim may choose the method of delivery of its ballot to the Solicitation Agent at its own risk. Delivery of any ballot shall be deemed made only when the ballot is actually received by the Solicitation Agent.

       e.     The ballot does not designate either acceptance or rejection—or designates both acceptance and rejection—of the Plan for any Channeled Talc Personal Injury Claim (including with respect to any single Channeled Talc Personal Injury Claim identified on the Master Ballot Spreadsheet accompanying a Master Ballot).

       f.     The ballot indicates partial rejection and partial acceptance of the Plan. Each holder of a Channeled Talc Personal Injury Claim has a single vote, and the full amount of all such Claims must be voted either to accept or reject the Plan.

       g.     The ballot is transmitted electronically to the Solicitation Agent by any means other than submission through the E-Ballot Portal (such as via facsimile or e-mail transmission).

       h.     The ballot is illegible or contains insufficient information to permit the identification of any claimant reflected thereon.

       i.     The ballot is submitted in an incorrect form for such Claim.

       j.     An otherwise complete ballot is returned to the Solicitation Agent but is unsigned; provided, however, for the avoidance of doubt, that a ballot that is properly submitted electronically via the E-Ballot Portal shall be deemed to contain an original signature.

       k.     The ballot is incomplete, including, without limitation, failure of the holder of the Channeled Talc Personal Injury Claim or their authorized representative (i) to make the required certifications or (ii) to provide the last four digits of the claimant's Social Security Number (or to indicate that the claimant does not have a Social Security Number and provide the claimant's month, date, and year of birth).

    4.    **General Procedures for Voting and Standard Assumptions.**

       a.     The Solicitation Agent may, at its discretion, either (i) contact the party submitting a defective ballot in an effort to cure the defect on the ballot or (ii) not count the vote of such Channeled Talc Personal Injury Claim as an acceptance or rejection of the Plan. None of LLT, the Debtor, nor any other Person, is under any duty to provide notification of defective or irregular ballots, except as provided herein, nor shall any of them incur any liability for failure to provide such notification.

       b.     The holder of a Channeled Talc Personal Injury Claim for whom a vote is submitted on a valid ballot may withdraw their vote; provided, however, that neither LLT nor the Debtor is obligated to recognize any withdrawal, revocation, or change of any vote received after the Voting Deadline; provided, further, that counsel to a claimant may withdraw valid votes of Clients submitted on a Master Ballot only if (i) such Master Ballot was submitted by such counsel

-2-

Group ID: 96

M15-64161150

pursuant to a power of attorney or (ii) counsel obtains such claimant's consent to withdraw their vote.

       c.     Any holder of a Channeled Talc Personal Injury Claim who submits a properly completed superseding ballot or withdrawal of a ballot on or before the Voting Deadline will be presumed to have sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's or interest holder's acceptance or rejection of the Plan.

       d.     If the Solicitation Agent receives more than one ballot from the same holder of a Channeled Talc Personal Injury Claim (or from the same authorized representative representing the same holder of a Channeled Talc Personal Injury Claim) for the same Channeled Talc Personal Injury Claim, in the absence of contrary information establishing which ballot is valid as of the Voting Deadline (or such later date as may be agreed by LLT or the Debtor), the last-executed, otherwise valid ballot that is received before the Voting Deadline shall be the ballot that is counted.  Multiple Master Ballots may be completed and delivered to the Solicitation Agent.

       e.     If the Solicitation Agent receives one or more ballots from the holder of a Channeled Talc Personal Injury Claim **and** someone purporting to be their authorized representative, the ballot received from the holder of the Channeled Talc Personal Injury Claim shall be the Ballot that is counted, regardless of when it is received so long as it is received before the Voting Deadline (or such later date as may be agreed by LLT or the Debtor), and the vote of the purported authorized representative will not be counted.  For the avoidance of doubt, any timely and otherwise valid Direct Ballot received on account of a Channeled Talc Personal Injury Claim shall supersede any Master Ballot submitted on account of such Channeled Talc Personal Injury Claim at any time and shall be the vote that is counted.

       f.     If the Solicitation Agent receives more than one ballot from different holders purporting to hold the same Channeled Talc Personal Injury Claim, in the absence of contrary information establishing which claimant held such Channeled Talc Personal Injury Claim as of the Voting Record Date, such ballots will not be counted

       g.     If the same holder of a Channeled Talc Personal Injury Claim appears on more than one Master Ballot, the Solicitation Agent will exercise reasonable efforts to coordinate with the respective firms to cure the discrepancy.  If the discrepancy is not cured, the vote for the holder appearing on more than one Master Ballot will be counted only once and only if such votes are consistent with respect to acceptance or rejection of the Plan.  In the event that such votes are not consistent, none of the votes will be counted.

Group ID: 96

M15-64161150

ASHCRAFT & GEREL

M15-64161150

-4-

Group ID: 96

23

M15-64161150

**Exhibit B**

**Amended Ballot**

---

**IMPORTANT**:  A CHAPTER 11 CASE HAS NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS MASTER BALLOT.  THIS MASTER BALLOT IS A PREPETITION SOLICITATION OF THE VOTES OF HOLDERS OF CHANNELED TALC PERSONAL INJURY CLAIMS REPRESENTED BY YOU AS COUNSEL ON THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR. THE VOTING DEADLINE IS JULY 26, 2024 AT 4:00 P.M. (PREVAILING CENTRAL TIME).

---

In re:

Red River Talc LLC,

           Debtor.

For solicitation purposes only.
No chapter 11 case has yet been filed with respect to the Debtor.

---

### MASTER BALLOT FOR COUNSEL TO HOLDERS OF CHANNELED TALC PERSONAL INJURY CLAIMS VOTING ON PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR

LLT Management LLC ("<u>LLT</u>") is soliciting votes on the *Prepackaged Chapter 11 Plan of Reorganization of the Debtor* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>")[1] for and on behalf of Red River Talc LLC (the "<u>Debtor</u>") from holders of Channeled Talc Personal Injury Claims.[2]  The Plan is described in greater detail in the *Disclosure Statement for Prepackaged Chapter 11 Plan of Reorganization of the Debtor* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>").  The Plan and Disclosure Statement have been included in the package of materials containing this master ballot (this "<u>Master Ballot</u>") and can be accessed free-of-charge at https://dm.epiq11.com/redrivertalc.

