**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **RED RIVER TALC LLC,**[1] | ) | **Case No. 24-90505 (CML)** |
| | ) | |
| **Debtors.** | ) | **Ref. Doc. No. 1425** |
| | ) | |
| | ) | **Emergency Relief Requested** |

**HEATHER VELASQUEZ'S (A) JOINDER IN RHONDA MCKEY'S MOTION TO**
**RECONSIDER ORDER DISMISSING THE BANKRUPTCY CASE, AND**
**(B) MOTION FOR COURT TO ORDER THE PARTIES TO MEDIATION**
**TO ATTEMPT TO FINALIZE A REVISED PLAN AND SOLICITATION PROCEDURE**

Heather Velasquez, in her individual capacity ("Ms. Velasquez")[2], respectfully submits her joinder (the "Joinder") in Rhonda McKey's motion yesterday seeking reconsideration of the *Memorandum Decision and Order* [Doc. No. 1425] (the "Order"), and additionally, her own Motion today for this Court to order the parties to mediation to attempt to finalize a revised Plan and Solicitation Procedure that complies with this Court's Order.

Without staying the tort process, granting both Ms. McKey's Motion and Ms. Velasquez's Motion to Mediate is the only way this Court can deliver justice to both the Debtor and its tens of thousands of its talc victims in accordance with both Rule 1001 of the Federal Rules of Bankruptcy Procedure and Rule 1 the Federal Rules of Civil Procedure: "these rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Bankr. P. 1002(a); Fed. R. Civ. P. 1.

---

[1] The last four digits of the Debtor's taxpayer identification number are 8508. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] Ms. Velasquez is represented by Mikal Watts, one of the members of the Ad Hoc Committee of Supporting Counsel.

In support of this Joinder and Motion for Mediation, Ms. Velasquez respectfully offers the following:

## A.  JOINDER IN MS. MCKEY'S MOTION

1.      The Court's Order is extremely detailed, carefully identifying deficiencies in both the Plan and the voting process.  However, to this Court's great credit, its Order also delivers a clear recipe for a Plan that can pass muster and a Solicitation Procedure that can be cured.

2.      Concerning the Plan, this Court is the first to rule on these issues after *Harrington v. Purdue Pharma*, 603 U.S. 204 (2024), which was delivered by the United States Supreme Court *after* voting on this Plan had already begun.  As described in Section B herein below, Ms. Velasquez agrees with Ms. McKey's communication to this Court in paragraph 2 of her Motion that based on discussions with counsel since this Court's Order, the Debtor remains willing and able to deliver on a revised Plan that solves this Court's substantive concerns included in its Order.

3.      Concerning the votes, this Court observed in its Order as follows:

- "Votes are a quintessential part of plan confirmation.  Votes are voices.  But the Court did not get to hear from tens of thousands of them." (Order, p. 3);

- "over 90,000 votes were cast, but at least half of them cannot count." (Order, p. 23);

- "Over half of the total votes cast in this case were certified under Option B.  But the evidence showed that the majority of these votes were not supported by a power of attorney." (Order, p. 25);

- "Again, the Court does not find that the plaintiffs' law firms acted in bad faith.  But these invalid votes cannot be counted.  The Court will also not disenfranchise claimants by disregarding thousands of votes." (Order, p. 32).

4.      With respect to the undersigned, this Court wrote: "One firm was put in a bad spot due to solicitation issues that were not its fault" (Order, p. 3), and its "effort to communicate with

clients under an incredibly tight deadline was valiant but it should not have been required." (Order, p. 26).  More generally, this Court observed repeatedly that the Plaintiffs' firms casting votes did so with differing problems requiring the votes to not be counted, "but did not do it in bad faith" (Order, p. 3).  Given the good faith efforts of all the parties, and the incalculable delay coming in the tort system after a final dismissal of this bankruptcy case, a do-over *in this Court* is in order.

5.      This Court saw how the Plan proposed by the Debtor alone before *LTL 1* improved exponentially after negotiations with Plaintiffs' counsel prior to the filing of *LTL-II* and was financially supplemented yet again prior to the filing of *Red River Talc*.  Moreover, to the credit of the Coalition, Allen Smith and the Debtor, resistance and litigation here caused the Plan to again be optimized several times during the pendency of the case before this Court.  The Court's Order found the filing of the Plan and the conduct of the various parties here to uniformly to have been in good faith.  As such, under the guidance of Rule 1001, justice argues for allowing this good-faith Debtor and its various good-faith creditors to fix the unfortunate voting problems identified by this Court in its Order by permitting a revised resolicitation process containing only an Option A-only option, or one with only a constricted Option B voting procedure as well.  This would fix all the Court's concerns concerning the vote while re-enfranchising tens of thousands of talc victims.  And it will not take long.  This Court observed that the tort litigation should not be stayed in a divisional merger, settlement-driven case while all this gets sorted out," [p. 57], but *no stay is being requested by Ms. McKey's Motion in which Ms. Velasquez joins*.  Frankly, this voting process would be complete before the first trial in the tort system will be ready to begin.  The parties now before this Court can simultaneously begin to walk inside the tort system while still chewing gum here in the bankruptcy system.  Frankly, the women victimized by talc deserve this effort at a dual-track approach.

