**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RED RIVER TALC, LLC,[1] | Case No. 24-90505 (CML) |
| Debtor. | |

**OMNIBUS RESPONSE OF OFFICIAL COMMITTEE OF TALC CLAIMANTS TO
(I) DEBTOR'S OMNIBUS OBJECTION TO THE OFFICIAL COMMITTEE OF TALC
CLAIMANTS' APPLICATIONS TO RETAIN CERTAIN LAW FIRMS,
AND (II) UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO
THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' APPLICATIONS
EMPLOY BROWN RUDNICK LLP AND PAUL HASTINGS LLP AS CO-COUNSEL
FOR OFFICIAL COMMITTEE OF TALC CLAIMANTS AND SUSMAN
GODFREY LLP AND MCKOOL SMITH AS SPECIAL LITIGATION COUNSEL**

(Related to Docket Nos. 805, 807, 895, 924)

Brown Rudnick LLP, proposed counsel to the Official Committee of Talc Claimants (the "Committee") in the above-captioned case (the "Case") hereby responds[2] to (I) the *Debtor's Omnibus Objection to the Official Committee of Talc Claimants' Applications to Retain Certain Law Firms* [Dkt. No. 895] (the "Debtor Objection") and (II) *United States Trustee's Omnibus Objection to the Official Committee of Talc Claimants' Applications Employ Brown Rudnick LLP and Paul Hastings LLP as Co-Counsel for Official Committee of Talc Claimants and Susman Godfrey LLP and McKool Smith as Special Litigation Counsel* [Dkt. No. 924] (the "UST Objection") and respectfully represents as follows:

---

[1]    The last four digits of the debtor's federal tax identification number are 8508.  The Debtor's mailing address is 501 George Street, New Brunswick, NJ 08933.

[2]    The Committee originally filed the *Application for an Order Authorizing the Employment of Brown Rudnick LLP as Co-Counsel for the Official Committee of Talc Claimants* Nunc Pro Tunc *to November 18, 2024* [Dkt. No. 805] (the "BR Application") files this response in support of the BR Application due to implications arising from the purported scope of the *Memorandum Decision and Order* [Dkt. No. 1425] (the "Dismissal Order").

**PRELIMINARY STATEMENT**

1. This case was dismissed on March 31, 2025 per the Court's Dismissal Order. However, the case has not been closed and remains open. At the time of such dismissal, the Committee's applications to retain certain professionals, including Brown Rudnick LLP ("Brown Rudnick" or the "Firm") remained outstanding, although subject to certain objections. Brown Rudnick acted as proposed co-lead counsel to the Committee over many months including through conclusion of an almost two-week motion to dismiss trial. Brown Rudnick files this Response in order to facilitate resolution of its retention including so that its final fee application can be addressed.

2. Brown Rudnick is known for its zealous advocacy of its clients' positions. Here, that advocacy has put the Firm in the Debtor's cross hairs. Rather than acknowledge that Brown Rudnick's past representations (which include its retention as co-lead counsel to the two prior officially appointed talc claimants' committees – in LTL I and LTL II – that share multiple members with the present Committee) made the Firm uniquely qualified to attempt to bridge the gap between the supporters of the Debtor's plan and those who did not support it, the Debtor chose to mount an aggressive attack on Brown Rudnick.

3. If the Debtor truly held its professed concerns regarding Brown Rudnick's disinterestedness, the Debtor would have been compelled to object to the Committee's retention of its now-approved local counsel, Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation ("SBEP"), which, with Brown Rudnick, was counsel to the Coalition of Counsel for Justice for Talc Claimants (the "Coalition") until SBEP resigned to represent the Committee. The Debtor would also be obligated to object to the Committee's retention of Paul Hastings LLP ("Paul Hastings") based on the fact that the Debtor owes Paul Hastings substantial sums for its pre-Committee representation of the Ad Hoc Committee of Supporting Counsel (the "AHC") in **both** this case and the second LTL bankruptcy case (a/k/a LTL II), although the Debtor conspicuously omitted to mention its or its

2

predecessors'/parents' debt to Paul Hastings in either the Objection or its motion to assume a prepetition reimbursement agreement with the AHC.  Instead, the Debtor is supporting the retention of a firm that is one of its creditors while trying to eliminate Brown Rudnick based the Firm's past representation of official committees and other claimant groups that have opposed Johnson & Johnson debtor subsidiaries in this and the two prior bankruptcy cases.[3]  As explained below, the Debtor's objections are unfounded.