The Debtor may commence a chapter 11 case in a bankruptcy court in Texas or in the bankruptcy court of another jurisdiction (any such court, the "<u>Bankruptcy Court</u>") but has not yet done so and may not do so.  Accordingly, neither the Disclosure Statement nor the Plan has been approved by any court.  LLT's records reflect that you represent certain clients (collectively, the "<u>Clients</u>") who are holders of Channeled Talc Personal Injury Claims as of June 3, 2024 (the "<u>Voting Record Date</u>").  You are receiving this Master Ballot to collect and record the votes of your Clients who hold Channeled Talc Personal Injury Claims to accept or reject the Plan.  For the votes on this Master Ballot to be counted, you must carefully follow the instructions provided

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.  Any description of the terms of the Plan herein is provided solely for convenience, and the Plan shall govern in the event of any inconsistency.

[2]     The Plan's definition of Channeled Talc Personal Injury Claims and certain related definitions are included as <u>Annex A</u> hereto.

Group ID: 96

1

M15-64161150

herein and make the required certifications.

If the Plan is confirmed by the Bankruptcy Court and becomes effective, it will be binding on your Clients who hold Channeled Talc Personal Injury Claims whether or not your Clients vote and, if they vote, whether they vote in support of or to reject the Plan.  The Plan provides a mechanism, known as a "Channeling Injunction," by which Channeled Talc Personal Injury Claims in Class 4 against the Debtor will be channeled to a trust established pursuant to sections 524(g), 1123(b)(6), and/or 105(a) of the Bankruptcy Code.  The Plan also proposes to release Claims held by Releasing Claim Holders against the Debtor and certain non-Debtor third parties.  For a complete description of the causes of action to be enjoined and released and the identities of the entities that would be subject to these injunctions and releases, see Section 6.11 of the Disclosure Statement and Article XI of the Plan.  Certain material release and injunction provisions of the Plan are included as Annex B hereto, but you are strongly encouraged to review the Disclosure Statement and the Plan to see how the Plan, if confirmed, may affect your Clients' rights.

If you are unable to use this Master Ballot on behalf of one or more Clients or you wish to have one or more Clients cast their own individual ballots (any such ballot, a "Direct Ballot"), you should follow the instructions provided in paragraph 4 of the accompanying *Instructions for Completing Your Master Ballot* for requesting that such Clients' votes be solicited using an alternative method.  You may contact Epiq Corporate Restructuring, LLC (the "Solicitation Agent") via email at balloting@epiqglobal.com with a reference to "Red River" in the subject line with questions or to request a copy of the Plan, the Disclosure Statement, one or more Direct Ballots, or a Master Ballot.

**Unless such time is extended by LLT, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so as to be received no later than July 26, 2024 at 4:00 p.m. (prevailing Central Time) (the "Voting Deadline") for the votes on this Master Ballot to count.  As set forth herein, you will need to submit a Master Ballot Spreadsheet (as defined below) along with this Master Ballot containing details of the Clients you represent and whose votes you are submitting pursuant to this Master Ballot.  You must submit your Clients' votes through the electronic Master Ballot form and upload the Master Ballot Spreadsheet through the electronic balloting portal (the "E-Ballot Portal"), available at https://dm.epiq11.com/redrivertalc (the "Document Website").  The E-Ballot Portal is the sole manner in which Master Ballots and Master Ballot Spreadsheets will be accepted.  Master Ballots submitted by any other means will NOT be counted.  If you need assistance with the electronic balloting portal, please email balloting@epiqglobal.com with a reference to "Red River" in the subject line.**

## DOCUMENTS INCLUDED WITH THIS MASTER BALLOT

The following documents are included with this Master Ballot (collectively, the "Solicitation Package").  **Please note that some of these documents may be included on a USB flash drive included as part of your Solicitation Package.**

Group ID: 96

2

- a cover letter describing the contents of the Solicitation Package and any enclosed USB flash drive, and instructions for obtaining (free of charge) printed copies of the materials provided in electronic format;
- the Disclosure Statement with all exhibits, including the Plan and its exhibits;
- letters from (a) LLT and (b) the Ad Hoc Committee of Supporting Counsel (the "<u>AHC of Supporting Counsel</u>") recommending acceptance of the Plan; and
- a template Master Ballot exhibit in Microsoft Excel format (the "<u>Master Ballot Spreadsheet</u>") for you to complete regarding your Clients.

To use this Master Ballot, you must either:  (a) provide the Solicitation Package, either in hard copy or electronic format, to your Clients; or (b) have requested that, for informational purposes, the Solicitation Agent serve Solicitation Packages (with or without a ballot) on your Clients pursuant to the instructions set forth herein.

If you elect for the Solicitation Agent to serve Solicitation Packages on your Clients, as set forth above, you must notify the Solicitation Agent of that choice by email to balloting@epiqglobal.com (with "Red River Client List for Master Ballot Solicitation" in the subject line) by June 20, 2024.  Your notification to the Solicitation Agent must attach a list setting forth each Client's (i) last name, (ii) first name, (iii) last four digits of Social Security Number (if a Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client), and (iv) mailing address.  In addition to the Solicitation Packages, you may request that the Solicitation Agent include a cover letter from your firm to your Clients.  If you wish to use different cover letters for different groups of Clients, or if you wish for fewer than all of your Clients to receive a cover letter, then the Client list described above must clearly specify which Clients should receive which cover letter.

The Client list must be provided to the Solicitation Agent with your notification by email at the above address in Microsoft Excel or comparable electronic format, and any accompanying cover letter(s) must be in portable document format (pdf).  The Solicitation Agent will use commercially reasonable efforts to provide Solicitation Packages (with or without a ballot) for the identified Clients within ten Business Days after receipt of such written request (or as soon as reasonably practicable thereafter).

If you have questions about this Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent, at balloting@epiqglobal.com (with a reference to "Red River" in the subject line) or at (888) 431-4056 (Toll-Free) or +1 (503) 822-6762 (International).  Information may also be obtained on the Document Website.

Any temporary allowance of claims for the limited purpose of voting on the Plan is <u>not</u> an admission of liability on the part of LLT, on behalf of the Debtor, or any other party for payment or for any other purpose.