6.      By granting the Motion in which the undersigned joins, that cure can quickly and fairly be achieved without disenfranchising tens of thousands of talc victims who will otherwise be consigned to no real access to the courts, stuck in the back of an impossibly long line in a tort system that has provided actual trials to less than one/tenth of one percent of its claimants during the past decade.  Because this Court itself recognized that "[t]here is no guarantee of a court date in the foreseeable future for most of these claimants," (Order, p. 57), Ms. McKey's Motion should be granted.

## B.  MOTION FOR THE COURT TO ORDER THE PARTIES TO MEDIATION

7.      Ms. Velasquez observed this Court's expeditious stewardship of, and tireless work during, the Red River Talc bankruptcy process.  She and her counsel read this Court's Order with extraordinary respect and great appreciation for its effort in trying to get it right.

8.      But, in fairness, the parties negotiated this proposed prepackaged plan in a virtual vacuum from what they know now - with a Supreme Court case pending and this Court's learned guidance not yet delivered.  Now armed with the learned guidance of both, the Debtor and its creditors are ready, willing and able to deliver this Court a Plan that will pass muster.  While this Court retains jurisdiction over the case, all that is needed here is a second chance.

9.      Given the vitriolic relationship between the competing parties, communication to resolve disputes has been absent during this litigation.  Before this Court expends more of its judicial resources litigating disputes, a powerful voice is needed to try to bring the parties together. While there may be many fine mediators available, Ms. Velasquez suggests the talents of Layn Phillips, a former United States District Judge for the Western District of Oklahoma, and the founder of Phillips ADR Enterprises.  Judge Phillips is repeatedly called upon by courts to resolve

4

the biggest tort disputes this nation has offered up, and he continues to deliver results. https://phillipsadr.com/our-team/layn-phillips/.

10.    While Ms. Velasquez is not asking this Court to provide an advisory ruling on a revised Plan and Voting Process, she does ask this Court to employ its inherent power under 11 U.S.C. §105[3] to order the parties to mediate before this Court resolves the inevitable motion practice soon coming its way concerning Ms. McKey's Motion.

11.    Accordingly, to ensure that this Court's consideration of a revised Plan is not a waste of its time, Ms. Velasquez respectfully moves the Court to:

*first*, grant Ms. McKey's Motion, in order to cause this Court to maintain jurisdiction over this case;

*second*, stay the deadlines to even respond to the same until after the parties have completed a mediation process to attempt to arrive at a revised Plan and Solicitation Process that will adhere to the Court's teachings in the Order.

*Third*, order the parties to mediate before Hon. Layn Phillips, a former United States District Judge for the Western District of Oklahoma, a now the principal of Phillips ADR Enterprises.

## CONCLUSION

For the reasons set forth herein, Ms. Velasquez respectfully requests that the Court grant Ms. McKey's Motion to Reconsider Order Dismissing the Bankruptcy Case, her Motion to Order Mediation, and any other relief to which she is entitled.

---

[3] *See e.g., In re: Arena Energy LP, et al.*, Case No. 20-34215 (MI), In The United States Bankruptcy Court for the Southern District of Texas – Houston Division (Bankr. S.D. Tex., Feb. 5, 2021) (Isgur, Bankr. J.) (Order Appointing Judge Christopher Lopez as Mediation).

Dated: April 15, 2025                    Respectfully submitted,

By: */s/ Mikal C. Watts*

WATTS GUERRA, LLC
Mikal C. Watts (TX Bar No. 20981820)
200 Dorado Beach #3612
Dorado, Puerto Rico 00646
Texas State Bar I.D. No. 20981820
Federal Bar I.D. No. 12419
Telephone: (512) 479-0500
Facsimile: (512) 479-0501
Email: mikal@wattsllp.com

**COUNSEL FOR HEATHER VELASQUEZ**

6

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2025, a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties registered to receive electronic notice in this case.

*/s/ Mikal C. Watts*
Mikal C. Watts

**CERTIFICATE OF ACCURACY**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency as set forth in the Joinder of Ms. McKey's Motion are true and accurate to the best of my knowledge.

*/s/ Mikal C. Watts*
Mikal C. Watts

.

7