4.     The objections raised on behalf of Kevin M. Epstein, the United States Trustee for Region 7 ("U.S. Trustee"), including issues raised with Brown Rudnick informally on behalf of the U.S. Trustee, have been largely resolved.  For the reasons set forth in more detail below, the remaining contention, that Brown Rudnick cannot represent the TCC unless the Firm agrees to waive payment for services provided to the Coalition prior to the Firm's engagement as counsel for the Committee, is incorrect because it relies upon the mistaken view that the prior representation of creditors of a debtor does not constitute an interest adverse to an official committee of creditors of the same debtor.

## RESPONSE

**I.     The objections to the Committee's retention of Brown Rudnick should be overruled.**

5.     The denial of the Committee's requested retention of Brown Rudnick does not serve the interests of justice in this case and would serve only to appease the Debtor's ultimate parent, frustrated by two Chapter 11 defeats at the hands of official committees represented by Brown Rudnick and apparently looking for retribution.

---

[3]   Notably, the current members of the Committee include former members of the official committees represented by Brown Rudnick in LTL I and LTL II, one of which is represented by a member of the Ad Hoc Committee and two of which are represented by former members of the Coalition.  Another member of the AHC and counsel to a current Committee member also represented a member of the official committee by Brown Rudnick in LTL I.

6.      Nothing in the Bankruptcy Code prohibits the Committee's retention of Brown Rudnick, nor is there any case law directly on point.  The authority proffered by the Debtor  and the U.S. Trustee in support of their respective objections is limited to  general concepts, many of which are pulled from cases considering a  debtor's retention of counsel pursuant to section 327(a) of the Bankruptcy Code rather than to a committee's retention of professionals pursuant to sections 328 and 1103.  The prior representation of creditors of a debtor does not constitute an interest adverse to an official committee of creditors of the same debtor.

**A.      Brown Rudnick has demonstrated the requisite disinterestedness.**

7.      As this Court is well aware, the Debtor and its ultimate parent view one plaintiff law firm in particular as the primary source of opposition to the Debtor's and its predecessor's efforts to resolve talc claims.  The Debtor's attacks on and vilification of Beasley Allen are impossible to miss in hearing transcripts and the Debtor's filings in this case and so do not need to be repeated in this context for effect.  This extreme animosity apparently has distorted the Debtor's view of professionals who have been engaged by official committees and other groups in which Beasley Allen has either represented a member or been a member itself.  The Debtor's objection to BR Application seems to be an extension of its bitter feud with Beasley Allen and other firms that have opposed the Debtor and its ultimate parent.  However, the Debtor Objection fails to  establish that Brown Rudnick holds any interest adverse to the Committee as a result of its past representations or otherwise.

8.      The UST Objection fails to differentiate between the alleged adversity created by Brown Rudnick's position as a creditor of certain members of  the Coalition and  Paul Hastings's position as a creditor of the ***Debtor***.  While case law is clear that a professional that is a creditor of a debtor necessarily has a conflict of interest with a committee of that debtor's creditor, there is no law that supports a conclusion that a professional owed fees by a former client  that is a debtor's creditor

4

has a similar conflict of interest with a committee of the debtor's creditors representative of the former client's interests.

***Brown Rudnick's retention by the Committee does not violate any section of the Bankruptcy Code.***

9.      As fully explained in the Brown Rudnick Application and substantiated in the declarations filed in support thereof, Brown Rudnick no longer represents the Coalition and has not represented the Coalition since 12:00 a.m. on November 17, 2024. Brown Rudnick was originally engaged by the Coalition as a whole—and not by any individual law firm—with the expectation that Brown Rudnick's representation would run through the formation of an official committee in this case. Brown Rudnick's retention by the Committee is entirely consistent with the expectations of all parties to the Coalition's prior engagement of Brown Rudnick.