Group ID: 96

M15-64161150

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR

## CLASS 4:  CHANNELED TALC PERSONAL INJURY CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

**Section 1 – Tabulation**

**Please note that you, on behalf of each Client, must vote the entire amount of the Client's Channeled Talc Personal Injury Claim either to accept or reject the Plan.**  The following votes will not be counted either as an acceptance or rejection of the Plan:  (a) any vote that purports partially to reject and partially to accept the Plan with respect to a single Channeled Talc Personal Injury Claim; or (b) any vote that does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for a single Channeled Talc Personal Injury Claim.  More detailed tabulation procedures are included as <u>Annex C</u> hereto (the "<u>Tabulation Procedures</u>").

**Please mark one of the boxes below and include the number of claimants voting to ACCEPT or to REJECT:**

☐ All _____(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot ACCEPT / vote in favor of the Plan.

 ***OR***

☐ All _____(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot REJECT / vote against the Plan.

 ***OR***

☑ Some Clients vote to ACCEPT and some Clients vote to REJECT

  | 1481 |(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot ACCEPT / vote in favor of the Plan;

  ***and***

  | 11 |(indicate number) Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot REJECT / vote against the Plan.

Group ID: 96

4

M15-64161150

## Section 2 – List of Holders of Channeled Talc Personal Injury Claims Represented by Attorney

Please prepare the Master Ballot Spreadsheet identifying each Client for whom you are voting under a power of attorney or whose vote you are recording and submitting based on such Client's informed consent, using the template Master Ballot Spreadsheet accompanying this Master Ballot and also available on the Document Website.

On the Master Ballot Spreadsheet, you must indicate for each Client:  (a) the internal identification number you use for the Client (the "Client ID"), if any; (b) the last name of the Client; (c) the first name of the Client; (d) the last four digits of the Social Security Number of the Client (or, if the Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client); (e) whether the Client's vote is submitted pursuant to the Option A Certification or the Option B Certification (as defined below); and (f) whether the Client votes to ACCEPT / in favor of or to REJECT / against the Plan.

In addition, the Master Ballot Spreadsheet includes questions (collectively, the "Disease/Use Questions") on the asserted disease type, diagnosis, and use of one or more products formulated, manufactured, distributed, and/or sold by the Debtor and/or any Debtor Corporate Party containing talcum powder (collectively "J&J Talc Products") of the individual upon whom the Channeled Talc Personal Injury Claim is based, whether that individual is the Client, or, if the Client is the estate, legal counsel, relative, assignee, or other representative of an injured or deceased individual, such individual.  In particular, select whether the Channeled Talc Personal Injury Claim is based upon:  (a) an asserted disease type of Ovarian Cancer, Gynecological Cancer, or another disease (other than Mesothelioma or Lung Cancer) and, if another disease, specify that disease (the "Disease Type Question"); (b) a diagnosis of the disease specified in response to the Disease Type Question (the "Diagnosis Question");[3] (c) such individual's consistent use of one or more J&J Talc Products on her own perineal area after puberty for a minimum of four consecutive years (the "Consistent Use Question"); and (d) such individual's first diagnosis of the asserted disease at least ten years following the first day of her use of J&J Talc Products on her own perineal area after puberty (the "First Use Question").

The purpose of the Disease/Use Questions is to identify Claims that LLT and the Debtor will treat as allowed for voting purposes only.  In that regard, if, with respect to a particular Client: (a) your response to the Disease Type Question is that the asserted disease type is Ovarian Cancer or Gynecological Cancer; (b) you respond affirmatively to the other Disease/Use Questions; and (c) you execute this Master Ballot providing all certifications below, including as to the accuracy of those responses, LLT and the Debtor will not object to the Client's Claim for voting purposes only.  If you do not comply with the previous sentence, LLT, on behalf of itself and the Debtor, reserves the right to request that the Bankruptcy Court disallow for voting purposes only any Claim for any reason, including, without limitation, if you are unable to or fail to provide the certified responses described in this paragraph to the Disease/Use Questions.

---

[3]     You should **NOT** submit any supporting documentation—medical or otherwise—with this Master Ballot or the Master Ballot Spreadsheet.

-2-

Group ID: 96

M15-64161150

If you have any technical questions regarding the Master Ballot Spreadsheet, please contact the Solicitation Agent at balloting@epiqglobal.com and reference "Red River Master Ballot" in the subject line.

**Section 3 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

- I have been provided with a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits, and two letters—one from LLT and one from the AHC of Supporting Counsel—urging claimants to vote to ACCEPT / in favor of the Plan.

- I have either: (a) provided the Solicitation Package, either in hard copy or electronic format, to each of my Clients in a timely manner; or (b) requested that the Solicitation Agent serve Solicitation Packages (with or without a ballot) on my Clients in the form that my Clients have requested.

- With respect to each Client identified on the Master Ballot Spreadsheet for whom "Option A Certification" is selected, if any, such Client is represented by me, and I have collected and recorded the vote of such Client through customary and accepted practices, or have obtained authority to procedurally cast such Client's vote. I have complied with all terms, instructions, and conditions set forth in this Master Ballot and the Disclosure Statement. Each such Client has indicated his or her informed consent with respect to such vote under applicable law.

- With respect to each Client identified on the Master Ballot Spreadsheet for whom "Option B Certification" is selected, if any, such Client is represented by me, and I have the authority under a power of attorney to vote to accept or reject the Plan on behalf of such Client's Channeled Talc Personal Injury Claim for which a vote is cast on the Master Ballot Spreadsheet. I have completed this Master Ballot and the Master Ballot Spreadsheet in accordance with the power granted to me/my law firm, and I have complied with all terms, instructions and conditions set forth in this Master Ballot and the Disclosure Statement.

- I have a reasonable belief that each Client identified on the Master Ballot Spreadsheet accompanying this Master Ballot, as of the Voting Record Date, has a Channeled Talc Personal Injury Claim.

- I have a reasonable belief that the information provided on the Master Ballot Spreadsheet with respect to each Client identified thereon is accurate, including, without limitation, the responses set forth thereon to the Disease/Use Questions.