10.      Both the Debtor Objection and the UST Objection fail to consider the seriousness with which the Committee approached its mandate under section 328(a) of the Bankruptcy Code in evaluating its retention of professionals. Specifically with respect to its retention of counsel, the Committee conscientiously evaluated the potential conflict issues raised by the retention of former Coalition counsel[4] (and former AHC counsel) and was satisfied by the facts set forth in the Brown Rudnick Application and supporting declarations that Brown Rudnick does not hold any interest adverse to the Committee. As bankruptcy courts in multiple districts have recognized, while the Court must independently review the facts of a particular case, it also must recognize that the Committee's "choice of counsel is entitled to a certain amount of deference." *See* In re Nat. Century Fin. Enterprises, Inc., 298 B.R. 118, 123 (Bankr. S.D. Ohio 2003) (citing In re Enron Corp., 2003 WL 223455 at *4 (S.D.N.Y. Feb. 3, 2003)). Public policy favors permitting parties to retain professionals of their choice. In re Caldor, Inc., 193 B.R. 165, 170 (Bankr. S.D.N.Y. 1996).

---

4      Both with respect to Brown Rudnick and SBEP.

The Debtor, however, is demanding instead that the Committee retains the professionals of *its* choice. The UST Objection inadvertently supports the Debtor's demand, contrary to overwhelming statutory and common law on this subject.

11.     The Committee was appointed to represent the interests of **all** creditors who hold talc claims in this case, an enormous constituency of diverse creditors.  In its *Statement of the Official Committee of Talc Claimants in Support of the Debtor's Chapter 11 Cases, Forthcoming Amended Plan and Plan Process* [Dkt. 613] (the "Committee Statement"), the Committee recognized that "[a]s of the date of its constitution, the Committee was nearly evenly divided between creditors represented by counsel who supported the Plan, and creditors represented by counsel who either opposed or had significant reservations with respect to the Plan."  Committee Stmt. ¶4  As a result, "[i]n the spirit of compromise among its diverse membership, the Committee has retained both Paul Hastings LLP, former co-counsel to the AHC, and Brown Rudnick LLP, former co-counsel to the Coalition, as its primary co-counsel." Committee Stmt. fn 2.  In other words, the Committee specifically chose Brown Rudnick in recognition of the Firms' past representations in order to assist in the Committee' in reaching its ultimate goal of "bringing together historically divergent interests among the members of the Committee to pursue a common settlement" and "reaching a consensus view among its members to improve the Debtor's Plan for the benefit of all talc claimants." *See* Committee Stmt. ¶4.

12.     The Committee never viewed Brown Rudnick as holding any interest adverse to the Committee's goals.  In fact, Brown Rudnick has been instrumental in guiding the Committee through negotiations among representatives of all creditor groups.

13.     As disclosed in the Brown Rudnick Application, all members of the Coalition as of the Petition Date consented to Brown Rudnick's engagement by the Committee and agreed in writing to waive any potential conflicts that could arise as a result of Brown Rudnick's representation

6

of the Committee.  However, to avoid even the appearance of impropriety, the Committee directed Paul Hastings to lead the Committee's consideration of or response to any motions filed by the Coalition prior to Brown Rudnick's withdrawal as Coalition counsel on November 17.

14.     Nothing in the Bankruptcy Code requires a determination that Brown Rudnick has an interest materially adverse to the Committee. Section 1103 of the Bankruptcy Code clearly states that "[r]epresentation of one or more creditors of the same class represented by the committee shall not per se constitute the representation of an adverse interest." 11 U.S.C. §1103(b). Notwithstanding that the Bankruptcy Code explicitly provides that even ***concurrent*** representation of a creditor within the class represented by a committee should not be presumed to be adverse to the committee, the Debtor and U.S. Trustee claim that Brown Rudnick's ***past*** representation of clients that were adverse *to the Debtor* before the Committee existed—including in matters that the Debtor itself has claimed "involved a different case, a debtor with different assets and liabilities, featured different facts and circumstances"[5]—should be viewed by this Court as materially adverse to the Committee.   Section 1103(b) is not violated if a law firm represents an entity with an adverse interest in a matter that *pre-dates* the law firm's representation of the Committee. In re Enron Corp., 2003 WL 223455, at *7 (S.D.N.Y. Feb. 3, 2003) (emphasis in original).