- I acknowledge that a vote to accept the Plan constitutes acceptance of the treatment of each Client as a holder of a Channeled Talc Personal Injury Claim.

-3-

Group ID: 96

M15-64161150

Red River Talc LLC
Class 4 – Master Ballot

**Print or Type Name of Attorney:** Michelle A. Parfitt

**Name of Law Firm:** Ashcraft & Gerel

**Attorney Signature:** *Michelle A. Parfitt*

**Street Address:** 1825 K Street NW

Suite 700

**City, State, and ZIP Code:** Washington, DC 20006

**Telephone Number:** 7038244762

**Email Address of Attorney/Signatory:** mparfitt@ashcraftlaw.com

**Date:** February 27, 2025

DO NOT INCLUDE MEDICAL RECORDS WITH THIS MASTER BALLOT.
MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.

**IF THIS MASTER BALLOT AND THE MASTER BALLOT SPREADSHEET
ARE NOT RECEIVED BY THE SOLICITATION AGENT BY
JULY 26, 2024 AT 4:00 P.M. (PREVAILING CENTRAL TIME),
YOUR CLIENTS' VOTES MAY NOT BE COUNTED.**

7

Group ID: 96

M15-64161150

## <u>INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT</u>

1. The Master Ballot is submitted to you, as an attorney for holders of Channeled Talc Personal Injury Claims against LLT as of the Voting Record Date, to solicit, collect, and record the votes to accept or reject the Plan of, or to vote to accept or reject the Plan on behalf of, such Clients.  The Disclosure Statement and Plan are also being provided to you.  PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING AND SUBMITTING THE MASTER BALLOT, INCLUDING THESE INSTRUCTIONS AND THE TABULATION PROCEDURES THAT FOLLOW.

2. The Master Ballot is to be used only by attorneys for submitting the votes of their Clients and for no other purpose.  You may be required to provide evidence that you have properly solicited votes to accept or reject the Plan from Clients identified on the Master Ballot Spreadsheet accompanying this Master Ballot and/or that you have the authority under a valid power of attorney to vote on the Plan on behalf of such Clients.  If it is your firm's customary and accepted practice to collect and record authorizations or instructions from its clients by mail, email, telephone, text, or other standard communication methods, including any digital communications, the firm shall be authorized to follow such customary practices to collect and record the votes of the Clients identified on the Master Ballot Spreadsheet.

3. For the votes on the Master Ballot to be counted, you must make the required certifications in <u>Section 3</u> of the Master Ballot.

4. If you (a) are unable to certify that you have the authority to vote on the Plan on behalf of any Client or (b) prefer for such Client to cast his or her own individual ballot (a "<u>Direct Ballot</u>"), you may request that the Solicitation Agent assist you in in providing such Clients with Solicitation Packages and Direct Ballots.

  (a) If you choose for the Solicitation Agent to transmit Solicitation Packages and Direct Ballots to your Clients, by June 20, 2024 you must notify the Solicitation Agent of that choice and furnish the Solicitation Agent with a list setting forth each Client's (a) last name, (b) first name, (c) last four digits of Social Security Number (if a Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client), and (d) mailing address.

  (b) If you choose to transmit Solicitation Packages and Direct Ballots to your Clients yourself, by June 20, 2024 you must notify the Solicitation Agent of that choice and request that the Solicitation Agent provide you with a specified number of Solicitation Packages and Direct Ballots.  You must also provide the Solicitation Agent with each Client's (a) last name, (b) first name, (c) last four digits of Social Security Number (if a Client does not have a Social Security Number, so specify and provide the month, date, and year of birth of the Client), and (d) mailing address.

-5-

Any Client list described in the foregoing subparagraphs (a) and (b) must be provided to the Solicitation Agent in Microsoft Excel or comparable electronic format at balloting@epiqglobal.com (with "Red River Client List for Direct Solicitation" in the subject line). The Solicitation Agent will use commercially reasonable efforts to provide Solicitation Packages (including Direct Ballots) for the identified Clients to the Clients or to you, as applicable, within ten Business Days after receipt of such written request (or as soon as reasonably practicable thereafter). LLT will reimburse you for any actual postage incurred by you in delivering Solicitation Packages to your Clients. If you wish to seek reimbursement, you must submit reasonable evidence of postage expenses incurred to balloting@epiqglobal.com with a reference to "Red River" in the subject line.

5.      **To complete the Master Ballot properly, you must follow the procedures described below:**

Section 1 of the Master Ballot asks you to indicate how many Clients identified on the Master Ballot Spreadsheet accept or reject the Plan. If all of your Clients have indicated that they ACCEPT / vote in favor of the Plan (or you are exercising authority to vote in favor of the Plan on behalf of all of your Clients), please check the box indicating the same and the number of Clients. If all of your Clients have indicated that they REJECT / vote against the Plan (or you are exercising authority to vote against the Plan on behalf of all of your Clients), please check the box indicating the same and provide the number of Clients. If some of your Clients have indicated that they ACCEPT / vote in favor of the Plan, and others have indicated that they REJECT / vote against the Plan (or you are exercising authority to vote in favor of the Plan on behalf of some of your Clients and against the Plan on behalf of other Clients), please check the box indicating the same, identify the number of Clients who REJECT / vote against the Plan and the number of claimants who ACCEPT / vote in favor of the Plan, and specify on the Master Ballot Spreadsheet which Clients have accepted the Plan and which Clients have rejected the Plan.

Section 2 of the Master Ballot requires that you (i) prepare the Master Ballot Spreadsheet provided in template form with this Master Ballot identifying each Client reflected in the totals provided in Section 1 and (ii) submit the Master Ballot Spreadsheet with the Master Ballot. The Master Ballot Spreadsheet must be in Microsoft Excel format, completed in accordance with the instructions provided in Section 2 of the Master Ballot, and submitted through the E-Ballot Portal.

Section 3 of the Master Ballot contains certifications that you are required to make for the votes recorded on the Master Ballot and Master Ballot Spreadsheet to be counted. Please ensure that you have read and understood the certifications before signing the Master Ballot. If you are unable to make the certifications contained in the Master Ballot, you must notify the Solicitation Agent consistent with Paragraph 4 of these *Instructions for Completing Your Master Ballot*.