15.     With respect to the prior LTL cases, as well as the Aearo Technologies and Tehum cases quoted in the Debtor Objection, while the committees Brown Rudnick represented or represents in those cases were adverse to those cases' respective debtors—at least initially—they were not adverse to the debtors' ***estates*** or the interests of the creditors in those cases.  The committees' opposition in each of those cases was undeniably beneficial to the respective debtors' estates and creditors in each of those cases, even if the benefit was not what the debtors sought in commencing

---

[5]     *See Debtor's Opposition to the Motions to Transfer Venue* [Docket No. 183] at p. 5.

their respective cases.  The idea that opposition to a debtor's position can be a benefit to that debtor's estate was recognized by Judge Kaplan in the first LTL case in the Court's substantial contribution opinion:

> the Court agrees with Movants that substantial contribution allowances are not limited to situations where contributions lead directly or indirectly to a successful reorganization. The Third Circuit *Lebron* opinion broadly defines substantial contribution as efforts that "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (citing *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).

*Opinion Granting in Part Motions for Substantial Contribution*, No. 21-30589-MBK  [Dkt. 3973]. Work done and positions taken that **benefit** a Chapter 11 estate is not "adverse" to the estate merely because that work and those positions may be contrary to the Debtor's position.

16.     While the Coalition advanced positions adverse to the Debtor and the AHC prior to Brown Rudnick's withdrawal as counsel to the Coalition, it did not take any positions adverse *to the Committee* during that time.  In fact, in his last appearance before the Court as counsel to the Coalition, David Molton of Brown Rudnick announced the Coalition's support for the first motion filed by the Committee in this case: "The Coalition does not object, and I'm going to repeat, does not object to the [T]ort [C]laimants Committee for what I view as a two-week pause."[6]  Mr. Molton continued, explaining why the Coalition supported the Committee's position and why reaching a fully consensual resolution was in all parties' best interest—in other words, *in the best interests of the estate.*[7]

17.     Among the many statements quoted by the Debtor—which include quotations from not only the two prior LTL Management Chapter 11 cases that the Debtor has repeatedly claimed

---

[6]     October 30, 2024 Status Conf. Tr. at 21:23-25.

[7]     October 30, 2024 Status Conf. Tr. at 23:21-24:16 (noting the importance of finality for all parties).

are completely separate from this case, but multiple unrelated cases in which Brown Rudnick served as counsel to an official committee—the Debtor chose to quote a motion filed with this very Court in In re Tehum Care Services, No. 23-90086 (CML) (Bankr. S.D.Tex). The circumstances of that case are particularly apropos to the Court's consideration of Brown Rudnick's "disinterestedness" in this case, though certainly not in the way in which the Debtor imagines. As this Court knows, the Tort Claimants' Committee's initial opposition to the settlement proposed by the Debtor in *Tehum* (which settlement this Court did not approve) resulted—in large part due to the efforts and innovation of Brown Rudnick—in a ***confirmed*** Chapter 11 plan proposed jointly by the Tort Claimants' Committee, the Unsecured Creditors' Committee, and the Debtor. Brown Rudnick's efforts on behalf of its client in *Tehum*, though initially adverse to the Debtor and the UCC, resulted in a deal supported by all parties that benefited the Debtor's estate and all of its creditors and ultimately a successful confirmed plan. Notably, in *Tehum* and all of the other cases the Debtor quoted, Brown Rudnick's representation of an official committee was not opposed by any party on the basis of the Firm holding an interest adverse to the committee or a lack of disinterestedness based on its prior representations.