Sign the Master Ballot and provide your name, mailing address, and email address where indicated. Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package. Follow the directions below to submit your Master Ballot and Master Ballot Spreadsheet so they are actually received by the Solicitation Agent before the Voting Deadline.

Group ID:  96

M15-64161150

6.      The Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of Claims or Interests.

7.      The Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

8.      If (i) LLT or the Debtor, as applicable, revokes or withdraws the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

9.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, LLT, on behalf of the Debtor, will not resolicit votes for acceptance or rejection of the Plan.

10.     If you use this Master Ballot, you must submit the Master Ballot and upload the Master Ballot Spreadsheet through the Solicitation Agent's E-Ballot Portal available at https://dm.epiq11.com/redrivertalc.  Click on the "E-Ballot" button and follow the instructions.

**IMPORTANT NOTE:**  You will need the following information to submit your Master Ballot:

**Unique E-Ballot ID#:**  M15-64161150

The E-Ballot Portal is the sole manner in which Master Ballots and Master Ballot Spreadsheets will be accepted.  Master Ballots submitted by any other means will **NOT** be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims identified on the accompanying Master Ballot Spreadsheet.  Master Ballots conforming to these instructions and properly submitted through the E-Ballot Portal shall be deemed to contain an original signature.

If your completed Master Ballot and Master Ballot Spreadsheet are not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by LLT or the Debtor, as applicable, as noted in the accompanying Tabulation Procedures, your vote will not be counted.

Group ID: 96

10

M15-64161150

**<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS MASTER BALLOT.</u>**
**<u>MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT,
(B) BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR (C) DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (888) 431-4056 (TOLL-FREE) OR +1 (503) 822-6762
(INTERNATIONAL)
EMAIL:  BALLOTING@EPIQGLOBAL.COM
WITH A REFERENCE TO "RED RIVER MASTER BALLOT" IN THE SUBJECT LINE**

**PLEASE NOTE:  THE SOLICITATION AGENT IS NOT AUTHORIZED TO,
AND WILL NOT, PROVIDE LEGAL ADVICE**

-8-

Group ID: 96

11

M15-64161150

## <u>ANNEX A</u>

**THE FOLLOWING DEFINITIONS FROM THE PLAN ARE PROVIDED SOLELY FOR YOUR CONVENIENCE.  REFERENCE IS MADE TO THE PLAN FOR ALL OTHER TERMS AND DEFINITIONS AND TO THE DISCLOSURE STATEMENT, BOTH OF WHICH YOU ARE STRONGLY ENCOURAGED TO REVIEW TO SEE HOW THE PLAN, IF CONFIRMED, MAY AFFECT YOUR RIGHTS.**

### CHANNELED TALC PERSONAL INJURY CLAIMS

<u>Section 1.1.23</u> of the Plan contains the following definition of "Channeled Talc Personal Injury Claims":

> "**<u>Channeled Talc Personal Injury Claims</u>**" means all Talc Personal Injury Claims that are not Defense Cost Claims, including (a) Ovarian/Gynecological Talc Personal Injury Claims and (b) Other Disease Talc Personal Injury Claims.

### TALC PERSONAL INJURY CLAIMS

<u>Section 1.1.141</u> of the Plan contains the following definition of "Talc Personal Injury Claim":

> "**<u>Talc Personal Injury Claim</u>**" means any claim or Talc Personal Injury Demand against the Debtor, LLT, Old JJCI, or any other Protected Party, whether known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries (whether physical, emotional, or otherwise), directly or indirectly arising out of or in any way relating to the presence of or exposure to talc or talc-containing products based on the alleged pre-Effective Date acts or omissions of the Debtor, LLT, Old JJCI, or any other Person, but, in the case of such acts or omissions of Old JJCI or any other Person (other than the Debtor) only to the extent the Debtor has, or is alleged to have, liability for LLT's, Old JJCI's, or such other Person's conduct, whether by operation of the law, by assumption of such liability from LLT, Old JJCI, or such other Person, by agreement to indemnify, defend, or hold harmless LLT, Old JJCI, or such other Person from and against such liability, or otherwise.  For the avoidance of doubt, Talc Personal Injury Claims include: (a) all such claims and Talc Personal Injury Demands directly or indirectly arising out of or in any way relating to (i) any talc or talc-containing products previously mined, processed, manufactured, designed, marketed, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, and/or in any other way made available by the Debtor or any other Person, (ii) any talc or talc-containing materials present at any premises owned, leased, occupied, or operated by any Person, or (iii) any talc in any way connected to the Debtor alleged to contain asbestos or other contaminant; (b) all such claims and Talc Personal Injury

Group ID: 96

M15-64161150

Demands, whether (i) in tort, contract, warranty, restitution, conspiracy, guarantee, or any other theory of law, equity, or admiralty, whether brought, threatened, or pursued in any United States court or other court anywhere in the world, (ii) liquidated or unliquidated, fixed or contingent, direct or indirect, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity, or otherwise (including under piercing the corporate veil, agency, alter ego, successor liability, fraudulent conveyance, conspiracy, enterprise liability, market share, joint venture, or any other legal or equitable theory), (iii) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs, fees, injunctive, or similar relief, or any other measure of damages, (iv) seeking any legal, equitable, or other relief of any kind whatsoever, or (v) held by Persons residing within the United States or in a foreign jurisdiction; (c) all such claims and Talc Personal Injury Demands that have been resolved or are subject to resolution pursuant to any agreement or that are based on a judgment or verdict; (d) all such claims and Talc Personal Injury Demands for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages; and (e) Indirect Talc Personal Injury Claims.  Notwithstanding the foregoing, Talc Personal Injury Claims do not include:  (A) any claim or demand by any present or former employee of a predecessor or Affiliate of the Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer; (B) any claim or demand that (I) alleges that the relevant injured or deceased individual was exposed to talc or the product or material containing talc, as applicable, in Canada or resided in Canada at the time such Direct Talc Personal Injury Claim is filed or (II) was brought, threatened, or pursued in any court in Canada; (C) any claim or demand asserted or assertable by or on behalf of any governmental unit under any federal, state, international, or foreign consumer or employee protection rule, statute, or regulation; or (D) any claim or demand that alleges that the relevant injured or deceased individual developed Mesothelioma or Lung Cancer (and not Ovarian Cancer, Gynecological Cancer, or any other disease) in connection with such individual's use of talc or a product or material containing talc; in each case, other than any such claim that is an Indirect Talc Personal Injury Claim of an Imerys/Cyprus Party.  In addition, notwithstanding the foregoing, Talc Personal Injury Claims do not include any claim or demand that a Settling Talc Insurance Company may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Talc Insurance Company to assert any such claim or demand against its reinsurers and/or retrocessionaires in their capacities as such.