18.     The Debtor Objection relies heavily, and the UST Objection relies to a lesser extent, upon cases that incorporate the standards set forth in Bankruptcy Code section 327(a), which concerns the retention of professionals by a debtor rather than official committees. While Bankruptcy Code section 328 does tie disinterestedness into the compensation of retained professionals, the fact that Congress decided to include separate provisions with different standards for the retention of professionals by a trustee or debtor-in-possession versus those retained by a committee[8] is consistent with the difference in the duties of an estate representative and a representative of a committee. A

---

[8]     *Compare* 11 U.S.C. § 327(a) (authorizing a trustee or debtor-in-possession to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons"), *with* § 1103(b) (forbidding a committee's attorney "while employed by such committee, [to] represent any other entity having an adverse interest in connection with the case").

trustee must be a "disinterested person" within the meaning of Code section 101(14), while a creditor holding a claim against the estate and serving on an official committee can never be truly "disinterested" with respect to a debtor. A creditor's committee is a "partisan representative" rather than a "detached fiduciary." See In re National Liquidators, Inc., 182 B.R. 186, 191 (S.D. Ohio 1995).

19.    In relying on section 327(a), the Debtor and the U.S. Trustee conflate the requirement that a committee professional must not represent an interest adverse to the committee during its representation of the committee with the idea that a professional fails the "disinterestedness" requirement if it has represented an interest adverse to the *debtor* in the past. The Committee's members and constituents all hold claims against the Debtor and so are not "disinterested."

20.    Nevertheless, this lack of disinterestedness on the part of a committee does not mean that a professional representing a committee (and so advocating for a group that has a strong interest in the outcome of the case) lacks the requisite disinterestedness or holds an adverse interest. Bankruptcy courts have recognized that "interests are not considered "adverse" merely because it is possible to conceive a set of circumstances under which they might clash." In re Caldor, 193 B.R. 165, 172 (Bankr. S.D.N.Y. 1996) (quoting In re Leslie Fay Co., Inc., 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994)). The Debtor apparently believes that any law firm that has opposed a Chapter 11 debtor in its representation of an official committee in the past is unfit be retained as counsel for an entirely different committee in an entirely different case. Adopting such a ridiculously impractical and unnecessarily restrictive view would eliminate all counsel proposed in this case and the vast majority of large Chapter 11 cases from consideration as counsel to a creditor's committee.

***The Coalition's Interests in Reaching a Consensual Resolution are Aligned with the Committee.***

21.    Contrary to the allegations in the Debtor Objection, the Coalition's interest in reaching a fully consensual settlement of all talc claims in this case was ***substantially aligned*** with

the Committee's interest at such time, and the parties engaged in mediated negotiations in an effort to reach a consensus.

22.     While the Committee reached an agreement in principal with the Debtor and Johnson & Johnson regarding the Plan, there were extensive negotiations over a long period of time. The Committee represents the voices of talc claimants in these negotiations, not the Debtor.   Official committees like the Committee must function as "the primary negotiating bodies for a chapter 11 plan; they also provide supervision of the debtor and execute an oversight function; they may investigate the debtor's assets and affairs; and they may perform such other services as are in the interest of the unsecured creditor body." In re S & B Surgery Ctr., Inc., 421 B.R. 546, 549 (Bankr. C.D. Cal. 2009) (citations omitted).  Notably, the Committee has not found any authority to support the Debtor's argument that a professional that has represented a position adverse to the debtor must be disqualified from representing a committee of the debtor's creditors.

> The creditors' committee is not merely a conduit through whom the debtor speaks to and negotiates with creditors generally. On the contrary, it is purposely intended to represent the necessarily different interests and concerns of the creditors it represents. It must necessarily be adversarial in a sense, though its relations with the debtor may be supportive and friendly. There is simply no other entity established by the Code to guard those interests. The committee as the sum of its members is not intended to be merely an arbiter but a partisan which will aid, assist, and monitor the debtor pursuant to its own self-interest.