-2-

M15-64161150

## DEFENSE COST CLAIMS

Section 1.1.42 of the Plan contains the following definition of "Defense Cost Claim":

> "**Defense Cost Claim**" means any Indirect Talc Personal Injury Claim to the extent in respect of legal fees or other out-of-pocket costs incurred in connection with the defense of claims.  For the avoidance of doubt, if the provisions of Section 4.9.3 and Section 5.9.1 are applicable, Defense Cost Claims include any such Indirect Talc Personal Injury Claims of the Imerys/Cyprus Parties under any Imerys/Cyprus Agreement or otherwise.

-3-

Group ID: 96

M15-64161150

## ANNEX B

**IF THE PLAN IS CONFIRMED, THE CHANNELING INJUNCTION, THE RELEASES RELATED THERETO, AND THE RELEASES BY RELEASING CLAIM HOLDERS WILL APPLY TO EACH CHANNELED TALC PERSONAL INJURY CLAIM REGARDLESS OF WHETHER THE HOLDER OF SUCH CLAIM VOTES AND IF SUCH HOLDER DOES VOTE, REGARDLESS OF WHETHER SUCH HOLDER VOTES TO ACCEPT OR TO REJECT THE PLAN.**

### RELEASES BY HOLDERS OF CLAIMS

Section 11.2.2 of the Plan contains the following release provision:

> **Releases by Holders of Claims.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties before and during the Chapter 11 Case to facilitate the implementation of the Talc Personal Injury Trust, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, by the Releasing Claim Holders from any and all claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, causes of action, liens, remedies, losses, contributions, indemnities, costs, liabilities, fees (including attorneys' fees), and expenses whatsoever, including any indirect claims asserted or assertable on behalf of the Debtor or the Estate (including any Recovery Actions), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons or parties claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim or Interest or other Person, based on, arising out of, or in any way relating to, in whole or in part, the Debtor (as it existed prior to or after the Petition Date), the 2021 Corporate Restructuring, the 2021 Chapter 11 Case, the 2023 Chapter 11 Case, the 2023 Conversion, the 2023 Funding Agreement Modifications, the Prepetition Corporate Restructuring, the Estate, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions (including the exercise of any common law or contractual rights of setoff or recoupment at any time on or prior to the Effective Date) between the Debtor, on the one hand, and any other Released Party, on the other hand, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the sale or distribution of assets by

Group ID: 96

M15-64161150

Holdco in connection with the separation of J&J's consumer health business into a new company named Kenvue, Inc., the Love Proceeding, the negotiation, formulation, preparation, or implementation of, or the solicitation of votes with respect to, the Plan, or any other act or omission related to the Disclosure Statement, the Plan, or any related agreement, instrument, or document or any of the foregoing. Notwithstanding the foregoing: (a) claims or causes of action against a Released Party arising out of or relating to any act or omission of such Released Party prior to the Effective Date that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted a criminal act, actual fraud, gross negligence, or willful misconduct, including findings after the Effective Date, are not released pursuant to this <u>Section 11.2.2</u>; provided, however, that (i) no Person, without regard to whether such Person is a Releasing Claim Holder, may commence or pursue any such claim or cause of action without the Bankruptcy Court (A) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim and (B) specifically authorizing such Person to bring such claim or cause of action and (ii) to the fullest extent permitted by law, the Bankruptcy Court shall have sole and exclusive jurisdiction to adjudicate the underlying colorable claim or cause of action; (b) holders of Master Settlement Agreement Claims shall not release their rights to have such Master Settlement Agreement Claims considered for settlement and, if such Master Settlement Agreement Claims qualify for settlement, settled under the Master Settlement Agreements; and (c) holders of Judgment Claims shall not release their rights to seek to enforce and collect on the judgments on which such Judgment Claims are based, including through the defense or prosecution of appellate litigation related thereto. For the avoidance of doubt, nothing contained in this <u>Section 11.2.2</u> shall release or otherwise affect the obligations of any Person to be performed from and after the Effective Date under any Funding Agreement, the Cash Contributions Parent Guarantee, or any other Plan Document to which it is a party.

## CHANNELING INJUNCTION

<u>Section 11.3.1</u> of the Plan contains the following Channeling Injunction:

### <u>Channeling Injunction</u>.

(a)     To preserve and promote the settlements contemplated by and provided for in the Plan and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 524(g), section 1123(b)(6), and/or section 105(a) of the Bankruptcy Code, notwithstanding anything to the contrary contained in the Plan, (i) the sole recourse of any holder of a Channeled Talc Personal Injury Claim against a Protected Party (on account of such Channeled Talc Personal Injury Claim) shall be to and against the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents and (ii) such holder shall have no right whatsoever at any time to assert its Channeled Talc

-2-

Personal Injury Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all holders of Channeled Talc Personal Injury Claims shall be permanently and forever stayed, restrained, barred, and enjoined from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment, satisfaction, or recovery of, on, or with respect to any Channeled Talc Personal Injury Claim against a Protected Party other than from the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents, including:

(i)　commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or any property or interests in property of any Protected Party;

(ii)　enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property or interests in property of any Protected Party;

(iii)　creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against any Protected Party or any property or interests in property of any Protected Party;

(iv)　asserting, implementing, or effectuating any setoff, recoupment, right of contribution, reimbursement, subrogation, or indemnification, or similar right of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or against any property or interests in property of any Protected Party; and

(v)　taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents, or the Talc Personal Injury Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Talc Personal Injury Trust, except in conformity and compliance with the Talc Personal Injury Trust Documents.