In re Roman Cath. Church for Archdiocese of New Orleans, No. 20-10846, 2022 WL 7204872, at *2 (Bankr. E.D. La. Oct. 11, 2022) (citations omitted)

23.     In other words, the Committee, whose members are individually represented by experienced counsel (including two former members of the Coalition who resigned from the Coalition when their clients were appointed to the Committee), was not in danger of being corrupted by counsel that had represented committees that had opposed other deals with the Debtor's predecessor.  In fact, the idea that a firm *chosen by Committee members with the guidance of their*

11

*individual counsel* could undermine the positions that the Committee takes and supports is ridiculous. Moreover, the Debtor's dire prediction is directly contradicted by the facts: since the Committee selected Brown Rudnick as co-counsel, the Firm seamlessly worked alongside Paul Hastings, former lead counsel to the Ad Hoc Committee, and has used the very connections the Debtor derides to facilitate the Committee's efforts to obtain the support of *all* talc claimants—the best possible outcome for the Debtor's estate and this case.

### B. The Committee's retention of Brown Rudnick does not violate any ethical guidelines.

24.     The Fifth Circuit's approach to ethical issues seeks to balance the prevention of conflicts of interest with the understanding that "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." In re MMA L. Firm, PLLC, 660 B.R. 128, 133–34 (Bankr. S.D. Tex. 2024) (citing In re ProEducation Int'l, Inc., 587 F.3d 296, 299–300 (5th Cir. 2009)).  Contrary to the Debtor Objection and the UST Objection, disqualifying Brown Rudnick from representing the Committee cannot be an automatic or mechanical process (especially based merely on the Firm's past representation of parties adverse to the Debtor's ultimate parent), but must instead considered in light of  the relevant facts and ethical considerations, and with "meticulous deference" to the Committee's right to choose it counsel.  See Id.

25.     As recognized by the American Bar Association, "As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with others.  A lawyer acts as evaluator by examining a client's affairs and reporting

about them to the client or to others." Model Rules of Prof'l Conduct, Preamble (Am. Bar Ass'n 2023).[9]

26.     Consistent with the ABA Model Rules, and those of both New York, where Brown Rudnick is located and counsel appearing in this case are admitted, and Texas, where counsel appearing in this case are admitted *pro hac vice* for this case, Brown Rudnick has zealously and loyally asserted its clients' positions in this case and related matters.  While the Debtor attempts to portray Brown Rudnick's past clients in this and related matters as maintaining positions diametrically opposed to the Committee's positions in this case, as the Committee Statement itself represents, the Committee was comprised of five claimants who voted ***against*** the Debtor's proposed plan and five claimants who voted ***for*** the proposed plan, and as explained in the Committee Statement, the Committee and the Debtor had reached agreement *in principle*, with further negotiations needed.  Brown Rudnick was in the best position to bridge any gaps between various creditor parties and guide the Committee in reaching a fully consensual plan.  Not only was Brown Rudnick's advocacy of the Committee's stated positions and its pursuit of the best possible outcome for the Committee and its constituents in this case consistent with all applicable ethical rules and guidelines, they are consistent with the Coalition members' expectations when they agreed to Brown Rudnick's withdrawal as Coalition counsel to represent the Committee.

27.     As explained in detail above, Brown Rudnick's prior representation of the Coalition in this case does not constitute an interest adverse to the Committee.  Similarly, Brown Rudnick's representation of the Committee does not raise an ethical issue with respect to the Coalition.  The members of the Coalition, with a full understanding of the scope of Brown Rudnick's

---

[9]     Notably, the Texas Rules of Professional Conduct have adopted the Preamble exactly as cited here.  The New York Rules of Professional Conduct paraphrase the cited ABA Preamble, adding "The touchstone of the client-lawyer relationship is the lawyer's obligation to assert the client's position under the rules of the adversary system, to maintain the client's confidential information except in limited circumstances, and to act with loyalty during the period of the representation." N.Y. R. PROF CONDUCT (2009).

13

proposed retention by the Committee, each executed a valid waiver of any conflict that might arise between its current representation of the Committee and its past representation of the Coalition.[10]  In an abundance of caution, the Committee directed Paul Hastings to lead any Committee response to Coalition pleadings filed before Brown Rudnick withdrew its representation of the Coalition.  There is no ethical issue.