(b)　Notwithstanding anything to the contrary in Section 11.3.1(a), this Channeling Injunction shall not impair:

(i)　the rights of holders of Channeled Talc Personal Injury Claims to assert such Talc Personal Injury Claims solely against the Talc Personal Injury Trust in accordance with the Talc Personal Injury Trust Documents;

-3-

Group ID: 96

17

M15-64161150

(ii)     the rights of holders of Channeled Talc Personal Injury Claims to assert such claims against anyone other than a Protected Party;

(iii)    the rights of holders of Master Settlement Agreement Claims to have such Master Settlement Agreement Claims considered for settlement and, if such Master Settlement Agreement Claims qualify for settlement, settled under the Master Settlement Agreements, so long as such holder has not (A) previously received payment in respect of such Master Settlement Agreement Claim from the Talc Personal Injury Trust or (B) submitted such Master Settlement Agreement Claim to the Talc Personal Injury Trust under the Trust Distribution Procedures (unless such Master Settlement Agreement Claim has been properly withdrawn in accordance with the Trust Distribution Procedures and has not thereafter been resubmitted to the Talc Personal Injury Trust under the Trust Distribution Procedures);

(iv)    the rights of holders of Judgment Claims to seek to enforce and collect on the judgments on which such Judgment Claims are based, including through the defense or prosecution of appellate litigation related thereto;

(v)     the rights of all Persons to assert any claim, debt, obligation, cause of action, or liability for payment of Talc Personal Injury Trust Expenses solely against the Talc Personal Injury Trust; or

(vi)    the Talc Personal Injury Trust from enforcing its rights explicitly provided to it under the Plan and the Talc Personal Injury Trust Documents, including, if the provisions of Section 4.9.3 and Section 5.9.1 are applicable, the Imerys/Cyprus Related Rights.

(c)     There shall be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d)     Nothing in the Plan or the Talc Personal Injury Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction issued in connection with the Plan or the Talc Personal Injury Trust's assumption of all liability with respect to Talc Personal Injury Claims.

(e)     The Debtor's compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(f)     Any Protected Party may enforce the Channeling Injunction as a defense to any Claim brought against such Protected Party that is enjoined under

Group ID: 96

M15-64161150

the Plan as to such Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

(g)     If a Talc Insurance Company that is not a Settling Talc Insurance Company asserts that it has Contribution Claims against a Settling Talc Insurance Company:  (i) such Contribution Claims may be asserted as a defense or counterclaim against the Talc Personal Injury Trust in any Talc Insurance Action involving such Talc Insurance Company, and the Talc Personal Injury Trust (acting through the Reorganized Debtor, as its subrogee having the exclusive right to pursue and resolve any Talc Insurance Action) may assert the legal or equitable rights (if any) of the Settling Talc Insurance Company; and (ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Talc Insurance Company to the Talc Personal Injury Trust shall be reduced by the amount of such Contribution Claims.

Group ID: 96

19

M15-64161150

## ANNEX C

## TABULATION PROCEDURES

> **THE FOLLOWING PROCEDURES GOVERN THE TABULATION OF BALLOTS CAST ON THE PLAN.  THESE TABULATION PROCEDURES HAVE NOT YET BEEN APPROVED BY ANY COURT, AND NO CHAPTER 11 CASE HAS YET COMMENCED WITH RESPECT TO THE DEBTOR.   APPROVAL OF THESE TABULATION PROCEDURES WILL BE SOUGHT FOLLOWING COMMENCEMENT OF ANY CHAPTER 11 CASE.  CAPITALIZED TERMS NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE ACCOMPANYING BALLOT.**

1. **Types of Ballot**

LLT, on behalf of the Debtor, is soliciting the votes on the Plan from holders of Channeled Talc Personal Injury Claims using ballots identified as Master Ballots, Direct Ballots, and Indirect Ballots.  Certain of the following procedures apply solely to Master Ballots, which are ballots that may be submitted only by law firms on behalf of multiple clients and must be accompanied by an exhibit in Microsoft Excel format providing information regarding such clients and their Channeled Talc Personal Injury Claims (the "Master Ballot Spreadsheet").

2. **Voting Amounts**

The Debtor will request that the Bankruptcy Court temporarily allow Channeled Talc Personal Injury Claims for the limited purpose of voting on the Plan in the amount of $1.00 in the aggregate per claimant.  That value will not be binding on the Debtor, the Talc Personal Injury Trust, the holder of any Channeled Talc Personal Injury Claim, or any other party for any purpose other than voting to accept or reject the Plan.

3. **Ballots Excluded**

A vote cast on a ballot will **not** be counted if any of the following applies to such ballot.  For the avoidance of doubt, where a Master Ballot reflects multiple votes, only those votes to which any of the following applies will be excluded, and properly submitted votes reflected on the Master Ballot, if any, will be counted.

       a.     The ballot is submitted by or on behalf of a Person that is not entitled to vote.

       b.     The ballot is not completed and submitted to the Solicitation Agent consistent with the instructions included with the ballot.

       c.     With respect to Master Ballots, the Master Ballot Spreadsheet does not conform to the template provided with the Master Ballot, including the formatting of each field included in the Master Ballot Spreadsheet template.

       d.     The ballot is not duly and timely submitted by the E-Ballot Portal on the Solicitation Agent's website or, with respect to ballots other than Master Ballots, (i) first class

Group ID: 96

20

M15-64161150

mail, (ii) overnight courier, or (iii) hand delivery so that it is **actually received** by the Solicitation Agent by the Voting Deadline, unless LLT has granted an extension of the Voting Deadline with respect to such ballot.  The holder of a Channeled Talc Personal Injury Claim may choose the method of delivery of its ballot to the Solicitation Agent at its own risk.  Delivery of any ballot shall be deemed made only when the ballot is actually received by the Solicitation Agent.

       e.       The ballot does not designate either acceptance or rejection—or designates both acceptance and rejection—of the Plan for any Channeled Talc Personal Injury Claim (including with respect to any single Channeled Talc Personal Injury Claim identified on the Master Ballot Spreadsheet accompanying a Master Ballot).

       f.       The ballot indicates partial rejection and partial acceptance of the Plan. Each holder of a Channeled Talc Personal Injury Claim has a single vote, and the full amount of all such Claims must be voted either to accept or reject the Plan.

       g.       The ballot is transmitted electronically to the Solicitation Agent by any means other than submission through the E-Ballot Portal (such as via facsimile or e-mail transmission).

       h.       The ballot is illegible or contains insufficient information to permit the identification of any claimant reflected thereon.

       i.       The ballot is submitted in an incorrect form for such Claim.

       j.       An otherwise complete ballot is returned to the Solicitation Agent but is unsigned; provided, however, for the avoidance of doubt, that a ballot that is properly submitted electronically via the E-Ballot Portal shall be deemed to contain an original signature.

       k.       The ballot is incomplete, including, without limitation, failure of the holder of the Channeled Talc Personal Injury Claim or their authorized representative (i) to make the required certifications or (ii) to provide the last four digits of the claimant's Social Security Number (or to indicate that the claimant does not have a Social Security Number and provide the claimant's month, date, and year of birth).