**C. Brown Rudnick's Representation of the Committee is in the best interest of the estate.**

28.     The Debtor Objection fails to provide any authority for its position that Brown Rudnick's representation of the Committee is not in the interest of the Debtor's estate.  Rather, it cites to cases that generally include "best interests of the estate" among a non-exclusive list of factors to be considered for retentions under Bankruptcy Code section 328(a).  As explained in detail above, Brown Rudnick played an instrumental in assisting the Committee through its efforts to broker a fully consensual deal among the Debtor and all talc claimants in this case. The Debtor has not refuted—or even addressed—the fact that a fully consensual plan was in the best interest of the estate.

29.     Beyond the argument that the Committee's retention of Brown Rudnick does not comply with Bankruptcy Code section 327(a), which, as explained above, is arguably irrelevant to the retention of official committee professionals, the Debtor Objection and UST Objection rely on an argument that Brown Rudnick would not be entitled to reimbursement of any of the fees the Firm has incurred in the course of its representation of the Committee.  In support of this argument, the Debtor asserts that Brown Rudnick is not "disinterested" as defined in section 101(14) of the Bankruptcy Code.

---

[10]    The Debtor's citation to In re Quality Beverage Co., Inc., 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995), is irrelevant. First, the cited case deals with the proposed retention, pursuant to Bankruptcy Code section 327(a), of a consultant to assist a trustee in a turnover adversary proceeding.  The proposed consultant previously represented the creditor's committee in that case, and several committee members were targets of the adversary proceeding.  Second, the waivers signed by the Coalition members addressed only potential conflicts of interest and did not attempt to excuse any failure to comply with statutory retention requirement.

30.     As applied to Bankruptcy Code section 328(c), Bankruptcy Code section 101(14) is primarily concerned with a lack of disinterestedness as a result of a professional's "direct or indirect relationship to, connection with, or interest in, *the debtor*."  Here, of course, there is no such connection—Brown Rudnick's loyalty to the Committee rather than to the Debtor has not been questioned. As discussed at length above, Brown Rudnick's prior representation of the Coalition and the official committees in LTL I and LTL II is not an interest adverse to the Committee or the Debtor's estate.  Rather, this experience has proven to be beneficial to bridging the gap between those who support the Debtor's plan and those who do not, and so is *beneficial* to the Debtor's estate.

31.     Finally, while much has been made of the balance of legal fees and expenses due Brown Rudnick by the Coalition for previous work, this debt does not adversely impact the Debtor's estate or its creditors.  <u>Brown Rudnick is not competing with any other creditors for payment by the Coalition</u>.  Generally an "adverse interest" takes the form of a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant. *See In re TWI International, Inc. v. Vanguard Oil and Service Co.,* 162 B.R.  672, 675 (S.D.N.Y.1994).  Brown Rudnick is not a creditor of the Debtor.  Payment of its past fees by the Coalition pursuant to the engagement letter executed by Coalition members would not divert funds that would otherwise be available to pay other creditors, nor would it diminish the Debtor's estate in any way.

**II.     The Committee is no longer seeking to retain five law firms.**

32.     One of the firms that the Committee proposed to retain has withdrawn its application.  On January 15, 2025 McKool Smith filed *McKool Smith's Notice Of Its Election To Withdraw The Application For An Order Authorizing The Official Committee Of Talc Claimants To Retain And Employ McKool Smith As Special Litigation Counsel Nunc Pro Tunc To November 18,*

*2024 [Dkt. No. 806]* [Docket No. 928] formally withdrawing it retention application from the Court's consideration.

**CONCLUSION**

WHEREFORE, Brown Rudnick respectfully requests that the Court overrule the Objection and enter the revised proposed order annexed hereto as **Exhibit A** authorizing and approving the employment and retention of Brown Rudnick as co-counsel to the Committee and grant such other and further relief as the Court deems just and proper.

Dated: May 1, 2025                                    Respectfully submitted,

**BROWN RUDNICK, LLP**

*/s/ Susan Sieger-Grimm*
Susan Sieger-Grimm (pro hac vice)
David J. Molton (pro hac vice)
Jeffrey L. Jonas (pro hac vice)
Eric R. Goodman (pro hac vice)
Seven Times Square
New York, NY 10036
Telephone:     (212) 209-4800
ssieger-grimm@brownrudnick.com
dmolton@brownrudnick.com
jjonas@brownrudnick.com
egoodman@brownrudnick.com