    4.      **General Procedures for Voting and Standard Assumptions.**

       a.       The Solicitation Agent may, at its discretion, either (i) contact the party submitting a defective ballot in an effort to cure the defect on the ballot or (ii) not count the vote of such Channeled Talc Personal Injury Claim as an acceptance or rejection of the Plan.  None of LLT, the Debtor, nor any other Person, is under any duty to provide notification of defective or irregular ballots, except as provided herein, nor shall any of them incur any liability for failure to provide such notification.

       b.       The holder of a Channeled Talc Personal Injury Claim for whom a vote is submitted on a valid ballot may withdraw their vote; provided, however, that neither LLT nor the Debtor is obligated to recognize any withdrawal, revocation, or change of any vote received after the Voting Deadline; provided, further, that counsel to a claimant may withdraw valid votes of Clients submitted on a Master Ballot only if (i) such Master Ballot was submitted by such counsel

-2-

Group ID: 96

M15-64161150

pursuant to a power of attorney or (ii) counsel obtains such claimant's consent to withdraw their vote.

c.       Any holder of a Channeled Talc Personal Injury Claim who submits a properly completed superseding ballot or withdrawal of a ballot on or before the Voting Deadline will be presumed to have sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's or interest holder's acceptance or rejection of the Plan.

d.       If the Solicitation Agent receives more than one ballot from the same holder of a Channeled Talc Personal Injury Claim (or from the same authorized representative representing the same holder of a Channeled Talc Personal Injury Claim) for the same Channeled Talc Personal Injury Claim, in the absence of contrary information establishing which ballot is valid as of the Voting Deadline (or such later date as may be agreed by LLT or the Debtor), the last-executed, otherwise valid ballot that is received before the Voting Deadline shall be the ballot that is counted.  Multiple Master Ballots may be completed and delivered to the Solicitation Agent.

e.       If the Solicitation Agent receives one or more ballots from the holder of a Channeled Talc Personal Injury Claim **and** someone purporting to be their authorized representative, the ballot received from the holder of the Channeled Talc Personal Injury Claim shall be the Ballot that is counted, regardless of when it is received so long as it is received before the Voting Deadline (or such later date as may be agreed by LLT or the Debtor), and the vote of the purported authorized representative will not be counted.  For the avoidance of doubt, any timely and otherwise valid Direct Ballot received on account of a Channeled Talc Personal Injury Claim shall supersede any Master Ballot submitted on account of such Channeled Talc Personal Injury Claim at any time and shall be the vote that is counted.

f.       If the Solicitation Agent receives more than one ballot from different holders purporting to hold the same Channeled Talc Personal Injury Claim, in the absence of contrary information establishing which claimant held such Channeled Talc Personal Injury Claim as of the Voting Record Date, such ballots will not be counted

g.       If the same holder of a Channeled Talc Personal Injury Claim appears on more than one Master Ballot, the Solicitation Agent will exercise reasonable efforts to coordinate with the respective firms to cure the discrepancy.  If the discrepancy is not cured, the vote for the holder appearing on more than one Master Ballot will be counted only once and only if such votes are consistent with respect to acceptance or rejection of the Plan.  In the event that such votes are not consistent, none of the votes will be counted.

Group ID: 96

M15-64161150

Red River Talc LLC
Class 4 – Master Ballot

ASHCRAFT & GEREL

M15-64161150

-4-

Group ID: 96

M15-64161150

**Exhibit C**

**<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RED RIVER TALC LLC,[1] | ) | Case No. 24-90505 (CML) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER GRANTING ASHCRAFT & GEREL, LLP'S**
**MOTION FOR ENTRY OF AN ORDER PERMITTING ITS CLIENTS TO**
**CHANGE THEIR VOTES WITH RESPECT TO THE DEBTOR'S CHAPTER 11 PLAN**

(Related to Docket No. _____)

This matter coming before the Court on *Ashcraft & Gerel, LLP's Motion for Entry of an Order Permitting Its Clients to Change Their Votes with Respect to the Debtor's Chapter 11 Plan* (the "Motion"),[2] filed by Ashcraft & Gerel, pursuant to rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); the Court having reviewed the Motion and the exhibits attached thereto and having considered the statements of counsel with respect to the Motion at a hearing before the Court, if any (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (d) the Court may enter a final order consistent with Article III of the United States Constitution, (e) notice of the Motion and, to the extent applicable, the Hearing was sufficient under the circumstances and (f) sufficient cause exists to permit the 1,479 clients of Ashcraft & Gerel identified on the Amended Ballot to change their votes from rejecting the Initial Plan to

---

[1]   The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]   Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

accepting the Third Amended Plan, as reflected in the Amended Ballot; and the Court having determined that the legal and factual bases set forth in the Motion and, to the extent applicable, at the Hearing establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.      Pursuant to Bankruptcy Rule 3018(a), the 1,479 clients of Ashcraft & Gerel identified in the Amended Ballot are permitted to change their votes from rejecting the Initial Plan to accepting the Third Amended Plan, and 1 client of Ashcraft & Gerel is permitted to change his vote from rejecting the Initial Plan to abstaining from voting on the Third Amended Plan, all as reflected in the Amended Ballot.

2.      Ashcraft & Gerel is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

3.      This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, enforcement, or interpretation of this Order.


Dated: _____, 2025            _____
Houston, Texas                       CHRISTOPHER M. LOPEZ
                                     UNITED STATES BANKRUPTCY JUDGE